# United States District Court
## For The Southern District of Indiana

| | |
|---|---|
| Martin S. Gottesfeld, pro se, Petitioner<br><br>v.<br><br>B. Lammer, Warden of the FCI Terre Haute, Indiana, Respondent | Docket No.: 2:20-cv-12-JRS-MJD |

## Motion For Order on Respondent's Custodial Questioning And Speedy Hearing (Fed. R. Civ. P. 57)

Petitioner Martin S. Gottesfeld (herein the "petitioner"), acting pro se, hereby moves The Honorable Court pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. § 2201 for a speedy hearing; the entry of a declaratory judgment pronouncing his right to the presence of counsel at any custodial questioning conducted by the respondent, including medical evaluations or other interrogations of the body; and the entry of an order requiring the respondent to abide by that right during the pendency of the instant petition.

In support of this motion, the petitioner herewith provides and respectfully directs The Court's attention to Exhibit 1 hereto, Declaration of Martin S. Gottesfeld.

The petitioner explicitly states that the instant motion is not one seeking The Court to recruit counsel to represent him in the instant matter before The Court and the petitioner respectfully declines any such construal pursuant to Castro v. United States, 540 U.S. 375 (2003).

Page 1 of 3

The petitioner further explicitly declines any construal of the instant motion as a conditions-of-confinement or civil-rights claim inconsistent with 28 U.S.C. § 2241.

The petitioner hereby reincorporates herein by reference his arguments regarding the availability of declaratory relief and a speedy hearing from his previous MOTION FOR A SPEEDY HEARING AND DECLARATORY JUDGMENT (FED. R. CIV. P. 57 AND 28 U.S.C. § 2201).

The instant motion, which the petitioner could not at the time he filed the instant petition have known to incorporate therein (Exhibit 1 hereto at 1 ¶ 4), seeks the cessation of the respondent's unconstitutional confinement of the petitioner in custodial-questioning settings without counsel. Such relief is appropriate under § 2241 because the respondent's confinement of the petitioner in involuntary custodial interrogations without Miranda warnings or counsel is unconstitutional as contemplated by § 2241.

Further, this motion cannot be moot so long as agents of the respondent plan openly to continue this violation on a daily or nearly-daily basis. Exhibit 1 hereto at 5 ¶ 30.

The petitioner notes that his hunger-strike is protected speech. Birdo v. Gomez, 2016 U.S. Dist. LEXIS 98238, Case No. 13-CV-6864 (N.D. Ill. July 27, 2016). Yet nonetheless he faces a standing accusation by the respondent that looms over any custodial questioning regarding his protected speech. Exhibit 1 hereto at 2 ¶¶ 9-12.

The respondent through intimidation and machination has rendered unavailable to the petitioner all law-library access, but the petitioner does believe that those subject to interrogations of the body, for example compelled sampling of blood, saliva, fingerprints, etc., are afforded the right to the presence of counsel at any such procedures.

Page 2 of 3

The petitioner now notes Exhibit 1 hereto at S.#31 and wishes, respectfully, to direct The Court's attention to Exhibit 2 hereto, request for preservation of evidence.

Respectfully filed in accordance with the prison-mailbox rule of Houston v. Lack, 487 U.S. 266 (1988), by mailing to The Court in an envelope bearing sufficient affixed pre-paid first-class U.S. postage, and handed to Ms. J. Wheeler of the FCI Terre Haute CMU unit team, acting in her official capacity as an agent of the respondent, on Saturday, January 4th, 2020, or the first opportunity thereafter,

by: SG
Martin S. Gottesfeld, pro se

Declaration of Martin S. Gottesfeld:

I, Martin S. Gottesfeld, declare that the following is true and correct under the penalty of perjury under the laws of The United States pursuant to 28 U.S.C. § 1746 on this 4th day of January, 2020:

1. I am Martin S. Gottesfeld, my federal registration number is 12982-104, and I am the petitioner in Gottesfeld v. Lammer (S.D. Ind.) (herein the "petition"), filed pursuant to the prison-mailbox rule of Houston v. Lack, 487 U.S. 266 (1988), on Sunday, December 29th, 2019, and pending before The Honorable U.S. District Court for The Southern District of Indiana (herein "The Court").

2. As a CMU prisoner, I am not allowed to seal my mail to The Courts; the respondent instead exercises unlawful content-based discretionary review of my filings prior to marshaling them to the postal service. 28 C.F.R. § 540.203. Cf. Ex Parte Hull.

3. The respondent thus reads my court filings and is able to react, respond, and retaliate before my filings ever appear on a docket.

4. When I provided the petition to the respondent, there was no way for me to predict the below-detailed events that have since occurred.

5. On Wednesday, January 1st, 2020 — three (3) days after I provided the petition to the respondent and twenty-three (23) days into my hunger strike related thereto — Respondent Lammer arbitrarily and capriciously began enforcing for the first time a supposed "policy" that requires me to wear either two (2) sets of handcuffs and a belly chain or be handcuffed

Page 1 of 5

behind my back ~~during my daily~~ if I come out of my cell during my ~~morning~~ daily morning medical evaluation.

6. Both of these options are counterproductive; the extra cuffs and belly chain skew my weight measurement, ~~make~~ render me unable to drink the water provided to me by medical for the first time in twelve (12) hours until I return to my cell, and effect the operation of the blood-pressure cuff, thus possibly skewing its result; and, similarly, being cuffed behind my back renders me unable to drink and affects the operation of the blood-pressure cuff.

7. This change in procedure is unrelated to any change in my risk or security level (there has been no such change) and the only reason put forth to justify this change in procedure is that the new procedures have supposedly been policy the entire time and are just now being followed for the first time with me.

8. On Thursday, January 2nd, 2020, i.e. the day after this abrupt change in "policy" enforcement, I declined to leave my cell for my morning medical evaluation and the entire medical evaluation was done without issue through the slot in my cell door.

9. Later that day, a man I believe to be Captain Brogan and who in any case is definitely an agent of Respondent Lammer referred for the first time to my then — twenty-four-(24)-day hunger strike as "disruptive behavior" despite the simple facts that the respondents' own actual policies do not allow for hunger-strikes to be punished but do allow the punishment of disruptive behavior.

10. Nonetheless, despite the frivolousness and self-contradiction of the accusation, it was just the latest of Respondent Lammer's ~~such~~ many such frivolous and hypocritical (and unconstitutional) accusations against me and I cannot in diligence ignore this latest accusation.

Page 2 of 5

11. The newly-enforced "policy" and Captain Brogan's accusation make me feel subject to the type of coercion and intimidation contemplated in *Miranda*.

12. A short time after the new accusation, an approximately 5-foot-10-inch three-hundred-(300)-pound lieutenant — who himself appears to be a (barely-) ambulatory violation of the respondent's actual staff physical-fitness policy — came to my cell door and in a deliberately coercive and intimidating manner issued a thinly-veiled threat of violence in response to my choice as an Indiana medical patient to decline medical evaluation outside my cell in deliberately-coercive circumstances and told me in no uncertain terms, "You will come out."

13. The next day, Friday, January 3rd, 2020, I declined my morning medical evaluation.

14. Agent of the respondent and registered nurse Matthew Worthington (herein R.N. Worthington) replied, "[You] can't."

15. Basically, if I did not let R.N. Worthington do what he wanted, then Respondent Lammer would use violence against me.

16. I was handcuffed behind my back and left my cell against my will but without the use of force.

17. R.N. Worthington asked me a custodial question about my fluid intake, to which I replied, "[I] don't recall."

18. R.N. Worthington told me to sit so he could take my blood pressure, to which I responded that I decline.

19. R.N. Worthington told me I could not decline his blood-pressure measurement, to which I responded, "You're doing this without my consent" and "against my will."

20. R.N. Worthington then forced me — with my hands cuffed behind my back — to stand and again took my blood

Page 3 of 5

pressure without my consent and against my will.

21. R.N. Worthington then attempted to weigh me, which I also verbally declined and he honored that medical decision and let me return to my cell — but only after he completed his custodial questioning of my mind and my body.

22. No court order has ever been provided to me overriding my right to make my own medical decisions and to my knowledge, information, and belief no such order exists.

23. There was no medical emergency or other exigent circumstance justifying R.N. Worthington's behavior; indeed, on both the previous and the following days, other state-licensed medical professionals were able with my consent to measure without significant difficulty my sitting and standing blood pressure and my weight through the slot in my cell door.

24. Prior to these events, Respond. Lemmer was formally notified in writing of the identity and contact information of the holder of my Health-Care Proxy (HCP) and durable power-attorney, and yet this properly-empowered decisionmaker was not consulted, nor were my emergency contacts advised that medical treatment was forced upon me against my will — further undermining any possible assertion that an emergency or other exigent circumstance required the violation of my right to informed consent without Due Process.

25. I previously formally notified R.N. Worthington's department in writing that I would like to know my rights as an Indiana medical patient being treated by state-licensed providers, but this formal request was fruitless.

26. I orally reiterated my request to know my rights as an Indiana medical patient to R.N. Worthington as I returned to my

Pye
4 of 5

cell and despite R.N. Worthington's promise to send a healthcare administrator to speak with me later that day, my requests remain fruitless.

27. No Miranda warning was given before R.N. Worthington questioned me or at any other point.

28. I have formally requested in writing the preservation of the audio and video recordings made by the respondent of the events described in this declaration.

29. The custodial questioning was in fact so coercive and stressful that the blood-pressure machine audibly alarmed each time R.N. Worthington took a measurement against my will. Cf. Miranda.

30. At the end of the involuntary custodial questioning, R.N. Worthington assured me that it would be repeated "for a long time."

31. Before I could place this filing in the mail, on Sunday, January 5th, 2020, at approx. 10:15 A.M., the respondent employed a team in riot gear to force me to allow an involuntary medical evaluation. I asserted my right to counsel and was ignored. No medical emergency existed and my emergency contacts were not notified. Please see Exhibit 2.

MSG→
2020-01-05
MSG

I declare under the penalty of perjury under the laws of The United States that the foregoing is true and correct. Executed on January 4th, 2020.

by: [signature] G
Martin S. Gottesfeld

Exhibit 2

To: CMU Unit Team
From: Martin S. Gottesfeld (Reg. No.: 12982-104)
Date: Sunday, January 5th, 2020
Subject: Preservation of evidence against spoliation or other loss - surveillance footage

Salutations Unit Team,

I hope you're well.

I hereby formally request the preservation against spoliation or other loss of the following audio and video surveillance footage recorded in the FCI Terre Haute CMU SHU. I certify under penalty of perjury under the laws of the United States pursuant to 28 U.S.C. § 1746 that the following evidence is relevant to litigation that I have brought and will bring in U.S. district courts:

- Friday, January 3rd, 2020, approx. 10:30 A.M.; Mail call with Prisoner Gottesfeld, content-based review of Prisoner Gottesfeld's incoming legal mail by Ms. S. Wheeler and Ms. R. Eisele;
- Saturday, January 4th, 2020, approx. 7:00 A.M.; first medical evaluation of Prisoner Gottesfeld;
- Saturday, January 4th, 2020, approx. 12:00 P.M.; second medical evaluation of Prisoner Gottesfeld with more staff present, including Lt. and health-services administrator, and a "chair-side;"
- Sunday, January 5th, 2020, approx. 7:00 A.M.; first attempted medical evaluation of Prisoner Gottesfeld;
- Sunday, January 5th, 2020, all day; all interactions between Lt. Ramos and Prisoner Gottesfeld, specifically including at approx. 9:00 A.M., Lt. Ramos threatens Prisoner Gottesfeld with a "use of force team" and Prisoner Gottesfeld asserts his 6th Amendment right to the presence of counsel in any custodial environment in which information is sought from his mind or body; and
- Sunday, January 5th, 2020, approx. 10:15 A.M.; both the CMU SHU fixed-camera and microphone footage as well as the camcorder footage of the extraction team and forced medical evaluation by Corey Pointer of Prisoner Gottesfeld.

Thanks,

MSG

Martin S. Gottesfeld, pro se

- Page 1 of 1 -