UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| MARTIN S. GOTTESFELD, )<br>  )<br>　　　　Petitioner, )<br>  )<br>　　　　　　v. )<br>  )<br>B. LAMMER Warden of The FCI )<br>Terre Haute, Indiana, )<br>  )<br>　　　　Respondent. ) | Cause No. 2:20-cv-00012-JRS-MJD |

## **RETURN TO ORDER TO SHOW CAUSE**

Petitioner Martin S. Gottesfeld is currently in the custody of the Federal Bureau of Prisons (BOP). He has filed a petition pursuant to 28 U.S.C. section 2241 challenging a prison disciplinary action. *See generally* ECF No. 1. The Court should deny Gottesfeld's Petition because (1) he failed to exhaust his administrative remedies before filing it and (2) his claims lack merit.

## **RELEVANT FACTUAL & PROCEDURAL BACKGROUND**

On January 11, 2019, the United States District Court for the District of Massachusetts sentenced Gottesfeld to an aggregate term of 121 months of incarceration pursuant to his convictions for conspiracy and intentional damage to a protected computer.[1] Judgment in a Criminal Case at 1–2, Dkt. 389, *United States v. Gottesfeld*, No. 1:16-cr-10305-NMG (D. Mass. Jan. 11, 2019). Gottesfeld is presently housed in the Communications Management Unit (CMU) at the Federal Correctional Complex in Terre Haute, Indiana (FCC – Terre Haute). ECF Nos. 21-1, Ex. A, Declaration of Jenna Epplin ("Epplin Decl.") at ¶ 4; 21-2, Ex. B, Declaration of R. Eisele

---

[1] Gottesfeld's convictions arose out of cyberattacks he perpetrated against a Massachusetts children's hospital, which were purportedly motivated by a 2014 controversy regarding the hospital's treatment of a teenage girl against her parents' wishes. *See* Josephine Wolff, *Practice Hacktivism at Your Own Risk*, Slate.com (Jan. 16, 2019), *available at* https://slate.com/technology/2019/01/martin-gottesfeld-hacktivism-ddos-boston-childrens-justina-pelletier.html.

("Eisele Decl.") at ¶ 2.  His full term-release date is March 19, 2026, but with good time credit, he could be released as early as October 18, 2024.  ECF No. 21-1, Ex. A, Epplin Decl. at ¶ 4

On the evening of December 6, 2019, Gottesfeld handed two Inmate Requests to Case Manager Rebekka Eisele.  ECF No. 21-3, Ex. C, Declaration of D. Matthews ("Matthews Decl.") at ¶ 6.  At first glance, Eisele believed the Requests contained questions about Gottesfeld's Judgment and Commitment Order, which she addressed verbally.  *Id.*  She then placed the requests in her office for further processing on the following business day:  December 9, 2019.  *Id.*

Upon further review, Eisele saw that one of the Requests—which was addressed to numerous BOP staff members, including Eisele herself, DHO Jason Bradley, the Complex Warden, and various Regional and Central Office staff members—was actually a demand for money:  "I hereby demand a true copy of the order of commitment under which each of you . . . is detaining me against my will.  This demand is self-executing every twenty-four (24) hours; and each of you whom neglects to deliver to me a true copy of the required order of commitment shall forfeit to me the statutorily-mandated sum."  *Id.* at 16.  Eisele read that to mean that Gottesfeld was threatening her and other staff with "financial demise" if they did not provide him with a document or assist him in securing a fraudulent release from custody.  *Id.*  Accordingly, Eisele wrote Gottesfeld an Incident Report for Prohibited Act 204A, Attempted Extortion.  *Id.*  Gottesfeld was subsequently placed in the CMU Special Housing Unit (SHU) pending the investigation of the Incident Report.  ECF No. 21-2, Ex. B, Eisele Decl. at ¶ 2.

That same day, Lieutenant Devlin provided Gottesfeld with a copy of the Incident Report and advised him of his rights.  ECF No. 21-3, Ex. C, Matthews Decl. at ¶ 8.  In response, Gottesfeld asserted that the Incident Report was "unconstitutional and retaliatory[.]"  *Id.*  After Lieutenant Devlin completed his investigation, he concluded the charge was warranted and should be

forwarded to the UDC. *Id.*

The Incident Report was assigned number 3338082 and forwarded to the UDC, which held a hearing on December 12, 2019. *Id.* at ¶ 9. At that hearing, Gottesfeld stated that he "did not extort anyone" and alleged that the Incident Report was "unconstitutional[.]" *Id.* The UDC referred the charge to the DHO and recommended that Gottesfeld receive a sanction of 27 days lost good conduct time (GCT). *Id.*

That same day, Officer Williams notified Gottesfeld of the DHO referral and advised him of his rights at the DHO hearing. *Id.* at ¶ 10. Gottesfeld requested a staff representative and two alternates, but none was able to serve as a representative, so the Warden appointed a representative for Gottesfeld. *Id.* at ¶¶ 10–11. Gottesfeld also requested an inmate witness, who provided a written statement that Gottesfeld "did not intend to extort any thing from R. Eisele." *Id.* at ¶ 11.

DHO Matthews conducted Gottesfeld's disciplinary hearing on December 20, 2019. *Id.* at ¶ 12. Gottesfeld's staff representative made a statement on his behalf. *Id.* Gottesfeld denied the charge: "That is the document I handed to Ms. Eisele, but I was not extorting anyone, I was quoting DC statute. This incident happened on the 6th not the 9th so the report is late. Video and audio will show this." *Id.*

In addition to the staff representative's statement and Gottesfeld's statement, the DHO also reviewed and considered the following evidence:

- Gottesfeld's original request made to Eisele and the subsequent Incident Report;

- The written statement of the inmate witness that Gottesfeld did not intend to extort anyone;

- Various District of Columbia and federal statutes that Gottesfeld submitted as documentary evidence;

3

- Video and audio recordings of Gottesfeld submitting the request to Eisele on December 6, 2019;

- Gottesfeld's statement to Lieutenant Devlin on December 9, 2019;

- Gottesfeld's written statement and documents provided to the UDC on December 12, 2019.

*Id.* Based upon the greater weight of the evidence, the DHO concluded that Gottesfeld committed the charged Prohibited Act and imposed the following sanctions: 27 days disallowed Good Conduct Time, 90 days loss of phone and commissary privileges, and a $50 fine. *Id.* at ¶ 13. Gottesfeld received a copy of the DHO Report on January 24, 2020. *Id.* at ¶ 14; ECF No. 18 at 62. Because he was on a hunger strike, however, he remained in the SHU until January 29, 2020, at which time he was deemed medically stable and returned to the CMU general population. ECF No. 21-2, Ex. B, Eisele Decl. at ¶¶ 4–5.

Meanwhile, on January 7, 2020, Gottesfeld had filed a "Verified Emergency Petition for Writ of Habeas Corpus (28 U.S.C. § 2241)" (ECF No. 1, the "Petition") in which he made numerous claims for relief, most arising out of a prison disciplinary action.[2] *See generally* ECF No. 1. As relief, he sought to recover 27 days of lost good conduct time and a $50 fine and to be released from the SHU. *Id.* at 1. The Court ordered the government to respond to the Petition on or before February 21, 2020. ECF No. 7 at 1.

---

[2] Gottesfeld is a sophisticated pro se litigant with numerous pending actions. His direct appeals, in which he was initially *pro se* but now has appointed counsel, are still pending, *see generally* Dockets, *U.S. v. Gottesfeld*, Nos. 18-1669, 19-1042, 19-1043, 19-1107 (1st Cir.), and he has filed collateral challenges, all (so far) unsuccessful. *See* Order, Dkt. No. 16, *Gottesfeld v. McDonald*, N. 1:18-cv-10376-NMG (Mar. 12, 2018) (dismissing habeas petition); Order, *In re: Martin Gottesfeld*, No. 18-1668 (July 18, 2018) (denying petition for writ of mandamus); Order, *In Re: Gottesfeld*, No. 19-1011 (Jan. 9, 2019) (denying petition for writ of mandamus). Additionally, he has filed at least one civil rights action related to his incarceration, *see generally* Complaint, Dkt. No. 2, *Gottesfeld v. Anderson et al.*, No. 1:18-cv-10836-PGG (Nov. 19, 2018), and has sought to intervene in other prisoner litigation in which he believes he has an interest. *See, e.g.*, Order, *Cox v. Dodd*, No. 19-1267 (10th Cir. July 29, 2019) (order dismissing appeal of denial of Gottesfeld's motion to intervene).

**ARGUMENT**

**I. Gottesfeld's Petition Should Be Dismissed Because He Did Not Exhaust His Administrative Remedies**

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under . . . any . . . Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This requirement applies broadly "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). "Exhaustion of administrative remedies," for federal prison inmates, then, "is a condition precedent to suit in federal court." *Burrell v. Powers*, 431 F.3d 282, 284 (7th Cir. 2005). The district court has no "discretion" to excuse a prisoner's failure to exhaust; rather, exhaustion "is mandatory." *Woodford v. Ngo*, 548 U. S. 81, 85 (2006).

This mandatory exhaustion requirement applies with equal force to habeas petitions: "Judicial review pursuant to 28 U.S.C. § 2241" of "a claim concerning the computation of a sentence . . . is obtainable . . . only after a prisoner exhausts administrative remedies." *Carnine v. United States*, 974 F.2d 924, 927 (7th Cir. 1992); *see also United States v. Earls*, No. 18-2427, 2019 WL 1168535 at *2 (7th Cir. Mar. 13, 2019) (noting that the inmate plaintiff could challenge his sentence computation by filing a Section 2241 petition "after he has exhausted his administrative remedies"); *Dunne v. Olson*, 67 F. App'x 939, 945 (7th Cir. 2003) (affirming denial of relief in part because the petitioner "has not demonstrated that he exhausted his administrative remedies within the Bureau of Prisons regarding his release date"); *Chestnut v. Daniels*, No. 2:17-cv-00019-WTL-DLP, 2018 WL 3831441 at *5 (S.D. Ind. Aug. 13, 2018) ("Because Chestnut

5

failed to exhaust his available administrative remedies as to all of his claims, they are procedurally defaulted and federal habeas relief is not available.").

"In order to exhaust administrative remedies, a prisoner must take all steps prescribed by the prison's grievance system[,]" *Ford v. Johnson*, 362 F.3d 395, 397 (7th Cir. 2004) (emphasis added), including filing "complaints and appeals in the place, and at the time, the prison's administrative rules require," *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002), even if the prisoner believes that exhaustion is futile. *Massey v. Wheeler*, 221 F.3d 1030, 1034 (7th Cir. 2000) (stating that there is no "'futility exception' to the PLRA exhaustion requirement"). Although "[t]he level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim," *Jones v. Bock*, 549 U.S. 199, 218 (2007), the grievance must at minimum include sufficient detail to allow "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter*, 534 U.S. at 525.

The United States Bureau of Prisons (BOP) has promulgated an administrative remedy system, codified at 28 C.F.R. sections 542.10, *et seq.* and BOP Program Statement 1330.18, Administrative Remedy Procedures for Inmates ("P.S. 1330.18"), through which an inmate may seek formal review of a complaint related to any aspect of his imprisonment, 28 C.F.R. § 542.10, including placement in a SHU. 28 C.F.R. § 541.26 ("You can submit a formal grievance challenging your placement in the SHU through the Administrative Remedy Program").

To exhaust his remedies, an inmate must typically begin by submitting an informal remedy request through an appropriate institution staff member via a form BP-8. 28 C.F.R. § 542.13; P.S. 1330.18 at 4. An inmate who is dissatisfied with the result of his attempt at informal resolution may complete "the appropriate form (BP-9)" within 20 calendar days of the incident giving rise to

the request and submit it at the facility level, where it will be reviewed by the Warden. 28 C.F.R. § 542.14(a); P.S. 1330.18 at 4. If the inmate is dissatisfied with the Warden's response to his BP-9, he may appeal to the Regional Director by submitting a form BP-10 "within 20 calendar days of the date the Warden signed the response" to the BP-9. 28 C.F.R. § 542.15(a); P.S. 1330.18 at 6–7. And if the inmate is dissatisfied with the Regional Director's response to his BP-10, he may take the final step in the remedy process by submitting a form BP-11 to the General Counsel "within 30 calendar days of the date the Regional Director signed the response." 28 C.F.R. § 542.15(a); P.S. 1330.18 at 7.

If an inmate has submitted administrative remedies at all required levels and received a substantive response from the General Counsel, the inmate is deemed to have exhausted the administrative remedies as to the specific issue, or issues, properly raised therein. *See* 28 C.F.R. § 542.15 ("Appeal to the General Counsel is the final administrative appeal.").

Here, as the Court recognized in its show-cause order, Gottesfeld is challenging discipline imposed pursuant to Incident Report 3338082. ECF No. 7 at 1. Although he has submitted a total of 42 administrative remedy requests during in his time in BOP custody, none were related to that Incident Report. ECF No. 21-1, Ex. A, Epplin Decl. at ¶ 6. Nor does Gottesfeld dispute his failure to exhaust his administrative remedies; indeed, he observes that "adjudication of the merits likely will save the petitioner postage on BP-10s and BP-11s." ECF No. 1 at 36. Given that, by his own admission, Gottesfeld has not even begun, let alone completed, the administrative appeal process with respect to the challenged disciplinary action, his Petition should be dismissed.

## II. In the Alternative, Gottesfeld Is Not Entitled to Any Relief from This Court

Gottesfeld's request for relief is predicated on his claims that his constitutional rights were violated in various ways during the disciplinary process, but none of those claims has merit.

7

Accordingly, even if the Court considers his claim on the merits, it should deny his Petition.

### A. Gottesfeld received all the process to which he is entitled

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974). "A prisoner challenging the process he was afforded in a prison disciplinary proceeding must meet two requirements: (1) he has a liberty or property interest that the state has interfered with; and (2) the procedures he was afforded upon that deprivation were constitutionally deficient." *Scruggs v. Jordan*, 485 F.3d 934, 939 (7th Cir. 2007). Federal inmates have a constitutionally protected liberty interest in good-time credit, and as such, they are entitled to due process before any deprivation of that credit. *Jones v. Cross*, 637 F.3d 841, 845 (7th Cir. 2011).

Due process, in the context of prison discipline, requires the following minimum procedures: "(1) written notice of the claimed violation at least 24 hours before hearing; (2) an opportunity to call witnesses and present documentary evidence (when consistent with institutional safety) to an impartial decision-maker; and (3) a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action." *Id.* The fact-finder's decision must "be supported by some evidence." *Id.* (quotations omitted). Finally, even if a prisoner can show his due process rights were violated, the court must find the violation harmless unless the prisoner can also show that the violation prejudiced him. *Id.* at 846.

To begin, any contention that Gottesfeld did not receive constitutionally sufficient notice of the DHO hearing must fail. As he admits, he received a copy of the Incident Report and the Notice of Discipline Hearing on December 12, 2019, eight days before the December 20, 2019 DHO hearing. ECF No. 1 at 10; ECF No. 21-3, Ex. C, Matthews Decl. at ¶ 8. That is "all that due process requires"—Gottesfeld is not constitutionally entitled to know precisely when the hearing

will occur. *Jones v. Cross*, 637 F.3d at 846 (finding sufficient notice when petitioner "received the incident report a week before his UDC hearing and over a month before his DHO hearing"). What is more, even assuming Gottesfeld did not receive adequate notice, he cannot show prejudice because the DHO considered all the evidence he presented, and he has not alleged that additional notice would have enabled him to present more evidence. *Id.* (concluding that the petitioner "suffered no prejudice . . . so any conceivable due process violation was harmless."). In any event, the evidence against Gottesfeld was overwhelming, so he cannot show that any additional evidence would "have changed the DHO's decision." *Id.* at 847.

Next, as the DHO report shows, Gottesfeld had an opportunity to call witnesses and present evidence. Specifically, Gottesfeld's chosen inmate witness provided a written statement, which the DHO considered. ECF No. 21-3, Ex. C, Matthews Decl. at ¶ 12. Although Gottesfeld complains he was not permitted to present documentary evidence in the form of printouts of statutes, the DHO expressly stated he considered "US and DC statutes," listed them by citation in his Report, and attached copies of them to the Report. *Id.* And Gottesfeld has neither identified additional witnesses and evidence that he would have presented given an opportunity nor explained how those additional witnesses and evidence would have caused the DHO to reach a different decision. As such, he has not stated a due process claim on this issue. *See King v. Ebbert*, No. 3:15-cv-1937, 2016 WL 7330586 at *2–3 (M.D. Pa. Dec. 16, 2016) (rejecting petitioner's due process claim because he did not specify "what, if any, witnesses could have testified to in his defense" or "any new evidence that he would have presented").

Gottesfeld's allegations that DHO Matthews was biased are similarly baseless. "[T]he constitutional standard for impermissible bias is high," *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003), and the DHO is entitled to a presumption of "honesty and integrity" that may only be

rebutted by "clear evidence[,]" *Perotti v. Marberry*, 355 F. App'x 39, 43 (7th Cir. 2009) (citing *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)), that the decision-maker has "a direct personal or otherwise substantial involvement in the circumstances underlying the charge[.]"  *Bridges v. Davis*, 106 F. App'x 508, 510 (7th Cir. 2004) (internal quotations omitted); *see also Sizemore v. Turner*, 1994 WL 445804 at *2 (7th Cir. Aug. 17, 1994) ("due process requires only that the hearing officer have a lack of former personal involvement in any disciplinary or adjustment matter with the inmate." (internal quotations and citations omitted)).  Gottesfeld, like the petitioner in *Bridges*, has "alleged no inappropriate involvement or other circumstances impugning the impartiality of" DHO Matthews, *id.* at 510 (internal quotations omitted); to the contrary, he noted that although he named two other DHOs in his "demand[,]" the demand "was not addressed to [DHO Matthews] and [Gottesfeld] never sent him a copy." ECF No. 1 at 15, 18.  Accordingly, his claim of bias is meritless.

What is more, Gottesfeld cannot claim he never received the DHO Report, since by his own admission, he received it on January 24, 2020.  ECF No. 18 at 62.  Nor can he argue the DHO's decision was not supported by "some evidence," given that it was supported by Gottesfeld's written demand for money and Eisele's statements in the Incident Report.  *See Vasquez v. Daniels*, 622 F. App'x 575, 577 (7th Cir. 2015) (finding "some evidence" standard satisfied when the DHO's "determination was supported by the incident report").

Finally, even had Gottesfeld demonstrated a due process violation, his claim would still fail because has not shown prejudice; he has not explained how, in light of the evidence against him, the result would have been different absent the constitutional violations he alleges.  *See Boyd v. Finnan*, 348 F. App'x 160, 162 (7th Cir. 2009) (denying habeas relief when petitioner failed to show how alleged due process violations—including denial of right to present witnesses—

prejudiced him).  As such, he is not entitled to any relief on this score.

### B.  Gottesfeld has not shown his custody violates the "laws of the United States"

Gottesfeld has raised an additional claim for relief in his Petition:  that his custody violates 18 U.S.C. section 3621(c) because he has never received an "endorsed return."  ECF No. 1 at 5–7.  That claim is unavailing, however, because it is the district court's judgment, not an administrative "return," that authorizes Gottesfeld's imprisonment.  *See Annamalai v. Warden*, 760 F. App'x 843, 848–49 (11th Cir. 2019) (rejecting claim for relief based upon prison's alleged failure to send "an endorsed Return to the district court"), *cert. denied sub nom. Annamalai v. Harmon*, 139 S. Ct. 2650 (2019); *see also* Judgment in a Criminal Case at 1–2, Dkt. 389, *United States v. Gottesfeld*, No. 1:16-cr-10305-NMG (D. Mass. Jan. 11, 2019) (imposing aggregate sentence of 121 months of incarceration pursuant to convictions for conspiracy and intentional damage to a protected computer).

Gottesfeld, like the unsuccessful petitioner in *Annamalai*, "does not contend that the Judgment does not accurately reflect his total sentence" or is otherwise invalid and has not explained "how the alleged failure to execute the Return has affected his sentence or his rights." *Id.* at 849.  At most, the Return is an administrative requirement, and any failure to fulfill that requirement would not constitute a "get out of jail free" card for Gottesfeld or any other inmate. *Id.* ("the statute and BOP regulations about endorsement of Returns that Annamalai relies on do not entitle him to be released from custody even if they are not followed.").  Hence, this claim must also fail.

### C.  Gottesfeld's claim regarding his housing placement is moot and lacks merit

To the extent that Gottesfeld is challenging his housing placement in a Special Housing Unit (SHU), ECF No. 1 at 8–9, his claim is both moot and meritless.  To begin, Article III of the

Constitution limits the jurisdiction of the federal courts to "cases" and "controversies." *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 395 (1980). When "an event occurs while a case is pending . . . that makes it impossible for the court to grant any effectual relief whatever to a prevailing party," *Cornucopia Institute v. USDA*, 560 F.3d 673, 676 (7th Cir. 2009) (internal quotations omitted), the "case or controversy" requirement is no longer met, and the case is moot. *Jackson v. Clements*, 796 F.3d 841, 843 (7th Cir. 2015). "The correct standard for mootness" is whether any "reasonable expectation exists that the alleged wrong will be repeated[.]" *Lucini Italia Co. v. Grappolini*, 288 F.3d 1035, 1038 (7th Cir. 2002).

Here, by his own admission, Gottesfeld was transferred out of the SHU on or about January 28, 2020. ECF No. 19 at 6–7; *see also* ECF No. 21-2, Ex. B, Eisele Decl. at ¶¶ 2, 5 (stating that Gottesfeld was returned to the CMU general population on January 29, 2020, after he ended his hunger strike). Although he alleges he is "concerned that [he] was removed from the SHU so that these agents can now place me back in the SHU" because he is again on hunger strike, he does not say why he believes that will happen. Such unsupported "speculation" is not sufficient to save his claim from mootness. *See, e.g.*, *Rico v. Beard*, No. 2:17-cv-1402-KJM-DBP, 2018 WL 3702310 at *6 (E.D. Cal. Aug. 2, 2018) ("the possibility that plaintiff may again be housed in the SHU is simply speculation. There is no reasonable likelihood it will occur.").

Even were his claim not moot, Gottesfeld would not be entitled to relief because "inmates have no liberty interest in avoiding transfer to discretionary segregation—that is, segregation imposed for administrative, protective, or investigative purposes." *Townsend v. Fuchs*, 522 F.3d 765, 771 (7th Cir. 2008) (citing *Lekas v. Briley*, 405 F.3d 602, 609 (7th Cir. 2005) ("[R]eassignment from the general population to discretionary segregation does not constitute a deprivation of a liberty interest."); *Crowder v. True*, 74 F.3d 812, 815 (7th Cir. 1996) (holding that

placement of inmate in non-disciplinary segregation for three months did not create liberty interest)). Rather, such segregation is "an ordinary incident of prison life that inmates should expect to experience during their time in prison." *Id.* (internal quotations omitted). And to the extent that Gottesfeld alleges the conditions in the SHU somehow violate the Constitution, his remedies lies not under Section 2241 but rather "under civil rights law[.]" *Graham v. Broglin*, 922 F.2d 379, 381 (7th Cir. 1991).

Nor can Gottesfeld show his placement in the SHU was illegal. On the contrary, it comported perfectly with federal regulations, which provide that the BOP "may" place an inmate "in administrative detention status" in numerous circumstances, including when the inmate poses, by his "presence in the general population[,]" "a threat to life, property, self, staff, other inmates, the public, or to the security or orderly running of the institution and is "under investigation or awaiting a hearing for possibly violating a Bureau regulation[.]" 28 C.F.R. § 541.23(c). The Seventh Circuit has said before that implementation of that regulation "is left to [the] discretion of" the BOP. *Sebolt v. United States*, 769 F. App'x 381, 382 (7th Cir. 2019) (citing *Montez v. United States*, 359 F.3d 392, 397 (6th Cir. 2004)). Additionally, BOP policy provides that an inmate who is housed in the SHU on administrative detention status and on a hunger strike "may be retained in this status and remain in the SHU[.]" BOP Program Statement 5562.05, *Hunger Strikes* (July 29, 2005) at 3.

Here, Gottesfeld was placed in the SHU on December 9, 2019, pending the investigation of the Incident Report. Ex. B, Eisele Decl., ECF No. 21-2 at ¶ 2. He remained there during the pendency of the disciplinary action, and after he received a copy of the DHO's report on January 24, 2020, he was eligible for return to the general population. *Id.* at ¶¶ 3–4. Because he was on a hunger strike, however, he remained in the SHU until he "ended his hunger strike and was deemed

medically stable[,]" at which time he was returned to the CMU general population. ECF No. 21-2, Ex. B, Eisele Decl. at ¶¶ 2, 5.

Gottesfeld's temporary housing in the CMU SHU, therefore, comported perfectly with federal regulation and BOP policy. Accordingly, habeas relief is not available to Gottesfeld for his placement in the SHU. *See Wallace v. Warden, USP Hazelton*, No. 1:13-cv-13, 2013 WL 3819928 at *4–5 (N.D.W. Va. July 23, 2013) (rejecting inmate's Section 2241 challenge to his placement in a SHU on the ground that it was "done according to the letter of the law and . . . entirely within the BOP's discretion" and did not "raise any constitutional concerns").[3]

### D. Section 2241 does not authorize relief for alleged violations of District of Columbia law or reimbursement for fines

Finally, Section 2241, by its plain terms, authorizes only challenges to "*custody* in violation of the *Constitution or laws or treaties of the United States*." 28 U.S.C. § 2241(c)(3) (emphases added). The word "custody" means that Section 2241 permits prisoners to challenge the *fact* of their custody but not the c*ircumstances* of it; in other words, they may petition for release but not for repayment. *See Smith v. Olson*, 90 F. App'x 181 (7th Cir. 2004) ("actions by prison authorities that relate only to conditions of confinement and not to the fact or duration of that confinement do not affect custody") (citing *Alejo v. Heller*, 328 F.3d 930, 937 (7th Cir. 2003); *Bunn v. Conley*, 309 F.3d 1002, 1007 (7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607, 617 (7th Cir. 2000)). Hence, to the extent that Gottesfeld is seeking recoupment of the $50 fine, ECF No. 1 at 1, Section 2241 is no help to him.

---

[3] To the extent that Gottesfeld can be understood to be challenging his placement in a Communications Management Unit (CMU), his challenge is not cognizable under Section 2241. *See, e.g.*, *Warren v. Walton*, No. 14-cv-1412-DRH, 2015 WL 232354 at *4 (S.D. Ill. Jan. 16, 2015) (concluding that a challenge to CMU placement "cannot be addressed in a habeas action").

Similarly, the phrase "Constitution or laws or treaties of the United States" means that relief is available only for violations of federal law—not state or local law. Thus, though Gottesfeld spends several pages of his Petition developing an argument based upon claimed violations of various District of Columbia statutes, ECF No. 1 at 3–5, he cannot prevail on that basis. *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) ("We have stated many times that federal habeas corpus relief does not lie for errors of state law." (quoting *Estelle v. McGuire*, 502 U.S. 62, 67 (1991))).

## CONCLUSION

For the foregoing reasons, the Respondent respectfully requests that the Court dismiss the Petition, or in the alternative, deny it with prejudice.

        Respectfully submitted,

        JOSH J. MINKLER
        United States Attorney

By:  *s/ Lara Langeneckert*
      Lara Langeneckert
      Assistant United States Attorney

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 21, 2020, a copy of the foregoing was filed electronically. Service of this filing will be made on all ECF-registered counsel by operation of the court's electronic filing system. Parties may access this filing through the court's system.

I further certify that on February 21, 2020, a copy of the foregoing was mailed, by first-class U.S. Mail, postage prepaid and properly addressed to the following:

Martin S. Gottesfeld
Register No. 12982-104
FCI – Terre Haute
Inmate Mail/Parcels
P.O. Box 33
Terre Haute, IN 47808

                                           *s/ Lara Langeneckert*
                                           Lara Langeneckert
                                           Assistant United States Attorney

Office of the United States Attorney
Southern District of Indiana
10 West Market Street, Suite 2100
Indianapolis, IN 46204
Telephone: (317) 226-6333