UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

MARTIN S. GOTTESFELD,                )
                                     )
         Petitioner,                 )
                                     )
         v.                          )   Cause No. 2:20-cv-0012-JRS-MJD
                                     )
B. LAMMER, WARDEN,                   )
                                     )
         Respondent                  )

## DECLARATION OF JENNA EPPLIN

In accordance with the provisions of 28 U.S.C. § 1746, I, Jenna Epplin, make the following unsworn declaration, under penalty of perjury, pertinent to the above-styled and numbered cause:

1. I am employed by the Federal Bureau of Prisons (BOP) as the Camp Administrator and the Acting Executive Assistant for the Federal Correctional Complex in Terre Haute, Indiana (FCC Terre Haute). I have been the Camp Administrator since January 8, 2018 and assumed the duties of Acting Executive Assistant on approximately August 18, 2019. I have been employed by the BOP in areas of increasing responsibility since June 2002. In my position and as part of my official duties, I have access to SENTRY. SENTRY is the BOP's system of electronic data entry and retrieval. SENTRY is used in part, for inmate information including inmate demographics and location data, sentence computations, financial responsibility obligations, administrative remedies, designation/custody classification information, education transcripts, inmate disciplinary history, and over 30 categories of inmate assignments. SENTRY is kept in the regular course of business of the BOP.

2. Based upon my job position, I am familiar with the BOP administrative remedy program. The BOP Administrative Remedy Program includes the following four step process.

**Step 1:** The inmate must first attempt to resolve the issue informally. 28 C.F.R. § 542.13.[1]

**Step 2:** If the inmate is unable to resolve the issue informally, the inmate must submit a formal "Administrative Remedy Request" written on the "BP–9" form. 28 C.F.R. § 542.14. The form must be submitted within twenty calendar days following the date on which the basis of the complaint occurred. 28 C.F.R. § 542.14. The Administrative Remedy Request is to be responded by the warden of the institution where the inmate is located. 28 C.F.R. § 542.14. The Warden has 20 days (plus an optional extension of 20 days) in which to respond.  28 C.F.R. § 542.18. *Appeal of the decisions of Discipline Hearing Officers may by-pass Step 1 and Step 2 and must be submitted initially to the Regional Director for the region where the inmate is currently located.* 28 C.F.R. §542.14(d)(2) (emphasis added).

**Step 3:** If the inmate is dissatisfied with the Warden's response to the Administrative Remedy Request, the inmate may appeal the Warden's decision to the appropriate Regional Director. 28 C.F.R. § 542.15. An appeal to the Regional Director must be written on the "BP–10" form and it must be submitted within twenty calendar days following the date the Warden signed the response. 28 C.F.R. § 542.15. The Regional Director has 30 days (plus an optional extension of 30 days) in which to respond.  28 C.F.R. § 542.18.

**Step 4:** If the inmate is dissatisfied with the Regional Director's response to the appeal, the inmate may appeal once more to the BOP General Counsel. 28 C.F.R. § 542.15. An appeal to the General Counsel must be written on the "BP–11" form and it must be submitted within thirty calendar days following the date the Regional Director signed the response. 28 C.F.R. § 542.15. The General Counsel has 40 days (with an optional extension of 20 days) in which to respond.  28 C.F.R. § 542.18. An appeal to the BOP General Counsel is the final step in the BOP administrative review process.

---

[1] This is commonly referred to as a BP-8.

If no response is received within the allowable time, the inmate can deem that request

denied at that level. 28 C.F.R. § 542.18. The BOP deems that exhaustion of

administrative remedies has occurred when 60 days has passed from the date the BP-

11 was filed and no response has been provided, or when the BP-11 is answered,

whichever occurs first.

3. SENTRY is used to track all administrative remedy submissions. All SENTRY

printouts attached to the declaration are true and accurate reports kept in the regular

course of the business of the BOP. In my position, I also have access to the actual

(hard copy) remedy filings and responses that are maintained by the BOP. All copies

of administrative remedy filings and responses attached to this declaration are true

and accurate copies kept in the regular course of business.

4. Petitioner Martin Gottesfeld (Register Number 12982-104) is a federal inmate

currently incarcerated at FCC Terre Haute. *See Attachment A, Public Information

Inmate Data.* Gottesfeld is serving a 121 month sentence for Fraud, Conspiracy and

Intentional Damage to a Protected Computer. *Id.* He has a projected release date of

October 18, 2024 via Good Conduct Time (GCT) and a full term release date of

March 19, 2026. *Id.*

5. I have reviewed the *Habeas* claim filed by inmate Gottesfeld and I understand he is

challenging Incident Report number 3338082 which was issued to him on December

9, 2019. *See Attachment B*, DHO Report #3338082, p. 1. The DHO hearing was held

on December 20, 2019. *Id.* A copy of the DHO report was delivered to inmate

Gottesfeld on January 24, 2020. *See Attachment C*, Disciplinary History.

6. I have reviewed SENTRY for administrative remedy filings by inmate Gottesfeld.

As of today, Gottesfeld has submitted a total of 42 requests for administrative remedy

and appeals. *See Attachment D, Administrative Remedy Generalized Retrieval.* I

searched this report for any remedies related to Incident Report number 3338082. My

search revealed that no requests for administrative remedy have been submitted

which refer to this incident report. *Id.*

Executed this ⟋⟍ day of January 2020.

Jenna N. Epplin,

```
    THABO             *        PUBLIC INFORMATION        *        01-27-2020
PAGE 001              *            INMATE DATA           *        11:41:00
                            AS OF 01-27-2020


REGNO..: 12982-104 NAME: GOTTESFELD, MARTIN


                    RESP OF: THA
                    PHONE..: 812-238-1531      FAX: 812-238-3301
                                               RACE/SEX...: WHITE / MALE
                                               AGE:  35
PROJ REL MT: GOOD CONDUCT TIME RELEASE         PAR ELIG DT: N/A
PROJ REL DT: 10-18-2024                        PAR HEAR DT:




G0002        MORE PAGES TO FOLLOW . . .
```

**Attach. A**

```
THABO            *      PUBLIC INFORMATION        *      01-27-2020
PAGE 002         *          INMATE DATA           *      11:41:00
                         AS OF 01-27-2020


REGNO..: 12982-104 NAME: GOTTESFELD, MARTIN

                   RESP OF: THA
                   PHONE..: 812-238-1531   FAX: 812-238-3301
HOME DETENTION ELIGIBILITY DATE: 04-18-2024


THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S CURRENT COMMITMENT.
THE INMATE IS PROJECTED FOR RELEASE:  10-18-2024 VIA GCT REL

---------------------CURRENT JUDGMENT/WARRANT NO: 010 ----------------------

COURT OF JURISDICTION...........: MASSACHUSETTS
DOCKET NUMBER...................: 1: 16 CR 10305 -1- N
JUDGE...........................: GORTON
DATE SENTENCED/PROBATION IMPOSED: 01-10-2019
DATE COMMITTED..................: 04-01-2019
HOW COMMITTED...................: US DISTRICT COURT COMMITMENT
PROBATION IMPOSED...............: NO


            FELONY ASSESS  MISDMNR ASSESS  FINES       COSTS
NON-COMMITTED.: $200.00     $00.00        $00.00      $00.00

RESTITUTION...: PROPERTY:  NO  SERVICES:  NO      AMOUNT: $442,930.00



------------------------CURRENT OBLIGATION NO: 010 --------------------------
OFFENSE CODE....: 153     18:286,371 FRAUD, OTHER
OFF/CHG: 18:371 CONSPIRACY;18:1030(A)(5)(A),18:1030(C)(4)(B)
         INTENTIONAL DAMAGE TO A PROTECTED COMPUTER

 SENTENCE PROCEDURE.............: 3559 PLRA SENTENCE
 SENTENCE IMPOSED/TIME TO SERVE.:  121 MONTHS
 TERM OF SUPERVISION............:    3 YEARS
 DATE OF OFFENSE................: 04-20-2014







 G0002       MORE PAGES TO FOLLOW . . .
```

**Attach. A**

```
THABO          *        PUBLIC INFORMATION       *      01-27-2020
PAGE 003 OF 003 *          INMATE DATA           *      11:41:00
                        AS OF 01-27-2020


REGNO..: 12982-104 NAME: GOTTESFELD, MARTIN

                   RESP OF: THA
                   PHONE..: 812-238-1531   FAX: 812-238-3301
------------------------CURRENT COMPUTATION NO: 010 ------------------------


COMPUTATION 010 WAS LAST UPDATED ON 12-23-2019 AT DSC AUTOMATICALLY
COMPUTATION CERTIFIED ON 02-28-2019 BY DESIG/SENTENCE COMPUTATION CTR

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
CURRENT COMPUTATION 010: 010 010

DATE COMPUTATION BEGAN..........: 01-10-2019
TOTAL TERM IN EFFECT............:   121 MONTHS
TOTAL TERM IN EFFECT CONVERTED..:    10 YEARS       1 MONTHS
EARLIEST DATE OF OFFENSE........: 04-20-2014

JAIL CREDIT.....................:    FROM DATE     THRU DATE
                                     02-17-2016    01-09-2019


TOTAL PRIOR CREDIT TIME.........: 1058
TOTAL INOPERATIVE TIME..........: 0
TOTAL GCT EARNED AND PROJECTED..: 517
TOTAL GCT EARNED................: 162
STATUTORY RELEASE DATE PROJECTED: 10-18-2024
EXPIRATION FULL TERM DATE.......: 03-19-2026
TIME SERVED.....................:     3 YEARS     11 MONTHS     11 DAYS
PERCENTAGE OF FULL TERM SERVED..:  39.1

PROJECTED SATISFACTION DATE.....: 10-18-2024
PROJECTED SATISFACTION METHOD...: GCT REL








G0000       TRANSACTION SUCCESSFULLY COMPLETED
```

**Attach. A**

BP-A0304
JAN 17

# DISCIPLINE HEARING OFFICER REPORT

**U.S. DEPARTMENT OF JUSTICE**                **FEDERAL BUREAU PRISONS**

| | |
|---|---|
| Institution: FCC Terre Haute | Incident Report number: 3338082 |
| NAME OF INMATE: Gottesfeld, Martin | REG. NO.: 12982-104    UNIT: CMU |
| Date of Incident Report: 12-09-2019 | Offense Code: 204A |
| Date of Incident: 12-06-2019 | |

Summary of Charges:  Extortion (Attempted)

**I.    NOTICE OF CHARGE(S)**

A. Advanced written notice of charge (copy of Incident Report) was given to inmate on (date) **12-09-2019** at (time) **1739** (by staff member) **B. Devlin**.

B. The DHO Hearing was held on (date) **12-20-2019** at (time) **1120**.

C. The inmate was advised of the rights before the DHO by (staff member): **S. Williams, Counselor** on (date) **12-12-2019** and copy of the advisement of rights form is attached.

**II.    STAFF REPRESENTATIVE**

A. Inmate waived right to staff representative. Yes _____ No **X** .

B. Inmate requested staff representative and appeared.

C. Staff Representative statement: **No procedural errors noted.  Inmate states he was quoting statute and was not attempting to extort anyone.**

D. Requested staff representative declined or could not appear but inmate was advised of option to postpone hearing to obtain another staff representative with the result that: (New Staff Representative Name) **Warden Appointed** was selected.

E. Staff representative **T. Feuquay, Case Manager** was appointed.

**III.    PRESENTATION OF EVIDENCE**

A. Inmate _____ (admits) **X** (denies) _____ (neither) the charge(s).

B. Summary of inmate statement:
**"That is the document I handed to Ms. Eisele, but I was not extorting anyone, I was quoting DC statute. This incident happened on the 6th not the 9th so the report is late. Video and audio will show this."**

C. Witnesses:
1. Inmate waived right to witness. Yes _____ No **X**

2. The following persons were called as witness at this hearing and appeared (Each witness name and statement listed below):

3. The following persons requested were not called for the reason(s) given (Each witness name and statement listed below):

4. Unavailable witnesses were requested to submit written statements and those statements received were considered (Each witness name and statement listed below). **Inmate Gottesfeld waived in person witness and the following witness provided a written statement. William Harris #40743-050. "Marty did not intend to extort anything from R. Eisele. He simply was requesting the copy of his order of commitment which is consistent with the statutes regarding the same. Eisele read Marty's document before leaving the library."**

D. Documentary Evidence: In addition to the Incident Report and Investigation, the DHO considered the following documents: **Written correspondence from inmate Gottesfeld addressed to Ms. Eisele and other individuals, US and DC statutes, video and audio recordings of the of the incident.**

E. Confidential information was used by DHO in support of his findings, but was not revealed to the inmate.  The confidential information was documented in a separate report.  The confidential information has been (confidential informants have been) determined to be reliable because: **N/A**.

**IV.    FINDINGS OF THE DHO**

**X** A. The act was committed as charged.         _____ C. No prohibited act was committed:
                                                    Expunge according to Inmate Discipline PS.

_____ B. The following act was committed:

_____

Attach. B                                                                pg. 1

CENTRAL FILE COPY

1

BP-A0304
JAN 17

# DISCIPLINE HEARING OFFICER REPORT

## U.S. DEPARTMENT OF JUSTICE                FEDERAL BUREAU PRISONS

| Name of Inmate: | Reg. No.: | Hearing Date: |
|---|---|---|
| Gottesfeld, Martin | 12982-104 | 12-20-2019 |

V.   SPECIFIC EVIDENCE RELIED ON TO SUPPORT FINDINGS (Physical evidence, observations, written documents, etc.):

You were advised of your rights before the Discipline Hearing Officer and stated that you understood those rights.   You requested staff members SOS S. Harvey, SOS B. Eddy and Counselor R. Orr to be your staff representative all of which declined.   You were then appointed Case Manager T. Feuquay.   Additionally, you requested the inmate William Harris as a witness and authorized use of a written statement.   You presented the following as documentary evidence on your behalf: Inmate Request to Staff Member, dated 12/06/2019, Title 18 USC §3621(c), D.C Code §16-1905, D.C Code §13-421, D.C Code §13-422, D.C Code §13-423(a).

The DHO finds that on December 6, 2019, you committed the prohibited act of Code 204A, Attempted Extortion or Blackmail.

The DHO considered the Incident Report which the reporting officer states, "On the evening of December 6, 2019, at approximately 1920 hrs, inmate Gottesfeld, Martin, Reg. No. 12982-104, handed me two inmate Requests for processing. I briefly glanced at them, noticed he requested a copy of what I thought was his Judgement and Commitment, on one of them and I verbally explained to him he would have to ask the Records Department to view his Judgement to see if it is any different from the copy I had already given him. I brought the requests to my office, scanned them and left them for further processing on the next business day. On December 9, 2019, I began processing the requests I had collected and noticed inmate Gottesfeld's request includes a demand for a "statutorily-mandated sum" which I interpreted as money. The demand is to myself and approximately 72 other individuals, agencies, and entities demanding a true copy of his Order of Commitment. Specifically he states" I have searched my records for an order of commitment (sic) allowing each of you, jointly and severely (sic), to hold me against my will and found no such order… I hereby demand a true copy of the order of commitment (sic) under which each of you, jointly and severely(sic) is detaining me against my will. This demand is self-executing every twenty-four (24) hours; and each of you whom neglects to deliver to me a true copy of the required order of commitment (sic) shall forfeit to me the statutorily-mandated sum."

I feel threatened by inmate Gottesfeld's demands and I believe he is trying to extort me (and others), both personally and professionally. Inmate Gottesfeld is attempting to intimidate and compel me (and other staff, agencies, entities) by threat of financial demise into providing him a document (to which I have no access) and potentially assisting him in securing a fraudulent release from custody."

The DHO considered your statement to the investigating Lieutenant, where you stated, "This is unconstitutional and retaliatory to my pending litigation. I request for the record that you save the video and audio files of this encounter."

The DHO considered your statement to the UDC stating, "I did not extort anyone. I quoted relevant law nearly verbatim. See attached. This incident report is unconstitutional and those involved with its preparation and any sanctions will likely be held not to have qualified immunity."

The DHO considered the statement by your staff representative stating "No procedural errors noted. Inmate states he was quoting statute and not attempting to extort anyone."

The DHO considered your statement to the DHO stating, "I did give Ms. Eisele those papers but I was not extorting anyone. This incident report is late. It happened on the 6th and I wasn't given a copy until the 9th. I used language right from the DC statue."

The DHO considered your statement and denial to the charge against you, but was not convinced. The DHO believes you would deny the charge to avoid possible disciplinary sanctions, if found guilty. Staff clearly report that you attempted to extort or blackmail them. You admitted to giving Ms. Eisele the written correspondence that contained threatening language. The DHO can find no evidence that the date of incident should have been December 6, 2019, instead of December 9, 2019. The video of the incident was reviewed by the DHO and your interaction with Ms. Eisele was not captured inside the Law Library. The audio was reviewed by the DHO and was only able to make out muffled voices. Ms. Eisele clearly states in the incident report she did not become aware of the incident until December 9, 2019. You received a copy of the incident on December 9, 2019, at 5:39 p.m. Therefore, the DHO finds the incident report is within the timeline outlined in policy. The DHO

Attach. B                                                    pg. 2

CENTRAL FILE COPY

BP-A0304
JAN 17

# DISCIPLINE HEARING OFFICER REPORT

**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU PRISONS**

| Name of Inmate: | Reg. No.: | Hearing Date: |
|---|---|---|
| Gottesfeld, Martin | 12982-104 | 12-20-2019 |

considered your statement that you were quoting statute and not attempting to extort anyone but was not convinced. Upon reviewing the statutes you requested the DHO finds while you have the right to litigation, however; you do not have the right to attempt to extort or blackmail staff into complying with your demands.

Therefore, based on the greater weight of evidence the DHO finds you committed the prohibited act of Code 204A: Attempting to Extort or Blackmail.

VI.   SANCTION OR ACTION TAKEN (List each prohibited act with respective sanctions for that act).

Code 204A:
27 Days Disallow Good Conduct Time
90 Days Loss of Phone
90 Days Loss of Commissary
$50.00 Fine
(balance $401.55 as of 12-20-2019)

VII.   REASON FOR EACH SANCTION OR ACTION TAKEN:

The action/behavior on the part of any inmate to carry out an act of extortion/blackmail on another inmate or staff member, poses a very serious threat to the health, safety and welfare of not only the inmate involved, but that of all inmates and staff. Past acts of this nature have resulted in drugs, guns and other weapons entering the institution, as well as escape attempts being carried out. This type of action/behavior cannot be tolerated at any time. The sanction(s) imposed by the DHO were taken to let the inmate know that he, and he alone, will be held responsible for his actions/behavior at all times. Although not directly related to the infraction, loss of privileges was invoked to deter the inmate from this behavior in the future.

VIII. APPEAL RIGHTS:   **X**   The inmate has been advised of the findings, specific evidence relied on action and reasons for the action.  The inmate has been advised of the right to appeal this action within 20 calendar days under the Administrative Remedy Procedure.  A copy of this report has been given to the inmate.

| IX.   Discipline Hearing Officer | | |
|---|---|---|
| Printed Name | Signature | Date |
| D. Matthews, Alternate DHO | D. Matthews | 01-22-2020 |

DHO report delivered to Inmate by: _____

Printed Name (Staff)          Signature:          Date and Time:

Prescribed by P5270                    Replaces BP-A0304 of AUG 11

**Attach. B**                                          **pg. 3**

CENTRAL FILE COPY

3

BP-A0288
JAN 17

**INCIDENT REPORT**

**U.S. DEPARTMENT OF JUSTICE**      **FEDERAL BUREAU OF PRISONS**

### Part I - Incident Report

| | | | |
|---|---|---|---|
| 1. Institution:    FCC Terre Haute | FCI | Incident Report Number: 3338082 | |
| 2. Inmate's Name: <br> Gottesfeld, Martin | 3. Register Number: <br> 12982-104 | 4. Date of Incident: <br> 12/06/2019 | 5. Time: <br> 1920 hrs. (approx.) |
| 6. Place of Incident: <br> CMU Law Library | 7. Assignment: <br> CMU Unassigned | | 8. Unit: <br> CMU (D) |
| 9. Incident: <br> Extortion (Attempted) | | 10. Prohibited Act Code(s): <br> 204(A) | |

| 11. Description of Incident (Date: 12/09/2019    Time: 1234 hrs    Staff became aware of incident: |
|---|

On the evening of December 6, 2019, at approximately 1920 hrs., inmate Gottesfeld, Martin, Reg. No. 12982-104, handed me two Inmate Requests for processing. I briefly glanced at them, noticed he requested a copy of, what I thought was his Judgment and Commitment, on one of them and I verbally explained to him he would have to ask the Records Department to view his Judgment to see if it is any different from the copy I had already given him. I brought the requests to my office, scanned them and left them for further processing on the next business day. On December 9, 2019, I began processing the requests I had collected and noticed inmate Gottesfeld's request includes a demand for a "statutorily-mandated sum" which I interpreted as money. The demand is to myself and approximately 72 other individuals, agencies, and entities demanding a true copy of his Order of Commitment. Specifically he states, "I have searched my records for an order of committment[sic] allowing each of you, jointly and severly[sic], to hold me against my will and found no such order....I hereby demand a true copy of the order of committment[sic] under which each of you, jointly and severly[sic], is detaining me against my will. This demand is self-executing every twenty-four (24) hours; and each of you whom neglects to deliver to me a true copy of the required order of committment[sic] shall forfeit to me the statutorily-mandated sum."

I feel threatened by inmate Gottesfeld's demands and I believe he is trying to extort me (and others), both personally and professionally. Inmate Gottesfeld is attempting to intimidate and compel me (and other staff, agencies, entities) by threat of financial demise into providing him a document (to which I have no access) and potentially assisting him in securing a fraudulent release from custody.

| 12. Typed Name/Signature of Reporting Employee: <br> R. Eisele | 13. Date And Time: <br> 12/09/2019 / 1317 hrs. |
|---|---|
| 14. Incident Report Delivered to Above Inmate By <br> (Type Name/Signature): <br> B Devlin | 15 .Date Incident Report Delivered: <br> 12/9/19 | 16. Time Incident Report Delivered: <br> 5:39 pm |

### Part II - Committee Action

17. Comments of Inmate to Committee Regarding Above Incident:

I did not extort anyone. I quoted relevant law nearly verbatim. See attached. This incident report is unconstitutional and those involved with it's prosecution and any sanctions will likely be held not to have qualified immunity.

| 18. A. It is the finding of the committee that you: | B.  ✔ The Committee is referring the Charge(s) to the DHO for further Hearing. |
|---|---|
| _____ Committed the Prohibited Act as charged. <br> _____ Did not Commit a Prohibited Act. <br> _____ Committed Prohibited Act Code(s). _____ _____ | C. _____ The Committee advised the inmate of its finding and of the right to file an appeal within 20 calendar days. |

19. Committee Decision is Based on Specific Evidence as Follows:

Recommend 27 days gct and Refer to DHO due to severity of charge.

20. Committee action and/or recommendation if referred to DHO (Contingent upon DHO finding inmate committed prohibited act):

Recommend 27 days gct.

**Attach. B**      **pg. 4**

21. Date and Time of Action: 12-12-7 _____ (The UDC Chairman's signature certifies who sat on the UDC and that the completed report accurately reflects the UDC proceedings)

_Scribner_

Chairman (Typed Name/Signature)            Member (Typed Name)            Member (Typed Name)

INSTRUCTIONS: All items outside of heavy rule are for staff use only. Begin entries with the number 1 and work up. Entries not completed will be voided by staff.

Distribute: Original-Central File Record; COPY-1-DHO: COPY-2-Inmate after UDC Action; COPY 3-Inmate within 24 hours of Part I preparation

WD                              Prescribed by P5270                    Replaces BP-A0288 of AUG 11

| **Part III - Investigation** | 22. Date And Time Investigation Began |
| | 12-09-2019 5:39 pm |

23. Inmate Advised Of Right To Remain Silent: You are advised of your right to remain silent at all stages of the discipline process. Your silence may be used to draw an adverse inference against you at any stage of the discipline process. Your silence alone may not be used to support a finding that you have committed a prohibited act.

The Inmate Was Advised Of The Above Right By                    B. Devlin                         12-09-2019
                                                                                                    5:39 pm

24. Inmate statement and attitude

Inmate Gottesfeld, Martin #12982-104 was advised of their rights and stated that he understood them. Inmate was read and provided a copy of the report while displaying a fair attitude. When I asked Gottesfeld, Martin #12982-104 if he would like to make a statement, he stated

"This is un-constitutional and retaliatory to my pending litigation. I request for the record that you save the audio and video files of this encounter."

25. Other facts about the incident, statements of those persons present at scene, disposition of evidence, etc.

Inmate request to staff

Inmate spoke English and refused a translator

Inmate did not request witnesses

Inmate requested Officer Harvey as staff representative, and Officer Emerson in the event that Harvey is unavailable.

26. Investigator's comments and conclusions
Based on the report and documentation the charges of 204A are warranted.

27. Action taken

Inmate Gottesfeld, Martin #12982-104 is to remain in his current status and the report is to be forwarded to UDC for further disposition.

Date and Time Investigation Completed          12-09-2019  6:15 pm

Printed Name/Signature Of Investigator          B. Devlin                    Title      Lieutenant

BP-A0293          **Inmate Rights at Discipline Hearing** CDFRM
AUG 11
**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

Institution: FCC Terre Haute FCI

As an inmate charged with a violation of Bureau of Prisons rules or regulations referred to the Discipline Hearing Officer (DHO) for disposition, you have the following rights:

1. The right to have a written copy of the charge(s) against you at least 24 hours prior to appearing before the Discipline Hearing Officer;

2. The right to have a full-time member of the staff who is reasonably available to represent you before the Discipline Hearing Officer;

3. The right to call witnesses (or present written statements of unavailable witnesses) and to present documentary evidence in your behalf, provided institutional safety would not be jeopardized;

4. The right to present a statement or to remain silent. Your silence may be used to draw an adverse inference against you. However, your silence alone may not be used to support a finding that you committed a prohibited act;

5. The right to be present throughout the discipline hearing except during a period of deliberation or when institutional safety would be jeopardized. If you elect not to appear before the DHO, you may still have witnesses and a staff representative appear on your behalf;

6. The right to be advised of the DHO's decision, the facts supporting that decision, except where institutional safety would be jeopardized, and the DHO's disposition in writing; and,

7. The right to appeal the decision of the DHO by means of the Administrative Remedy Procedure to the Regional Director within 20 calendar days of notice of the DHO's decision and disposition.

I hereby acknowledge that I have been advised of the above rights afforded me at a hearing before the Discipline Hearing Officer. I have further been advised that if I have previously received either a presumptive or effective parole date from the Parole Commission, a finding by the DHO that I committed the prohibited act(s) may result in a rescission or retardation by the Parole Commission of the presumptive or effective parole date.

Inmate's Name: Gottesfeld, Martin _____ Reg. No.: 12982-104 _____

Inmate Signature: X _____ Date: 12/12/2019 ____

Notice of rights given to inmate(Date/time): 12/12/2019/ **1505**

by: S. Williams/ _____
                        Staff Printed Name/Signature

(This form may be replicated via WP)                    Replaces BP-S293(52) of JAN 88.

BP-A0294    **Notice of Discipline Hearing Before the (DHO)** CDFRM
AUG 11
**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

|  |  |
|---|---|
|  | FCC Terre Haute FCI |
|  | Institution |
|  | 12/12/2019 |
|  | Date |

TO: Martin Gottesfeld                               REG. NO.: 12982-104

ALLEGED VIOLATION(S): Extortion/Blackmail

DATE OF OFFENSE: 12/06/2019                         CODE NO.: 204

You are being referred to the DHO for the above charge(s).

The hearing will be held on: _____ at _____ (A.M./P.M.) at the following location:
DHO Schedule

You are entitled to have a full-time staff member represent you at the hearing.  Please indicate below whether you desire to have a staff representative, and if so, his or her name.

I (do) ✓ (do not) ____ wish to have a staff representative.

If so, the staff representative's name is: *Officer S. Hervey or B. Eddy*

You will also have the right to call witnesses at the hearing and to present documentary evidence in your behalf; provided, calling your witnesses will not jeopardize institutional safety.  Names of witnesses you wish to call should be listed below.  Briefly state to what each proposed witness would be able to testify.

I (do) ____ (do not) ✓ wish to have witnesses.

| NAME: | CAN TESTIFY TO: |
|---|---|
|  |  |
| NAME: | CAN TESTIFY TO: |
|  |  |
| NAME: | CAN TESTIFY TO: |
|  |  |

The Discipline Hearing Officer will call those witnesses (Staff or Inmate) who are reasonably available, and who are determined by the DHO to have information relevant to the charge(s).  Repetitive witnesses and repetitive character references need not be called.  Unavailable witnesses may be asked to submit written statements.

If additional space is needed, use the reverse side of this form.  Date, sign, and return this form to the DHO.

DATE: 12/12/2019        SIGNATURE: X _____

Notice of hearing before DHO given inmate 12/12/2019/ *1505* by S. Williams/ _____
                                        Date/Time              Staff Printed Name/Signature

*(This form may be replicated via WP)*                    *Replaces BP-294(52) of JAN 88*

**Attach. B**

BP-A306
AUG 11
**U.S. DEPARTMENT OF JUSTICE**

**DUTIES OF STAFF REPRESENTATIVE** CDFRM

**FEDERAL BUREAU OF PRISONS**

<u>FCC Terre Haute, IN</u>

TO: All Staff Representatives

FROM: B. Lammer, Warden

There may be questions as to just which part an employee takes when that employee serves as staff representative for an inmate who appears before the DHO. Generally, your role is to help the inmate present the best defense possible to the charged violations. The Warden, the DHO, the reporting officer, investigating officer, a witness to the incident, and UDC members involved in the case may not act as staff representative. If, during your representation, you encounter difficulties, which you believe, will prevent you from functioning properly, you should notify the DHO of this, and he/she will excuse you if there is a good reason to do so.

(1) You are to assist the inmate in presenting whatever information the inmate wants to present and in preparing a defense. This will require, in every case, consultations with the inmate, and familiarity with the Inmate Discipline Program Statement.

(2) You are to speak to witnesses who might furnish evidence on behalf of the inmate, if the inmate indicates there are such witnesses whom the inmate wishes to have called. You may question witnesses requested by the inmate who are called before the DHO.

(3) You should become familiar with all reports relative to the charge against the inmate. Confidential or security information must of course be protected and may not be shared with any other person, including inmates, staff, visitors, attorneys, etc. Any request for confidential information should be directed to the DHO.

(4) You should present any evidence favorable to the inmate's defense.

(5) You should present information which may assist the DHO and which may obtain a lesser sanction for the inmate. If you believe you need additional time to pursue any of the functions, you may request a delay in the hearing from the DHO, but ordinarily only after you have the concurrence of the inmate to do this.

(6) You are to help an inmate understand the charges and the potential consequences.

(7) You should be familiar with procedures at the hearing, explain them to the inmate in advance, and, if necessary during the hearing, assist the inmate in understanding procedural points.

(8) You should not be present during deliberations by the DHO. An exception would be where you have read confidential information, and want to discuss that with the DHO outside the inmate's presence. In that case, you will have to explain to the inmate, in general terms, what you are doing, and you should leave the room as soon as that function is over.

(9) If the inmate asks you to assist in writing an administrative appeal from the DHO action, you should assist the inmate in doing so.

I have read the "Duties of Staff Representative" and (agree) (do not agree) to serve as staff representative for inmate

Go Hesfild                                                   , reg no.  12 7 8 2 - 10 4  in the
inmate's appearance before the DHO.

I do / do not agree for the following reason  No Harvey SJohnny myself and DHO Brasig can't Be around each other

Printed Name/Signature of Employee: X SHaeng SH                        Date:  12-20-19

IR# 227 8082

Record Copy - DHO.
(This form may be replicated via WP)

Replaces BP-306(52) of JAN 88

**Attach. B**                                                          **pg. 9**

To: CMU Unit Team and DHO Bradley
From: Martin S. Gottesfeld (Reg. No.: 12982-104)
Date: Thursday, December 12th, 2019
Subject: Incident Report 3338082 DHO Hearing

Salutations,

I hope you are well,

I have spoken with Officer Eddie, and we would like for Canselor Orr to be my staff representative for incident report 3338082.

Can Canselor Orr please be my staff representative for incident report 3338082?

Thanks,

Martin S. Gottesfeld

— Page 1 of 1 —

Attach. B

**pg. 10**

BP-A306
AUG 11
**U.S. DEPARTMENT OF JUSTICE**

**DUTIES OF STAFF REPRESENTATIVE** CDFRM

**FEDERAL BUREAU OF PRISONS**

<u>FCC Terre Haute, IN</u>

TO: All Staff Representatives

FROM: B. Lammer, Warden

There may be questions as to just which part an employee takes when that employee serves as staff representative for an inmate who appears before the DHO. Generally, your role is to help the inmate present the best defense possible to the charged violations. The Warden, the DHO, the reporting officer, investigating officer, a witness to the incident, and UDC members involved in the case may not act as staff representative. If, during your representation, you encounter difficulties, which you believe, will prevent you from functioning properly, you should notify the DHO of this, and he/she will excuse you if there is a good reason to do so.

(1) You are to assist the inmate in presenting whatever information the inmate wants to present and in preparing a defense. This will require, in every case, consultations with the inmate, and familiarity with the Inmate Discipline Program Statement.

(2) You are to speak to witnesses who might furnish evidence on behalf of the inmate, if the inmate indicates there are such witnesses whom the inmate wishes to have called. You may question witnesses requested by the inmate who are called before the DHO.

(3) You should become familiar with all reports relative to the charge against the inmate. Confidential or security information must of course be protected and may not be shared with any other person, including inmates, staff, visitors, attorneys, etc. Any request for confidential information should be directed to the DHO.

(4) You should present any evidence favorable to the inmate's defense.

(5) You should present information which may assist the DHO and which may obtain a lesser sanction for the inmate. If you believe you need additional time to pursue any of the functions, you may request a delay in the hearing from the DHO, but ordinarily only after you have the concurrence of the inmate to do this.

(6) You are to help an inmate understand the charges and the potential consequences.

(7) You should be familiar with procedures at the hearing, explain them to the inmate in advance, and, if necessary during the hearing, assist the inmate in understanding procedural points.

(8) You should not be present during deliberations by the DHO. An exception would be where you have read confidential information, and want to discuss that with the DHO outside the inmate's presence. In that case, you will have to explain to the inmate, in general terms, what you are doing, and you should leave the room as soon as that function is over.

(9) If the inmate asks you to assist in writing an administrative appeal from the DHO action, you should assist the inmate in doing so.

I have read the "Duties of Staff Representative" and (agree) (do not agree) to serve as staff representative for inmate

_Lottesfeld  Martin_ , reg no. _12982-104_ in the inmate's appearance before the DHO.

I do / do not agree for the following reason _X Conflict of interest_

Printed Name/Signature of Employee: _X Eddy E_     Date: _12-20-19_

IR# _3338082_

Record Copy - DHO.
(This form may be replicated via WP)

Replaces BP-306(52) of JAN 88

BP-A306
AUG 11
**U.S. DEPARTMENT OF JUSTICE**

**DUTIES OF STAFF REPRESENTATIVE** CDFRM

**FEDERAL BUREAU OF PRISONS**

FCC Terre Haute, IN

TO:  All Staff Representatives

FROM:  B. Lammer, Warden

There may be questions as to just which part an employee takes when that employee serves as staff representative for an inmate who appears before the DHO.  Generally, your role is to help the inmate present the best defense possible to the charged violations.  The Warden, the DHO, the reporting officer, investigating officer, a witness to the incident, and UDC members involved in the case may not act as staff representative.  If, during your representation, you encounter difficulties, which you believe, will prevent you from functioning properly, you should notify the DHO of this, and he/she will excuse you if there is a good reason to do so.

(1)   You are to assist the inmate in presenting whatever information the inmate wants to present and in preparing a defense. This will require, in every case, consultations with the inmate, and familiarity with the Inmate Discipline Program Statement.

(2)   You are to speak to witnesses who might furnish evidence on behalf of the inmate, if the inmate indicates there are such witnesses whom the inmate wishes to have called.  You may question witnesses requested by the inmate who are called before the DHO.

(3)   You should become familiar with all reports relative to the charge against the inmate.  Confidential or security information must of course be protected and may not be shared with any other person, including inmates, staff, visitors, attorneys, etc. Any request for confidential information should be directed to the DHO.

(4)   You should present any evidence favorable to the inmate's defense.

(5)   You should present information which may assist the DHO and which may obtain a lesser sanction for the inmate.  If you believe you need additional time to pursue any of the functions, you may request a delay in the hearing from the DHO, but ordinarily only after you have the concurrence of the inmate to do this.

(6)   You are to help an inmate understand the charges and the potential consequences.

(7)   You should be familiar with procedures at the hearing, explain them to the inmate in advance, and, if necessary during the hearing, assist the inmate in understanding procedural points.

(8)   You should not be present during deliberations by the DHO.  An exception would be where you have read confidential information, and want to discuss that with the DHO outside the inmate's presence.  In that case, you will have to explain to the inmate, in general terms, what you are doing, and you should leave the room as soon as that function is over.

(9)   If the inmate asks you to assist in writing an administrative appeal from the DHO action, you should assist the inmate in doing so.

I have read the "Duties of Staff Representative" and (agree) (do not agree) to serve as staff representative for inmate Gottesfeld, Martin, Reg no. 12982-104, in the inmate's appearance before the DHO.

I do / do not agree for the following reason:   _Annual leave and Staff shortedge_

Printed Name/Signature of Employee: _____ _R. O____ /R. Orr, Cnslr   Date: _12/18/2019_

IR# 3338082

Record Copy - DHO.
(This form may be replicated via WP)

Replaces BP-306(52) of JAN 88

**Attach. B**                                                    **pg. 12**

BP-A0294
AUG 11
**Notice of Discipline Hearing Before the (DHO)** CDFRM

**U.S. DEPARTMENT OF JUSTICE**      **FEDERAL BUREAU OF PRISONS**

X USP *I am ok with a written statement*

Institution

Date 12-20-19

TO: Gottesfeld, Martin    REG. NO.: 12982-104

ALLEGED VIOLATION(S): Attempted Extorting / Blackmail / Protection

DATE OF OFFENSE: 12-6-19    CODE NO.: 204 A

You are being referred to the DHO for the above charge(s).

The hearing will be held on: DHO schedule   at _____ (A.M./P.M.) at the following location:

You are entitled to have a full-time staff member represent you at the hearing. Please indicate below whether you desire to have a staff representative, and if so, his or her name.

I (do) ✓ (do not) ___ wish to have a staff representative.

If so, the staff representative's name is: Warden Appointed

You will also have the right to call witnesses at the hearing and to present documentary evidence in your behalf; provided, calling your witnesses will not jeopardize institutional safety. Names of witnesses you wish to call/should be listed below. Briefly state to what each proposed witness would be able to testify.

I (do) ✓ (do not) ___ wish to have witnesses.

NAME: Harris   CAN TESTIFY TO: That my intent was not to extort & the tem I gave the cops out to staff

NAME:   CAN TESTIFY TO:

NAME:   CAN TESTIFY TO:

The Discipline Hearing Officer will call those witnesses (Staff or Inmate) who are reasonably available, and who are determined by the DHO to have information relevant to the charge(s). Repetitive witnesses and repetitive character references need not be called. Unavailable witnesses may be asked to submit written statements.

If additional space is needed, use the reverse side of this form. Date, sign, and return this form to the DHO.

DATE: 12-20-19   SIGNATURE: X _____

Notice of hearing before DHO given inmate 12-20-19 1000 by D. Matthius
Date/Time    Staff Printed Name/Signature

*(This form may be replicated via WP)*    Replaces BP-294(52) of JAN 88

BP-A306
AUG 11
**U.S. DEPARTMENT OF JUSTICE**

**DUTIES OF STAFF REPRESENTATIVE** CDFRM

**FEDERAL BUREAU OF PRISONS**

<u>FCC Terre Haute, IN</u>

TO: All Staff Representatives

FROM: B. Lammer, Warden

There may be questions as to just which part an employee takes when that employee serves as staff representative for an inmate who appears before the DHO.  Generally, your role is to help the inmate present the best defense possible to the charged violations.  The Warden, the DHO, the reporting officer, investigating officer, a witness to the incident, and UDC members involved in the case may not act as staff representative.  If, during your representation, you encounter difficulties, which you believe, will prevent you from functioning properly, you should notify the DHO of this, and he/she will excuse you if there is a good reason to do so.

(1)  You are to assist the inmate in presenting whatever information the inmate wants to present and in preparing a defense. This will require, in every case, consultations with the inmate, and familiarity with the Inmate Discipline Program Statement.

(2)  You are to speak to witnesses who might furnish evidence on behalf of the inmate, if the inmate indicates there are such witnesses whom the inmate wishes to have called.  You may question witnesses requested by the inmate who are called before the DHO.

(3)  You should become familiar with all reports relative to the charge against the inmate.  Confidential or security information must of course be protected and may not be shared with any other person, including inmates, staff, visitors, attorneys, etc.  Any request for confidential information should be directed to the DHO.

(4)  You should present any evidence favorable to the inmate's defense.

(5)  You should present information which may assist the DHO and which may obtain a lesser sanction for the inmate.  If you believe you need additional time to pursue any of the functions, you may request a delay in the hearing from the DHO, but ordinarily only after you have the concurrence of the inmate to do this.

(6)  You are to help an inmate understand the charges and the potential consequences.

(7)  You should be familiar with procedures at the hearing, explain them to the inmate in advance, and, if necessary during the hearing, assist the inmate in understanding procedural points.

(8)  You should not be present during deliberations by the DHO.  An exception would be where you have read confidential information, and want to discuss that with the DHO outside the inmate's presence.  In that case, you will have to explain to the inmate, in general terms, what you are doing, and you should leave the room as soon as that function is over.

(9)  If the inmate asks you to assist in writing an administrative appeal from the DHO action, you should assist the inmate in doing so.

I have read the "Duties of Staff Representative" and (agree) (do not agree) to serve as staff representative for inmate

_____Ro Hpsfeld Martin_____ , reg no. _12982-104_ in the
inmate's appearance before the DHO.

(I do) do not agree for the following reason _____

Printed Name/Signature of Employee: _T. Froguay_____   Date: _12-20-19_

IR# _3338082_

Record Copy - DHO.
(This form may be replicated via WP)

Replaces BP-306(52) of JAN 88

**Attach. B**                                                      **pg. 14**

NOTICE TO WITNESS

To: _Harris William_          Date: _12-20-19_

Inmate _Gottesfeld_____, has requested that you appear as a witness for him at the
Institution Discipline Hearing Officer hearing regarding an alleged offense of which he is accused, date
of incident was ___12-6-19___, location of the incident was _____ CMU _____.

ACKNOWLEDGMENT OF WITNESS

I understand making a false statement to the Institution Discipline Hearing Officer can result in
disciplinary action being taken against me.  That any testimony and/or statements I make will be true
and factual.

1. I have no information or knowledge concerning this incident. _____

_____
(Sign & Date)

2. The information and knowledge that I have concerning this incident can be summarized as follows:

X MARTY DID NOT INTEND TO EXTORT ANY
THING FROM R. EISELE, HE SIMPLY WAS REQUESTING
THE COPY OF HIS "ORDER OF COMMITMENT" WHICH IS
CONSISTANT WITH THE STATUTES REGARDING THE SAME, EISELE
READ MARTY'S DOCUMENT BEFORE LEAVING THE LIBRARY.

(Attach additional sheets as necessary)

Incident report # _3338082_

_____
Witness Signature

X _407413050_
Register Number

_12-20-19_
Date

The Unit Discipline Committee/Review is responsible for initiating this form to all requested witnesses
and returning the completed form with the UDC packet.  For inmate who request Staff Representative
and witnesses a copy of this form should given to the Staff Representative for completion and returned
to the Discipline Hearing Office as soon as completed by witness.

**Attach. B**                                                                 **pg. 15**

To: Ms. R. Eisele, Ms. Denise Thomas, Ms. J. Wheeler, Mr. B. Lammer, Mr. T. J. Watson, Ms. Kathleen Hawk Sawyer, Ms. K. Hart, Mr. R. Blythe, Director BOP CTU, Mr. Jeffrey E. Krueger, The United States, The United States of America, The U.S. Department of Justice (DOJ), Kathleen M. Kenny, Charles E. Samuels Jr., The U.S. Federal Bureau of Prisons (BOP), Paul M. Laird, F. Timothy Coleman, Todd Royer, Katherine Siereveld, Michael Sample, Mark Smith, Richard W. Schott, Charles A. Daniels, Sarah Qureshi, Richard M. Winter, Tracy Knutson, J. Doehr, Amber L. Nelson, Joyce K. Conley, Stephen Cope, Melissa Bayless, Amy Adams, Chris Purdue, Charles L. Lockett, Michael L. Stevens, Bradley Shoemaker, Jason Bradley, Steven W. Julian, J.R. Bell, Sara M. Revell, Pamela Dunbar, Hugh J. Hurwitz, Joynce Zoldak, Jason Simmons, Harley G. Lappin, John C. Oliver, Harrell Watts, Helen Marberry, Michael K. Nalley, John F. Caraway, S. Lovett, V. Rigsby, B. English, Jeffrey George, J. Krimitski, R. Myers, D. Ramey, R. Halfhill, Diana Quinones, J. Baker, D. Holston, D. Lockett, H. Church, N. Roberts-Smith, Jeff Gregg, J. Gunther, L.C. Ward, K. Cozza-Rhodes, D. Becerra, D. Culbertson, Cory Grass, and T. Hann; and all successors and assigns

From: Martin S. Gottesfeld (Reg. No.: 12982-104)

Date: 2:50 P.M. Eastern Time, Friday, December 6th, 2019

Subject: Self-executing request pursuant to 18 U.S.C. § 3621(c) and D.C. Code § 16-1905

Salutations:

I have searched my records for an order of committment allowing each of you, jointly and severly, to hold me against my will and found no such order.

Pursuant to 18 U.S.C.S. § 3621(c), D.C. Code § 16-1905, and other relevant statutes, I hereby demand a true copy of the order of committment under which each of you, jointly and severly, is detaining me against my will. This demand is self-executing every twenty-four (24) hours; and each of you whom neglects to deliver to me a true copy of the required order of committment shall forfeit to me the statutorily-mandated sum.

Thank you for your prompt attention to this urgent matter,

Martin S. Gottesfeld

**████ Devlin - CMU audio and video**

| | |
|---|---|
| **From:** | ████ Devlin |
| **To:** | THA/SIS |
| **Date:** | 12/9/2019 6:17 PM |
| **Subject:** | CMU audio and video |

I/M Gottesfeld has requested that the audio and video files of our encounter on 12-9-19 at approximately 5:39 pm. be saved. The cameras and audio will be from near the Officer's station and SHU. He is requesting that the footage of my serving the incident report and his placement in SHU be saved for the future.

*████ Devlin*
*Lieutenant*
*FCC Terre Haute*
*812-244-4400*

To: Counselor B. Orr.

From: Martin S. Gottesfeld (Reg No.: 12982-104)

Date: Tuesday, December 17th, 2019

Subject: Incident Report 3338082

Salutations Counselor Orr,

I hope you are well and I thank you for being my staff rep.

Prior to the DHO hearing, can you please secure the following evidence?

- A copy of the relevant inmate request, dated Friday, December 6th, 2019;
- A copy of 18 U.S.C. § 3621(c);
- A copy of D.C. Code § 16-1905;
- A copy of D.C. Code § 13-421;
- A copy of D.C. Code § 13-422;
- A copy of D.C. Code § 13-423(a);
- A copy of Hanna v. Lane, 1987 U.S. Dist. LEXIS 16727, No. 84 C 1635 (N.D. Ill. February 11th, 1987); and
- A copy of Williams v. Lane, 851 F.2d 867 (7th Cir. 1988); and
- An informative and credible article on long-arm statutes.

Can you please let me know prior to the DHO hearing whether or not you can secure this evidence?

Thanks,

Martin S. Gottesfeld

*INMATES Requested documentation*

— Page 1 of 1 —

**Attach. B**                                                                 **pg. 19**

---

**18 USC 3621: Imprisonment of a convicted person**
Text contains those laws in effect on December 17, 2019

**From Title 18-CRIMES AND CRIMINAL PROCEDURE**
 PART II-CRIMINAL PROCEDURE
 CHAPTER 229-POSTSENTENCE ADMINISTRATION
 SUBCHAPTER C-IMPRISONMENT
**Jump To:**
 **Source Credit**
 **Future Amendments**
 **References In Text**
 **Prior Provisions**
 **Amendments**
 **Effective Date**
 **Construction**
 **Miscellaneous**

---

## §3621. Imprisonment of a convicted person

 (a) Commitment to Custody of Bureau of Prisons.-A person who has been sentenced to a term of imprisonment pursuant to the provisions of subchapter D of chapter 227 shall be committed to the custody of the Bureau of Prisons until the expiration of the term imposed, or until earlier released for satisfactory behavior pursuant to the provisions of section 3624.

 (b) Place of Imprisonment.-The Bureau of Prisons shall designate the place of the prisoner's imprisonment, and shall, subject to bed availability, the prisoner's security designation, the prisoner's programmatic needs, the prisoner's mental and medical health needs, any request made by the prisoner related to faith-based needs, recommendations of the sentencing court, and other security concerns of the Bureau of Prisons, place the prisoner in a facility as close as practicable to the prisoner's primary residence, and to the extent practicable, in a facility within 500 driving miles of that residence. The Bureau shall, subject to consideration of the factors described in the preceding sentence and the prisoner's preference for staying at his or her current facility or being transferred, transfer prisoners to facilities that are closer to the prisoner's primary residence even if the prisoner is already in a facility within 500 driving miles of that residence. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering-

  (1) the resources of the facility contemplated;

  (2) the nature and circumstances of the offense;

  (3) the history and characteristics of the prisoner;

  (4) any statement by the court that imposed the sentence-

   (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or

   (B) recommending a type of penal or correctional facility as appropriate; and

  (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

 In designating the place of imprisonment or making transfers under this subsection, there shall be no favoritism given to prisoners of high social or economic status. The Bureau may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another. The Bureau shall make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse. Any order, recommendation, or request by a sentencing court that a convicted person serve a term of imprisonment in a community corrections facility shall have no binding effect on the authority of the Bureau under this section to determine or change the place of imprisonment of that person. Notwithstanding any other provision of law, a designation of a place of imprisonment under this subsection is not reviewable by any court.

 (c) Delivery of Order of Commitment.-When a prisoner, pursuant to a court order, is placed in the custody of a person in charge of a penal or correctional facility, a copy of the order shall be delivered to such person as evidence of this authority to hold the prisoner, and the original order, with the return endorsed thereon, shall be returned to the court that issued it.

 (d) Delivery of Prisoner for Court Appearances.-The United States marshal shall, without charge, bring a prisoner into court or return him to a prison facility on order of a court of the United States or on written request of an attorney for the Government.

 (e) Substance Abuse Treatment.-

  (1) Phase-in.-In order to carry out the requirement of the last sentence of subsection (b) of this section, that every prisoner with a substance abuse problem have the opportunity to participate in appropriate substance abuse treatment, the Bureau of Prisons shall, subject to the availability of appropriations, provide residential substance abuse treatment (and make arrangements for appropriate aftercare)-

   (A) for not less than 50 percent of eligible prisoners by the end of fiscal year 1995, with priority for such treatment accorded based on an eligible prisoner's proximity to release date;

D.C. Law Library - § 16–1905. Right to copy of commitment; forfeiture.

Case 2:20-cv-00012-JRS-MJD   Document 21-1   Filed 02/21/20   Page 28 of 70 PageID #: 261

Page 1 of 2



# **Code of the District of Columbia**

# You Are Here

- ↪ D.C. Law Library
- ↪ Code of the District of Columbia
- ↪ Title 16. Particular Actions, Proceedings and Matters. [Enacted title]
- ↪ Chapter 19. Habeas Corpus.
- ↪ § 16–1905. Right to copy of commitment; forfeiture.

# Previous

§ 16–1904. Forfeiture and penalty for failure to produce.

# Next

§ 16–1906. Inquiry into cause of detention; bail; bond.

# Publication Information

### Current through Nov. 26, 2019

Last codified D.C. Law:
> Law 23-33 effective Nov. 26, 2019

Last codified Emergency Law:
> Act 23-458 effective Oct. 29, 2019

Last codified Federal Law:
> Public Law approved Feb. 15, 2019

# § 16–1905. Right to copy of commitment; forfeiture.

A person committed or detained, or a person in his behalf, may demand a true copy of the warrant of commitment or detainer. An officer or other person detaining a person, who refuses or neglects to deliver to

**Attach. B**        **pg. 21**

D.C. Law Library — § 16-1905. High copy of commitment; forfeiture.

Case 2:20-cv-00012-JRS-MJD Document 21-1 Filed 02/21/20 Page 29 of 70 PageID #: 202

Page 2 of 2

him or to a person in his behalf a true copy of the warrant of commitment or detainer, if one exists, within six hours after the demand, shall forfeit to the party so detained the sum of $500.

(Dec. 23, 1963, 77 Stat. 584, Pub. L. 88-241, § 1.)

**Prior Codifications**

1981 Ed., § 16-1905.

1973 Ed., § 16-1905.

The codes and laws on this website are in the public domain.

Please do not scrape. Instead, bulk download the HTML or XML.

Powered by the non-profit Open Law Library.

**Subchapter II. Bases of Personal Jurisdiction over Persons Outside the District of Columbia.**

# § 13–421. Definition of person.

As used in this subchapter, the term "person" includes an individual, his executor, administrator, or other personal representative, or a corporation, partnership, association, or any other legal or commercial entity, whether or not a citizen or domiciliary of the District of Columbia and whether or not organized under the laws of the District of Columbia.

(July 29, 1970, 84 Stat. 549, Pub. L. 91-358, title I, § 132(a).)

**Prior Codifications**

1981 Ed., § 13-421.

1973 Ed., § 13-421.

# § 13–422. Personal jurisdiction based upon enduring relationship.

A District of Columbia court may exercise personal jurisdiction over a person domiciled in, organized under the laws of, or maintaining his or its principal place of business in, the District of Columbia as to any claim for relief.

(July 29, 1970, 84 Stat. 549, Pub. L. 91-358, title I, § 132(a).)

**Prior Codifications**

1981 Ed., § 13-422.

1973 Ed., § 13-422.

# § 13–423. Personal jurisdiction based upon conduct.

(a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's —

**Attach. B** pg. 23

D.C. Law Library - Chapter 4. Jurisdiction and Service Outside the District of Columbia.

Case 2:20-cv-00012-JRS-MJD Document 21-1 Filed 02/21/20 Page 31 of 70 PageID #: 264

Page 4 of 8

(1) transacting any business in the District of Columbia;

(2) contracting to supply services in the District of Columbia;

(3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;

(4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia;

(5) having an interest in, using, or possessing real property in the District of Columbia;

(6) contracting to insure or act as surety for or on any person, property, or risk, contract, obligation, or agreement located, executed, or to be performed within the District of Columbia at the time of contracting, unless the parties otherwise provide in writing; or

(7) marital or parent and child relationship in the District of Columbia if:

(A) the plaintiff resides in the District of Columbia at the time the suit is filed;

(B) such person is personally served with process; and

(C) in the case of a claim arising from a marital relationship:

(i) the District of Columbia was the matrimonial domicile of the parties immediately prior to their separation, or

(ii) the cause of action to pay spousal support arose under the laws of the District of Columbia or under an agreement executed by the parties in the District of Columbia; or

(D) in the case of a claim affecting the parent and child relationship:

(i) the child was conceived in the District of Columbia and such person is the parent or alleged parent of the child;

(ii) the child resides in the District of Columbia as a result of the acts, directives, or approval of such person; or

(iii) such person has resided with the child in the District of Columbia.

(E) Notwithstanding the provisions of subparagraphs (A) through (D), the court may exercise personal jurisdiction if there is any basis consistent with the United States Constitution for the exercise of personal jurisdiction.

(b) When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him.

**Attach. B**

**pg. 24**

D.C. Law Library - Chapter 4. Jurisdiction and Service Outside the District of Columbia.

Page 5 of 8

Case 2:20-cv-00012-JRS-MJD Document 21-1 Filed 02/21/20 Page 32 of 70 PageID #: 265

(July 29, 1970, 84 Stat. 549, Pub. L. 91-358, title I, § 132(a); Mar. 10, 1983, D.C. Law 4-200, § 4, 30 DCR 125.)

**Prior Codifications**

1981 Ed., § 13-423.

1973 Ed., § 13-423.

**Section References**

This section is referenced in § 48-804.02.

**Cross References**

Tortious injury in the District of Columbia, unfair trade practices, damages, see § 48-804.02.

# § 13–424. Service outside the District of Columbia.

When the exercise of personal jurisdiction is authorized by this subchapter, service may be made outside the District of Columbia.

(July 29, 1970, 84 Stat. 549, Pub. L. 91-358, title I, § 132(a).)

**Prior Codifications**

1981 Ed., § 13-424.

1973 Ed., § 13-424.

# § 13–425. Inconvenient forum.

When any District of Columbia court finds that in the interest of substantial justice the action should be heard in another forum, the court may stay or dismiss such civil action in whole or in part on any conditions that may be just.

**Attach. B**                                                              **pg. 25**

610 F.Supp. 32
United States District Court,
N.D. Illinois, Eastern Division.

Edward Alan HANNA, Plaintiff,

v.

Michael P. LANE, Henry E. Cowan, David
Grant, Captain Tibbetts, Willie Hayes, Rodney
Sprinkle, Larry Pusteria, George Stampar, M.
Hosey, Gaylon Yates, Edna Davis, Nathaniel
Richars and Marvin Shields, Defendants.

No. 84 C 1635.
|
March 4, 1985.

**Synopsis**

State prisoner brought civil rights suit against prison officials.
Defendants moved to strike certain paragraphs of amended
complaint and to dismiss claims against some of defendants.
The District Court, Aspen, J., held that: (1) although amended
complaint was burdened with excessive detail, paragraphs
which were for most part neither wholly irrelevant nor
prejudicial would not be dismissed; (2) claim that prison
officials permitted potentially dangerous inmate to reside
in general population did not, without more, give rise to
claim for relief under Eighth Amendment; (3) prisoner's
Eighth Amendment rights were not violated when prison
officials required him to wear security belt and handcuffs
for visitations; (4) failure of state Director of Department
of Corrections to respond to prisoner's letter complaining of
events and actions of other prison officials was not grounds
for claim of constitutional importance; and (5) motion of
certain defendants to dismiss on grounds that they were
without authority to rectify allegedly wrongful assignment
of prisoner to segregation or to order his release would be
denied.

Motion granted in part and denied in part.

**Procedural Posture(s):** Motion to Dismiss.

West Headnotes (11)

**[1]    Federal Civil Procedure**
    ← Redundant, indirect or prolix matter

Surfeit of factual allegations is not necessarily
grounds to strike pleadings, especially when
those pleadings are prepared by pro se
litigant untutored in requirements of federal
procedural rules. Fed.Rules Civ.Proc.Rule 12(f),
28 U.S.C.A.

1 Cases that cite this headnote

**[2]    Federal Civil Procedure**
    ← Redundant, indirect or prolix matter

Although amended complaint was discursive and
clearly in violation of Federal Civil Procedure
Rule 8 directive to keep pleadings simple and
concise, paragraphs which were for the most
part neither wholly irrelevant nor prejudicial
would not be dismissed under Rule 12(f),
which only allows court to strike from pleading
"any redundant, immaterial, impertinent, or
scandalous matter." Fed.Rules Civ.Proc.Rules 8,
12(f), 28 U.S.C.A.

37 Cases that cite this headnote

**[3]    Sentencing and Punishment**
    ← Protection from violence

The Eighth Amendment entitles prisoners to
reasonable protection from bodily harm at hands
of fellow prisoners. U.S.C.A. Const.Amend. 8.

**[4]    Sentencing and Punishment**
    ← Protection from violence

To sustain claim of cruel and unusual punishment
under Eighth Amendment, prisoner must show
that prison officials "deliberately deprived" him
of his right to reasonable security from violence.
U.S.C.A. Const.Amend. 8.

**[5]    Prisons**
    ← Protection from violence, assault, or abuse

If prison official has strong reason to believe that
one inmate is about to attack another and fails
to take any precautions to safeguard intended
victim, he may be held liable under deliberate
indifference standard for injuries suffered by
prisoner who was assaulted; but allegations

WESTLAW   © 2019 Thomson Reuters. No claim to original U.S. Government Works.                    1

evidencing "mere possibility" of violence are not enough to infer callous indifference.

2 Cases that cite this headnote

[6]   **Prisons**
       Protection from violence, assault, or abuse
      **Sentencing and Punishment**
       Protection from violence

Prisoner's allegations that prison officials permitted potentially dangerous inmate to reside in general population showed, at most, only mere possibility of attack and, without more, did not give rise to claim for relief under prisoner's Eighth Amendment right to reasonable protection from bodily harm at hands of fellow prisoners. U.S.C.A. Const.Amend. 8.

[7]   **Prisons**
       Discipline, security, and safety in general

Administrative decisions in critical area of prison security are especially deserving of deference from the courts, which will not interfere with imposition of particular security measure unless need for it is unjustifiably exaggerated.

[8]   **Sentencing and Punishment**
       Management and maintenance of security

Prison security measure does not constitute violation of Eighth Amendment absent some showing that it constitutes wanton infliction of pain that is totally without penological justification. U.S.C.A. Const.Amend. 8.

4 Cases that cite this headnote

[9]   **Prisons**
       Segregation
      **Sentencing and Punishment**
       Segregated or solitary confinement

Prison officials' requiring segregated inmate to wear security belt and handcuffs when he was released from segregation for visits with friends and family on two occasions was not so excessive or unreasonable as to violate prisoner's

Eighth Amendment right to be free from cruel and unusual punishment, even though prisoner contended that he was wrongfully placed in segregation and had no prior history of violence. U.S.C.A. Const.Amend. 8.

2 Cases that cite this headnote

[10]  **Prisons**
       Placement and classification
      **Sentencing and Punishment**
       Segregated or solitary confinement

Failure of Director of Illinois Department of Corrections to respond to letter from prisoner giving details of events in connection with prisoner's claims that he was wrongfully segregated and that his Eighth Amendment rights were violated when prison officials permitted potentially dangerous inmate to reside in general population and when he was required to wear security belt and handcuffs when released from segregation for visits with friends and family was not grounds for claim of constitutional importance under Eighth Amendment. U.S.C.A. Const.Amend. 8.

17 Cases that cite this headnote

[11]  **Federal Civil Procedure**
       Matters deemed admitted; acceptance as true of allegations in complaint

In prisoner's civil rights suit against state prison officials, prisoner's allegations, that certain defendants knew of wrongful action against him and had authority to release him from segregation, were required to be accepted as true upon defendants' motion to dismiss, and thus, motion to dismiss on grounds that the defendants were without authority to rectify the allegedly wrongful assignment of the prisoner to segregation or to order his release would be denied.

**Attorneys and Law Firms**

*33   Edward Alan Hanna, pro se.

**Attach. B**                                    **pg. 27**

Robert W. Cushing, Asst. Atty. Gen., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Edward Hanna, plaintiff in this pro se civil rights suit, initiated this action with a complaint against twenty-two individuals employed by the Illinois Department of Corrections and the Joliet Correctional Center. Because the broad allegations of the original complaint did not link the named defendants to the facts underlying Hanna's claims, defendants moved to dismiss. Plaintiff responded with a memorandum thoroughly detailing all the facts relevant to his claim. The Court treated the memorandum as an amended complaint incorporating the allegations of the original and denied defendants' motion as moot. [1] Defendants **\*34** now move to strike certain paragraphs of the amended complaint and to dismiss the claims against some of the defendants.

On January 7, 1984, prison officials removed Hanna to segregation for purposes of investigation of a rule violation. Hanna was later cited and found guilty of a disciplinary infraction. Defendants' motion, however, does not address the legal claims arising out of these events. Instead, it seeks to strike 31 of the 74 paragraphs in the amended complaint as superfluous filler failing to allege a basis for a constitutional violation. It further seeks dismissal of twelve of the twenty-two defendants for lack of sufficient involvement in the circumstances giving rise to Hanna's suit.

[1]   While the original complaint suffered from a paucity of critical facts, the amended complaint is burdened with an excess of needless detail. But a surfeit of factual allegations is not necessarily grounds to strike the pleadings, especially when those pleadings are prepared by a pro se litigant untutored in the requirements of federal procedural rules. Rule 12(f) of the Federal Rules of Civil Procedure only allows a court to strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter."

[2]   With the few exceptions noted *infra,* most of the paragraphs which defendants seek to strike do not fit within any of the grounds enumerated in Rule 12(f). Moreover, inasmuch as motions to dismiss are looked upon with disfavor, courts ordinarily will not strike matters unless it both has no relevance to the subject matter of the litigation and

is prejudicial to the objecting party. *Lirtzman v. Spiegel, Inc.,* 493 F.Supp. 1029, 1030 (N.D.Ill.1980). The amended complaint is discursive and clearly in violation of the Rule 8 directive to keep pleadings simple and concise, but the paragraphs defendants challenge are for the most part neither wholly irrelevant nor prejudicial. Therefore, the Court shall overlook the prolixity in Hanna's amended complaint and deny defendants' motion to dismiss paragraphs 1, 2, 3, 4, 7, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 22, 23, 24, 41, 42, 50, 52, and 58, 59, and 60. [2]

Defendants also move to dismiss paragraph 21. Unlike the paragraphs cited above, paragraph 21 alleges a claim for relief, not just supporting facts. Specifically, Hanna alleges that four of the defendants violated his constitutional right to adequate security by permitting another inmate with a history of aggressive and assaultive behavior to reside with him and other less-aggressive inmates in the general population at Joliet.

[3]   [4]   [5]   The Eighth Amendment entitles prisoners to reasonable protection from bodily harm at the hands of fellow prisoners. *Madyun v. Thompson,* 657 F.2d 868, 875 (7th Cir.1981). But to sustain a claim of cruel and unusual punishment, a prisoner must show that defendants "deliberately deprived" him of his right to reasonable security from violence. *Little v. Walker,* 552 F.2d 193, 198 (7th Cir.1977), *cert. denied,* 435 U.S. 932, 98 S.Ct. 1507, 55 L.Ed.2d 530 (1978). If a prison official has strong reason to believe that one inmate is about to attack another yet fails to take any precautions to safeguard the intended victim, then he may be held liable under the deliberate indifference standard for injuries suffered by the prisoner who was assaulted. *See Matzker,* 748 F.2d at 1149–50. But allegations evidencing a "mere possibility" of violence are not enough to infer callous indifference. *Estate of Davis v. Johnson,* 745 F.2d 1066, 1071 (7th Cir.1984).

**\*35**   [6]   Hanna's allegations show, at most, only the mere possibility of attack. Hanna does not allege that the purportedly dangerous prisoner ever threatened him personally. Indeed, the only allegations of actual violence or threats of violence concern past acts at a different correctional facility. The only misconduct alleged is that defendants permitted an inmate with a history of aggression to reside in general population with Hanna. But as the Seventh Circuit noted in *United States ex rel. Miller v. Twomey,* 479 F.2d

**Attach. B**                                                          **pg. 28**

701 (7th Cir.1973), *cert. denied,* 414 U.S. 1146, 94 S.Ct. 900, 39 L.Ed.2d 102 (1974):

> Within the prison itself the warden and his agents must also be permitted a wide area of unreviewable discretion. The proper placement or classification of the especially dangerous inmate should not present him with a Hobson's choice between alternative Eighth Amendment claims; segregation on the basis of mere suspicion or inadequate history of violence might have subjected him to a claim by Bright, whereas the failure to segregate has given rise to a claim by Gutierrez.

*Id.* at 721. Thus, the decision to permit a potentially dangerous inmate to reside in the general population does not, without more, give rise to a claim for relief. *Id.* Accordingly, the Court dismisses the claim asserted in paragraph 21 of the amended complaint.

In paragraphs 43, 48, and 70, Hanna complains that officials required him to wear a security belt and handcuffs when he was released from segregation for visits with friends and family on two occasions. He alleges his brother, who did not have as good a prison record as he, did not have to wear security devices. He asserts that use of the restraints during his visits was degrading and "wrongfully defamed" him before family and friends.

**[7]    [8]** The Supreme Court has repeatedly recognized the need for federal courts to avoid unnecessary encroachment on difficult questions of prison administration which are most properly left to the expertise of the trained officials who run the prisons. *Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 3199, 82 L.Ed.2d 393 (1984); *Rhodes v. Chapman,* 452 U.S. 337, 351 n. 16, 101 S.Ct. 2392, 2401 n. 16, 69 L.Ed.2d 59 (1981); *Bell v. Wolfish,* 441 U.S. 520, 562, 99 S.Ct. 1861, 1886, 60 L.Ed.2d 447 (1979). Matters of security are of particular importance and administrative decisions in this critical area are especially deserving of deference from the courts. *Soto v. Dickey,* 744 F.2d 1260, 1269 (7th Cir.1984). Because prison officials are better equipped to determine what practices and procedures are best suited to maintain institutional security, the courts will not interfere with the imposition of a particular security measure unless the need for it is unjustifiably exaggerated. *See Bono v. Saxbe,* 620 F.2d 609, 617 (7th Cir.1980). A security measure does not constitute a violation of the Eighth Amendment absent some showing that it constitutes a wanton infliction of pain that is totally without penological justification. *See Rhodes,* 452 U.S. at 346, 101 S.Ct. at 2398; *Garza v. Miller,* 688 F.2d 480, 487 (7th Cir.1982).

**[9]** The practice at issue here is not so excessive or unreasonable as to violate Hanna's right to be free from cruel and unusual punishment. At the time of the visits, Hanna, unlike his brother, was confined to segregation. Prisoners in segregation are usually those who have violated prison rules or are under investigation for possible disciplinary action. It is not unreasonable to assume that as a class those prisoners represent a potential threat to security. Therefore, courts have sanctioned the use of mechanical restraints on prisoners in segregation-type status whenever they are taken out of the segregation unit. *Tubwell v. Griffith,* 742 F.2d 250, 252–53 (5th Cir.1984); *Fulford v. King,* 692 F.2d 11 (5th Cir.1982). While it is true that Hanna contends he was wrongfully placed in segregation and had no prior history of violence, these facts alone are not enough to permit this Court to substitute its judgment for that of prison officials. *See Tubwell,* 742 F.2d at 253. For Eighth Amendment **\*36** purposes, the mere fact of segregation is sufficient to justify use of handcuffs and a security belt for purposes of receiving contact visits. The burden of individualized determination of dangerousness is not constitutionally compelled for a prisoner committed to segregation. Accordingly, the Court dismisses the claim asserted in paragraphs 43, 48, and 70.

**[10]** In paragraph 31 of the complaint Hanna alleges he wrote defendant Lane giving details of the events and grieving the actions of the other defendants. Lane purportedly never responded to Hanna's letter. Michael Lane is Director of the Illinois Department of Corrections. As Director, Lane cannot be expected to involve himself with the minutiae of daily events in the lives of the thousands of prisoners incarcerated in Illinois prisons. Thus, Lane's failure to respond to Hanna's letter is not grounds for a claim of constitutional importance. *See Crowder v. Lash,* 687 F.2d 996, 1006 (7th Cir.1982);

*Partee v. Lane,* 528 F.Supp. 1254, 1259 (N.D.Ill.1981). Lane is therefore dismissed from the action.

**[11]** Eleven other defendants move to dismiss on grounds that they were without authority to rectify the allegedly wrongful assignment of Hanna to segregation or to order his release. Hanna concedes as to defendants Jenkins, Cooper, Douglas, Sibley, Loos, L. Yates, Maxwell, and Brljavac and agrees to their dismissal. He asserts, however, that defendants Cowan, G. Yates, and Shields knew of the wrongful action against him and had authority to release him from segregation. On a motion to dismiss, the court must accept these allegations as true. *Hanrahan v. Lane,* 747

F.2d 1137, 1139 (7th Cir.1984). Accordingly, the motion to dismiss as to these three defendants must be denied.

In conclusion, the Court grants defendants' motion to dismiss the amended complaint as to paragraphs 21, 31, 43, 48, and 70 and dismisses from the action defendants Lane, Jenkins, Cooper, Douglas, Sibley, Loos, L. Yates, Maxwell, and Brljavac. The motion is denied in all other respects.

It is so ordered.

**All Citations**

610 F.Supp. 32

Footnotes

1    The Seventh Circuit has since recognized the propriety of this procedure for cases in which plaintiff is proceeding without counsel. *Matzker v. Herr,* 748 F.2d 1142, 1148 n. 5 (7th Cir.1984).

2    Defendants contend that certain of the paragraphs attempt to present claims on behalf of two other prisoners. Hanna was placed in segregation because he wrote a letter attempting to intercede on behalf of his two fellow prisoners to obtain dismissal of disciplinary reports against them which he felt were without foundation. As the Court reads the amended complaint, reference to the other inmates are facts in support of Hanna's claims, not separate claims on behalf of the non-plaintiff inmates.

---

**End of Document**                                    © 2019 Thomson Reuters. No claim to original U.S. Government Works.



Home   Browse Decisions   F.2d   851 F.2d   851 F.2d 867 (1988)

# WILLIAMS v. LANE

Nos. 86-2922, 87-2436.                                                                                      Email | Print | Comments (0)

**View Case**   Cited Cases   Citing Case

851 F.2d 867 (1988)

*Willie WILLIAMS, on behalf of himself and all others similarly situated, Plaintiffs-Appellees, v. Michael P. LANE, Director of the Illinois Department of Corrections, et al., Defendants-Appellants.*

United States Court of Appeals, Seventh Circuit.

Argued December 9, 1987.

Decided June 27, 1988.

Rehearing and Rehearing Denied August 29, 1988.

*Attorney(s) appearing for the Case*

*Ann Plunkett-Sheldon, Illinois Atty. Gen. Office, Chicago, Ill., for defendants-appellants.*

*Jack A. Rovner, Kirkland & Ellis, Chicago, Ill., for plaintiffs-appellees.*

*Before CUMMINGS and FLAUM, Circuit Judges, and GRANT, Senior District Judge.*

Rehearing and Rehearing En Banc Denied August 29, 1988.

CUMMINGS, Circuit Judge.

While lawful imprisonment does deprive convicted prisoners of many rights, *Hudson v. Palmer*, 468 U.S. 517, 524, 104 S.Ct. 3194, 3199, 82 L.Ed.2d 393, inmates still retain limited constitutional protection including the First Amendment right to free exercise of religion, *Cruz v. Beto*, 405 U.S. 319, 322 n. 2, 92 S.Ct. 1079, 1081 n. 2, 31 L.Ed.2d 263, the right of access to courts, *Bounds v. Smith*, 430 U.S. 817, 821, 97 S.Ct. 1491, 1494, 52 L.Ed.2d 72, the right to due process restricted only by the nature of the penal system, *Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S.Ct. 2963, 2974, 41 L.Ed.2d 935, and the right to equal protection under the laws. *Lee v. Washington*, 390 U.S. 333, 333-334, 88 S.Ct. 994, 994-995, 19 L.Ed.2d 1212. Federal courts, while most reluctant to interfere with the internal administration of state prisons, see, *e.g.*, *Block v. Rutherford*, 468 U.S. 576, 584-585, 104 S.Ct. 3227, 3231-3232, 82 L.Ed.2d 438, nevertheless will intervene to remedy unjustified violations of those rights retained by prisoners, especially when faced with inadequate compliance by prison officials with prior court orders.

Recent decisions of the Supreme Court indicate a reevaluation of the role of federal courts in state prisoner cases. In *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447, the Court described the change from a "hands-off" approach to a period when federal courts "waded into this complex arena" to a withdrawal of the federal courts from the "minutiae of prison operations":

> There was a time not too long ago when the federal judiciary took a completely hands-off approach to the problem of prison administration. In recent years, however, these courts largely have discarded this hands-off attitude and have waded into this complex arena. The deplorable conditions and draconian restrictions of some of our Nation's prisons are too well known to require recounting here, and the federal courts rightly have condemned these sordid aspects of our prison systems. But many of these same courts have, in the name of the Constitution, become increasingly enmeshed in the minutiae of prison operations. Judges, after all, are human. They, no less than others in our society, have a natural tendency to believe that their individual solutions to often intractable problems are better and more workable than those of the persons who are actually charged with and trained in the running of the particular institution under examination. But under the Constitution, the first question to be answered is not whose plan is best, but in what branch of the Government is lodged the authority to initially devise the plan. This does not mean that constitutional rights are not to be scrupulously observed. It does mean, however, that the inquiry of federal courts into prison management must be limited to the issue of whether a particular system violates any prohibition of the Constitution, or in the case of a federal prison, a statute. The wide range of judgment calls that meet constitutional and statutory requirements are confined to officials outside of the Judicial Branch of Government.

*Bell*, 441 U.S. at 562, 99 S.Ct. at 1886; see also *O'Lone v. Estate of Shabazz*, 482 U.S. ___, 107 S.Ct. 2400, 96 L.Ed.2d 282; *Turner v. Safley*, 482 U.S. ___, 107 S.Ct. 2254, 96 L.Ed.2d 64; *Walsh v. Mellas*, 837 F.2d 789 (7th Cir.1988), certiorari denied, ___ U.S. ___, 108 S.Ct. 2832, 100 L.Ed.2d 933. It is in this context that we review the relief granted by the district court to those inmates assigned to protective custody status [1] at the Stateville

[851 F.2d 872]

Correctional Center in Illinois. [2]

## Factual Background

Due to the comprehensive nature of the district court's decree, the extensive record in this case must be examined in detail. See *Williams v. Lane*, 646 F.Supp. 1379 (N.D.Ill.1986). In reviewing the case on appeal, we recognize the deference owed to the trial court's findings of fact. Federal Rule of Civil Procedure 52(a) provides that "[f]indings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." In *Anderson v. City of Bessemer City*, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518, the Supreme Court stated that "'[a] finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Id.* at 573, 105 S.Ct. at 1511 (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746); *In re: Chicago, Milwaukee, St. Paul and Pacific R.R. Co.*, 840 F.2d 1308 (7th Cir.1988). A reviewing court may not reject a factual finding simply because it disagrees with the trier of fact. *Id.* Further, a reviewing court must show even greater deference to the trial court's findings that involve credibility of witnesses, "for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said." *Id.* at 575, 105 S.Ct. at 1512; see also *Bullard v. Sercon Corp.*, 846 F.2d 463, 466 (7th Cir.1988).

This Court recently applied the rule to a prisoners' civil rights claim in *Hadi v. Horn*, 830 F.2d 779 (7th Cir.1987), where in the context of the prison officials' position on the interests of security, we held that "the district court's finding on this point is one of fact which we must accept unless it is clearly erroneous." *Id.* at 784.

The defendants in this case waited until their reply brief before articulating their view of the proper scope of review regarding the district court's factual findings. In their reply brief, defendants offer in a conclusory fashion various examples of what they consider clearly erroneous findings of facts on the security concerns of the prison officials. These unpersuasive arguments are really a thinly-guised attack on the credibility determinations of Judge Shadur, which "can virtually never be clear error." *Anderson*, 470 U.S. at 575, 105 S.Ct. at 1513. Based on both the demeanor of the witnesses and the substantial record evidence, the district court held that the defendants' security explanations were "not credible as a factual matter." Defendants now rely almost completely on the discredited testimony of defendants DeRobertis and O'Leary while also insisting that the court failed to allow them the deference they deserve as prison administrators.

**Attach. B**                    **pg. 32**

As an initial matter, we reject these excuses. The district court quite properly refused to accept defendants' testimony because it conflicted with the objective factual record. The inconsistencies and contradictions in their statements were adjudged "frankly unworthy of belief." Moreover, a court's "deference to the administrative expertise and discretionary authority of correctional officials must be schooled, not absolute." *Campbell v. Miller,* 787 F.2d 217, 227 n. 17 (7th Cir.1986), certiorari denied, 479 U.S. 1019, 107 S.Ct. 673, 93 L.Ed.2d 724. In this case, in contrast to *O'Lone* and *Turner,* the defendants failed to establish a record which revealed the manner in which security considerations were seriously implicated by the unequal treatment afforded to protective custody status inmates. See *Caldwell v. Miller,* 790 F.2d 589, 597 (7th Cir.1986). Defendants have confused deference with credibility in their

[851 F.2d 873]

arguments here. The record of the proceedings below shows that the district court did not second-guess the administrator's determination. Rather, the court weighed the evidence and carefully considered what was argued before it by defendants.

Having discussed the relevant standard of review, it is now appropriate to turn to the history of plaintiffs' action. This case concerns a prisoner's civil rights class action suit for both injunctive relief and damages under 42 U.S.C. § 1983 and Illinois state law. The plaintiffs are inmates at Stateville Correctional Center near Joliet, Illinois, and the class representative is Willie Williams, who was incarcerated in the prison's protective custody unit from November 1977 to October 1983. The plaintiff class consists of all inmates assigned to protective custody at Stateville since April 30, 1982. The plaintiffs allege that their rights have been violated due in part to the living conditions and institutional programs assigned to them by the defendants.

The defendants are state prison officials sued in their individual capacities for acts taken under color of state law. Principal defendants include Michael Lane, director of the Illinois Department of Corrections (Department) since 1981; Richard DeRobertis, Stateville warden between July 1980 and November 1983; Michael O'Leary, Stateville warden after DeRobertis; Salvadore Goding, the assistant warden under both DeRobertis and O'Leary; Gayle Franzen, Department director from January 1979 to February 1981; Marvin Reed, warden from June 1979 to June 1980; and Lou Brewer, warden from September 1978 to June 1979.

The plaintiffs basically claimed that the defendants violated these protective custody prisoners' constitutional rights by failing to provide them with access to the same programs and services offered the general population inmates at Stateville. Specifically, this included denial of (1) their free exercise of religion, (2) meaningful access to the courts, (3) freedom from cruel and unusual punishment, and (4) their rights to due process and equal protection by failing to provide comparable programming and living conditions. Plaintiffs also alleged that defendants violated state law by not following the requirements of Administrative Regulation 808 ("A.R. 808"), adopted by the Department in 1976, which, besides creating a protective custody unit in each maximum security prison, mandates that "[h]ousing and programmatic accommodations shall be comparable to those provided for the general population." A.R. 808 was revised in 1982 to allow for the implementation of the consent decree entered in *Meeks v. Lane,* 75 C 96 (three-judge district court, N.D.Ill.1981), and reproduced in the plaintiffs' Appendix. This decree required, *inter alia,* that defendants provide inmates in protective custody "with the same opportunities as other inmates in other housing areas of the general population for ... job assignments, vocational and educational assignments, recreation, access to prison libraries, access to religious services and to all other institutional programs." [3]

To understand the nature of this case, it is first necessary to describe the protective custody status available in Stateville through the programs and living conditions

[851 F.2d 874]

which consist of religious counseling, library services, educational and occupational instruction, recreational opportunities, and food service. As seen, assignment to protective custody status (see n. 1 *supra*) was initially provided for by A.R. 808. This status is not made for disciplinary reasons; rather inmates are placed in protective custody for their own safety. It is truly neither "voluntary" nor "temporary": the Department has to substantiate the identifiable threat and approve the placement, and for their own protection inmates may spend much of their sentence in protective custody.

Until January 1979, all protective custody inmates in Stateville were assigned to Cellhouse E. After the Department locked down Stateville in early 1979, [4] all residents with this status were moved to Cellhouse B-West and housed with the disciplinary segregation inmates who had been found guilty of violating prison rules. Both categories of inmates remained there until April 1982, when the Department separated them by moving the disciplinary segregation inmates to Cellhouse F. In January 1985, the Department moved all protective custody inmates to Cellhouse H, which had previously housed inmates of the general population.

Since May 1979, when the protective custody inmates were moved to be housed with the disciplinary segregation inmates, the programs and living conditions of plaintiffs have been substantially restricted. It is necessary to compare the services available to the general population inmates to understand this disparity of service allocation.

The Department provides Stateville's general population inmates the opportunity for free exercise of religion through communal worship services, classroom religious instructions, and private religious counseling. Chaplains meet regularly with all such inmates who request private meetings. Protective custody inmates, however, have received significantly inferior access to religious services since the move in May 1979. There are neither communal worship services nor classroom religious instructions. The only permitted religious programming was to allow the prison chaplains to counsel inmates through the cell bar doors.

After implementation of the 1981 *Meeks* consent decree, in January 1983 the Department agreed to provide protective custody inmates with one non-denominational communal worship service at the rear of Cellhouse B-West. These services, however, were eliminated in mid-1984 without explanation. After protective custody residents were moved to Cellhouse H in early 1985, this service was reinstated and held in the small area converted from garage use, permitting only 25 inmates to attend. The Department still does not allow these inmates to meet privately with clergy; the clerical staff is forced to counsel through the cell doors' "chuck hole." Visits by these clergymen average once a week.

A second area of programming, library services, is made available to the general population without burdensome restrictions. This library access includes legal materials, newspapers, magazines, audiovisual materials, legal counseling and assistance, and special programs on mental health, ethnic and cultural awareness, and paralegal training. As was the situation with religious services, after the lockdown protective custody prisoners received markedly inadequate and inferior access to the library. When an inmate of this status wants to go to the library, he must be locked alone in one of seven special security cages, except that cellmates, co-litigants, or co-defendants can share a cage. These inmates may not leave the cages, and they must depend on a library clerk to retrieve materials for them.

Access to the library also differs from that of the general population in the following respects: requests to go to the library are taken on a first-come, first-serve basis; the law clerks may not obtain general library materials for plaintiffs unless specially approved by a general library clerk; plaintiffs are never allowed to attend any

https://www.leagle.com/decision/19881718851f2d86711568     12/18/2019

special library programs, and to obtain legal counseling, plaintiffs have to discuss their cases with either the Chief Legal Advocate or law clerk, who must stand outside the bars of the library cage. Finally, with the move of protective custody inmates to Cellhouse H in January 1985, library carts were not permitted to come to the protective custody unit to provide any satellite services.

Various vocational and educational programs also are provided to general population inmates aimed at providing rehabilitation. These services are designed to encourage the attainment of higher education and to maintain professional instruction. Between May 1979 and November 1982, however, no vocational jobs were available for protective custody inmates. Only after entry of the *Meeks* decree have a limited number of such jobs been made available. Educational instruction for these inmates has not fared much better. Between May 1979 and January 1983, there were no classroom courses, with only basic education tutoring provided through the doors of the cells. Since implementation of the *Meeks* decree, a single college-level course and a limited General Education Development program were offered. The college course was discontinued in 1985 with the move to Cellhouse H. Demand for general instruction always exceeds the permitted number of registrants.

Finally, basic living conditions between those inmates of general population and protective custody status are simply not comparable. Protective custody inmates must eat all meals in their rooms, and these unpalatable meals were transported in unheated carts until November 1985. Recreational opportunities are poor for protective custody inmates. They are permitted no indoor recreation in gymnasium or social halls. They have solely 1 1/4 hours of dayroom or yard access on alternate days.

The Department attempted to explain this disparate treatment as "security-motivated" or "security-oriented," explanations found arbitrary, exaggerated, and pretextual by the district court. It was quick to acknowledge that "[a]s a maximum security prison housing inmates drawn from among the worst offenders in Illinois, Stateville presents understandable security concerns." But in attempting to isolate protective custody inmates from the general population, the Department chose to treat these inmates with the same security procedures afforded those involuntarily assigned to disciplinary segregation.

The Department's articulated security concerns are belied by its inconsistent manner in treating protective custody inmates, its unused viable options to the restricted living conditions and lack of programming, its actions totally unrelated to security, and finally its lack of effort to provide comparable programming. We will highlight some of these matters which were extensively noted by the district court.

The Department's conduct demonstrates how its security reliance rationale is incomplete. This is first revealed in the inconsistent behavior afforded to protective custody inmates. While these inmates were permitted to take daily exercise together, they could not go to the library as a group. Inmates could exercise in the dayrooms together; yet they had to eat in their cells separately. Finally, the Department allowed groups to walk in the yard communally while prohibiting such recreation as watching movies together.

The district court, after of course realizing that it was not its function to assume responsibility for managing Stateville, named several available alternatives providing comparable conditions and programming to plaintiffs without jeopardizing any properly applied security concerns of the Department: (1) Stateville has many areas of usable space that could be converted to activity space; (2) light vocational training could be offered to inmates to be performed in their own cells; (3) a protective custody dining room could be added in Cellhouse H which would satisfy *Meeks;* (4) revised library scheduling could allow greater access to inmates; and (5) nightshift work details could be implemented to allow protective custody inmates the opportunity to earn money.

[851 F.2d 876]

These available alternatives were not pursued by the Department for reasons unrelated to security. Satellite law libraries, denominational worship services, vocational training in individual cells, and more Sunday recreation for protective custody inmates were all options found by the court to be without any significantly increased security burdens.

In summarizing, Judge Shadur found that this disparity in programs stemmed from the Department's lack of desire to make improvements, when opportunities to make such changes were long available to the defendants. Evidence adduced at the bench trial tended to show that the Department did have the ability to overcome security and operational concerns when it chose to do so.

After weighing this evidence, the court found for plaintiffs, denied defendants qualified immunity from damages, held that compensatory damages would be proper, and reserved ruling on punitive damages. 646 F.Supp. at 1409-1410. The court did not enter a remedial order with its opinion. Rather, in deference to the Department, it first directed the defendants to submit their views on the scope of a proper remedial plan. Finding their subsequent submissions inadequate, the court again requested defendants to specify what remedy would be consistent with the security needs of Stateville.

The defendants provided plaintiffs' counsel with their tentative proposals on May 22, 1987, and on July 7, the court ordered defendants to show cause why they should not be held in contempt because their proposal "could not, under any view, have been understood by them in good faith as conforming to what this court had ordered them to do" (Sup.App. 27).

Defendants responded on July 21, 1987, but the district court again found defendants' conduct intransigent and ordered them to provide a schedule of program changes by August 4, 1987 to comply with the earlier opinion. When this submission again stated that compliance was not feasible, the court adopted the suggestion by the plaintiffs to appoint a special master to assist the court in developing timetables to have the Department adhere to the mandate issued in the opinion (Sup.App. 54-56).

The defendants objected to this proposed appointment. On August 31, 1987, the court entered its final injunctive order which permanently enjoined the Department from violating the inmates' constitutional rights, ordered the Department to provide plaintiffs with comparable programs and living conditions as to those afforded the general population, and provided for the appointment of a special master to develop, evaluate, and scrutinize the defendants' implementation of remedial relief to be entered at a later date. [5] On September 23, 1987, this Court granted defendants' motion to stay the final order pending appeal. We extended this stay on December 17, 1987, so that the situation could be properly evaluated here.

### Analysis

On appeal, defendants initially contend that the district court ignored "a fundamental principle of law enunciated by the Supreme Court in prisoner's rights cases; that is, the principle of judicial deference to prison administrators in the operation of their institutions." They also point to the recent decisions in *Turner v. Safley*, ___ U.S. ___, 107 S.Ct. 2254, 96 L.Ed.2d 64, and *O'Lone v. Estate of Shabazz*, ___ U.S. ___, 107 S.Ct. 2400, 96 L.Ed.2d 282, but each acknowledged that a prison regulation "cannot be sustained when the logical connection

https://www.leagle.com/decision/19881718851f2d86711568

Attach B

pg. 34

12/18/2019

between the regulation and the asserted goal is so remote as to render the policy arbitrary and irrational." 107 S.Ct. at 2261. A prison regulation that infringes on inmates' constitutional rights is valid only "if it is reasonably related to legitimate penological interests." *Id.* at 2261; *O'Lone*, 107 S.Ct. at 2404; see also *Reed v.*

[851 F.2d 877]

*Faulkner*, 842 F.2d 960 (7th Cir.1988). [6] This Court, in *Hadi v. Horn*, 830 F.2d 779, 784 (7th Cir.1987), reviewed both *O'Lone* and *Turner*, and grouped the several factors used in applying the "reasonableness" standard into a four-part test:

1. whether a valid, rational connection exists between the regulation and a legitimate government interest behind the rule;

2. whether there are alternative means of exercising the right in question that remain available to prisoners;

3. the impact accommodation of the asserted constitutional right would have on guards and other inmates and on the allocation of prison resources; and

4. although the regulation need not satisfy a least restrictive alternative test, the existence of obvious, easy alternatives may be evidence that the regulation is not reasonable.

We again rely on these factors to determine whether Stateville's restriction of plaintiffs' constitutional rights to free exercise of religion, meaningful access to the courts through use of library services, due process, and equal protection were reasonable in light of legitimate security concerns. The district court determined that these restrictions were arbitrary and pretextual, bearing no reasonable relationship to legitimate penological interests. This finding must be accepted unless clearly erroneous. *Hadi*, 830 F.2d at 784. After reviewing the various allegations of deprivations, we then analyze defendants' arguments that the court below improperly (1) relied on violations of Illinois law, (2) failed to accord the defendants qualified immunity for their actions or omissions, (3) did not consider the Eleventh Amendment bar to suits against the state, and (4) exceeded its remedial power by improperly authorizing the appointment of a special master.

## Freedom of Religion

Inmates have only those First Amendment rights that are consistent with prison discipline and do not conflict with legitimate objectives of institutional administration. See *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 129-130, 97 S.Ct. 2532, 2539-2540, 53 L.Ed.2d 629; *Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495; *Ustrak v. Fairman*, 781 F.2d 573, 580 (7th Cir.1986), certiorari denied, 479 U.S. 824, 107 S.Ct. 95, 93 L.Ed.2d 47. But prison officials may not interfere with a prisoner's free exercise of religion unless the asserted regulation is justified by a legitimate penal interest. In *Wells v. Franzen*, 777 F.2d 1258, 1265 (7th Cir.1985), this Court found such a legitimate interest when it upheld the denial of a prisoner's opportunity to practice his religion when he was physically restrained due to suicidal tendencies. We also found a legitimate interest supported by considerations of safety and security in the regulation of a Rastafarian's hair length by prison officials in *Reed v. Faulkner*, 842 F.2d 960.

Prison administrators must permit inmates the reasonable opportunity to exercise religious freedom. *Cruz v. Beto*, 405 U.S. 319, 322 n. 2, 92 S.Ct. 1079, 1081 n. 2, 31 L.Ed.2d 263; *Caldwell v. Miller*, 790 F.2d at 596, and the state need not demonstrate that there is no reasonable alternative method by which the prisoner's First Amendment rights can be accommodated without creating security problems. *O'Lone*, 107 S.Ct. at 2405. Courts balance these competing interests to determine if the inmate's First Amendment rights should prevail. *Turner*, 107 S.Ct. at 2264.

The district court ruled that defendants violated plaintiffs' right to the free exercise of their religion by not allowing communal religious services, by not permitting prisoners participation in rituals of their faith, and by depriving the inmates of

[851 F.2d 878]

religious counseling and instruction. Viewing the facts of this case in light of the *Caldwell* standard that prison restrictions on religious activities must be reasonably adopted to achieve an important correctional goal and reasonably necessitated by security considerations, the court found that defendants denied these opportunities without a reasonable relationship to legitimate penological interests. This denial thus failed the first part of our recent *Hadi* test, for no "valid, rational connection exists between the regulation and a legitimate government interest behind the rule[s]." *Hadi*, 830 F.2d at 784.

Defendants oppose a conclusion that Stateville's policies in providing religious services to protective custody inmates were inferior. They assert that "the logical relationship between the single non-denominational service and the protective custody inmate is apparent" (Br. 34). This policy is allegedly implemented because offering different religious services would "increase the risks" to inmates due to "increased numbers of group movements."

Focusing on the *O'Lone* analysis, they further claim that there are other means available for protective custody inmates to exercise their religion through daily visits from chaplains and the distribution and receipt of religious materials. According to defendants, any increased number of communal services would have an allegedly burdensome "ripple" effect on both the staffing and programming in protective custody.

These justifications simply do not remedy the inadequate and needlessly inferior alternatives that the inmates have to exercise their religious beliefs. That the district court could offer some easily available and obvious options to provide more sufficiently the right to religion clearly shows that the Department's current policies were unreasonable. Defendants have offered no tenable ground for overruling the conclusion below that the Department's denial of the inmates' opportunities for regular communal worship, religious instruction, and private religious counseling did not bear an adequate relationship to legitimate penological interests.

## Right of Access to Courts

Under the Fourteenth Amendment prisoners have the due process right to adequate, effective, and meaningful access to courts to challenge violations of their constitutional rights, *Bounds*, 430 U.S. at 824, 97 S.Ct. at 1496, and this access neither may be denied nor obstructed. *Johnson v. Avery*, 393 U.S. 483, 485, 89 S.Ct. 747, 748, 21 L.Ed.2d 718. Prison officials correspondingly have an affirmative duty to assist prisoners in preparing and filing legal papers. This may be accomplished either by establishing a law library or by providing consultation from legally trained assistants. *Bounds*, 430 U.S. at 828, 97 S.Ct. at 1498. These officials cannot hinder prisoners from this access, *Wolff v. McDonnell*, 418 U.S. at 578, 94 S.Ct. at 2985, or retaliate against prisoners who attempt to exercise their constitutional rights. See *Adams v. James*, 784 F.2d 1077, 1082 (11th Cir.1986). This Court has articulated the

**Attach. B**

constitutional standard to require "meaningful," not total or unlimited, access to courts. *Martin v. Tyson*, 845 F.2d 1451, 1456 (7th Cir.1988); *Campbell v. Miller*, 787 F.2d 217, 226 (7th Cir.1986). Restrictions on this access will not be an unconstitutional interference when justified by security concerns, which prison officials bear the burden of proving. *Id.*

Prison officials need not provide both direct legal aid and access to a law library so long as prisoners receive meaningful access. *Bounds*, 430 U.S. at 832, 97 S.Ct. at 1500. Administrators may devise constitutionally acceptable alternatives if the prison's functioning will become unduly burdened by providing a particular type of access. This Court has recently sustained such restrictions on access to accommodate legitimate administrative concerns. In *Campbell*, restrictions on library access and attorney visitation were justified for security reasons. 787 F.2d at 226-228. The institution's system of requesting case law materials by exact date was upheld when dangerous inmates were denied

[851 F.2d 879]

full access to the prison's main law library. *Id.* at 229. In sustaining the restrictions, we held that "[p]rison administrators may exercise wide discretion within the bounds of the constitutional requirements of meaningful access." *Id.*

In *Caldwell v. Miller*, 790 F.2d 589, 606 (7th Cir.1986), restrictions on library use as part of the post-riot lockdown at the Marion Penitentiary were deemed permissible. This Court upheld as constitutionally adequate a plan that provided for inmate access to a "satellite" library coupled with a system for requesting materials from the main branch.

Similarly, in *Gaines v. Lane*, 790 F.2d 1299, 1308 (7th Cir.1986), prison authorities were allowed to balance the right of the prisoners to use the mails for court access with considerations of the institution's budget. Prisoners there were permitted to mail at state expense three first-class letters per week plus reasonable additional legal correspondence. *Id.*

Finding that the library services provided to plaintiffs had been inadequate, the district court in this case concluded that plaintiffs had been deprived of meaningful access to the courts. The court analogized this situation to the "Catch-22" present in *Corgain v. Miller*, 708 F.2d 1241, 1250 (7th Cir.1983), where inmates at the Marion federal penitentiary were denied access to the courts due to the library's lack of either state law materials or sufficient supplemental legal aid. In this case, "[e]ven if an inmate were sophisticated and attuned to the nuances of legal meaning, the limitations imposed by defendants would convert the possible work of minutes into a need to spend hours — and, moreover, hours to which no plaintiff could gain access" (646 F.Supp. at 1389).

Defendants disagree with this finding and contend that the access to the law library provided to protective custody inmates at Stateville meets the constitutional mandate of "meaningful access" to the courts. Viewing the Stateville plan as a whole, they contend that it meets the requirements of the *Bounds* case because the Department allegedly provides the inmates with trained assistance and regular access to an adequate legal library. Defendants' restriction of the plaintiffs' right to meaningful access, however, again fails to satisfy the *Hadi* standards. The access is severely inadequate in comparison to that afforded the general population. Moreover, the options such as rescheduling of library hours and use of satellite libraries would be viable alternatives to the current quandary faced by protective custody inmates desiring to do legal research. The evidence before the lower court sustains our holding that neither a reasonable relationship to a legitimate penological interest nor any negative impact from accommodating plaintiffs' right to court access was credibly identified. This arbitrary denial of access to published materials certainly violated the protective custody inmates' First Amendment rights. *Martin, supra*, at 1454.

## Due Process Protections

Plaintiffs here asserted that the defendants' restrictions on their religion and access to court rights and denial of housing and programmatic conditions comparable to those offered the general population residents violated their rights to due process and equal protection. The district court considered the due process and equal protection claims together, but we review them separately for purposes of this appeal.

Prisoners claiming a due process violation under the Fourteenth Amendment must demonstrate that they have been deprived of a protected liberty or property interest by arbitrary government action. *Meachum v. Fano*, 427 U.S. 215, 223-224, 96 S.Ct. 2532, 2537-2538, 49 L.Ed.2d 451. These interests may arise from the Constitution, see *Vitek v. Jones*, 445 U.S. 480, 493-494, 100 S.Ct. 1254, 1263-1264, 63 L.Ed.2d 552; cf. *Newburg v. Prisoner Review Board*, 791 F.2d 81, 85 (7th Cir.1986), statutes, see *Greenholtz v. Inmates of Neb. Penal & Correctional Complex*, 442 U.S. 1, 7-11, 99 S.Ct. 2100, 2103-2106, 60 L.Ed.2d 668; *Walker v. Prisoner Review Board*, 769 F.2d 396, 400 (7th Cir.1985),

[851 F.2d 880]

certiorari denied, 474 U.S. 1065, 106 S.Ct. 817, 88 L.Ed.2d 791; but see *Harris v. Fleming*, 839 F.2d 1232 (7th Cir.1988) (prisoners ordinarily have no liberty or property interests in receiving or retaining a job while in prison; *Toney-El v. Franzen*, 777 F.2d 1224, 1226-1227 (7th Cir.1985) (where state remedies are adequate, inmate has no constitutionally protected liberty interest in early release despite state statute affording good time credits), certiorari denied, 476 U.S. 1178, 106 S.Ct. 2909, 90 L.Ed.2d 994, and administrative regulations, see *Hewitt v. Helms*, 459 U.S. 460, 471-472, 103 S.Ct. 864, 871-872, 74 L.Ed.2d 675; *Fleury v. Clayton*, 847 F.2d 1229, 1230, 1232 (7th Cir.1988); cf. *Mathews v. Fairman*, 779 F.2d 409, 414-415 (7th Cir.1985) (regulation on administrative transfers did not limit official discretion and did not create protected liberty interest). See generally *Caldwell v. Miller*, 790 F.2d at 602.

Once an alleged liberty interest is considered protected, the court then determines what process is due the prisoner by balancing the private interest affected, the risk of error in the procedures used, and the state interest in institutional security. See *Wolff v. McDonnell*, 418 U.S. at 556, 94 S.Ct. at 2974. The particular due process protections are limited by the need to pursue legitimate correctional goals. *Id.* Any additional procedural safeguards depend on the balance between the rights accorded both private and governmental interests. See, *e.g.*, *Mendoza v. Miller*, 779 F.2d 1287, 1294-1296 (7th Cir.1985) (officials need not reveal factual bases for disciplinary decisions involving informants); *Garza v. Henderson*, 779 F.2d 390, 394-397 (7th Cir.1985) (prison disciplinary hearing held without inmate present does not violate due process unless prejudice demonstrated); *Merritt v. De Los Santos*, 721 F.2d 598, 600-601 (7th Cir.1983) (due process violated when member of disciplinary tribunal involved in alleged incident); *Dawson v. Smith*, 719 F.2d 896, 898-899 (7th Cir.1983) (prison disciplinary committee need not disclose source of confidential report), certiorari denied, 466 U.S. 929, 104 S.Ct. 1714, 80 L.Ed.2d 186.

Defendants here claim that the protective custody inmates' due process rights have not been violated because first, the Fourteenth Amendment creates no liberty interest in remaining in the general inmate population as opposed to protective custody, and second, Illinois law, as embodied in A.R. 808 (now Department Rule 501.310), creates no liberty interest under the facts alleged by plaintiffs. The first claim is irrelevant, for defendants never dispute that the plaintiffs have a constitutional interest in receiving meaningful opportunities for free exercise of religion and access to the courts. As shown, they have been deprived of those rights. Defendants cite *Hewitt v. Helms*, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675, for the proposition

**Attach. B**                                                                                                                    **pg. 36**

that the transfer of an inmate to less amenable quarters for non-punitive reasons does not violate the Constitution. But in light of the district court's finding that there were no meaningful opportunities to exercise the plaintiffs' religious and court access rights, this argument does not respond to the truism that a liberty interest in those rights is protected.

The same is true of plaintiffs' claim of due process with respect to housing and programs under a state-created liberty interest. A.R. 808 had binding force because it was adopted according to proper administrative procedures and required that "[h]ousing and programmatic accommodations [for protective custody inmates] shall be comparable to those provided for the general population." [7] See *Miller v. Henman*, 804 F.2d 421, 426 (7th Cir.1986). Substantive limitations were placed on the Department's discretion, *Olim v. Wakinekona*, 461 U.S. 238, 249, 103 S.Ct. 1741, 1747, 75 L.Ed.2d 813, and the mandatory language ("shall") of the 808 regulation created an expectation of and an entitlement to housing and services comparable to the general population's for protective

[851 F.2d 881]

custody inmates. See *Board of Pardons v. Allen*, 482 U.S. ___, 107 S.Ct. 2415, 2420-2421, 96 L.Ed.2d 303. Furthermore, "specific substantive predicates," *Harris v. McDonald*, 737 F.2d 662, 665 (7th Cir.1984), were contained in A.R. 808 to create such a liberty interest.

Defendants merely assert that *Hewitt* governs, and that only regulations governing involuntary placement of inmates create a liberty interest. 103 S.Ct. at 871; see also *Fleury, supra*, at 1232. Yet as found by the district court, protective custody is "not truly voluntary." The Department's further attempt to show that "comparable" implies only official discretion to choose services rather than not afford protective custody inmates equal treatment does not mesh with the *Meeks* decree, which specifically described the programs and services required for these inmates. It is unquestioned that the revised A.R. 808 was intended to incorporate the *Meeks* requirements.

The record below properly supports the district court's conclusion that the Department's decision to deprive plaintiffs of the foregoing rights was arbitrary. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 539-541, 105 S.Ct. 1487, 1491-1493, 84 L.Ed.2d 494. "Due process rights are not infringed when the imposition in question is reasonably related to a legitimate governmental purpose." *Martin, supra*, at 1458. But when weighed against the factors in *Hadi, supra*, defendants' deprivations of plaintiffs' right to religion, and access to courts and *Meeks* housing programs and services were unreasonable, therefore denying the inmates their liberty interests without due process of law.

### Equal Protection

Prisoners do not surrender their rights to equal protection at the prison gate. Unequal treatment among inmates, however, is justified if it bears a rational relation to legitimate penal interest. *Hudson v. Palmer*, 468 U.S. 517, 522-523, 104 S.Ct. 3194, 3197-3199, 82 L.Ed.2d 393. Compare *Harris v. Greer*, 750 F.2d 617, 618-619 (7th Cir.1984) (alleged racial segregation by cell and job assignment states claim) and *Madyun v. Thompson*, 657 F.2d 868, 873-874 (7th Cir.1981) (allegation of racially motivated misuse of authority states claim) with *Kincaid v. Duckworth*, 689 F.2d 702, 704 (7th Cir.1982) (four-year difference between life termers and inmates under term of years for eligibility for change of security status justified by security risk). Plaintiffs claimed that the defendants' provisions for programming and living conditions were unequal in comparison with general population inmates. This intentional disregard of plaintiffs' rights in adopting certain policies was tantamount to intentional discriminatory behavior. See *David K. v. Lane*, 839 F.2d 1265 (7th Cir.1988). The district court agreed with plaintiffs and held that defendants' regulations did "not bear any such rational relationship to any legitimate state purpose — instead, their purported justification in terms of security concerns is an arbitrary and exaggerated response and masks defendants' real delinquencies."

To escape liability for disparately treating plaintiffs, defendants rely on this Circuit's decision in *French v. Owens*, 777 F.2d 1250 (7th Cir.1985), certiorari denied, 479 U.S. 817, 107 S.Ct. 77, 93 L.Ed.2d 32, where the unequal treatment of protective custody inmates had "a substantial rational basis in the legitimate interest of prison security." *Id.* at 1256 (quoting *Allgood v. Morris*, 724 F.2d 1098, 1101 (4th Cir.1984)). In *French*, four inmates in protective custody at an Indiana state prison claimed that they did not have equal access to the same vocational, academic, and rehabilitation programs as the general population. We held that security reasons can justify limiting the access of prisoners in protective custody. *Id.* at 1256; see also *Taylor v. Rogers*, 781 F.2d 1047, 1050 (4th Cir.1986) (same).

These cases, however, are inapposite — distinguishable because here the Department's explanations for security concerns were discredited by the court below. These defendants failed to establish the necessary relationship between prison security and disparate treatment of residents of protective custody, a relationship deemed crucial by this Court in *French*.

[851 F.2d 882]

To the extent the district court's legal conclusions concerning disparate treatment depend on its evidentiary findings that defendants' policies were illegitimate, deference must be accorded to the district court's ruling. See *David K.*, 839 F.2d at 1265. We therefore approve the district court's decision that the Department's policies violated plaintiffs' equal protection rights.

### Illinois State Law

Plaintiffs initially asserted before the district court that defendants' denial of housing and programmatic conditions comparable to those provided general population residents and of comparable opportunity for rehabilitation and parole each violates Illinois state law. Based on that claim, defendants now argue that the final injunctive order rested on violations of state law and that the district court ordered their compliance with A.R. 808. A violation of state law would not create liability under Section 1983. See *Fleury, supra*, at 1230; *Martin, supra*, at 1455; cf. *Jones v. Thieret*, 846 F.2d 457, 460 (7th Cir.1988).

While the court did find that the defendants' failure to comply with A.R. 808 and the *Meeks* decree violated state law, the court did not premise its order of injunctive relief on those alleged violations. Rather, the court specifically announced that it had removed "the references to 'under the agreed laws of the State of Illinois' ... because I am not ordering compliance with state law as such." (Pl.Br. at 45). The court properly justified its order on the foregoing federal constitutional deprivations.

### Defenses to Liability

**Attach. B**                                                                                     **pg. 37**

### Qualified Immunity

The defense of immunity may prevent an inmate from securing relief for deprivations of constitutional rights. Prison officials who act in good faith receive qualified immunity for their actions. *Procunier v. Navarette*, 434 U.S. 555, 561, 98 S.Ct. 855, 859, 55 L.Ed.2d 24. The objective test established by the Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396, and recently reiterated in *Anderson v. Creighton*, ___ U.S. ___, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523, shields officials from liability if they did not violate clearly established constitutional or statutory rights of which a reasonable person would have known. See also *Rakovich v. Wade*, 850 F.2d 1180, 1208-1214, (7th Cir.1988) (*en banc*); *Kurowski v. Krajewski*, 848 F.2d 767, 773 (7th Cir.1988); *Forrester v. White*, 846 F.2d 29, 32 n. 1 (7th Cir.1988); *Azeez v. Fairman*, 795 F.2d 1296, 1301 (7th Cir.1986). In *Davis v. Scherer*, 468 U.S. 183, 194, 104 S.Ct. 3012, 3019, 82 L.Ed.2d 139, the Court further held that claimants must show that the rights allegedly violated were clearly established at the time of the conduct at issue. See also *Wade v. Hegner*, 804 F.2d 67, 71 (7th Cir.1986). Defendants have the burden of proof of satisfying this affirmative defense. See *Klein v. Ryan*, 847 F.2d 368, 369 (7th Cir.1988); *Walsh*, 837 F.2d at 789.

Because this Court is reviewing a denial of a claim of qualified immunity, it is necessary to decide "whether the legal norms allegedly violated by the defendant were clearly established at the time of the challenged actions." *Mitchell v. Forsyth*, 472 U.S. 511, 528, 105 S.Ct. 2806, 2816, 86 L.Ed.2d 411. Moreover, "[t]o determine whether such legal norms existed at the pertinent time, we often refer to closely analogous case law, decided before the public official acted or failed to act." *Abel v. Miller*, 824 F.2d 1522, 1533 (7th Cir.1987).

Defendants, conceding that the district court relied on landmark Supreme Court cases which either established or reaffirmed general constitutional rights, make the shallow argument that the cases relied on did not clearly establish the specific rights to meaningful access to the courts, free exercise of religion, due process, and equal protection. Yet each of the cases used as support by plaintiffs clearly established that prison officials must demonstrate at a minimum a rational basis for abridging the inmates' religious rights, *Cruz*, 405 U.S. at 322 n. 2, 92 S.Ct. at 1081

[851 F.2d 883]

n. 2, rights to legal services, *Bounds*, 430 U.S. at 825, 97 S.Ct. at 1496, due process rights, *Wolff*, 418 U.S. at 555-556, 94 S.Ct. at 2974-2975, and equal protection rights, *French v. Heyne*, 547 F.2d 994, 997 (7th Cir.1976). In our view, the parameters of the "rights" that the defendants violated are sufficiently clear in light of prior decisional law. See *Walsh*, 837 F.2d at 789. As the Supreme Court noted in *Mitchell*:

> An appellate court reviewing the denial of the defendant's claim of immunity need not consider the correctness of the plaintiff's version of the facts, nor even determine whether the plaintiff's allegations actually state a claim.

472 U.S. at 528, 105 S.Ct. at 2816; see also *Wrigley v. Greanias*, 842 F.2d 955 (7th Cir.1988). Defendants basically ask us to assess whether or not the plaintiffs stated a claim for violation of their rights to meaningful access to the courts, full exercise of religion, due process, and equal protection. However, in attempting to distinguish their case from the landmark cases relied on by the district court, the defendants simply fail to demonstrate a legitimate rationale justifying their deprivation of rights of these protective custody inmates. Therefore the district court properly denied defendants qualified immunity.

### Eleventh Amendment

The Eleventh Amendment to the Constitution bars suit against a state official when the state is the real party in interest. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 101, 104 S.Ct. 900, 908, 79 L.Ed.2d 67. This is because the relief sought against the official is really against the state in that a court decree would operate against the state and not the official personally. This absolute immunity, however, does not apply if, as here, the suit challenges the constitutionality of the official's actions. *Id.* at 102, 104 S.Ct. at 909.

Defendants try to compare their case with *Pennhurst*, where the issue was "whether a federal court may award injunctive relief against state officials on the basis of state law." *Id.* While the district court did find that defendants' failure to comply with A.R. 808 and the *Meeks* decree violated state law, it modified the parties' proposed forms of final order to remove the references to state law as already noted. The court also expressly did not order compliance with state law. See *supra* at p. 882. Finally, the court did appropriately order relief for the federal constitutional violations.

The Supreme Court recently dismissed a petitioner's contention that *Pennhurst* applied in *Deakins v. Monoghan*, 484 U.S. ___, 108 S.Ct. 523, 98 L.Ed.2d 529. There petitioners suggested that state law claims predominated in the complaint and the federal claims were minimal and unsubstantial additions. As in *Deakins*, though, a sizable portion of the relief sought in the plaintiffs' complaint in this case was intended to compensate the class for injuries allegedly sustained in violation of federal constitutional rights. Because the plaintiffs here challenged the federal constitutionally of the Department's policies, the Eleventh Amendment claim of defendants must similarly fail.

### Appointment of Special Master

The district court's final injunctive order required the appointment of a special master pursuant to Rule 53(b), Fed.R.Civ.P. This rule provides such an appointment "only upon a showing that some exceptional condition requires" this action. Defendants contend that the record in this case does not demonstrate exceptional circumstances warranting this remedy and that such an appointment is inappropriate when state governments need flexibility to comply with a court order. [8] Cf. *United States v. City of Parma*, 661 F.2d 562, 579 (6th Cir.1981), certiorari denied, 456 U.S. 926, 102 S.Ct. 1972, 72 L.Ed.2d 441. Plaintiffs respond by pointing to defendants' conduct

[851 F.2d 884]

during this litigation. The district court observed that defendants have demonstrated a "continued and deliberate inattention to plaintiffs' constitutional rights," have "wholly failed to take any steps or initiate any measures necessary to redress the constitutional violations identified in the opinion," and have provided "questionable ... responses to this Court's requests for a proposed plan to correct their violations of such rights" (Final Order, reproduced in defendants' Appendix, at 2-3).

**Attach. B**                                                                 **pg. 38**

It is axiomatic that judicial supervision of court orders should ordinarily be exercised directly by a judge rather than by referral to a master. Such referrals "may cause additional costs and delays when reviews by the judge are sought, ... impair supervisory consistency and cohesiveness, [and] invoke[] special costs in the form of compensation and expenses." Manual for Complex Litigation, Second § 20.14, pp. 11-12 (1985). Yet referrals may be appropriate "if, due to the unusual magnitude of the supervision needed in the complex case, failure to make referral would result in inattention or undue delay." *Id.*; see also W. Brazil, G. Hazard, & P. Rice, Managing Complex Litigation: A Practical Guide to the Use of Special Masters (1983).

The judge's authority to make a referral under Rule 53, if not consented to by the parties, is limited. *La Buy v. Howes Leather*, 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290. But special masters may be appointed to monitor implementation of decrees. See, *e.g.*, *Ruiz v. Estelle*, 679 F.2d 1115, 1159-1163 (5th Cir.), amended in part and vacated in part on other grounds, 688 F.2d 266 (1982), certiorari denied, 460 U.S. 1042, 103 S.Ct. 1438, 75 L.Ed.2d 795.

We fully acknowledge that "[t]he appointment of a special master is the exception and not the rule and [that] there must be a showing that some exceptional condition requires such an appointment." 5A Moore's Federal Practice ¶ 53.05[3] n. 42 (1987). But the appointment of a special master was particularly desirable for the final injunctive order of this case, where non-compliance with the previous district court order was emphasized. See *Gary W. v. Louisiana*, 601 F.2d 240 (5th Cir.1979). The record here is replete with instances of administrative recalcitrance. Therefore appointing a master directed to supervise and coordinate the actions of prison officials to effectuate full compliance is especially appropriate for cases such as this challenging conditions of prison confinement. See *Taylor v. Perini*, 413 F.Supp. 189 (N.D.Ohio 1976). Certainly Judge Shadur cannot be expected to neglect his busy docket to ensure that recalcitrant defendants no longer violate basic rights of this class.

Appellate courts are rightly hesitant to grant writs of mandamus directing a trial court to vacate its reference to a special master unless a clear abuse of judicial power is shown. *Chicago Housing Authority v. Austin*, 511 F.2d 82 (7th Cir.1975); 5A Moore's Federal Procedure ¶ 53.05[3] n. 9 (1987). The defendants' cursory treatment of this issue fails to demonstrate any reversible abuse, and therefore their appeal on this issue cannot be sustained.

The district court will be expected to review with care any findings of its special master. *In re Chicago, Milwaukee, St. Paul and Pacific R.R. Co.*, 841 F.2d 789 (7th Cir.1988). The district court's standard of review of the special master's findings and recommendations will be the same as our pertinent standard of review of the district court. Thus the district court will be required to accept the special master's findings of fact unless they are clearly erroneous. *Anderson v. Mt. Clemens Pottery*, 328 U.S. 680, 689, 66 S.Ct. 1187, 1193, 90 L.Ed. 1515; *Locklin v. Day-Glo Color Corp.*, 429 F.2d 873, 876 (7th Cir.1970), certiorari denied, 400 U.S. 1020, 91 S.Ct. 582, 584, 27 L.Ed.2d 632; Fed.R.Civ.P. 53(e)(2) ("In an action to be tried without a jury the court shall accept the master's findings of fact unless clearly erroneous."); J. Moore & J. Lucas, 5A *Moore's Federal Practice* ¶ 52.03[4], at 52-88 ("a district court's scope of review of the factual findings [sic] made by a master is comparable to that which the appellate

[851 F.2d 885]

court has over the district court's findings of fact"). The special master's legal conclusions, however, will not be entitled to deference by the district court, *Oil, Chem. & Atomic Workers Int'l Union*, 547 F.2d 575, 580 (D.C.Cir.1976), certiorari denied, 431 U.S. 966, 97 S.Ct. 2923, 53 L.Ed.2d 1062; J. Moore & J. Lucas, *supra*, at 52-88 to -89, and will warrant careful scrutiny due to the extensive relief sought by plaintiffs.

## *Conclusion*

"Judges are not wardens, but we must act as wardens to the limited extent that unconstitutional prison conditions force us to intervene when those responsible for the conditions have failed to act." *Harris v. Fleming*, 839 F.2d 1232 (7th Cir.1988). Bad prisons are not inevitable; indeed some are safe, civilized, and provide their inmates with decent work and helpful programs. See generally J. DiJulio, Jr., Governing Prisons: A Comparative Study of Correctional Management (1988). This Court realizes that where state penal institutions are involved, federal courts have reason to defer to appropriate prison authorities. *Procunier v. Martinez*, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224. The defendants, however, have failed to convince us that the cutback of essential programs and services for protective custody inmates at Stateville has a legitimate rational basis. This cutback and disparate treatment was a flagrant violation of the *Meeks* consent decree, which bound the Department to its provisions. See *Derrickson v. City of Danville*, 845 F.2d 715, 718 (7th Cir.1988). The increased administrative burden that the defendants assert a decision in plaintiffs' favor would impose upon the prison system is inconsequential when compared with the value of a proper and humane system of protective custody that may protect human life and curb inmate retaliatory violence. See *Walsh*, 837 F.2d 789, 793. Recently, this Court noted that

> Confinement in Stateville's segregation unit involves considerable isolation, sometimes for protracted periods; and the record shows, what anyway seems pretty obvious, that isolating a human being from other human beings year after year or even month after month can cause substantial psychological damage, even if the isolation is not total.

*Davenport v. DeRobertis*, 844 F.2d 1310, 1313 (7th Cir.1988). Plaintiffs in this case, in attempting to secure their physical safety through assignment to protective custody status by the warden, have been punished and treated like those who have violated prison rules and have periodic behavior problems. Depriving plaintiffs of meaningful access to the courts, free exercise of religion, and equal treatment regarding living conditions and programs has not been rationally related to defendants' articulated security concerns. Cf. *Martin, supra*, at 1457 (segregation a legitimate response to a security risk).

In Section 1983 cases, prisoners may receive remedies comparable to all civil litigants. District courts may award damages, see *Madison County Jail Inmates v. Thompson*, 773 F.2d 834, 844 (7th Cir.1985), as well as order appropriate injunctive relief to prevent any continuing deprivation of an inmate's constitutional rights. Cf. *Preiser v. Newkirk*, 422 U.S. 395, 95 S.Ct. 2330, 45 L.Ed.2d 272. The district court has yet to conduct any assessment of compensatory or punitive damages and still has to order a reasonable remedial plan. A knowledgeable and impartial special master to implement a just remedy consistent with the needs of prison security and legitimate penological goals should assure compliance with the court's ultimate decision.

AFFIRMED.

FLAUM, Circuit Judge, concurring in the result.

I must reluctantly concur in the judgment of the court, and therefore write separately. The defendants' litigation strategy in a case of significant public importance has dictated the outcome that we are required to affirm. Their inappropriate form of advocacy and intransigence regarding efforts to effectuate a remedy compel us to uphold an opinion which sweeps very

[851 F.2d 886]

**Attach. B**                                     **pg. 39**

broadly. Indeed, defendants have brought upon themselves the burden of affording to protective custody inmates rights which are not necessarily indicated by recent Supreme Court precedent.

Although the record clearly establishes that the inadequate library privileges allowed to plaintiffs unconstitutionally restrict their right of access to the courts, in my judgment plaintiffs' success on their other claims was far from inevitable. The protective custody inmates' first amendment and due process arguments about the scope of their rights to religious services, vocational and educational programs, jobs, recreation, and living conditions called for a more reasoned rebuttal. But the prison officials were unwilling (or impervious to the need) to articulate credible justifications for their perhaps permissible treatment of these inmates. The defendants apparently failed to advance effectively the lack of reasonable and feasible alternatives. Although we customarily defer to their professional judgment in matters of administration, prison officials whose actions are challenged cannot avoid court scrutiny by reflexive, rote assertions that existing conditions are dictated by security concerns and that the cost of change is prohibitive.

The defendants' and their witnesses' approach caused the district judge to find them utterly lacking in credibility. They appear to have ushered the district court into virtually insulating his findings from review; as the majority points out, we may rarely hold such credibility determinations clearly erroneous. We may never ascertain to what extent these findings were "punitive." The defendants certainly invited them by failing to engage the court in any persuasive discussion of penological objectives and alternatives. It is discouraging, to say the least, that a most critical state agency has been found so sorely wanting as a litigant by a United States District Court. *See Williams v. Lane,* 646 F.Supp. 1379, 1402-05 (N.D.Ill.1986).

In particular, the defendants' stance once the court decided their liability made the extreme remedy affirmed today almost inevitable. In the opinion of the district judge, the defendants made no substantial attempt at good faith compliance with the court's directives once liability was established. By refusing to meaningfully comply with the district court's request for aid in fashioning a remedy, defendants ensured a harsher result than would otherwise have been warranted. While the appointment of a special master to implement the court's directives is an extraordinary and disfavored recourse, the defendants and their counsel forced the district judge's hand.

Courts must of course recognize their limited competence in the troubled and complicated area of prison administration. However, prison administrators alleged to have violated inmates' rights must meet such challenges with edifying and illuminating rejoinders drawn from their unique expertise, not with the modest responses advanced in this litigation.

## FootNotes

* The Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, is sitting by designation.

1. Protective custody is a status available to a Stateville inmate when he fears for his safety or when the warden believes the inmate's safety may be in jeopardy. At any one time, from 200 to 300 of the inmates at Stateville are in protective custody.

2. Stateville is a maximum security prison run by the defendants which houses approximately 2,000 inmates within five cellhouses. Inmates serve time for violent crimes such as murder and Class X felonies. Stateville has been the subject of recent litigation before this Court. See, *e.g., Davenport v. DeRobertis,* 844 F.2d 1310 (7th Cir.1988); *Williams v. Boles,* 841 F.2d 181 (7th Cir.1988); *Walsh v. Mellas,* 837 F.2d 789 (7th Cir.1988), certiorari denied, ___ U.S. ___, 108 S.Ct. 2832, 100 L.Ed.2d 933.

3. The *Meeks* decree further required that the defendants provide all inmates in the protective custody area: (1) "the opportunity to attend a communal religious service outside their cells once per week"; (2) "access to the general library at least one hour per week, and to the prison law library for at least four hours per week"; (3) "law clerks ... to do research and obtain copies" and "library clerks who will circulate within the unit on a daily basis"; (4) "educational opportunities commensurate with those available to inmates in the general population," including "college credit courses"; (5) "job opportunities"; (6) at least "seven hours per week of out-of-cell recreation" (and a good faith effort to provide more); and (7) "food of comparable quality, quantity, and temperature as that provided to inmates assigned to general population" (and a good faith effort "to locate an area [in Stateville] suitable for use as a protective custody dining area").

Revised A.R. 808 stated that "[h]ousing arrangements and essential services shall be comparable to those provided to the general population." The district court found that "comparable" as used in A.R. 808 means "equivalent" or "equal in value or extent" (646 F.Supp. at 1335).

4. Lockdown is locking all prisoners in their cells except for very brief periods.

5. The injunction is not officially reported but is reproduced as the first item in defendants' Appendix.

6. Judge Shadur was without the benefit of *O'Lone* and *Turner.* He relied upon the standard articulated in *Caldwell v. Miller,* 790 F.2d 589, 597-598 (7th Cir.1986). This Court, however, recognized in *Hadi v. Horn,* 830 F.2d 779, 784 n. 6 (7th Cir.1987), that "*O'Lone* and *Turner* have served to clarify and amplify, rather than depart from, [the *Caldwell*] standard."

7. In the revised version of A.R. 808 responding to the broad 1981 *Meeks* decree, "essential services" was substituted for "programmatic accommodations" to mesh with that decree (646 F.Supp. at 1385).

8. Because a timely and proper objection to reference to a special master was made and later overruled, appellants can petition this Court for review on appeal. *Jack Walters & Sons Corp. v. Morton Bldg.,* 737 F.2d 698, 712-713 (7th Cir.1984), certiorari denied, 469 U.S. 1018, 105 S.Ct. 432, 83 L.Ed.2d 359.

---

```
   THABO            *      INMATE DISCIPLINE DATA          *      01-27-2020
PAGE 001 OF 001 *    CHRONOLOGICAL DISCIPLINARY RECORD     *      15:12:53


REGISTER NO: 12982-104 NAME..: GOTTESFELD, MARTIN
FUNCTION...: PRT        FORMAT: CHRONO    LIMIT TO ___ MOS PRIOR TO 01-27-2020


-------------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 3338082 - SANCTIONED INCIDENT DATE/TIME: 12-06-2019 1920
DHO HEARING DATE/TIME: 12-20-2019 1120         DHO REPT DEL: 01-24-2020 1504
FACL/CHAIRPERSON.....: THA/D.MATTHEWS
REPORT REMARKS.......: I/M STATED HE WAS EXTORTING ANYONE
    204A EXTORTING/BLACKMAIL/PROTECTING - FREQ: 1
         DIS GCT    / 27 DAYS / CS
         COMP:010 LAW:P   TO PROMOTE CLEAR CONDUCT
         LP COMM    / 90 DAYS / CS
                   FROM: 12-20-2019  THRU: 03-18-2020
         COMP:   LAW:   TO PROMOTE CLEAR CONDUCT
         LP PHONE   / 90 DAYS / CS
                   FROM: 12-20-2019  THRU: 03-18-2020
         COMP:   LAW:   TO PROMOTE CLEAR CONDUCT
         MON FINE   / 50.00 DOLLARS / CS
         COMP:   LAW:   TO PROMOTE CLEAR CONDUCT
```

```
   G0005        TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED
```

**Attach. C**

```
THABO          *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *      01-27-2020
PAGE 001 OF                                                        10:01:59
     FUNCTION: L-P SCOPE: REG   EQ 12982-104    OUTPUT FORMAT: FULL
------LIMITED TO SUBMISSIONS WHICH MATCH ALL LIMITATIONS KEYED BELOW----------
DT RCV: FROM _____ THRU _____ DT STS: FROM _____ THRU _____
DT STS: FROM ____ TO ____ DAYS BEFORE "OR" FROM ____ TO ____ DAYS AFTER DT RDU
DT TDU: FROM ____ TO ____ DAYS BEFORE "OR" FROM ____ TO ____ DAYS AFTER DT TRT
STS/REAS: _____ _____ _____ _____ _____ _____ _____ _____ _____ _____
SUBJECTS: _____ _____ _____ _____ _____ _____ _____ _____ _____ _____
EXTENDED: _ REMEDY LEVEL: _ _            RECEIPT: _ _ _ "OR" EXTENSION: _ _ _
RCV  OFC : EQ _____     _____     _____     _____     _____     _____
TRACK:  DEPT: _____ _____ _____ _____ _____ _____
        PERSON: ____     _____     _____     _____     _____     _____
          TYPE: ____     _____     _____     _____     _____     _____
EVNT FACL: EQ _____     _____     _____     _____     _____     _____
RCV FACL.: EQ _____     _____     _____     _____     _____     _____
RCV UN/LC: EQ _____ _____ _____ _____ _____ _____
RCV QTR..: EQ _____ _____ _____ _____ _____ _____
ORIG FACL: EQ _____     _____     _____     _____     _____     _____
ORG UN/LC: EQ _____ _____ _____ _____ _____ _____
ORIG QTR.: EQ _____ _____ _____ _____ _____ _____


G0002      MORE PAGES TO FOLLOW . . .
```

**Attach. D**                                                        **pg. 1**

```
THABO            *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *      01-27-2020
PAGE 002 OF      *              FULL SCREEN FORMAT            *      10:01:59


REGNO: 12982-104 NAME: GOTTESFELD, MARTIN
RSP OF...: THA UNT/LOC/DST: CMU                QTR.: D02-010LDS RCV OFC: THA
REMEDY ID: 977006-F1      SUB1: 15HS SUB2:     DATE RCV:    05-06-2019
UNT  RCV..:CMU            QTR RCV.: D04-041L   FACL RCV: THA
UNT  ORG..:CMU            QTR ORG.: D04-041L   FACL ORG: THA
EVT FACL.: THA    ACC LEV:                     RESP DUE:
ABSTRACT.: COMPLAINTS AGAINST CMU
STATUS DT: 05-08-2019  STATUS CODE: REJ STATUS REASON: MSI ONE OTH
INCRPTNO.:            RCT:   EXT:  DATE ENTD: 05-08-2019
REMARKS..: DOES NOT STATE A SPECIFIC REQUEST OR RESOLUTION.



REGNO: 12982-104 NAME: GOTTESFELD, MARTIN
RSP OF...: THA UNT/LOC/DST: CMU                QTR.: D02-010LDS RCV OFC: THA
REMEDY ID: 977009-F1      SUB1: 15HS SUB2:     DATE RCV:    05-06-2019
UNT  RCV..:CMU            QTR RCV.: D04-041L   FACL RCV: THA
UNT  ORG..:CMU            QTR ORG.: D04-041L   FACL ORG: THA
EVT FACL.: THA    ACC LEV:                     RESP DUE:
ABSTRACT.: COMPLAINTS AGAINST CMU
STATUS DT: 05-08-2019  STATUS CODE: REJ STATUS REASON: MSI ONE OTH
INCRPTNO.:            RCT:   EXT:  DATE ENTD: 05-08-2019
REMARKS..: DOES NOT STATE A SPECIFIC REQUEST OR RESOLUTION.











G0002      MORE PAGES TO FOLLOW . . .
```

**Attach. D**                                                    **pg. 2**

```
  THABO         *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *      01-27-2020
PAGE 003 OF       *              FULL SCREEN FORMAT          *      10:01:59


REGNO: 12982-104 NAME: GOTTESFELD, MARTIN
RSP OF...: THA UNT/LOC/DST: CMU              QTR.: D02-010LDS RCV OFC: NCR
REMEDY ID: 978744-R1      SUB1: 34AM SUB2:       DATE RCV:   05-21-2019
UNT  RCV..:CMU           QTR RCV.: D04-041L      FACL RCV: THA
UNT  ORG..:CMU           QTR ORG.: D04-041L      FACL ORG: THA
EVT FACL.: THA    ACC LEV:                            RESP DUE:
ABSTRACT.: STAFF COMPLAINT
STATUS DT: 05-28-2019  STATUS CODE: REJ STATUS REASON: SEN
INCRPTNO.:             RCT:  EXT:  DATE ENTD: 05-28-2019
REMARKS..:




REGNO: 12982-104 NAME: GOTTESFELD, MARTIN
RSP OF...: THA UNT/LOC/DST: CMU              QTR.: D02-010LDS RCV OFC: THA
REMEDY ID: 977009-F2      SUB1: 15HS SUB2:       DATE RCV:   06-03-2019
UNT  RCV..:CMU           QTR RCV.: D04-041L      FACL RCV: THA
UNT  ORG..:CMU           QTR ORG.: D04-041L      FACL ORG: THA
EVT FACL.: THA    ACC LEV:                            RESP DUE:
ABSTRACT.: COMPLAINTS AGAINST CMU
STATUS DT: 06-03-2019  STATUS CODE: REJ STATUS REASON: MSI ONE OTH
INCRPTNO.:             RCT:  EXT:  DATE ENTD: 06-03-2019
REMARKS..: DOES NOT STATE A SPECIFIC REQUEST OR RESOLUTION.
           THERE ARE INCIDENT REPORTS AND 2 PAGES ATTACHED WITH
           NO SPECIFIC REQUEST.
```

```
G0002      MORE PAGES TO FOLLOW . . .
```

```
   THABO        *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *     01-27-2020
PAGE 004 OF      *              FULL SCREEN FORMAT           *     10:01:59


REGNO: 12982-104 NAME: GOTTESFELD, MARTIN
RSP OF...: THA UNT/LOC/DST: CMU              QTR.: D02-010LDS RCV OFC: THA
REMEDY ID: 979745-F1      SUB1: 16ZS SUB2:        DATE RCV:   06-03-2019
UNT  RCV..:CMU           QTR RCV: D04-041L      FACL RCV: THA
UNT  ORG..:CMU           QTR ORG.: D04-041L     FACL ORG: THA
EVT FACL.: THA   ACC LEV:  THA  1 NCR  1 BOP  1  RESP DUE:  SUN  06-23-2019
ABSTRACT.: STATES HIS MAIL IS NOT BEING HANDLED REASONABLY
STATUS DT: 07-15-2019  STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.:               RCT: P EXT:  DATE ENTD: 06-04-2019
REMARKS..:



                  CURRENT INVESTIGATIVE AND RELIEF TRACKING DATA
DATE DUE          DEPARTMENT   TO    DATE ASSN    TRK TYPE    DATE RETURNED
FRI 06-14-2019    ISM          SM    06-04-2019     INV        06-11-2019




REGNO: 12982-104 NAME: GOTTESFELD, MARTIN
RSP OF...: THA UNT/LOC/DST: CMU              QTR.: D02-010LDS RCV OFC: THA
REMEDY ID: 979747-F1      SUB1: 15HS SUB2:        DATE RCV:   06-03-2019
UNT  RCV..:CMU           QTR RCV: D04-041L      FACL RCV: THA
UNT  ORG..:CMU           QTR ORG.: D04-041L     FACL ORG: THA
EVT FACL.: THA   ACC LEV:  THA  1 NCR  1 BOP  1  RESP DUE:  SUN  06-23-2019
ABSTRACT.: CONCERNS REGARDING CMU POLICY AND PROCEDURE
STATUS DT: 07-01-2019  STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.:               RCT: P EXT:  DATE ENTD: 06-04-2019
REMARKS..:


                  CURRENT INVESTIGATIVE AND RELIEF TRACKING DATA
DATE DUE          DEPARTMENT   TO    DATE ASSN    TRK TYPE    DATE RETURNED
FRI 06-14-2019    UNT MGT      DT    06-04-2019     INV        06-10-2019











G0002      MORE PAGES TO FOLLOW . . .
```

**Attach. D**                                                    **pg. 4**

```
THABO         *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *      01-27-2020
PAGE 005 OF      *              FULL SCREEN FORMAT          *      10:01:59


REGNO: 12982-104 NAME: GOTTESFELD, MARTIN
RSP OF...: THA UNT/LOC/DST: CMU                   QTR.: D02-010LDS RCV OFC: THA
REMEDY ID: 977006-F2      SUB1: 15HS SUB2:        DATE RCV:   06-04-2019
UNT  RCV..:CMU          QTR RCV.: D04-041L       FACL RCV: THA
UNT  ORG..:CMU          QTR ORG.: D04-041L       FACL ORG: THA
EVT FACL.: THA    ACC LEV:                             RESP DUE:
ABSTRACT.: COMPLAINTS AGAINST CMU
STATUS DT: 06-04-2019  STATUS CODE: REJ STATUS REASON: MSI ONE OTH
INCRPTNO.:           RCT:    EXT:   DATE ENTD: 06-04-2019
REMARKS..: NUMEROUS DOCUMENTS CONTINUE TO BE ATTACHED WITHOUT
           A SPECIFIC REQUEST OR SPECIFIC RESOLUTION ON THE
           CORRECT FORM W/ONLY 1 PC OF DOCUMENTATION ATTACHED


REGNO: 12982-104 NAME: GOTTESFELD, MARTIN
RSP OF...: THA UNT/LOC/DST: CMU                   QTR.: D02-010LDS RCV OFC: THA
REMEDY ID: 979748-F1      SUB1: 34ZS SUB2:        DATE RCV:   06-04-2019
UNT  RCV..:CMU          QTR RCV.: D04-041L       FACL RCV: THA
UNT  ORG..:CMU          QTR ORG.: D04-041L       FACL ORG: THA
EVT FACL.: THA    ACC LEV:                             RESP DUE:
ABSTRACT.: CONCERNS WITH CMU STAFF WEARING NAME TAGS
STATUS DT: 06-04-2019  STATUS CODE: REJ STATUS REASON: SEN OTH
INCRPTNO.:           RCT:    EXT:   DATE ENTD: 06-04-2019
REMARKS..: YOU LIST MULTIPLE ISSUES AND CLAIM SENSITIVE
           WHEN IT IS NOT


G0002      MORE PAGES TO FOLLOW . . .
```

```
    THABO         *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *     01-27-2020
PAGE 006 OF      *                 FULL SCREEN FORMAT          *     10:01:59


REGNO: 12982-104 NAME: GOTTESFELD, MARTIN
RSP OF...: THA UNT/LOC/DST: CMU              QTR.: D02-010LDS RCV OFC: THA
REMEDY ID: 980471-F1      SUB1: 15HS SUB2: 16AS DATE RCV:   06-11-2019
UNT  RCV..:CMU           QTR RCV.: D04-041L      FACL RCV: THA
UNT  ORG..:CMU           QTR ORG.: D04-041L      FACL ORG: THA
EVT FACL.: THA    ACC LEV:  THA  1 NCR  1 BOP  1   RESP DUE: MON  07-01-2019
ABSTRACT.: STATES WALL STREET JOURNAL DELIVERY DELAYED
STATUS DT: 06-18-2019  STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.:              RCT: P EXT:  DATE ENTD: 06-11-2019
REMARKS..:



              CURRENT INVESTIGATIVE AND RELIEF TRACKING DATA
DATE DUE            DEPARTMENT   TO    DATE ASSN   TRK TYPE   DATE RETURNED
FRI 06-21-2019     UNT MGT      DT    06-11-2019    INV        06-12-2019




REGNO: 12982-104 NAME: GOTTESFELD, MARTIN
RSP OF...: THA UNT/LOC/DST: CMU              QTR.: D02-010LDS RCV OFC: THA
REMEDY ID: 980704-F1      SUB1: 16GS SUB2:      DATE RCV:   06-12-2019
UNT  RCV..:CMU           QTR RCV.: D04-041L      FACL RCV: THA
UNT  ORG..:CMU           QTR ORG.: D04-041L      FACL ORG: THA
EVT FACL.: THA    ACC LEV:  THA  1                 RESP DUE: TUE  07-02-2019
ABSTRACT.: REQUESTS TRULINCS CONTACTS BE APPROVED
STATUS DT: 06-26-2019  STATUS CODE: CLO STATUS REASON: WDN
INCRPTNO.:              RCT: P EXT:  DATE ENTD: 06-12-2019
REMARKS..:



              CURRENT INVESTIGATIVE AND RELIEF TRACKING DATA
DATE DUE            DEPARTMENT   TO    DATE ASSN   TRK TYPE   DATE RETURNED
SAT 06-22-2019     UNT MGT      DT    06-12-2019    INV        06-17-2019












G0002      MORE PAGES TO FOLLOW . . .
```

**Attach. D**                                                              **pg. 6**

```
  THABO          *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *      01-27-2020
PAGE 007 OF     *              FULL SCREEN FORMAT          *      10:01:59


REGNO: 12982-104 NAME: GOTTESFELD, MARTIN
RSP OF...: THA UNT/LOC/DST: CMU                QTR.: D02-010LDS RCV OFC: THA
REMEDY ID: 982366-F1      SUB1: 27BS SUB2: 27CS DATE RCV:   06-25-2019
UNT  RCV..:CMU            QTR RCV.: D04-041L      FACL RCV: THA
UNT  ORG..:CMU            QTR ORG.: D04-041L      FACL ORG: THA
EVT FACL.: THA    ACC LEV: THA  1                 RESP DUE:  MON  07-15-2019
ABSTRACT.: REQUESTS TOOTH BE PULLED
STATUS DT: 07-03-2019  STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.:              RCT: N EXT:  DATE ENTD: 06-25-2019
REMARKS..:



             CURRENT  INVESTIGATIVE  AND  RELIEF  TRACKING  DATA
DATE DUE          DEPARTMENT    TO    DATE ASSN    TRK TYPE    DATE RETURNED
WED 07-03-2019    MED SVC       RD    06-25-2019     INV        06-28-2019




REGNO: 12982-104 NAME: GOTTESFELD, MARTIN
RSP OF...: THA UNT/LOC/DST: CMU                QTR.: D02-010LDS RCV OFC: NCR
REMEDY ID: 983561-R1      SUB1: 33HM SUB2: 34ZM DATE RCV:   07-02-2019
UNT  RCV..:CMU            QTR RCV.: D04-041L      FACL RCV: THA
UNT  ORG..:CMU            QTR ORG.: D04-041L      FACL ORG: THA
EVT FACL.: THA    ACC LEV:                        RESP DUE:
ABSTRACT.: APPEALING REJECTION OF BP-9
STATUS DT: 07-08-2019  STATUS CODE: REJ STATUS REASON: INS
INCRPTNO.:              RCT:   EXT:  DATE ENTD: 07-08-2019
REMARKS..:












G0002       MORE PAGES TO FOLLOW . . .
```

**Attach. D**                                                                 **pg. 7**

```
    THABO          *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *      01-27-2020
PAGE 008 OF      *              FULL SCREEN FORMAT            *      10:01:59


REGNO: 12982-104 NAME: GOTTESFELD, MARTIN
RSP OF...: THA UNT/LOC/DST: CMU            QTR.: D02-010LDS RCV OFC: NCR
REMEDY ID: 983562-R1      SUB1: 33HM SUB2: 34ZM DATE RCV:   07-02-2019
UNT  RCV..:CMU          QTR RCV.: D04-041L     FACL RCV: THA
UNT  ORG..:CMU          QTR ORG.: D04-041L     FACL ORG: THA
EVT FACL.: THA    ACC LEV:                       RESP DUE:
ABSTRACT.: APPEALING REJECTION OF BP-9
STATUS DT: 07-08-2019  STATUS CODE: REJ STATUS REASON: INS
INCRPTNO.:            RCT:  EXT:  DATE ENTD: 07-08-2019
REMARKS..:




REGNO: 12982-104 NAME: GOTTESFELD, MARTIN
RSP OF...: THA UNT/LOC/DST: CMU            QTR.: D02-010LDS RCV OFC: NCR
REMEDY ID: 983560-R1      SUB1: 33HM SUB2: 34ZM DATE RCV:   07-05-2019
UNT  RCV..:CMU          QTR RCV.: D04-041L     FACL RCV: THA
UNT  ORG..:          QTR ORG.:          FACL ORG:
EVT FACL.: THA    ACC LEV:                       RESP DUE:
ABSTRACT.: APPEALING REJECTION OF BP-9
STATUS DT: 07-08-2019  STATUS CODE: VOD STATUS REASON:
INCRPTNO.:            RCT:  EXT:  DATE ENTD: 07-08-2019
REMARKS..: ERROR, DATE RECEIVED WAS 7-2-2019
```

```
G0002      MORE PAGES TO FOLLOW . . .
```

**Attach. D**                                                                                    **pg. 8**

```
THABO          *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *    01-27-2020
PAGE 009 OF      *              FULL SCREEN FORMAT           *    10:01:59


REGNO: 12982-104 NAME: GOTTESFELD, MARTIN
RSP OF...: THA UNT/LOC/DST: CMU              QTR.: D02-010LDS RCV OFC: NCR
REMEDY ID: 977006-R1      SUB1: 15HS SUB2:       DATE RCV:   07-05-2019
UNT  RCV..:CMU          QTR RCV.: D04-041L      FACL RCV: THA
UNT  ORG..:CMU          QTR ORG.: D04-041L      FACL ORG: THA
EVT FACL.: THA    ACC LEV:                          RESP DUE:
ABSTRACT.: COMPLAINTS AGAINST CMU
STATUS DT: 07-14-2019  STATUS CODE: REJ STATUS REASON: OTH
INCRPTNO.:           RCT:   EXT:  DATE ENTD: 07-14-2019
REMARKS..: CONCUR WITH INSTITUTION REJECTION, CORRECT ISSUES AT
            THAT LEVEL PRIOR TO FILING AT THIS LEVEL.



REGNO: 12982-104 NAME: GOTTESFELD, MARTIN
RSP OF...: THA UNT/LOC/DST: CMU              QTR.: D02-010LDS RCV OFC: THA
REMEDY ID: 984009-F1      SUB1: 27ZS SUB2:       DATE RCV:   07-12-2019
UNT  RCV..:CMU          QTR RCV.: D04-041L      FACL RCV: THA
UNT  ORG..:CMU          QTR ORG.: D04-041L      FACL ORG: THA
EVT FACL.: THA    ACC LEV:  THA  1              RESP DUE: THU  08-01-2019
ABSTRACT.: REQUEST WISDOM TOOTH REMOVED/APPT WITH HYGIENIST
STATUS DT: 08-05-2019  STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.:           RCT: P EXT:  DATE ENTD: 07-12-2019
REMARKS..:


                CURRENT INVESTIGATIVE AND RELIEF TRACKING DATA
DATE DUE          DEPARTMENT   TO    DATE ASSN    TRK TYPE    DATE RETURNED
FRI 07-19-2019    MED SVC      SB    07-12-2019   INV         07-22-2019
```

```
G0002      MORE PAGES TO FOLLOW . . .
```

**Attach. D**                                                                 **pg. 9**

```
     THABO          *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *      01-27-2020
PAGE 010 OF      *               FULL SCREEN FORMAT            *      10:01:59


REGNO: 12982-104 NAME: GOTTESFELD, MARTIN
RSP OF...: THA UNT/LOC/DST: CMU                  QTR.: D02-010LDS RCV OFC: BOP
REMEDY ID: 978744-A1       SUB1: 34AM SUB2:      DATE RCV:   07-15-2019
UNT  RCV..:CMU          QTR RCV.: D04-041L       FACL RCV: THA
UNT  ORG..:CMU          QTR ORG.: D04-041L       FACL ORG: THA
EVT FACL.: THA    ACC LEV:                            RESP DUE:
ABSTRACT.: STAFF COMPLAINT
STATUS DT: 07-25-2019  STATUS CODE: REJ STATUS REASON: WRL DIR OTH
INCRPTNO.:            RCT:   EXT:   DATE ENTD: 07-25-2019
REMARKS..: START APPEAL AT INSTITUTIONAL LEVEL SO WARDEN CAN
           ADDRESS YOUR CONCERN



REGNO: 12982-104 NAME: GOTTESFELD, MARTIN
RSP OF...: THA UNT/LOC/DST: CMU                  QTR.: D02-010LDS RCV OFC: NCR
REMEDY ID: 980471-R1       SUB1: 15HS SUB2: 16AS DATE RCV:   07-16-2019
UNT  RCV..:CMU          QTR RCV.: D04-041L       FACL RCV: THA
UNT  ORG..:CMU          QTR ORG.: D04-041L       FACL ORG: THA
EVT FACL.: THA    ACC LEV:  THA  1 NCR  1 BOP  1   RESP DUE:  THU  08-15-2019
ABSTRACT.: STATES WALL STREET JOURNAL DELIVERY DELAYED
STATUS DT: 08-05-2019  STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.:            RCT: P EXT:   DATE ENTD: 07-16-2019
REMARKS..:










G0002      MORE PAGES TO FOLLOW . . .
```

```
        THABO         *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *      01-27-2020
PAGE 011 OF       *             FULL SCREEN FORMAT            *      10:01:59


REGNO: 12982-104 NAME: GOTTESFELD, MARTIN
RSP OF...: THA UNT/LOC/DST: CMU                QTR.: D02-010LDS RCV OFC: THA
REMEDY ID: 984449-F1      SUB1: 15HS SUB2:     DATE RCV:   07-17-2019
UNT  RCV..:CMU          QTR RCV: D04-041L     FACL RCV: THA
UNT  ORG..:CMU          QTR ORG.: D04-041L    FACL ORG: THA
EVT FACL.: THA    ACC LEV:  THA  1 NCR  1 BOP  1   RESP DUE:  TUE  08-06-2019
ABSTRACT.: POOR LIGHTING, VENTILATION,UNSANITARY CONDITIONS
STATUS DT: 08-05-2019  STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.:               RCT: P EXT:   DATE ENTD: 07-17-2019
REMARKS..:


               CURRENT INVESTIGATIVE AND RELIEF TRACKING DATA
DATE DUE           DEPARTMENT    TO    DATE ASSN     TRK TYPE    DATE RETURNED
WED 07-24-2019     FACL MGT     JP    07-17-2019      INV        07-30-2019




REGNO: 12982-104 NAME: GOTTESFELD, MARTIN
RSP OF...: THA UNT/LOC/DST: CMU                QTR.: D02-010LDS RCV OFC: NCR
REMEDY ID: 979745-R1      SUB1: 16ZS SUB2:     DATE RCV:   08-08-2019
UNT  RCV..:CMU          QTR RCV: D04-041L     FACL RCV: THA
UNT  ORG..:CMU          QTR ORG.: D04-041L    FACL ORG: THA
EVT FACL.: THA    ACC LEV:  THA  1 NCR  1 BOP  1   RESP DUE:  SAT  09-07-2019
ABSTRACT.: STATES HIS MAIL IS NOT BEING HANDLED REASONABLY
STATUS DT: 08-30-2019  STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.:               RCT: P EXT:   DATE ENTD: 08-13-2019
REMARKS..:


G0002      MORE PAGES TO FOLLOW . . .
```

```
THABO        *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *      01-27-2020
PAGE 012 OF      *               FULL SCREEN FORMAT          *      10:01:59


REGNO: 12982-104 NAME: GOTTESFELD, MARTIN
RSP OF...: THA UNT/LOC/DST: CMU              QTR.: D02-010LDS RCV OFC: NCR
REMEDY ID: 979747-R1      SUB1: 15HS SUB2:      DATE RCV:   08-08-2019
UNT  RCV..:CMU           QTR RCV.: D04-041L      FACL RCV: THA
UNT  ORG..:CMU           QTR ORG.: D04-041L      FACL ORG: THA
EVT FACL.: THA    ACC LEV: THA  1 NCR  1 BOP  1  RESP DUE: SAT  09-07-2019
ABSTRACT.: CONCERNS REGARDING CMU POLICY AND PROCEDURE
STATUS DT: 08-30-2019  STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.:            RCT: P EXT:  DATE ENTD: 08-16-2019
REMARKS..:




REGNO: 12982-104 NAME: GOTTESFELD, MARTIN
RSP OF...: THA UNT/LOC/DST: CMU              QTR.: D02-010LDS RCV OFC: NCR
REMEDY ID: 984449-R1      SUB1: 15HS SUB2:      DATE RCV:   09-06-2019
UNT  RCV..:CMU           QTR RCV.: D04-041L      FACL RCV: THA
UNT  ORG..:CMU           QTR ORG.: D04-041L      FACL ORG: THA
EVT FACL.: THA    ACC LEV: THA  1 NCR  1 BOP  1  RESP DUE: SUN  10-06-2019
ABSTRACT.: POOR LIGHTING, VENTILATION,UNSANITARY CONDITIONS
STATUS DT: 09-30-2019  STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.:            RCT: P EXT:  DATE ENTD: 09-08-2019
REMARKS..:












G0002      MORE PAGES TO FOLLOW . . .
```

**Attach. D**                                             **pg. 12**

```
   THABO          *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *      01-27-2020
PAGE 013 OF       *              FULL SCREEN FORMAT             *      10:01:59


REGNO: 12982-104 NAME: GOTTESFELD, MARTIN
RSP OF...: THA UNT/LOC/DST: CMU                 QTR.: D02-010LDS RCV OFC: THA
REMEDY ID: 994120-F1      SUB1: 15HS SUB2: 33BS DATE RCV:   09-23-2019
UNT  RCV..:CMU           QTR RCV.: D04-041L      FACL RCV: THA
UNT  ORG..:CMU           QTR ORG.: D04-041L      FACL ORG: THA
EVT FACL.: THA     ACC LEV: THA  1 NCR  2          RESP DUE:  SUN 10-13-2019
ABSTRACT.: FUNCTION OF PASTE TEXT NOT AVAILABLE ON LEXISNEXUS
STATUS DT: 11-08-2019  STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.:            RCT: P EXT:  DATE ENTD: 10-16-2019
REMARKS..:



                 CURRENT INVESTIGATIVE AND RELIEF TRACKING DATA
DATE DUE           DEPARTMENT   TO    DATE ASSN    TRK TYPE    DATE RETURNED
WED 10-23-2019     EDUC SVC     PW    10-16-2019     INV         11-01-2019




REGNO: 12982-104 NAME: GOTTESFELD, MARTIN
RSP OF...: THA UNT/LOC/DST: CMU                 QTR.: D02-010LDS RCV OFC: THA
REMEDY ID: 992982-F1      SUB1: 15HS SUB2:      DATE RCV:   10-01-2019
UNT  RCV..:CMU           QTR RCV.: D04-041L      FACL RCV: THA
UNT  ORG..:CMU           QTR ORG.: D04-041L      FACL ORG: THA
EVT FACL.: THA     ACC LEV:                        RESP DUE:
ABSTRACT.: CMU CONCERNS REGARDING LAW LIBRARY
STATUS DT: 10-03-2019  STATUS CODE: REJ STATUS REASON: INF
INCRPTNO.:            RCT:   EXT:  DATE ENTD: 10-03-2019
REMARKS..: YOU MUST ATTEMPT INFORMAL RESOLUTION









G0002      MORE PAGES TO FOLLOW . . .
```

**Attach. D**                                                         **pg. 13**

```
     THABO         *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *      01-27-2020
PAGE 014 OF        *             FULL SCREEN FORMAT          *      10:01:59


REGNO: 12982-104 NAME: GOTTESFELD, MARTIN
RSP OF...: THA UNT/LOC/DST: CMU                QTR.: D02-010LDS RCV OFC: BOP
REMEDY ID: 983562-A1      SUB1: 33HM SUB2: 34ZM DATE RCV:   10-02-2019
UNT  RCV..:CMU           QTR RCV.: D04-041L      FACL RCV: THA
UNT  ORG..:CMU           QTR ORG.: D04-041L      FACL ORG: THA
EVT FACL.: THA    ACC LEV:                          RESP DUE:
ABSTRACT.: APPEALING REJECTION OF BP-9
STATUS DT: 10-16-2019  STATUS CODE: REJ STATUS REASON: DIR
INCRPTNO.:               RCT:  EXT:  DATE ENTD: 10-16-2019
REMARKS..:




REGNO: 12982-104 NAME: GOTTESFELD, MARTIN
RSP OF...: THA UNT/LOC/DST: CMU                QTR.: D02-010LDS RCV OFC: BOP
REMEDY ID: 977006-A1      SUB1: 15HS SUB2:      DATE RCV:   10-03-2019
UNT  RCV..:CMU           QTR RCV.: D04-041L      FACL RCV: THA
UNT  ORG..:CMU           QTR ORG.: D04-041L      FACL ORG: THA
EVT FACL.: THA    ACC LEV:                          RESP DUE:
ABSTRACT.: COMPLAINTS AGAINST CMU
STATUS DT: 10-16-2019  STATUS CODE: REJ STATUS REASON: DIR OTH
INCRPTNO.:               RCT:  EXT:  DATE ENTD: 10-16-2019
REMARKS..: A REJECTION IS NOT A DENIAL. FOLLOW INSTRUCTIONS,
           MAKE CORRECTIONS, AND RESUBMIT AT THE APPROPRIATE
           LEVEL.






G0002      MORE PAGES TO FOLLOW . . .
```

```
     THABO        *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *     01-27-2020
PAGE 015 OF       *             FULL SCREEN FORMAT            *     10:01:59


REGNO: 12982-104 NAME: GOTTESFELD, MARTIN
RSP OF...: THA UNT/LOC/DST: CMU                QTR.: D02-010LDS RCV OFC: BOP
REMEDY ID: 983561-A1      SUB1: 33HM SUB2: 34ZM DATE RCV:   10-03-2019
UNT  RCV..:CMU           QTR RCV.: D04-041L      FACL RCV: THA
UNT  ORG..:CMU           QTR ORG.: D04-041L      FACL ORG: THA
EVT FACL.: THA    ACC LEV:                      RESP DUE:
ABSTRACT.: APPEALING REJECTION OF BP-9
STATUS DT: 10-16-2019  STATUS CODE: REJ STATUS REASON: DIR OTH
INCRPTNO.:            RCT:    EXT:   DATE ENTD: 10-16-2019
REMARKS..: A REJECTION IS NOT A DENIAL. FOLLOW INSTRUCTIONS,
           MAKE CORRECTIONS, AND RESUBMIT AT THE APPROPRIATE
           LEVEL.


REGNO: 12982-104 NAME: GOTTESFELD, MARTIN
RSP OF...: THA UNT/LOC/DST: CMU                QTR.: D02-010LDS RCV OFC: BOP
REMEDY ID: 979747-A1     SUB1: 15HM SUB2:      DATE RCV:   10-09-2019
UNT  RCV..:CMU           QTR RCV.: D04-041L      FACL RCV: THA
UNT  ORG..:CMU           QTR ORG.: D04-041L      FACL ORG: THA
EVT FACL.: THA    ACC LEV:  THA  1 NCR  1 BOP  1   RESP DUE:  SUN  12-08-2019
ABSTRACT.: CONCERNS REGARDING CMU POLICOES/PROCEDURES/RULES
STATUS DT: 11-21-2019  STATUS CODE: CLD STATUS REASON: DNY
INCRPTNO.:            RCT: P EXT: P DATE ENTD: 11-15-2019
REMARKS..:


G0002      MORE PAGES TO FOLLOW . . .
```

**Attach. D**                                                        **pg. 15**

```
REGNO: 12982-104 NAME: GOTTESFELD, MARTIN
RSP OF...: THA UNT/LOC/DST: CMU              QTR.: D02-010LDS RCV OFC: BOP
REMEDY ID: 979745-A1      SUB1: 16ZM SUB2:       DATE RCV:   10-09-2019
UNT  RCV..:CMU          QTR RCV.: D04-041L      FACL RCV: THA
UNT  ORG..:CMU          QTR ORG.: D04-041L      FACL ORG: THA
EVT FACL.: THA    ACC LEV:  THA  1 NCR  1 BOP  1   RESP DUE: SUN  12-08-2019
ABSTRACT.: STATES MAIL NOT BEING PROCESSED IN A TIMELY MANNER
STATUS DT: 11-21-2019  STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.:           RCT: P EXT: P DATE ENTD: 11-15-2019
REMARKS..:


REGNO: 12982-104 NAME: GOTTESFELD, MARTIN
RSP OF...: THA UNT/LOC/DST: CMU              QTR.: D02-010LDS RCV OFC: BOP
REMEDY ID: 980471-A1      SUB1: 15HS SUB2: 16AS DATE RCV:   10-15-2019
UNT  RCV..:CMU          QTR RCV.: D04-041L      FACL RCV: THA
UNT  ORG..:CMU          QTR ORG.: D04-041L      FACL ORG: THA
EVT FACL.: THA    ACC LEV:  THA  1 NCR  1 BOP  1   RESP DUE: SAT  12-14-2019
ABSTRACT.: STATES WALL STREET JOURNAL DELIVERY DELAYED
STATUS DT: 11-21-2019  STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.:           RCT: P EXT: P DATE ENTD: 10-21-2019
REMARKS..:




G0002      MORE PAGES TO FOLLOW . . .
```

**Attach. D**                    **pg. 16**

```
     THABO        *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *     01-27-2020
PAGE 017 OF       *              FULL SCREEN FORMAT            *     10:01:59


REGNO: 12982-104 NAME: GOTTESFELD, MARTIN
RSP OF...: THA UNT/LOC/DST: CMU                QTR.: D02-010LDS RCV OFC: THA
REMEDY ID: 994099-F1      SUB1: 33ZS SUB2:        DATE RCV:  10-16-2019
UNT  RCV..:CMU           QTR RCV: D04-041L       FACL RCV: THA
UNT  ORG..:CMU           QTR ORG.: D04-041L      FACL ORG: THA
EVT FACL.: THA    ACC LEV: THA  1 NCR  1          RESP DUE:  TUE  11-05-2019
ABSTRACT.: REQUESTS DOCUMENT FOR THE COURTS TO BE NOTARIZED
STATUS DT: 10-31-2019  STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.:               RCT: P EXT:  DATE ENTD: 10-16-2019
REMARKS..:


               CURRENT  INVESTIGATIVE AND RELIEF TRACKING DATA
DATE DUE            DEPARTMENT    TO    DATE ASSN    TRK TYPE    DATE RETURNED
WED 10-23-2019     UNT MGT       DT    10-16-2019      INV       10-22-2019




REGNO: 12982-104 NAME: GOTTESFELD, MARTIN
RSP OF...: THA UNT/LOC/DST: CMU                QTR.: D02-010LDS RCV OFC: BOP
REMEDY ID: 984449-A1      SUB1: 15HS SUB2:        DATE RCV:  11-04-2019
UNT  RCV..:CMU           QTR RCV: D04-041L       FACL RCV: THA
UNT  ORG..:CMU           QTR ORG.: D04-041L      FACL ORG: THA
EVT FACL.: THA    ACC LEV: THA  1 NCR  1 BOP  1   RESP DUE:  FRI  01-03-2020
ABSTRACT.: POOR LIGHTING, VENTILATION,UNSANITARY CONDITIONS
STATUS DT: 12-27-2019  STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.:               RCT: P EXT: P DATE ENTD: 11-15-2019
REMARKS..:




G0002     MORE PAGES TO FOLLOW . . .
```

```
    THABO          *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *      01-27-2020
PAGE 018 OF      *               FULL SCREEN FORMAT           *      10:01:59


REGNO: 12982-104 NAME: GOTTESFELD, MARTIN
RSP OF...: THA UNT/LOC/DST: CMU              QTR.: D02-010LDS RCV OFC: NCR
REMEDY ID: 996452-R1      SUB1: 33HM SUB2:       DATE RCV:  11-06-2019
UNT  RCV..:CMU          QTR RCV.: D04-041L      FACL RCV: THA
UNT  ORG..:CMU          QTR ORG.: D04-041L      FACL ORG: THA
EVT FACL.: THA    ACC LEV:                       RESP DUE:
ABSTRACT.: ADMIN REMEDY PROCEDURES
STATUS DT: 11-07-2019  STATUS CODE: REJ STATUS REASON: INS IRQ OTH
INCRPTNO.:           RCT:   EXT:  DATE ENTD: 11-07-2019
REMARKS..: YOU FAILED TO INCLUDE A COPY OF THE WARDEN'S
           RESPONSE.



REGNO: 12982-104 NAME: GOTTESFELD, MARTIN
RSP OF...: THA UNT/LOC/DST: CMU              QTR.: D02-010LDS RCV OFC: THA
REMEDY ID: 997696-F1     SUB1: 24AS SUB2: 15HS DATE RCV:   11-18-2019
UNT  RCV..:CMU          QTR RCV.: D04-041L      FACL RCV: THA
UNT  ORG..:CMU          QTR ORG.: D04-041L      FACL ORG: THA
EVT FACL.: THA    ACC LEV:  THA 1              RESP DUE:  SUN 12-08-2019
ABSTRACT.: CONCERNS WITH FOOD SERVICE IN CMU
STATUS DT: 12-10-2019  STATUS CODE: CLD STATUS REASON: DNY
INCRPTNO.:           RCT: P EXT:  DATE ENTD: 11-20-2019
REMARKS..:


              CURRENT INVESTIGATIVE AND RELIEF TRACKING DATA
DATE DUE            DEPARTMENT   TO    DATE ASSN    TRK TYPE    DATE RETURNED
WED 11-27-2019     FOOD SVC     IO    11-20-2019    INV         11-27-2019
```

```
G0002      MORE PAGES TO FOLLOW . . .
```

```
       THABO        *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *      01-27-2020
  PAGE 019 OF       *             FULL SCREEN FORMAT             *      10:01:59


  REGNO: 12982-104 NAME: GOTTESFELD, MARTIN
  RSP OF...: THA UNT/LOC/DST: CMU                QTR.: D02-010LDS RCV OFC: THA
  REMEDY ID: 997702-F1     SUB1: 25ES SUB2:      DATE RCV:   11-18-2019
  UNT  RCV..:CMU          QTR RCV.: D04-041L     FACL RCV: THA
  UNT  ORG..:CMU          QTR ORG.: D04-041L     FACL ORG: THA
  EVT FACL.: THA    ACC LEV: THA  1              RESP DUE:  SUN 12-08-2019
  ABSTRACT.: REQUESTS WATCHES TO BE SOLD BY COMMISSARY
  STATUS DT: 12-05-2019  STATUS CODE: CLO STATUS REASON: XPL
  INCRPTNO.:               RCT: P EXT:  DATE ENTD: 11-20-2019
  REMARKS..:



                   CURRENT INVESTIGATIVE AND RELIEF TRACKING DATA
  DATE DUE          DEPARTMENT   TO    DATE ASSN   TRK TYPE    DATE RETURNED
  WED 11-27-2019    FIN MGT      DF    11-20-2019    INV       11-25-2019




  REGNO: 12982-104 NAME: GOTTESFELD, MARTIN
  RSP OF...: THA UNT/LOC/DST: CMU                QTR.: D02-010LDS RCV OFC: NCR
  REMEDY ID: 994099-R1     SUB1: 33ZS SUB2:      DATE RCV:   11-22-2019
  UNT  RCV..:CMU          QTR RCV.: D04-041L     FACL RCV: THA
  UNT  ORG..:CMU          QTR ORG.: D04-041L     FACL ORG: THA
  EVT FACL.: THA    ACC LEV: THA  1 NCR  1       RESP DUE:  TUE 01-21-2020
  ABSTRACT.: REQUESTS DOCUMENT FOR THE COURTS TO BE NOTARIZED
  STATUS DT: 12-26-2019  STATUS CODE: CLO STATUS REASON: XPL
  INCRPTNO.:               RCT: P EXT: P DATE ENTD: 12-04-2019
  REMARKS..:












  G0002     MORE PAGES TO FOLLOW . . .
```

```
     THABO          *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *      01-27-2020
 PAGE 020 OF      *              FULL SCREEN FORMAT            *      10:01:59


 REGNO: 12982-104 NAME: GOTTESFELD, MARTIN
 RSP OF...: THA UNT/LOC/DST: CMU            QTR.: D02-010LDS RCV OFC: NCR
 REMEDY ID: 994120-R1      SUB1: 15HS SUB2: 33BS DATE RCV:   11-22-2019
 UNT  RCV..:CMU          QTR RCV.: D04-041L      FACL RCV: THA
 UNT  ORG..:CMU          QTR ORG.: D04-041L      FACL ORG: THA
 EVT FACL.: THA    ACC LEV: THA  1 NCR  2          RESP DUE:
 ABSTRACT.: FUNCTION OF PASTE TEXT NOT AVAILABLE ON LEXISNEXUS
 STATUS DT: 12-04-2019  STATUS CODE: REJ STATUS REASON: IRQ RSR
 INCRPTNO.:          RCT:  EXT:  DATE ENTD: 12-04-2019
 REMARKS..:




 REGNO: 12982-104 NAME: GOTTESFELD, MARTIN
 RSP OF...: THA UNT/LOC/DST: CMU            QTR.: D02-010LDS RCV OFC: BOP
 REMEDY ID: 996452-A1     SUB1: 33HM SUB2:      DATE RCV:   12-09-2019
 UNT  RCV..:CMU          QTR RCV.: D02-010LDS   FACL RCV: THA
 UNT  ORG..:CMU          QTR ORG.: D04-041L     FACL ORG: THA
 EVT FACL.: THA    ACC LEV:                       RESP DUE:
 ABSTRACT.: ADMIN REMEDY PROCEDURES
 STATUS DT: 12-13-2019  STATUS CODE: REJ STATUS REASON: DIR
 INCRPTNO.:          RCT:  EXT:  DATE ENTD: 12-13-2019
 REMARKS..:
```

```
 G0002       MORE PAGES TO FOLLOW . . .
```

```
     THABO          *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *      01-27-2020
PAGE 021 OF      *                FULL SCREEN FORMAT               *    10:01:59


REGNO: 12982-104 NAME: GOTTESFELD, MARTIN
RSP OF...: THA UNT/LOC/DST: CMU                  QTR.: D02-010LDS RCV OFC: THA
REMEDY ID: 1000288-F1     SUB1: 25ES SUB2:      DATE RCV:   12-09-2019
UNT  RCV..:CMU          QTR RCV.: D02-010LDS    FACL RCV: THA
UNT  ORG..:CMU          QTR ORG.: D02-010LDS    FACL ORG: THA
EVT FACL.: THA    ACC LEV:  THA  1               RESP DUE:  SUN  12-29-2019
ABSTRACT.: REQUESTS MENS WATCHES BE SOLD IN COMMISSARY
STATUS DT: 01-22-2020  STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.:                  RCT: P EXT:  DATE ENTD: 12-13-2019
REMARKS..:



                 CURRENT INVESTIGATIVE AND RELIEF TRACKING DATA
DATE DUE           DEPARTMENT    TO     DATE ASSN    TRK TYPE    DATE RETURNED
FRI 12-20-2019     FIN MGT       DF     12-13-2019     INV        12-19-2019




REGNO: 12982-104 NAME: GOTTESFELD, MARTIN
RSP OF...: THA UNT/LOC/DST: CMU                  QTR.: D02-010LDS RCV OFC: NCR
REMEDY ID: 994120-R2      SUB1: 15HS SUB2: 33BS DATE RCV:   12-10-2019
UNT  RCV..:CMU          QTR RCV.: D02-010LDS    FACL RCV: THA
UNT  ORG..:CMU          QTR ORG.: D04-041L      FACL ORG: THA
EVT FACL.: THA    ACC LEV:  THA  1 NCR  2         RESP DUE:  THU  01-09-2020
ABSTRACT.: FUNCTION OF PASTE TEXT NOT AVAILABLE ON LEXISNEXUS
STATUS DT: 12-23-2019  STATUS CODE: CLO STATUS REASON: XPL
INCRPTNO.:                  RCT: P EXT:  DATE ENTD: 12-11-2019
REMARKS..:










G0002       MORE PAGES TO FOLLOW . . .
```

**Attach. D**                                        **pg. 21**

```
THABO          *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *      01-27-2020
PAGE 022 OF 022 *               FULL SCREEN FORMAT          *      10:01:59


REGNO: 12982-104 NAME: GOTTESFELD, MARTIN
RSP OF...: THA UNT/LOC/DST: CMU                QTR.: D02-010LDS RCV OFC: THA
REMEDY ID: 1000236-F1     SUB1: 17ZS SUB2: 15HS DATE RCV:   12-10-2019
UNT  RCV..:CMU         QTR RCV.: D02-010LDS    FACL RCV: THA
UNT  ORG..:CMU         QTR ORG.: D02-010LDS    FACL ORG: THA
EVT FACL.: THA    ACC LEV:  THA  1                 RESP DUE:  MON  12-30-2019
ABSTRACT.: REQUESTING ACCESS TO CONTACT OIG THROUGH TRULINCS
STATUS DT: 12-13-2019  STATUS CODE: ACC STATUS REASON:
INCRPTNO.:               RCT: P EXT:   DATE ENTD: 12-13-2019
REMARKS..:



                CURRENT INVESTIGATIVE AND RELIEF TRACKING DATA
DATE DUE           DEPARTMENT   TO    DATE ASSN    TRK TYPE    DATE RETURNED
THU 12-19-2019     UNT MGT      DT    12-13-2019     INV




REGNO: 12982-104 NAME: GOTTESFELD, MARTIN
RSP OF...: THA UNT/LOC/DST: CMU                QTR.: D02-010LDS RCV OFC: THA
REMEDY ID: 1000286-F1     SUB1: 25ES SUB2:      DATE RCV:   12-10-2019
UNT  RCV..:CMU         QTR RCV.: D02-010LDS    FACL RCV: THA
UNT  ORG..:CMU         QTR ORG.: D02-010LDS    FACL ORG: THA
EVT FACL.: THA    ACC LEV:  THA  1                 RESP DUE:  MON  12-30-2019
ABSTRACT.: REQUESTS MATTRESSES IN THE CMU REPLACED
STATUS DT: 12-13-2019  STATUS CODE: ACC STATUS REASON:
INCRPTNO.:               RCT: P EXT:   DATE ENTD: 12-13-2019
REMARKS..:



                CURRENT INVESTIGATIVE AND RELIEF TRACKING DATA
DATE DUE           DEPARTMENT   TO    DATE ASSN    TRK TYPE    DATE RETURNED
FRI 12-20-2019     FIN MGT      DF    12-13-2019     INV






           42 REMEDY SUBMISSION(S) SELECTED
G0000       TRANSACTION SUCCESSFULLY COMPLETED
```