UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| Martin S. Gottesfeld, pro se, Petitioner, v. B. Lammer, Warden of The FCI Terre Haute, Indiana, Respondent. | No.: 2:20-cv-00012-JRS-MJD |
|---|---|

### REPLY TO RESPONSIVE PLEADING (D.E. 21)

Petitioner Martin S. Gottesfeld (herein the "petitioner"), acting pro se, hereby replies to the respondent's pleading, found at instant docket entry (D.E.) 21, responding to the instant VERIFIED PETITION FOR A WRIT OF HABEAS CORPUS (28 U.S.C. § 2241), found at D.E. 1.

For the reasons provided infra, the respondent's responsive pleading is meritless and The Court must issue The Great Writ as originally petitioned. D.E. 1 at 1.

The petitioner understands the scarcity of judicial resources and the resultant need for judicial economy. He also knows that The Court knows the law better than he; and he believes that he can prove quickly that he is entitled to the relief requested using the following seven (7) pieces of evidence and authorities, to which ad seriatim he respectfully directs The Court's attention:

1) the instant demand, D.E. 21-1 at 23;
2) The relevant sections of D.C. Code, D.E. 21-3 at 30-33;
3) Title 28 C.F.R. § 503.1, showing that the BOP is a "person" under D.C. Code §§ 13-421 et seq., D.E. 22 at 3, quoting 28 C.F.R. § 503.1;
4) The relevant incident report, D.E. 21-3 at 13-15;
5) The Eisele BP-8 § 1b, D.E. 18 at 30;
6) This Court's prior decision noting that BP-8 forms are "not recorded in the [BOP's] SENTRY database," and thus would not appear as implied in D.E. 21-1 at 3 ¶ 6. Barnett v. Harlow, 2019 U.S. Dist. LEXIS 94080, No. 2:18-cv-00397-JMS-MJD (S.D. Ind. June 5, 2019) at *7; and
7) The petitioner's verified and unrebutted allegation that he exhausted the available administrative-remedy procedures when he filed The

<u>Eisele BP-8</u> and was placed in solitary confinement without ever receiving a written response thereto. <u>D.E. 1</u> at 24 ¶¶ 124-127 and <u>Fed. R. Civ. P. 8(b)(6)</u>.

Should The Court now be satisfied, the petitioner asks that when it issues <u>The Great Writ</u> it also enter an order on his pending claims for judicial notice so as to perfect the record.

Should, however, The Court be left wanting, then the petitioner provides a thorough recitation of the relevant facts and law in the sections that follow.

## I. <u>PROCEDURAL HISTORY, INCORPORATION BY REFERENCE, & FED. R. CIV. P. 8(b)(6)</u>

The petitioner filed the instant petition in accordance with <u>the prison-mailbox rule</u> of <u>Houston v. Lack</u>, 487 U.S. 266 (1988), on Sunday, December 29th, 2019, and it was entered on Tuesday, January 7th, 2020. <u>D.E. 1</u> at 40 and <u>D.E. 1-3</u>; and <u>the instant docket report</u>.

The instant petition--as captioned--is verified as required by <u>28 U.S.C. § 2242</u>. <u>D.E. 1</u> at 40 § VII Verification.

The five-dollar-($5) fee is paid. <u>D.E. 11</u>.

The Court served the instant <u>ORDER TO SHOW CAUSE</u> (<u>D.E 7</u>) on Friday, January 10th, 2020. <u>The instant docket report</u>.

Therein, The Court ordered the respondent to answer the petition on or before Friday, February 21st, 2020. <u>D.E. 7</u> at 1 ¶ 2.

The respondent indeed filed a responsive pleading on Friday, February 21st, 2020. <u>D.E. 21</u> and <u>the instant docket report</u>.

The petitioner, in turn, was required to file this instant reply by today, Friday, March 20th, 2020. <u>D.E. 7</u> at 1 ¶ 2.

> <u>Effect of Failing to Deny</u>. An allegation---other than one relating to the amount of damages---is admitted if a responsive pleading is required and the allegation is not denied.
> <u>Fed. R. Civ. P. 8(b)(6)</u> (<u>emphasis</u> in original).

The instant petition seeks no "amount of damages" whatsoever. D.E. 1 at 23 ¶ 118; at 8 ¶ 30, citing Castro v. United States, 540 U.S. 375 (2003); and at 38 ¶ 184, citing same.

Further, the respondent clearly understood that "a responsive pleading is required" and stipulated to this fact. "The Court ordered the government to respond to the Petition on or before February 21, 2020." D.E. 21 at 4, citing D.E. 7 at 1.

Therefore, Fed. R. Civ. P. 8(6)(b) applies to the allegations in the instant petition.

In turn, the petitioner respectfully directs The Court's attention again to the instant **VERIFIED PETITION FOR A WRIT OF HABEAS CORPUS (28 U.S.C. § 2241)** and the exhibits thereto. D.E. 1 and D.E. 1-1.

The petitioner also files simul et semel and hereby and herein reincorporates by reference his **MOTION FOR SANCTIONS (FED. R. CIV. P. 11, S.D. IND. L.R. 83.5(e))** (herein Sanctions), **CLAIM FOR MANDATORY JUDICIAL NOTICE, BY AFFIDAVIT, FED. R. EVID. 201(c)(2)** (herein RFA), and **SECOND MOTION FOR SUMMARY JUDGMENT (FED. R. CIV. P. 56 AND S.D. IND. L.R. 56.1)** (herein SJ).

The petitioner additionally hereby and herein reincorporates by reference his previous claims for mandatory judicial notice made pursuant to Fed. R. Evid. 201(c)(2) and found at D.E. 12, D.E. 14, D.E. 18, and D.E. 22; as well as his **MOTION FOR ENTRY OF ORDER ON MOTIONS (S.D. IND. L.R. 7.1(c)(5))** and his **CLAIM FOR MANDATORY JUDICIAL NOTICE (FED. R. EVID. 201(c)(2))** filed simul et semel on Friday, March 13th, 2020.

Finally, the petitioner notes the respondent's misleading and gratuitous ad hominem attacks against him. D.E. 21 at 1 n. 1 and D.E. 21-1 at 3 ¶ 4, inter alia.

To set straight the record on these and other relevant matters as required by 28 U.S.C. § 2248, the petitioner herewith provides and

respectfully directs The Court's attention to the following four (4) exhibits:

- Exhibit 1 hereto, Declaration of Martin S. Gottesfeld (Friday, March 20th, 2020);
- Exhibit 2 hereto, Michelle Malkin, The brutal battle against medical kidnappers, MichelleMalkin.com (June 28th 2017);
- Exhibit 3 hereto, Frank Camp, 'Guardian Hacktavist' Martin Gottesfeld Convicted; Faces Up To 15 Years In Prison, The DailyWire (August 4th, 2018); and
- Exhibit 4 hereto, David Kushner, The Hacker Who Cared Too Much: How a Crusade to Save Children Landed a Hacker in Prison, Rolling Stone (June 29th, 2017);

The petitioner again notes The Standards of Professional Conduct within the Seventh Federal Judicial Circuit Lawyers' Duties to Other Counsel Rule 2. He is confident that The Honorable Court is unamused and unswayed by the respondent's attempt to bias these proceedings and introduce irrelevant distractions through his inappropriate ad hominem attacks.

## II. AS STATED, THE PETITIONER EXHAUSTED THE AVAILABLE ADMINISTRATIVE REMEDIES.

The petitioner could hardly have been clearer than the following:

117. Under controlling Seventh Circuit precedents, the petitioner exhausted the [administrative-remedy program] before Rebekka Eisele submitted the latest retaliatory, untimely, manifestly-unconstitutional, and frivolous incident report against him. The subsequent actions and omissions of the respondent and his agents then rendered the [administrative-remedy program] unavailable to the petitioner.

D.E. 1 at 23 § IV The Petitioner Exhausted the Available Administrative-Remedy Procedures ¶ 117.

Please see also D.E. 1 at 3 ¶ 6 (emphasis in original):

6. The petitioner, as detailed infra, exhausted the relevant procedures available to him through the respondent's administrative-remedy program (herein the "ARP"), as required by 42 U.S.C. § 1997e(a) of The Prison Litigation Reform Act.

The respondent is unable to rebut this simple claim, so his counsel went to the ground of scoundrels: fraudulent misrepresentation. Sanctions at 3-4, citing D.E. 21 at 7, D.E. 1 at 3 ¶ 6 and at 23 § IV, Fed. R. Civ. P.

11(b)(1-3), Indiana Rules of Professional Conduct 3.3(a)(1) and 3.1, and The Standards For Professional Conduct Within The Seventh Federal Judicial Circuit Lawyers' Duties to the Court No. 5 and Lawyers' Duties to Other Counsel No. 29.

Now, unable to explain her misconduct, counsel for the respondent has failed to remedy her breathless misrepresentations to This Court within the safe-harbor period provided by Fed. R. Civ. P. 11(c)(2), Fed. R. Civ. P. 5(b)(2)(C), and Fed. R. Civ. P. 6(d).

The petitioner need say no more on the topic of exhaustion. Since he does respect the scarcity of judicial resources, however, he notes D.E. 18 at 30, i.e. The Eisele BP-8--filed and entered in the instant case well before D.E. 21. The petitioner further notes his verified and unrebutted allegation that The Eisele BP-8 went unanswered. D.E. 1 at 24 ¶¶ 124-125. Instead of such a rebuttal, the respondent again attempts to mislead The Court. Exhibit 1 hereto at 2 ¶¶ 18-19 and at 4 ¶¶ 31-37; and Barnett, supra, at *7.

Nor did the respondent rebut the petitioner's precedent-based argument that the respondent's failure to answer The Eisele BP-8 rendered the administrative-remedy program (herein the "ARP") an exhausted and unavailable "dead end." D.E. 1 at 24 ¶¶ 126-127, quoting Ross v. Blake, 136 S. Ct. 1850, 1859-60 (2006); and Turley v. Rednour, 729 F.3d 645, 650 n. 3 (7th Cir. 2013) ("[W]hen the prisoner follows procedure but receives no response due to error by the prison, this court has found that the prisoner exhausted his administrative remedies"); and citing in further support Tullis v. Shaw, 676 Fed. Appx. 580 (7th Cir. January 19, 2017) (quoting same); Ramirez v. Young, 906 F.3d 530, 533 (7th Cir. 2018); and Dole v. Chandler, 438 F.3d 804, 809 (7th Cir. 2006).

Please see also D.E. 1 at 25 ¶ 131, quoting Lewis v. Washington, 300 F.3d 829, 833 (7th Cir. 2002) (internal citations omitted) ("We join the Eighth and

Fifth circuits on this issue because we refuse to interpret the PLRA 'So narrowly as to... permit [prison officials] to exploit the exhaustion requirement through indefinite delay in responding to grievances.'")

Indeed, the respondent has now stipulated to these facts and this legal interpretation. RFA Exhibit 1 Request Numbers 16-17 and Attachment 1.

Further, even if the petitioner had not previously exhausted the ARP, the respondent does not rebut the petitioner's assertion, "the respondent and his agents then rendered unavailable to the petitioner further use of the ARP by thwarting his good-faith legitimate efforts to use the ARP through machination, misrepresentation and intimidation." D.E. 1 at 25 ¶¶ 129-130, citing Ross v. Blake at 1859-60, Kaba v. Stepp, 458 F.3d 678, 684-86 (7th Cir. 2006) (adopting Hemphill v. New York, 380 F.3d 680, 688 (2d Cir. 2004)), and Runyon v. Edwards, 2018 U.S. Dist. LEXIS 147003, No. 2:17-cv-00530-WTL-DLP (S.D. Ind. August 29, 2018) at *13-14 (citing Ross v. Blake at 1859-60).

Nowhere does the respondent distinguish the instant case from the above-cited authorities. There is not such distinction to be made. Indeed, the respondent instead omits citation to Ross, Kaba, Hemphill, and Runyon.

The respondent, however, does attempt to cite to manifestly-uncitable non-contrary non-opinions as if This Court will ignore Circuit Rule 32.1(d). The respondent also cites other pre-Ross authorities while omitting the sweeping effect Ross had on prison-exhaustion jurisprudence.

Moreover, the respondent now admits, "the demand also served as the petitioner's attempt at informal resolution pursuant to both 28 C.F.R. § 542.13(a) and 42 U.S.C. § 1997e(1)." RFA Exhibit 1 Request Number 9 (emphasis in original).

Thus, the petitioner reiterates his motion to estop the respondent based upon his retaliatory misconduct aimed specifically at rendering unavailable the ARP. D.E. 1 at 26 ¶¶ 133-136. The respondent seeks to drive home his point

that informal resolution is required for exhaustion. D.E. 21 at 6, citing 28 C.F.R. § 542.13 and Program Statement 1330.18 at 4; D.E. 21-1 at 2 ¶ 2 Step 1; inter alia. He should not now be heard to complain because he successfully bullied the petitioner. Congress had no intention in passing the PLRA of creating a kamikaze requirement and both The Seventh Circuit and The Supreme Court have rejected any such interpretation. Cf. D.E. 1 at 23 ¶¶ 117-136.

Should The Court be left with any lingering doubt as to the issue of exhaustion, then the petitioner moves for a hearing on the matter pursuant to Pavey v. Conley, 544 F.3d 739, 742 (7th Cir. 2008).

### III. AS STATED, THE DISCIPLINARY ACTION VIOLATES THE CONSTITUTION.

The respondent leaves unaddressed the unconstitutional nature of his misconduct. The petitioner now remedies that omission.

#### A. The Petitioner's Demand Is Constitutionally Protected.

The petitioner, once again, could hardly have been clearer than the following:

> 7. On Friday, December 6th, 2019, the petitioner sought to exercise his rights under The Constitution, specifically The First Amendment Petition Clause and The Fifth Amendment Due Process Clause; the long-arm statutes of Washington, DC, specifically D.C. Code §§ 13-421 et seq.; The Washington, DC, habeas statute, D.C. Code § 16-1905; 18 U.S.C. § 3621(c); and 28 C.F.R. § 542.13(a).
>
> D.E. 1 at 3 ¶ 7 (emphasis in original).
>
> 27. It is axiomatic that the petitioner could only claim his "Right to copy of commitment," as established by D.C. Code § 16-1905, by making a proper demand to the respondent and that to gain access to the courts he was required first to attempt informal resolution. Therefore, The Constitution protects the petitioner's demand.
>
> Id. at 7 ¶ 27 (emphasis in original) (internal citations omitted to 28 C.F.R. § 542.13(a) and 42 U.S.C. § 1997e(a)) (quoting Perez v. Fenoglio, 792 F.3d 768, 783 (7th Cir. 2015) ("[F]iling a nonfrivolous grievance is a constitutionally protected activity") and DeWalt v. Carter, 224 F.3d 607, 618 (7th Cir. 2000) ("Prisoners have a constitutional right of access to the courts that, by necessity, includes the right to pursue the administrative remedies that must be exhausted before a prisoner can seek

relief in court")).

The petitioner never imagined the need to debate, against counsel who (presumably) went to law school, that U.S. Const. amend. I protects his right to petition a non-federal court such as The D.C. Superior Court.

"Plaintiff's state-court lawsuit against Double Door was protected conduct under the petition clause of the First Amendment." Strauss v. City of Chicago, 436 F. Supp. 3d 1193, 1207 (N.D. Ill. 2018). Please see also Corgain v. Miller, 708 F.2d 1241, 1245 (7th Cir. 1983) (prisoners entitled to state-court access).

Nor should the petitioner need to distinguish the instant case from Guth v. Tazewell County, 698 F.3d 580, 586 (7th Cir. 2012), because non-federal court remedies cannot restore to him his earned good-conduct time and are thus insufficient to safeguard his protected conduct.

> Citation of authority is hardly needed for the proposition that an inmate's right of unfettered access to the courts is as fundamental a right as any other he may hold. All other rights of an inmate are illusory without it, being entirely dependent for their existence on the whim or caprice of the prison warden. The judiciary, moreover, has not been content merely to keep free the lines of communication between the inmate, the courts, and agencies of correction.
>
> Adams v. Carlson, 488 F.2d 619, 630 (7th Cir. 1973) (internal citations omitted).
>
> This principle encompassed not only the right directly to petition the court without unreasonable interference; but also the means necessary effectively to present any claims including the right to the assistance of a "jail house lawyer," and the right of access to necessary legal materials.
>
> Knell v. Bensinger, 522 F.2d 720, 726 (7th Cir. 1975) (internal citations omitted).

The respondent provides no counterargument to the petitioner's following assertion:

> 38. Moreover, as cited supra at 3 ¶5, "every prisoner has a constitutional right of access to the courts to present any complaints he might have concerning his confinement." A prisoner "cannot be disciplined in any manner for making a reasonable attempt to exercise that right."
>
> D.E. 1 at 9 ¶ 38 (emphasis in original), quoting Sellers v. Beto, 345

F. Supp. 499, 501 (S.D. Tex. 1972) (adopted by Morales v. Schmidt, 489 F.2d 1335, 1339 n. 6 (7th Cir. 1973)) and citing Hana v. Lane, 1987 U.S. Dist. LEXIS 16727, No. 84 C 1635 (N.D. Ill. February 11, 1987) at *7-9 (prison retaliated for threatening litigation).

Clearly, the petitioner was, in fact, "disciplined" for "making a reasonable atttempt to exercise" his "right of access to the courts." The respondent makes no attempt to demonstrate that the petitioner's demand was "unreasonable" and he cannot do so. For this reason alone, The Great Writ must issue.

### B. The Petitioner's Demand Is Not Cognizable As "Extortion."

The petitioner explicitly stated that his demand was made in good faith. D.E. 1 at 9 ¶ 36. The respondent articulates no reasonable basis to suspect the petitioner's motive.

The respondent, moreover, poses no challenge to the determination by a court in this circuit, "bad-faith threats of litigation do not constitute extortion." Id. at 9 ¶¶ 36-37, citing Edelson PC v. Bandes Law Firm PC, 2018 U.S. Dist. LEXIS 19423, No. 16 C 11057 (N.D. Ill. February 6, 2018) at *17-21 (collecting cases).

Motive aside, the respondent has not and cannot demonstrate any "wrongful use" on the part of the petitioner to support a charge of extortion against him as required by 18 U.S.C. § 1951(b)(2) and quoted in D.E. 1 at 9 ¶ 35.

There is nothing unlawful or illegitimate about the petitioner's demand. Indeed, it is made pursuant to an enacted statute using that statute's own language. The petitioner's notation in his demand that the respondent's failure to follow this statute incurs statutory liability for a "statutorily-mandated sum" is not extortion. D.E. 21-1 at 23 and Exhibit 1 hereto at 5 ¶ 44. The respondent is therefore unable to show that the petitioner's demand meets any cognizable definition of extortion. Only illegal means can be

extortionate.

> **extortion,** n. (14[th century])... **2.** The act or practice of obtaining something or compelling some action by illegal means, as by force or coercion.--Also termed <u>statutory extortion.</u>
>
> <u>Black's Law Dictionary</u> 664 (9th ed. 2009) (**emphases** in original); and <u>Black's Law Dictionary</u> 509 (abridged 10th ed. 2015) (same).

Please see also Exhibit 1 hereto at 5 ¶ 52, noting the lack of <u>mens rea.</u>

### C. The Petitioner Was Not Afforded Due Process.

56. "Due process requires that prisoners in disciplinary proceedings be given (1) advance (at least 24 hours before hearing) written notice of the claimed violations; (2) the opportunity to be heard before an impartial decision maker; (3) the opportunity to call witnesses and present documentary evidence (when consistent with institutional safety); and (4) a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action."

<u>D.E. 1</u> at 13 ¶ 56, quoting <u>Scruggs v. Jordan</u>, 485 F.3d 934, 939 (7th Cir. 2007) (internal quotation marks and citations omitted).

#### 1. The respondent prevented the petitioner from presenting documentary evidence.

The petitioner has provided unrebutted admissible evidence under the penalty of perjury that he was prevented from presenting documentary evidence in the form of the audio and video surveillance footage of agent of the respondent Ms. Rebekka Eisele accepting the demand from him on Friday, December 6th, 2019, and her clear comprehension and benign reaction to its contents. <u>D.E. 1</u> at 18 ¶ 82, at 19 ¶¶ 99-100, at 20 ¶¶ 103-107, and at 40 § VII Verification; and <u>Exhibit 1</u> hereto at 7 ¶¶ 58-59.

The respondent was required to turn over this exculpatory evidence. <u>D.E. 1</u> at 14 ¶ 57, citing <u>Scruggs v. Jordan</u> at 939. Yet he did not. Nor has he advanced any valid penological interest to withhold it, as would be required. <u>Scruggs</u> at 940; citing <u>Piggie v. Cotton</u>, 344 F.3d 674, 677 (7th Cir. 2003); and, in contrast, <u>Exhibit 1</u> hereto at 7 ¶ 57.

The DHO additionally had other evidence that now appears on the docket of

the instant case and that the petitioner had specifically and explicitly requested so he could prepare his written statement but that was never in fact turned over to him. D.E. 21-1 at 22-23 and 27-47; D.E. 1 at 13 ¶ 54, at 17 ¶¶ 81-84, at 18 ¶¶ 89-92, at 19 ¶¶ 94 and 98-100, at 20 ¶¶ 102-108, and at 22 ¶ 112. It is manifest that the respondent has no valid penological interest in withholding this information and he cites none. Exhibit 1 hereto at 7 ¶ 57.

This Bradyesque withholding of exculpatory evidence alone--as the petitioner pleaded at the outset, D.E. 1 at 18 ¶¶ 82-83, inter alia--requires that The Court issue The Great Writ, or in the alternative, issue a scheduling order for a discovery conference and initial disclosure.

## 2. The respondent prevented the petitioner from directly examining his witness.

The respondent similarly prevented the petitioner from calling his witness and directly examining him. Exhibit 1 hereto at 3 ¶ 21, at 6 ¶¶ 49 and 54.

If allowed to call this witness, the petitioner would have asked him the following questions, the answers to which would remove all doubt as to the accuracy of Exhibit 1 hereto at 1 ¶ 10:

- How long did Complainant Rebekka Eisele spend reading the demand on the night of Friday, December 6th, 2019?
- Did Complainant Rebekka Eisele give the petitioner a time frame in which to expect a formal answer to the demand, and if so, what was it?
- Has Complainant Rebekka Eisele ever been subject to such a demand in the past?
- When you personally served Complainant Rebekka Eisele with a similar demand based on the same statutes, did she file an incident report against you?
- Why do you think it is that when you personally served Complainant Rebekka Eisele with a similar demand based on the same statutes she did not file a similar incident report against you but she did against the petitioner?
- Did Complainant Eisele seem to fear "financial demise" due to your similar demand based upon the same statutes?

- Did you earlier demand based upon the same statutes actually bring about the "financial demise" of Complainant Eisele or anyone else?

### 3. DHO D. Matthews is a biased coconspirator whose credibilty is shot.

The instant petition clearly called into question the supposed impartiality of the alternate discipline-hearing officer (DHO). D.E. 1 at 11 ¶¶ 48-49, at 14 ¶¶ 64-65, at 16 ¶ 72, at 19 ¶¶ 97 and 99, at 29 ¶¶ 106 and 109, and at 22 ¶¶ 112-113 and 115-116.

The respondent never rebutted this allegation. And nowhere does Declarant D. Matthews establish his impartiality. Rather, he provided information that establishes his biases. D.E. 21-3.

Complainant Eisele, DHO Matthews, and Warden-Appointed Staff Representative (herein "WASR") Ms. T. Feuquay, for example, are each employed in the same primary position as case managers. D.E. 21-2 at 1 ¶ 1, D.E. 21-1 at 8 § II(E), and D.E. 21-3 at 1 ¶ 1. Far from a neutral and detached regional-office employee, DHO Matthews was the complainant's most intimate type of coworker. Expecting him to find against her and against the respondent is like expecting a DMV employee to side with a constituent over a fellow customer-service representative.

Indeed, DHO Matthews omits completely the petitioner's right to an impartial hearing officer in his recitation of the relevant procedural Due Process requirements. D.E. 21-3 at 2 ¶ 4. This is because he cannot claim any level of neutrality without further perjuring himself. Exhibit 1 hereto at 5 ¶¶ 38-41.

Further, DHO Matthews blew his own credibility. He claims that the petitioner "consented to have this witness provide a written statement." D.E. 21-3 at 4 ¶ 11. The petitioner, in fact, asserted his right to directly examine his witness. D.E. 21-1 at 20 and, supra, § III(C)(2).

Indeed, elsewhere in his false declaration, DHO Matthews claims, "Gottesfeld requested a staff representative and two alternates but waived witnesses." D.E. 21-3 at 4 ¶ 10. Yet, in the very next paragraph he contradicts himself, "Gottesfeld also requested an inmate witness." Id. ¶ 11. The evidence further shows that the petitioner named only a single alternate. D.E. 21-1 at 15 and accord D.E. 1 at 11 ¶ 45.

DHO Matthews further falsely claims that the WASR "made a statement on [Gottesfeld's] behalf." D.E. 21-3 at 4 ¶ 12. Please contrast D.E. 1 at 20 ¶ 101. The audio and video surveillance footage requested by the petitioner and ordered preserved by The Court will clearly refute Matthews's lie. D.E. 3-1.

Further, the unrebutted absurdities in the instant petition give rise to a strong presumption of agency bias. DHO Jason Bradley oversees all hearings even though he has been caught falsifying records so that complainants always win, at least in terms of application of sanctions. D.E. 1 at 11 ¶¶ 48-49 and at 16 ¶¶ 70-72; and D.E. 21-3 at 18, "Myself and DHO Bradley cannot be around each other." Counselor Orr was pushed off the case by creating a scheduling conflict. D.E. 1 at 15 ¶ 69; and D.E. 21-3 at 21, "Annual leave and Staff shortedge[sic]." The respondent was suddenly in a rush to adjudicate the incident report, fairness be damned. D.E. 1 at 15 ¶ 65, at 18 ¶ 87, at 19 ¶ 99, at 21 ¶ 106, and at 22 ¶ 112; and Festinatio justitiae est noverca infortunii. The WASR prejudiced the hearing in favor of her fellow case managers. D.E. 1 at 19 ¶¶ 94-106 and at 22 ¶¶ 112-115. The first incident report was a deliberate and retaliatory prior abuse of the petitioner by the respondent. D.E. 1 at 29 ¶¶ 145-183. Please cf. Office of Communication of United Church of Christ v. FCC, 707 F.2d 1413, 1425 n. 23 (D.C. Cir. 1983) (agency bias necessitates heightened scrutiny during subsequent judicial review).

The respondent fails to provide any particularized support in the instant

record of adjudicative facts to rebut the petitioner's well-founded and particularized showing of partiality. Instead, the respondent misconstrues the presumption of neutrality afforded to Article III judges in conflation with non-Article-III DHOs show do not enjoy lifetime appointments and salary protection. In so doing, the respondent further highlights the DHO's dependence on the complaining agency and the respondent. Please cf. Northern Pipeline Co. v. Marathon Pipe Line Co., 458 U.S. 50, 58 (1982); and Commodity Futures Trading Comm'n v. Shor, 478 U.S. 833, 848 (1986).

The instant DHO, however--who is not even a fulltime DHO and is thus even more dependent on the respondent's continued favor--is more akin to the immigration judges who prevented the creation of an adequate record and failed to make credibility determinations based on specific cogent reasons in Giday v. Gonzales, 434 F.3d 543, 550 (7th Cir. 2006); and Barragon-Ojeda v. Sessions, 853 F.3d 374, 381 (7th Cir. 2017).

Why else would he have departed upwards from the UDC's recommendation? Exhibit 1 hereto at 6 ¶ 48 and D.E. 1 at 22 ¶ 116. DHO Matthews nowhere states why the UDC's recommendation was incorrect.

Should The Court be left with any doubt as to DHO Matthews's partiality and agency bias, then the petitioner requests that The Court set a schedule for a discovery conference and initial disclosure, to include: the DHO's full name, employment and training history, and other relevant data to ascertain his dependence on the respondent and Complainant Rebekka Eisele, and the audio and video surveillance recordings that the respondent sought to spoliate until The Court's order at D.E. 9 at 1 § 1, i.e. D.E. 3-1 at 1.

### IV. AS STATED, THE CLAIMS ARE RAISED PROPERLY UNDER 28 U.S.C. § 2241.

The Court correctly construed the instant petition, "The petitioner challenges disciplinary action in incident number 3338082." D.E. 7 at 1 ¶ 1.

Please see also D.E. 9 at 2 § IV, "This action concerns the plaintiff's[sic] disciplinary conviction for attempted extortion and resulting loss of good-time credit in incident number 3338082."

Unable to withstand the petitioner's direct challenge, the respondent dishonestly sews confusion by implying that the petitioner somehow instead challenges the validity of a judgment entered by a court in another jurisdiction. This contention is patently absurd.

As part of the adjudication of incident report number 3338082, the respondent robbed the petitioner of twenty-seven (27) days of earned good-conduct time. D.E. 1 at 1. The petitioner herein brings this matter to This Court and he once again declines any other construal of the instant petition pursuant to his rights under Castro v. United States, 540 U.S. 375 (2003). Please cf. also D.E. 9 at 2 § IV, "[T]he petitioner makes clear in both his petition and the current motion that he does not want his petition or motion to be construed as raising civil[-]rights or conditions[-]of[-]confinement claims."

Of course, the loss of earned good-conduct time is raised properly in a petition pursuant to 28 U.S.C. § 2241. D.E. 1 at 2 ¶ 5. The respondent provides no contradictory authority because none exists.

The petitioner has a separate and severable liberty interest in his freedom from solitary confinement that is also raised appropriately in the instant petition. Id. at 2 ¶ 5, citing Graham v. Broglin, 922 F.2d 379, 381 (7th Cir. 1991). Again, the respondent proffers no contrary authority because no such authority exists. "If the prisoner is seeking... the run of the prison in contrast to the approximation to solitary confinement that is disciplinary segregation--then habeas corpus is his remedy." Id. The petitioner experienced more than a mere "approximation to solitary confinement"--no matter how the respondent may now try to label it--and the petitioner herein seeks no

damages. D.E. 1 at 38 § VI The Unconstitutionally Harsh Conditions of the Petitioner's Solitary Confinement; and id. at 23 ¶ 118.

Freedom from these hardships represents a quantum change in the petitioner's level of custody that is enforceable via writ.

### V. AS STATED, THE CLAIMS ARE NOT MOOT.

The respondent now claims mootness. D.E. 21 at 11.

The petitioner anticipated this claim based upon his past behavior.

> 137. The instant respondent commonly avoids the entry of unfavorable judgments or the issuance of writs by taking actions just in the nick of time, such as transferring prisoners or expunging disciplinary reports only after prisoners have served the corresponding sanctions yet before they can exhaust the ARP. The respondent then pleads mootness to have such cases dismissed.
> 138. The petitioner first notes his recently-filed declaration in Hill v. Lamer[sic], 19-cv-00508 (JRS) (DLP) (S.D. Ind.), detailing a misrepresentation the respondent made to This Court in order to secure illegitimately an enlargement of time for the sole purpose of completing a retaliatory transfer of another habeas petitioner so the respondent could thwart the jurisdiction of This Honorable Court to adjudicate his claims.

D.E. 1 at 27 ¶¶ 137-138 (emphasis in original).

Please see again Fed. R. Civ. P. 8(b)(6). Please see also RFA Exhibit 3 Request Numbers 10-11.

Also, once again:

> The instant petition cannot be moot so long as the petitioner can benefit from the issuance of The Great Writ. Such benefit must, however, transcend past prison discipline. So long as there is a "tangible benefit" to success or a "concrete and continuing injury," the petition is not moot.

D.E. 1 at 28 ¶ 142 (internal citations omitted to Pope v. Perdue, 889 F.3d 410, 414 (7th Cir. 2018) and Eichwedel v. Curry, 700 F.3d 275, 279 (7th Cir. 2012)), quoting United States v. Meza-Rodriguez, 798 F.3d 664, 668 (7th Cir. 2015).

The petitioner's loss of his earned good-conduct time is just such a "concrete and continuing injury" that affects the duration of his confinement. Issuance of The Great Writ assures the petitioner the "tangible benefit" of an earlier release date. The petitioner's claim to his earned good-conduct time is not moot.

The respondent further admits to the petitioner's allegations about the previous incident report. Fed. R. Civ. P. 8(b)(6) and D.E. 1 at 27 ¶¶ 137-183.

Specifically, the respondent admits, inter alia, that the first incident report, "is just one example, out of many repetititons that evade review, of how the respondent and his agents arbitrarily, capriciously, and unconstitutionally violate the rights" of the petitioner. D.E. 1 at 37 ¶ 181.

Indeed, the respondent demonstrates that absent intervention by The Court, he will continue unconstitutionally punishing the petitioner for his litigation. The respondent has doubled down on his strategy by failing to confess error and take corrective action in the instant case and instead both admitting and nonetheless attempting to maintain his modus operandi. Another incident report already awaits the petitioner. Exhibit 1 hereto at 4 ¶ 27.

The Court should issue The Great Writ commanding the respondent to return the petitioner's twenty-seven (27) days of earned good-conduct time and nunc pro tunc to revert the petitioner's quantum of custody to general population in the CMU. This would provide the petitioner with the tangible benefit of res judicata on the issue. D.E. 1 at 37 ¶ 183.

Should the respondent then return the petitioner to solitary confinement due to his future efforts to help himself or other prisoners claim their rights under The First Amendment Petition Clause and D.C. Code § 16-1905, for example, the petitioner would promptly be able to move to hold the respondent in contempt of court for violation of the writ--an expedited remedy otherwise unavailable to him that will either stay the respondent's hand in the future or bring necessary Constitutional compliance more quickly.

## VI. CONCLUSION

20. Respectfully, pursuant to 28 U.S.C. § 1738, it is not for This
Court to pass judgment on the statutes of The D.C. Code, and to be clear:
the petitioner does not seek in the instant petition for This Court to

enforce any of the provisions thereof, but rather it is his rights under The Constitution of The United States and § 2241 that the petitioner hereby and herein comes before This Court to vindicate in the face of the respondent's flagrant violations.

D.E. 1 at 6 ¶ 20 (emphasis in original).

This Court's highest purpose is to vindicate The Constitution. In the instant case, this requires The Court to issue The Great Writ as originally petitioned. D.E. 1; Fed. R. Civ. P. 8(b)(6); and D.E. 21.

Please see also the petitioner's already--reincorporated-herein **SECOND MOTION FOR SUMMARY JUDGMENT (FED. R. CIV. P. 56 AND S.D. IND. L.R. 56.1)**.

Finally, the petitioner notes Exhibit 1 hereto at 7 ¶¶ 62-63.

Respectfully filed in accordance with the prison-mailbox rule of Houston v. Lack, 487 U.S. 266 (1988), by mailing to The Court in an envelope bearing sufficient affixed pre-paid first-class U.S. postage and U.S.P.S. tracking number 9114 9023 0722 4792 9869 73, handed to Ms. Jamie Wheeler of the FCI Terre Haute CMU unit team while acting in her official capacity as an agent of the respondent on Friday, March 20th, 2020, or the first opportunity thereafter,

by: /s/

Martin S. Gottesfeld, pro se
Reg. No.: 12982-104
Federal Correctional Institution
P.O. Box 33
Terre Haute, IN 47808

## CERTIFICATE OF SERVICE

I, Martin S. Gottesfeld, pro se, hereby certify that I served a copy of the foregoing document on counsel for the respondent in the above-captioned case via in-hand delivery to her agent Ms. Jamie Wheeler of the FCI Terre Haute CMU unit team while acting in her official capacity as an agent of the respondent and the respondent's counsel in accordance with the prison-mailbox rule of Houston v. Lack, 487 U.S. 266 (1988), on Friday, March 20th, 2020, or the first opportunity thereafter, and that I was willing but unable to mail an additional copy directly to counsel for the respondent because the respondent will not allow me to make more than one (1) copy of my court filings in violation of 28 C.F.R. § 543.11(g),

by: /s/ Martin S. Gottesfeld
Martin S. Gottesfeld, pro se