## Declaration of Martin S. Gottesfeld:

I, Martin S. Gottesfeld, declare that the following is true and correct under the penalty of perjury under the laws of The United States pursuant to 28 U.S.C. § 1746(1) and The Federal Rules of Evidence on this twentieth (20th) of March, 2020:

1. I am Martin S. Gottesfeld and I am the petitioner in the case of Gottesfeld v. Lammer, 2:20-cv-00012-JRS-MJD (herein "the case"), currently pending before The Honorable U.S. District Court for The Southern District of Indiana (herein "The Court").

2. I know from my personal experience, my litigation history, and my career as a Sr. systems engineer on the infrastructure services team of publicly-traded information-technology consultancy Edgewater Technology and other similar firms that Declarant Jenna Eppelin falsely averred under the penalty of perjury, "Gottesfeld is serving a 121[-]month sentence for Fraud..." Docket entry (D.E.) 21-1 at 3 ¶ 4.

3. In fact, I have never been charged with fraud.

4. At best, Declarant Eppelin misinterpretted the "OFFENSE CODE" field in SENTRY and depicted in D.E. 21-1 at 6. This field does not accurately reflect a prisoner's offenses of conviction.

5. In order to produce an accurate result, one must use instead the "OFF/CHG" field, which in my case reflects accurately that I am serving a sentence for alleged violations of 18 U.S.C. § 371 (general conspiracy) and 18 U.S.C. §§ 1030(a)(5)(A) and 1030(c)(4)(B) (intentional damage to a protected computer over $5,000)--neither of which is "Fraud."

6. The above demonstrates that mere "access" to SENTRY--which is all that Declarant Eppelin claimed she possesses in D.E. 21-1--is insufficient to produce reliable and accurate results from SENTRY absent computer skills and specialized training--neither of which Declarant Eppelin anywhere avers to possess.

7. The respondent falsely avers that I "failed to exhaust" my administrative remedies before filing D.E. 1, but I did in fact exhaust, as is detailed in the instant petition and further reiterated in my reply to the respondent's answer.

8. The "journalist" Josephine Wolff whose work is cited by the respondent in D.E. 21 at 1 n. 1 has undisclosed conflicts of interest permeating her coverage of my case.

9. The respondent and Declarant Mr. D. Matthews misleadingly aver, respectively, "At first glance, [Ms.] Eisele believed the Requests contained questions about Gottesfeld's Judgement and Commitment Order, which she addressed verbally," D.E. 21 at 2, and, "At first glance, [Ms.] Eisele believed Gottesfeld to be asking questions about his Judgment and Commitment Order, which she addressed while speaking with him," D.E. 21-3 at 2 ¶ 6.

10. In reality, the audio and video surveillance footage which I requested and The Court ordered preserved will show at the conclusion of discovery that agent of the respondent Ms. Rebekka Eisele read and fully understood the relevant demand, and rather than being "addressed verbally," or "addressed while still speaking with" me, Ms. Eisele acknowledged, "This will take some time," or words to similar effect.

11. The respondent falsely avers that my demand, "was actually a demand for money," but that is manifestly false upon review of the demand itself.

12. I was not trying to secure "a fraudulent release from custody," as the respondent avers, and this too is manifestly obvious upon review of the demand itself.

13. The respondent falsely avers that I chose two alternate staff representatives when in reality I chose only one alternate. D.E. 21 at 3.

14. The respondent falsely avers that my warden-appointed staff representative (WASR) "made a statement on" my behalf, but she did not. D.E. 21 at 3.

15. The respondent materially omits that during the DHO hearing I also stated that incident report 3338082 effectively renders D.C. Code § 16-1905 unavailable to me and other prisoners (including those committed into BOP custody by Washington, D.C., territorial courts). D.E. 21 at 3-4. Please cf. D.E. 1 at 21 ¶ 109 and D.E. 22 at 3-4, quoting 28 C.F.R. § 500.1(c) and citing 28 C.F.R. Part 523 Subpart D, 28 C.F.R. Part 527 Subpart F, 28 C.F.R. §§ 550.55(a)(1)(ii) and 571.64, and Wilson v. Lockett, 2013 U.S. Dist. LEXIS 84576, Case No. 2:12-cv-00065-JMS-MJD (S.D. Ind. June 17, 2013).

16. I further note that my verified petition contains a much more comprehensive and unrebutted play-by-play of the DHO hearing and the events leading thereto. D.E. 1 at 10 ¶¶ 39-198. Please cf. also Fed. R. Civ. P. 8(b)(6).

17. The respondent falsely avers, "Based upon the greater weight of the evidence, the DHO concluded that Gottesfeld committed the charged Prohibited Act." D.E. 21 at 4. In reality, however, discovery will reveal that I was correct when I initially alleged that the fix was in and the outcome of the DHO hearing had already been ordered before the DHO examined any of the evidence. D.E. 1 at 19 ¶ 97. Please see also D.E. 3-1 at 1.

18. The respondent falsely avers, "Although [Gottesfeld] has submitted a total of 42 administrative[-]remedy requests during in[sic] his time in BOP custody, none were related to [the relevant] Incident Report. Nor does Gottesfeld dispute his failure to exhaust his administrative remedies... Given that, by his own admission, Gottesfeld has not even begun, let alone completed, the administrative[-remedy] appeal process with respect to the challenged disciplinary action..." D.E. 21 at 7 (internal citations omitted). In reality, however--and as clearly pleaded in the instant verified petition-- I had already exhausted the respondent's administrative-remedy program with respect to (1) the instant type of Due Process violation, (2) the instant type of obstruction of my access to the courts, and (3) the respondent's instant campaign of retaliation against my Constitutionally-protected litigation. Please see D.E. 18 at 30, 37-38, and 51-56.

19. The respondent further materially omits that his retaliation rendered the administrative-remedy program (ARP) unavailable to me before I could file further grievances and the respondent materially misrepresents my position on the exhaustion of the ARP. D.E. 21 at 7. Please cf. D.E. 1 at 23 ¶¶ 117-136.

20. The respondent avers falsely, "the evidence against Gottesfeld was overwhelming." D.E. 21 at 9. In reality, however, the overwhelming documentary evidence reflects that I made a lawful and Constitutionally-protected demand pursuant to a valid statute of law found in the respondent's own electronic law library and a relevant long-arm provision also found therein. Nowhere does

the respondent attempt to distinguish between the demand that I issued and what he would consider a fair use of these same statutes. In effect, the respondent is asking a U.S. court to place him above the law of a U.S. territory without pointing to a single superceding federal law, Constitutional provision, or binding treaty. D.E. 21-1 at 23.

21. The respondent falsely avers, "Gottesfeld had an opportunity to call witnesses and present evidence." D.E. 21 at 9. In reality, however, through no stipulation or assent on my part, I was not allowed to directly examine my witness because the DHO failed to bring him to the hearing and sua sponte chose only to allow my witness to submit a written statement, and, as already clearly pleaded in the instant petition, I was denied access to exculpatory evidence prior to the hearing, which, in turn, prevented me from completing a written statement to present as evidence. D.E. 1 at 19 ¶¶ 99-100, at 20 ¶¶ 103-106 and at 22 ¶ 112; D.E. 21-3 at 22 and D.E. 1 at 19 ¶ 99 and at 20 ¶ 104.

22. The respondent further misrepresents the reason I wanted to obtain the exculpatory evidence prior to the hearing as opposed to having the DHO bring it to the hearing, i.e. my need to produce a written statement. Nowhere does the respondent rebut the fact that I was denied access to exculpatory evidence, including but not limited to the relevant statutes, court decisions, and surveillance footage, which in turn denied me the ability to produce a written statement as evidence. D.E. 21 at 9. Again, please cf. D.E. 1 at 19 ¶¶ 99-100 and at 20 ¶¶ 103-106 and at 22 ¶ 112.

23. My written statement, based upon and able to cite to the video and audio evidence of Ms. Rebekka Eisele's clear comprehension of the instant demand on Friday, December 6th, 2020, as demonstrated through her verbal response thereto, as well as the relevant statutes and court decisions, would cause any reasonable and impartial decision maker to dismiss the incident report on Constitutional grounds. Therefore, the withholding of this evidence was prejudicial. Please contrast D.E. 21 at 9.

24. The respondent falsely avers, "Gottesfeld's allegations that DHO Matthews was biased are similarly baseless." D.E. 21 at 9. The petitioner stands by his well-founded factual allegation that the outcome of the hearing was predetermined above DHO Matthews pay grade with his covert cooperation to impliment that outcome and the petitioner looks forward to discovery and showing the court the records of DHO Matthews's communications with the respondent and/or the respondent's other agents prior to the hearing.

25. The respondent attempts to sew confusion by falsely asserting that I claimed that my "custody violates 18 U.S.C. section 3621(c) because [I have] never received an 'endorsed return.'" D.E. 21 at 11, citing D.E. 1 at 5-7. The Court should pay no heed to this gratuitous denial of a non-existent claim. Please cf. D.E. 1 at 5 ¶ 14, quoting 18 U.S.C. § 3621(c) (alteration[] in original), "... a copy of the order shall be delivered to such person [in charge of such facility]..." and D.E. 22 at 2 (filed before the respondent's instant answer, but not entered until after it), "The plaintiff[sic] notes that... he understands that the 'copy of the order' contemplated by the statute 'shall be delivered to such person' who is 'in charge of a penal or correctional facility,' and not to the prisoner."

26. The respondent falsely avers that I ended my hunger strike prior to my eviction from the SHU. D.E. 21 at 12. In reality, however, I had not, though I did anticipate the respondent's frivolous claim. D.E. 19.

27. The respondent falsely implies that the respondent has no plan to place me back in the special-housing unit (SHU) in solitary confinement and that my knowledge of his affirmative plan to do so is "unsupported 'speculation.'" D.E. 21 at 12. The respondent materially omits that he is now holding back the adjudication of another unconstitutional 200-series incident report until after the entry of judgment in the case specifically so that he can then return me to the SHU. This misleading conduct echoes the same respondent's deception of The Court in the previous case of Hill v. Lamer[sic]. The petitioner highlights D.E. 1 at 27 ¶¶ 137-138 and Fed. R. Civ. P. 8(b)(6). Please see also D.E. 1 at 28 ¶¶ 139-183.

28. The respondent materially omits citation to Sandin v. Conner and fails to rebut the relevant conditions of confinement in the FCI Terre Haute communications-management unit (CMU) special-housing unit (SHU). D.E. 21 at 12-13. The petitioner notes D.E. 1 at 38 ¶¶ 184-198, and, again, Fed. R. Civ. P. 8(b)(6).

29. The respondent falsely avers, "Nor can Gottesfeld show his placement in the SHU was illegal. On the contrary, it comported perfectly with federal regulations, which provide that the BOP 'may' place an inmate 'in administrative detention status..." D.E. 21 at 13. Obviously, however, The Constitution trumps federal regulations and it prohibits transferring prisoners for retaliatory reasons and prohibits the cruel and unusual (and unrebutted) conditions the petitioner detailed in the SHU. U.S. Const. amend. I and amend. VIII.

30. The respondent falsely avers that I brought a claim in the instant case "based upon" D.C. Code when I did not. D.E. 21 at 14-15. Please cf. D.E. 1 at 6 ¶ 20. To clarify once more, the petitioner has a Constitutionally-protected right to petition The Superior Court of Washington D.C. under U.S. Const. amend. I. The federal constitutition thus also protects any and all necessary steps the petitioner must take to bring petitions to the D.C. courts, including the instant demand.

31. Declarant Jenna Epplin avers, "If no response is received within the allowable time, the inmate can deem that request denied at that level," while she materially omits that there is no such "allowable time" for "Step 1" of the BOP administrative-remedy program and that failure of the respondent to answer a BP-8 turns the administrative-remedy program into a "dead end." D.E. 21-1 at 3 ¶ 2. Please cf. 28 C.F.R. § 542.18, contemplating no response deadline for informal resolution via BP-8; then, please see D.E. 18 at 51-56.

32. Declarant Jenna Epplin avers, "I also have access to the actual (hard copy) remedy filings and responses that are maintained by the BOP," but she never avers to have searched those hard copies (which would appear outside of SENTRY. Please cf. D.E. 21-1 at 3 ¶¶ 3 and 6.

32. Declarant Epplin avers, "I have searched this report for any remedies related to Incident Report number 3338082. My search revealed that no requests for administrative remedy[sic] have been submitted which refer to this incident report," but this is misleading because, as is the instant case, the relevant administrative-remedy requests do not directly mention "3338082." D.E. 21-1 at 4.

33. Declarant Epplin further omits from her declaration any mention of The Eisele BP-8 or why it went unanswered because to include this information would be fatal to the respondent's non-exhaustion defense. Please cf. D.E. 18 at 30.

34. Declarant Epplin averred, "SENTRY is used to track all administrative remedy submissions," but The Court already knows this is a lie.

35. In reality, SENTRY is not used to log forms from the first step in the administrative-remedy process, described by Declarant Epplin in the preceding paragraph, "Step 1: The inmate must first attempt to resolve the issue informally. 28 C.F.R. § 542.13. [This is commonly referred to as a BP-8.]"

36. Thus, one should not expect The Eisele BP-8 to show up in the "search" conducted by Declarant Epplin. This was by design.

37. Declarant Epplin intentionally conducted no search of the hard copies to which she has access because such a search would reveal either that the petitioner filed The Eisele BP-8 and that the respondent never answered it or that the respondent's records of BP-8s are unreliable. Either way, the results of any such search by Declarant Epplin would have been adverse to the respondent's non-exhaustion defense.

38. Declarant Rebekka Eisele falsely avers, "As soon as the Petitioner ended his hunger strike and was deemed medically stable he was returned to CMU general population." D.E. 21-2 at 2 ¶ 5. Again, please see in contrast, D.E. 19.

38. Declarant D. Matthews materially omits my right to an impartial hearing officer in his recitation of the required "procedural safeguards in connection with disciplinary hearings." D.E. 21-3 at 2 ¶ 4.

39. Declarant D. Matthews nowhere avers that he was an impartial hearing officer in my case and he cannot do so without perjuring himself. Id.

40. Declarant D. Matthews nowhere attempts to rebut my accurate assertion that he was biased and already had an outcome for the disciplinary hearing set in his mind prior to the hearing even starting. Please compare D.E. 1 at 19 ¶ 97 and D.E. 21-3, then please see also Fed. R. Civ. P. 8(b)(6) and D.E. 1 at 10 ¶¶ 39-198.

41. Declarant D. Matthews tellingly omits his full name in an effort to keep hidden other discoverable information about his background that is relevant, admissible, and adverse to the respondent, i.e. the official who most controls his paycheck.

42. Declarant D. Matthews joins Declarant Epplin and the respondent in stating falsely that I am "currently serving a 121-month term of imprisonment for fraud." Please cf. supra ¶¶ 2-6 and D.E. 21-3 ¶ 5.

43. Declarant D. Matthews falsely avers, "that Gottesfeld was demanding money and release from prison." D.E. 21-3 at 3 ¶ 7. Please cf. D.E. 21-1 at 23, demanding, literally, "a true copy of the order of commit[ ]ment under which each of you, jointly and severly, is detaining me against my will."

44. That failure to deliver in a timely fashion creates a statutory liability for a fixed sum does not turn a request for the performance of a statutorily-mandated duty into a demand for "money and release from prison." Indeed, this is so obviously the case that respondent's interpretation is absurd and clearly a guise to render useless a valid statute that requires him to perform a duty that he does not like but that is nonetheless required of him.

45. Declarant D. Matthews falsely purports to know the state of Ms. Rebekka Eisele's mind when she read the demand but he has not basis of

personal knowledge to support this bogus claim. D.E. 21-3 at 3 ¶ 7.

46. The aforementioned audio and video surveillance evidence will show after discovery that Ms. Eisele read and fully understood the demand on Friday, December 6th, 2019, and that she perceived no threat of "financial demise," or other personal consequence.

47. Indeed, while the respondent and Declarant D. Matthews each pretend without basis to know the state of Ms. Rebekka Eisele's mind upon reading the demand--and such assertions would be at best inadmissible hearsay--Ms. Rebekka Eisele herself made no such statement in her declaration. D.E. 21-2. She cannot do so without perjuring herself.

48. Declarant D. Matthews provides no explanation for his reason for departing upwards from the UDC's original recommendation for sanctions should I be found culpable because the outcome of the hearing and the upwards departure were predetermined above his paygrade. Please contrast D.E. 21-3 at 3 ¶ 9 and id. at 5 ¶ 13.

49. Declarant D. Matthews falsely avers that I chose two (2) alternates for staff representative and waived witnesses, but, in reality, I chose one (1) alternate and never waived witnesses. D.E. 21-3 at 4 ¶ 10, "Gottesfeld requested a staff representative and two alternates but waived witnesses." Please cf., however, id. at 4 ¶ 11, "Gottesfeld also requested an inmate witness," and D.E. 21-3 at 22, showing "Harris" selected as a witness; and D.E. 21-3 at 17, showing one (1) selection of staff representative and one (1) alternate.

50. Declarant D. Matthews materially omits that both the audio and video surveillance footage and the inmate witness prove that Ms. Rebekka Eisele read and fully understood the demand--and respondend thereto--on Friday, December 6th, 2020. D.E. 21-3 at 4 ¶ 11. Please cf. D.E. 21-3 at 24 No. 2, "... Eisele read Marty's document before leaving the library" and D.E. 1-1 at 1, requesting preservation of footage from, "FCI Terre Haute CMU Law Library; Friday, December 6th, 2019, 7:20 P.M.ish; Discussion and cop-out exchange between Ms. R[ebekka] Eisele and Martin S. Gottesfeld."

51. Declarant D. Matthews falsely avers that my warden-appointed staff staff representative (WASR) "made a statement on [my] behalf," but in reality she didn't. D.E. 21-3 at 4 ¶ 12. The only "statement" made by the WASR during the hearing is memorialized accurately in the instant petition. D.E. 1 at 20 ¶ 101.

52. Declarant D. Matthews admits that he did not consider the written statement of the witness as to Ms. Eisele's comprehension of the demand on Friday, December 6th, 2020, but, rather, merely his statement, "that Gottesfeld did not intend to extort anyone." Moreover, none of the evidence considered by Declarant D. Matthews would lead a reasonable and objective finder of fact to believe there was the necessary mens rea. D.E. 21-3 at 4 ¶ 12.

53. Declarant D. Matthews falsely avers that he made his decision, "Based upon the greater weight of evidence," but in reality the outcome of the hearing was predetermined by somebody other than Declarant Matthews, as originally pleaded in the instant petition. D.E. 21-3 at 5 ¶ 13. Please cf. D.E. 1 at 14 ¶ 64, at 16 ¶ 72, at 19 ¶ 97, at 21 ¶ 109, and at 22 ¶¶ 113, 115-116.

54. The written report prepared by D. Matthews and sworn onto the record

by him accurately contradicts his declaration under the penalty of perjury. D.E. 21-3 at 10 § III(C)(1), "Inmate waived right to witness. No," and it further provides no reason for the failure to bring the witness to the hearing, id. § III(C)(2-3). The supposed waiver id. § III(C)(4), if made at all, was unknowing and involuntary due to the procedural Due Process error of the WASR, D.E. 1 at 19 ¶¶ 94.

55. The supposed statement of the WASR, D.E. 21-3 at 10 § II(C) is false and is also inadmissible hearsay. I would like to cross-examine the WASR and Declarant Matthews. I would also call as witnesses in the case C.O. S. Harvey, DHO Jason Bradley, and Declarant Rebekka Eisele.

56. The DHO's written report reiterates that he did not consider the testimony of my witness--in direct conflict with his statement under the penalty of perjury. Please contrast D.E. 21-3 at 4 ¶ 12(b) and D.E. 21-3 at 10 § III(D).

57. The DHO's written report confirms that there was no "Confidential information" that precluded me from receiving any of the exculpatory evidence that I was denied. D.E. 21-3 at 10 § III(E).

58. Tellingly, Declarant D. Matthews falsely avers, "The DHO can find no evidence that the date of incident should have been December 6, 2019, instead of December 9, 2019," right after, in the same section, he quotes "the reporting officer" specifying the date of the incident, "On the evening of December 6, 2019, at approximately 1920 hrs." D.E. 21-3 at 11 § V.

59. Declarant D. Matthews falsely avers that the audio and video surveillance footage is unclear. Id. at 11 § V. This is a lie and it is the same lie used by other coconspirators in this CMU to cover-up the ISIS-inspired murder of Mr. Robert David Neal in this CMU more than a year ago--an incident that has resulted in no criminal charges whatsoever.

60. To be more specific: CMU administrators claim that audio and video surveillance footage of Mr. Neal's murder were unclear, when, in reality, it shows that staff were at best deliberately indifferent to the conditions that proximately led to Mr. Neal's near-beheading. This claim also mirrors those false claims used by other BOP staff to avoid liability for the deaths of Whitey Bulger and Jeffrey Epstein. Congress, in contrast, has found that misconduct is regularly covered-up in the BOP. Congress's finding in this regard is entitled to greater credibility than Declarant Matthews. I wish to see the footage that Declarant Matthews claims is unclear and that the WASR was required to obtain on my behalf in time for me to present it along with a written statement derived therefrom at the hearing.

61. Declarant D. Matthews purported reasons for his actions, D.E. 21-3 at 12 § VII, are a bald-faced lie, as detailed supra.

62. I am unable to serve process of my filings today by mail because the respondent in the case is violating 28 C.F.R. § 543.11(g) and refusing to allow me to make sufficient photocopies after also violating 28 C.F.R. § 543.11(b) by not fixing the CMU law-library copy machine for weeks now.

63. Therefore, I have to rely on the fact that the respondent already reads and digitally preserves the contents of my filings with The Court and shares them with his counsel preemptively before The Court even sees them in order to serve the respondent pursuant to Fed. R. Civ. P. 5(b)(2)(B)(i) and 28 C.F.R. § 540.203.

    I declare that the foregoing is true and correct under the penalty of perjury under the laws of The United States. Executed on Friday, March 20th, 2020.

by: _____
Martin S. Gottesfeld