**FILED**

11:15 am, Aug 18, 2020

U.S. DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
Roger A.G. Sharpe, Clerk

Martin S. Gottesfeld, pro se
Reg. No. 12982-104
Federal Correctional Institution
P.O. Box 33
Terre Haute, IN 47808

The Honorable James R. Sweeney II
United States District Judge
921 Ohio St.
Terre Haute, IN 47807
By: First Class mail, postage paid, tracking no. 9114 9023 0722 4792 9878 02

Tuesday, August 11, 2020

In re: <u>Gottesfeld v. Lammer</u>, 2:20-cv-12-JRS-MJD

Dear Honorable Judge Sweeney:

    I hope my letter finds Your Honor well.
    Pursuant to This Court's inherent power to protect the instant proceedings, I write to ask Your Honor to order Respondent Brian Lammer to stop his ongoing disruptive interference with the litigation of the instant petition.
    I believed Your Honor's watchful eye alone was sufficient to stay Respondent Lammer's hand. ECF No. 47-1, Ex. 2, Declaration of Martin S. Gottesfeld at ¶ 4.

I was wrong. His latest belligerent act came the business day after he read my third attempt to appeal to his superiors. NOTICE, Ex. 1, Declaration of Martin S. Gottesfeld, Attachments A-E ("The Royer BP-10 III") (mailed/filed August 6, 2020, entry date unknown).

Please bear with me as I connect the dots.

I filed The Eisele BP-8 on or about October 25, 2019. ECF No. 18 at 30. Therein I specifically mentioned Officer Travis Weber. Id. At the time, Respondent Lammer and Officer Weber each knew I was in the process of publishing an article mentioning Officer Weber.[1]

I then filed The Royer BP-8 on or about November 26, 2019. ECF No. 47-1 at 5. Therein I specifically mentioned a complaint I filed against Mr. Todd Royer pursuant to The Prison Rape Elimination Act (PREA). Id. I received no response to The Royer BP-8 or the underlying PREA complaint.[2] So I filed The Royer BP-9 on or about

---

[1] Prior to my arrival in the CMU, Officer Weber was reportedly the target of an assassination plot. Please see Martin Gottesfeld and Francis Schaeffer Cox; An ISIS-Inspired Murder in the CMU — Part 3 of The CMU Series; Info Wars, The Liberty Sentinel, FreeMartyG, and FreeSchaeffer (March 2020). Also, Officer Weber had embarrassed himself in front of his fellow officers by reprimanding me for something he was unaware another officer had ordered me to do, causing the other officer to roll his eyes.

[2] Respondent Lammer claims he doesn't review the contents of my PREA complaints to the OIG. ECF No. 47-1 at 3, Part B —

Sunday, December 8, 2019, explicitly pleading with Respondent Lammer, "NO RETALIATION PLEASE[sic]." ECF No. 47-1 at 4.

Respondent Lammer, however, took this as a dare and immediately retaliated, giving rise to the instant case:[3] He contrived the incident report in question, threw me into solitary confinement, and stole 27 days of my earned good-conduct time. ECF No. 1, instant petition at ¶¶ 28, 30, 119, and 125. He also conspired to transfer me. Id. at ¶¶ 137-138. Brazenly, he even named Mr. Royer my new Response. Nevertheless he reviewed the contents of my original underlying PREA complaint and refused to mail it to the OIG. In so doing, he claimed my self-identification as a reporter for The Intercept violated the BOP's byline restriction. But that regulation applied to publication and not personal correspondence. Moreover, it had long ago been struck down and rescinded. Respondent Lammer was required to leave it unenforced. McGowan v. United States (2d Cir. 2016). Respondent Lammer was well aware of this because I had served a copy of McGowan on his counsel, Ms. Katherine Norris Siereveld, Esq. Regardless, though, Respondent Lammer forced me materially to change my PREA complaint before he claimed to mail it. The OIG never acknowledged the modified complaint.

[3] I was drafting a separate civil-rights complaint for damages and injunctive relief when the coronavirus lockdown began. ECF No. 16 at 2. The relief herein sought is distinct, as detailed infra.

unit manager and allowed him to retaliate against the whole CMU population, with which Mr. Royer already had many similar but independent incidents of voyeurism.[4]

Only after Your Honor issued the instant order to show cause, however, did Respondent Lammer move Officer Weber elsewhere. And only after I both explicitly raised Respondent Lammer's unresponsiveness and described Mr. Royer's serial voyeurism to journalists, resulting in a FOIA request, did Respondent Lammer reply to the Royer BP-9 months late. Please cf. ECF No. 1, instant petition, at ¶¶ 124-127; ECF No. 47-1 at 3, Part B - Response (dated March 23, 2020); and ECF No. 47-1 at 2, Receipt of Administrative Remedy (untimely delivered to me July 7, 2020).

At this juncture I must also note that by placing me in a CMU Respondent Lammer pre-emptively reads my BP-10s and BP-11s and also sees my court filings days before they're entered — all of which I would otherwise seal as special mail. 28 C.F.R. § 540.203. Using PACER, he then

---

[4] In an approximately 2-week period as duty officer, Mr. Royer had at least 7 incidents of voyeurism or attempted voyeurism of different CMU prisoners. During that time, there were approximately 35 prisoners in the unit. At least one other prisoner then also filed a PREA complaint against Mr. Royer. Once confronted, Mr. Royer removed the laminated placards displaying the address of the FCI's PREA auditor, Diane Lee, from the CMU. They remained posted elsewhere, however, including in medical services.

falsely appears to act sua sponte before my filings are entered when in reality he is reacting thereto.

The Royer BP-10 I, for instance, mentions, "the required public-comment period" for promulgating a new federal regulation. ECF No. 47-1. The relevant filing was ready for mailing July 7, 2020, and relinquished to Respondent Lammer at the next opportunity July 8, 2020. Please cf. ECF No. 47, Notice of Filing at 1-2. Prior to its entry, however, Respondent Lammer filed a notice citing Richmond v. Scibana, 387 F.3d 602 (7th Cir. 2004). ECF No. 46. But Respondent Lammer only stumbled onto Richmond v. Scibana after he read The Royer-BP-10 I then searched for "comment period" or similar terms. "The rule has not yet been promulgated; the comment period lasts until October 18, 2004." Richmond v. Scibana at 605 (emphasis added).

The instant filing of The Royer BP-9 also shattered whatever hope Respondent Lammer nurtured of prevailing under the PLRA exhaustion system (whether applicable by statute or common law). Suddenly he was fearful of res judicata, not eager, and disavowed his prior claim. ECF No. 46 at ¶ 2. Once he accepted this defeat, though, he realized he could interfere with the instant litigation without undermining a viable defense and he readjusted his tactics.

Respondent Lammer's animosity is fueled by his desire and that of his superiors to maintain the CMU as a PREA-free zone, as they've done for years. Please cf. 28 C.F.R. § 115.51(b) and 28 C.F.R. §§ 540.200 et seq. These

regulations are irreconcilable; Respondent Lammer, et al. must amend one of them. The former, however, is a national standard that carries the full force of Congressional enactment. 34 U.S.C. § 30307(b). The latter, in contrast, has already been ruled unconstitutional by The U.S. Court of Appeals. Aref v. Lynch (D.C. Cir. 2016).

The illegal measures Respondent Lammer employs to preserve 28 C.F.R. §§ 540.200 et seq. gave rise to the instant case and continue impermissibly affecting its litigation.

On Tuesday, August 4, 2020, I relinquished care, custody, and control of The Royer BP-10 II to Respondent Lammer for mailing after I learned he and his superiors sabotaged The Royer BP-10 I. ECF Nos. 50 and 50-1. The next day, agent of the respondent Ms. Rebekka Eisele entered my cell for the first time in months. Attachment A hereto. She did so outside my presence and without my prior knowledge. Ms. Eisele is the proxy complainant in the relevant retaliatory incident report. She is also Todd Royer's fellow unit-team member and one of Officer Weber's proxy actors. Around this time, Respondent Lammer also assigned Officer Weber back to the CMU after a considerable hiatus.

Thus, Respondent Lammer's disruption plan was afoot.

Your Honor, Respondent Lammer knows I bear a heavy litigation load with the law library to become adequately available again next week. He reads all my mail to and from the courts. 28 C.F.R. § 540.203.

Not only must I file an amended reply in the instant case, but now that top appellate attorney Mr. Brendan Semple

Esq., has filed my opening brief, I must move pro se in The District of Massachusetts for bail pending appeal. United States v. Gottesfeld, 18-1669 (1st Cir. July 31, 2020), appeal from 16-cr-10305-NMG (D. Mass.) Also, I must reply pro se in support of my motion to intervene in Brown v. Federal Bureau of Prisons, 19-cv-02795-RBW (D.D.C.), then, hopefully, oppose the defendants' motion to dismiss; I must file amended paperwork as per Gottesfeld v. Anderson, 20-1582 (2d Cir. August 5, 2020); I must secure counsel for an FTCA lawsuit or file it pro se by mid-September; and, finally, I must bring the aforementioned civil-rights lawsuit to This Court.

Clearly, I was already a tempting target for Respondent Lammer on Friday, August 7, 2020, when I relinquished The Royer BP-10 III to his care, custody, control, and perusal prior to mailing. NOTICE (filed August 6, 2020, entry date unknown).

On Sunday, August 9, 2020— not even the next business day— Officer Weber, his proxy actor, or both entered my cell outside my presence and without my prior knowledge. Attachment A hereto.

The next day, Monday, August 10, 2020, after I worked very late into the previous night, I was awoken by one of Bisele's, Weber's, and Respondent Lammer's proxy actors for a retaliatory cell search. Although I had far from the most questionable cell in the unit, mine was the only one searched. The state of my cell had been materially unchanged for weeks, during which other officers

and another unit-team member entered it regularly to perform bar taps and legitimate non-destructive inspections, never raising any issue and indeed even complementing my organization.

During the retaliatory and disruptive search, I was instructed to destroy evidence admissible in my upcoming aforementioned civil-rights suit. I was told I would have to donate or destroy other personal property that I would be unable to mail home. Only after staff left and I surveyed the destruction did I discover that some items I purchased from commissary had been thrown out, just like when Respondent Lammer first threw me into solitary confinement.

Your Honor, Respondent Lammer knew my deadlines, including my August 31, 2020, deadline in the instant case. He knew his latest actions were highly disruptive at a critical time. That was his point.

Here's mine, in the words of U.S. Magistrate Judge Matthew P. Brookman of the U.S. District Court for the Southern District of Indiana:

> A district court... has an inherent power to sanction a party or its attorney who "has willfully abused the judicial process or otherwise conducted litigation in bad faith." *Secrease v. W. & S. Life Ins. Co.*, 800 F.3d 397, 401-02 (7th Cir. 2015) (quoting *Salmeron v. Enter. Recovery Sys., Inc.*, 579 F.3d 787, 793 (7th Cir. 2009)). Sanctions are appropriate when a

party or his counsel acts in "bad faith by delaying or disrupting the litigation," impedes or hampers enforcement of a court order, or defiles the justice system. Chambers[ v. NASCO, Inc., 501 U.S. 32, 46 (1991)] (quotations omitted). "This power is permissibly exercised not merely to remedy prejudice to a party, but also to reprimand the offender and to deter future parties from trampling upon the integrity of the court.'" Flextronics Int'l, USA, Inc. v. Sparkling Drink Sys. Innovation Ctr. Ltd., 230 F. Supp. 3d 896, 907 (N.D. Ill. 2017) (quoting Salmeron, 579 F.3d at 797). This district court can use its inherent authority to fashion appropriate sanctions for conduct that abuses the judicial process. Chambers, 501 U.S. at 44-45. The inherent power of the court can be used when "neither [a] statute nor the Rules are up to the task" or where there is sanctionable conduct under the Rules that is intertwined with conduct that only the court's inherent power can address. Id. at 50-51.

Jackson County Bank v. Dusablon, No. 1:18-cv-01346-SEB-MPB, 2020 U.S. Dist. LEXIS 26164 (S.D. Ind. January 10, 2020) at 9-10 (ellipsis ~~in original~~ added, first alteration [] added, second alteration in original).

Your Honor, if Respondent Lammer contests any of the facts enumerated infra, then I respectfully request a hearing and sufficient prior notice to subpoena the relevant documents and witnesses.

I thank Your Honor for his time and attention to this matter.

I declare that the foregoing is true and correct under the penalty of perjury under the laws of The United States. Executed Tuesday, August 11, 2020.

by: /s/ MSG
Martin S. Gottesfeld, pro se

CC: The U.S. attorney for The Southern District of Indiana

<u>Attachment A</u>

To: CMU unit team
From: Martin S. Gottesfeld (Reg. No. 12982-104)
Date: Tuesday, August 11, 2020
Subject: Preservation of audio/video evidence

<u>Salutations</u> Unit Team:

    I hope you are well.
    I formally request the preservation, against spoliation or other loss, of audio/video footage of (1) Ms. Rebekka Eibele entering and leaving my cell (no. 38) between 7:45 A.M. and 9:45 A.M. Wednesday, August 5, 2020; (2) Officer Travis Weber or others entering and leaving my cell between 1:00 P.M. and 3:00 P.M. Sunday, August 9, 2020; and (3) the shakedown of my cell sometime between 7:45 A.M. and 9:45 A.M. Monday, August 10, 2020.
    This request is pursuant to pending and future litigation in the Honorable U.S. District Court for the Southern District of Indiana. Please cf. <u>Gottesfeld</u> v. <u>Lammer</u>, 2-20-cv-12-JRS-MJD, ECF No. 9 § I (S.D. Ind. January 16, 2020).
    Please let me know if I must do anything else to ensure the availability of this evidence.

Thanks,
/s/
Martin S. Gottesfeld, <u>pro se</u>

1 of 1