Exhibit 1

# Declaration of Martin S. Gottesfeld

I declare as follows pursuant to 28 U.S.C. § 1746(1):

1. I am Martin S. Gottesfeld, petitioner in <u>Gottesfeld v. Lammer</u>, 2:20-cv-12-JRS-MJD, pending before The Honorable U.S. District Court for The Southern District of Indiana.

2. Respondent Brian Lammer willfully defies federal regulation by seizing my correspondence to Forbes journalist Walter Pavlo without providing me a formal notice of rejection (different than a BP-A0288 Incident Report), from which—and only from which—I could appeal said seizure pursuant to U.S. Const. amend. I, <u>Procunier v. Martinez</u>, <u>Jordan v. Pugh</u> (D. Colo.), <u>McGowan v. United States</u> (2d Cir. 2016), the PLRA, and the RFRA.

3. The respondent's omission constitutes a deliberate denial of both Due Process and access to administrative remedies: the relevant incident report explicitly cites "Program Statement 5265.14," i.e. the BOP's correspondence policy that quotes the federal regulation that lays out the respondent's mandatory non-discretionary duty in re notifications and appeals of rejected correspondence, and the incident report further states, "Legal staff have been consulted throughout the review process."

4. Respondent Lammer and his "Illegal staff" each knew the proper form of notice they must provide of rejected correspondence, and which they do provide to other prisoners

Page 1 of 4
3 of 6

in other instances of rejected outbound correspondence.

5. Moreover, they each knew under federal regulation and the aforementioned Program Statement 5265.14 the decision to reject correspondence cannot be delegated below associate warden. Cf. dkt. 29-1 at ¶¶ 7-13.

6. Yet they all also knew that J. Wampler, the incident report's author, was not an associate warden; indeed, J. Wampler doesn't even work at the FCI but at a faraway office in West Virginia; so, even using the appropriate paperwork, J. Wampler cannot reject my correspondence to Mr. Pavlo.

7. Respondent Lammer and his "[l]egal staff" harbor consciousness of guilt and thus attempt to duck responsibility for their deliberately unconstitutional acts and omissions by foisting them on a low-level remote lackey so they can later disavow civil liability respondeat superior.

8. Partially to protect agents like J. Wampler, the BOP prohibits Respondent Lammer from delegating correspondence-rejection decisions so far below his perch.

9. As in camera review would establish, the misrepresentation by Respondent Lammer and his "[l]egal staff" that my correspondence to Forbes journalist Walter Pavlo might "insight[sic] potential violence" is precisely the kind of breathless, hyperbolic heckler's veto The Supreme Court expressly rejected from prison officials, Procunier v. Martinez, and Respondent Lammer, et al. knew so.

10. Indeed, Respondent Lammer and his "[l]egal staff" each knew I published hundreds of articles and letters from federal custody at media outlets ranging from HuffPost

The Intercept, and Newsweek to Red State, NWD, Bearing Arms, The Western Journal, and Info Wars, and that none have ever incited violence.

11. My published works instead help ensure political accountability of Respondent Lammer and his "[l]egal staff," who go to far greater lengths to suppress such accountability than they ever would to suppress actual violence in the community — as evidenced by the mannequins Respondent Lammer puts in his guard towers to fool unsuspecting members of the nearby public into the mistaken belief they are safe from the terrorists and child rapists in his custody — yes, mannequins. Cf. 28 U.S.C. § 1746(1).

12. I would never write anything to Mr. Paulo that might "insight [sic] potential violence in the community," because (a) I am a strictly-non-violent human-rights advocate, cf. Dkt. 33-4 at pg. 11 ¶¶ 39-42; and (b) I know Mr. Paulo and Forbes would never publish such trash, and if they did, no reputable editor would ever consider my writing again; further, Respondent Lammer and his "[l]egal staff" were aware of this reality too.

13. Moreover, Respondent Lammer and his "[l]egal staff" pursue a knowingly-frivolous and retaliatory incident report against me, Dkt. 52 at 2-3 n.2, while they withhold a formal rejection notice, and thereby render administrative review unavailable, precisely because they know they will lose on the merits and they maliciously wish to castigate me illegitimately and illegitimately deny me judicial review for as long as possible.

14. This is yet another instance that proves Respondent

Lammer systematically renders administrative remedies unavailable to me through machination, misrepresentation, and intimidation, Ross v. Blake, and systematically denies me Due Process, Aref v. Lynch (D.C. Cir. 2016); This Court should find fatuous any claim he ever operates otherwise.

I declare the foregoing is true and correct under the penalty of perjury under the laws of the United States. Executed Monday, August 31, 2020.

by: /s/ G
Martin S. Gottesfeld