UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| MARTIN S. GOTTESFELD, pro se, Petitioner, v. B. LAMMER, Warden of the FCI Terre Haute, Indiana, Respondent. | No. 2:20-cv-12-JRS-MJD |

FILED
5:12 pm, Sep 09, 2020
U.S. DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
Roger A.G. Sharpe, Clerk

## MOTION FOR RECRUITMENT OF COUNSEL

Petitioner Martin S. Gottesfeld (herein the "petitioner"), acting pro se, hereby moves The Honorable Court to recruit counsel to represent him in the instant case.

In support of this motion, the petitioner herewith provides Exhibit 1, Declaration of Martin S. Gottesfeld (August 26, 2020) and respectfully directs The Court's attention thereto.

For clarity, the petitioner recites the relevant facts and law—as best he can without access to a law library or jailhouse lawyers. Cf. Exhibit 1 at ¶ 5 (total lockdown under way).

The instant petition seeks the return of 27 days of earned good-conduct time and a quantum change in custody. Dkt. 1 at 1.

The instant petition is verified. Id. at 40.

The petitioner explicitly alleged the outcome of the relevant disciplinary hearing was predetermined and DHO D. Matthews is biased. Id. at ¶ 97 ("[T]he ADHO [...] determined the outcome of the 'hearing' before it started [...]"); id. at ¶ 113 ("The fix was in before the petitioner met either [the DHO or his respondent-appointed staff rep]"); id. at ¶ 115 ("[T]he petitioner's Due Process rights, including to an impartial decision maker, were violated"). Rather than deny these allegations in any admissible form, the respondent pretends they weren't verified in black and white and misrepresents them. Dkt. 21 at 10 ("Gottesfeld [...] alleged no inappropriate involvement or circumstances impugning the impartiality of DHO Matthews") (internal quotation omitted). Clearly, however, predetermining the outcome of the hearing impugns DHO Matthews's impartiality. Moreover, in his declaration, DHO Matthews nowhere denies he predetermined the outcome of the hearing, nowhere asserts he was an impartial decision maker, and even omits the petitioner's right to an impartial decision maker from his relevant recitation of the petitioner's Due Process rights. Dkt. 21-3; and id. at ¶ 4. He cannot so state without further perjuring himself.

Thus the petitioner's verified allegations that DHO Matthews predetermined the outcome of the hearing and violated the petitioner's Due Process rights are now admitted. Fed. R. Civ. P. 8(b)(6).

The petitioner further explicitly alleged the entire discipline system at FCI Terre Haute is rigged:

Jason Bradley [...] is the principal DHO for FCI

Terre Haute] [...] CO S. Harvey caught DHO Bradley falsifying records and CO Harvey reported him. FBOP [North Central] Regional Director Krueger [...] took no discernable corrective action against DHO Bradley and he remains in his position of trust and authority after he falsified records in order to railroad a prisoner. DHO Bradley then retaliated against CO S. Harvey and again his misconduct was openly tolerated if not outright encouraged by Director Krueger. Supposedly to protect CO S. Harvey from DHO Bradley — who arguably should not hold a position of trust due to his intentional falsification of federal documents — but more likely to protect DHO Bradley and to enable his continued commission of federal felonies inside the FBOP's North Central Regional Office under the administration of Director Krueger, there is now a standing seperation order for CO S. Harvey and DHO Bradley that ensures that CO S. Harvey is never again in a position to blow the whistle on DHO Bradley.

Dkt. 1 at ¶¶ 48-49.

Further:

The FBOP, in order deceptively to support its false narrative that its DHOs are "impartial decision maker[s]," as contemplated by the Scruggs court, and to avoid hundreds or even thousands of judicial reversals of

unfair DHO decisions, while in reality allowing its staff to write and enforce petty and flagrantly unconstitutional disciplinary reports, inter-alia, punishing prisoners for litigation and talking to journalists; maintains that its DHOs are not employees of the facility or facilities at which they hold hearings, but of the corresponding FBOP regional office. This gimmick is used to fuel a misperception of neutrality and detachment from the FBOP staff members bringing the charges, when, as CO S. Harvey demonstrated and then paid the price for so doing, no such neutrality or detachment exists and FBOP regional directors openly tolerate or outright encourage DHOs to falsify federal documents in order to rig the system in favor of complaining staff members.

Dkt. 1 at ¶ 64.

And:

[T]he petitioner asked CO S. Harvey why he declined [to be his staff rep.] after DHO Bradley was no longer assigned to the hearing, and he responded that even when DHO Bradley does not decide a particular incident report, he still oversees all inmate-disciplinary matters at [FCI Terre Haute] and that he, CO S. Harvey, can now never be a staff representative. [...]

Id. at ¶ 72.

The respondent nowhere denies these allegations, so they too are admitted. Fed. R. Civ. P. 8(b)(6).

Moreover, the petitioner produced documentary evidence in support of his verified allegations against DHO Bradley. Dkt. 18 at 1-2, discussing exhibits 6-7 thereto; id. at 12-15, Exhibit 6; id. at 16-17, Exhibit 7, missing CO S Harvey's memorandum in re Jason Bradley fam'd id. at 14 lower-left; and id. at 57-59, declarations in re DHO Bradley. The respondent also produced evidence supporting these allegations. Dkt. 27-1 at 16, signed by CO S. Harvey, "myself and DHO Bradley cannot be around each other."

On a related note, the petitioner asserted the instant Due Process violations repeat and evade review. Dkt. 1 at ¶¶ 144-145. As the petitioner pleaded, that's because:

The instant respondent commonly avoids the entry of unfavorable judgments or the issuance of writs by taking actions just in the nick of time, such as transferring prisoners or expunging disciplinary reports only after prisoners have served the corresponding sanctions [et before they can exhaust [admin. remedies]. The respondent then pleads mootness to have such cases dismissed. The petitioner first notes his recently filed declaration in Hill v. Lamer [sic in original], 19-cv-00508 (JRS) (DLP) (S.D. Ind.), detailing a misrepresentation the respondent made to this Court in order to secure illegitimately an enlargement of time for the sole purpose of completing

> a retaliatory transfer of another habeas petitioner so the respondent could thwart the jurisdiction of This Honorable Court to adjudicate his claims.
>
> Dkt. 1 at ¶¶ 137-138.

Rather than deny this course of conduct, again cf. Fed. R. Civ. P. 8(b)(6), the respondent proved it. He removed the petitioner from the SHU while still on hunger-strike after This Court issued its order to show cause. Dkt. 19. And once the petitioner filed his initial reply in support of the petition, the respondent rushed during a pandemic, when he didn't even have PPE for his staff, to rehear the incident report, a matter supposedly above his paygrade, in a subtler but still rigged fashion. Dkt 37-1 (the petitioner notes he inadvertently wrote, "Mr. Matthews," where he meant, "Mr. Williams," therein at ¶¶ 11-14 and the second instance at ¶ 10).

As detailed in the instant petition, Incident Report 3338082 was actually the respondent's second such Due Process violation against the petitioner, and the latest of hundreds or thousands against other similarly situated prisoners. Dkt. 18 at 2, discussing Exh. 11, and id. at 31; and Dkt. 1 at ¶ 64. The petitioner objected early and often that the first incident report was untimely. Dkt. 18 at 3, discussing Exh. 13 and id. at 39, "[...] the report is still untimely"; id. at 3, discussing Exh. 15 and id. at 43, "[...] the incident report [...] was [~~still~~] untimely [...]"; and id. at 3, discussing Exh. 16, and id. at 46, "[...] the

the report was untimely [...]" The respondent's and the DHO's intentions, however, were not to evaluate the facts but to punish the petitioner despite them. The petitioner exhausted administrative remedies, explicitly alleging DHO bias, but the respondent refused to file them. Dkt. 18 at 3, discussing Exh. 15 and id. at 43. No DHO report was delivered to the petitioner. Dkt. 18 at 3, discussing Exh. 17, and id. at 51-56. Instead, only when judicial review was imminent, did the respondent do what had been required ab initio and expunge the first incident report as untimely.

Now there is a third such incident report, Exhibit 1. Like the first, it alleges attempted circumvention of mail monitoring procedures when the respondent makes crystal clear therein it is really the petitioner's overt protected conduct he is punishing. Id. and dkt. 1 at ¶¶ 148-149 and 153. The first and second incident reports violate the Petition Clause, the third violates the Free Speech and Free Exercise clauses, and the Religious Freedom Restoration Act. Procunier v. Martinez (prisoners protected in criticizing prison officials in correspondence), Jordan v. Pugh (D. Colo.) (prisoner's publication of news article protected), and McGowan v. United States (2d Cir. 2016) (BOP exhausts its qualified immunity).

With the instant case languishing on the docket because the respondent locks down the entire institution over every single Covid-19 infection, Exhibit 1 at ¶ 5, and openly retaliates, see recent filings, the instant case is unlikely to advance this year, so long as the petitioner acts pro se.

Therefore another unfair hearing with an outcome predetermined by a biased DHO awaits the petitioner, along with more lost good time and days in the SHU. Another petition pleading essentially the same facts, and the resultant judicial ineconomy, awaits this Court. Based upon his past conduct — a reliable predictor — the respondent will then try to moot that petition too, after more judicial resources are expended thereon.

Meanwhile, for the petitioner, other litigation is held up. Dkt. 1 at ¶ 143. Justice delayed him is justice denied him, especially with First Amendment matters and times to file remedies and lawsuits elapsing.

Despite all the remedy forms entered onto the instant docket and either entirely unanswered, improperly rejected, or answered at the BP-11 level, the respondent insists on a *Pavey* hearing. This too indicates recruitment of counsel is appropriate and possibly inevitable.

Depositions of CO S. Harvey regarding the fairness of the respondent's DHOs, of DHO Matthews regarding his decisional process, and of the respondent may prove unavoidable. This too calls for counsel.

The petitioner recalls no prior case in this circuit — or any other — wherein a prisoner properly and credibly alleged systemic fraud in a prison-discipline system. Matters of first impression call for counsel.

Should the instant case prove simple to decide, however, the petitioner notes he already filed an initial reply, he has completed significant progress on its amended version, and counsel could

make quick work of the remainder.

Thus, in the interests of justice and judicial economy, the petitioner moves the Court to recruit counsel to represent him.

Respectfully filed under the prison-mailbox rule; *Houston v. Lack*, 487 U.S. 266 (1988); by mailing to the Court in an envelope bearing sufficient affixed pre-paid First-Class U.S. postage and tracking no. 9114 9023 0722 4290 6099 09, handed to Ms. Jamie Wheeler of the FCI Terre Haute CMU unit team in her official capacity as an agent of the respondent on Thursday, August 27, 2020, or the first opportunity thereafter,

by: /s/ MSG
Martin S. Gottesfeld, pro se
Reg. No. 12982-104
Federal Correctional Institution
P.O. Box 33
Terre Haute, IN 47808

### CERTIFICATE OF SERVICE

I, Martin S. Gottesfeld, pro se, certify the respondent won't make me a copy of this filing to mail to his counsel, but that counsel is served via 28 C.F.R. § 540.203,

by: /s/ MSG
Martin S. Gottesfeld, pro se

9 of 9
9 of 14