UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

FILED
06/21/2022
U.S. DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
Roger A.G. Sharpe, Clerk

MARTIN GOTTESFELD, )
Petitioner, *pro se*, )
)
v. )   No. 2:20-cv-12-JRS-MJD
)
B. LAMMER, Warden of )
The FCI Terre Haute, Indiana, )
Respondent. )

## MOTION FOR AN EXTENSION

MARTIN GOTTESFELD, Petitioner, *pro se*, moves the Court for a further and likely final extension until Monday, June 27, 2022, to file his amended reply in support of the instant petition.

Petitioner is mindful of the Court's admonition that he "should not expect any further extensions." Order, dkt. 88. But he is also mindful of the Court's candid assessment: "there is no indication at this stage that this matter will proceed to an evidentiary hearing." Order, dkt. 59.

To overcome that hurdle Petitioner must plead and support, *inter alia*, the fact-laden issue of exhaustion. *See* Return to Order to Show Cause ("Return") § 1 (alleging nonexhaustion), dkt. 21 at 5. He must also address justiciability. *See id.* at 11, § C (claiming mootness).

Petitioner chose not this posture. He did what he could to preclude it. *E.g.*, Petition § IV ("Petitioner Exhausted the Available Administrative-Remedy Procedures"), dkt. 1 at 23; *id.* § V ("The Instant Petition Cannot Be Rendered Moot"), dkt. 1 at 27. Nonetheless Respondent, through counsel, forced it upon him.

Petitioner, however, has now tendered his pleading of the underlying facts. *See* Declaration of Martin Gottesfeld re *Exhaustion, Retaliation & Justiciability* ("ERJ Decl." June 7, 2022).[1] Absent counsel, this was arduous for Petitioner, who lacks a college education and formal legal training. *See* Declaration in Support of Extension ("Ext. Decl." June 13, 2022), Exh. 1.[2] Still, he has

---

[1] This motion's citations to *Attachms.* refer to the attachments to ERJ Decl; *App'x* refers to the pages of its appendix.

[2] Petitioner has diligently but unsuccessfully tried to retain counsel for the instant case despite his CMU placement. *See, e.g.*, decls. at dkts. 66-1 ¶ 6, 68-1 ¶ 6, 71 ¶ 6.

largely completed his legal argument, the reply-in-chief. ~~Id.~~ Ext. Decl. ¶¶ 3, 9. He needs two more weeks—barring lockdowns and other impediments—to render it adequate. *Id.*

The requested extension is warranted because Petitioner has diligently pursued the instant case despite impediments and he would be prejudiced without an opportunity to rebut Respondent's claims raised initially in Return. Petitioner's diligence is manifest in his 40-page handwritten Petition, dkt. 1, his timely reply and its substantial accompanying materials, dkts. 30-33, and his comprehensive 53-page ERJ Decl. with 151-page appendix. Petitioner has never neglected his instant-case deadlines. He has provided good cause for extensions due to impediments, *e.g.*, SARS-CoV-2 lockdowns, *see* mots. for exts., dkts. 38, 42, 44, 48, 53, 58, 60, 62, 64, 66, 68, 70; and his need to litigate his direct appeal and certiorari petition, *see* dkts. 74, 76, 78, 81, 83. Petitioner shares the Court's alacrity to finish the instant case, which he opened in December 2019, but the time has been well spent and justified in the interests of justice and judicial economy.

Also important, Petitioner's amended reply, like his ERJ Decl., will be a substantive and substantial pleading.

Foremost, perhaps, therein Petitioner will for the first time show that he had in fact successfully exhausted relevant to the instant incident report ("IR") 3338082. "In order to exhaust their remedies, prisoners need not file multiple, successive grievances raising the same issue (such as prison conditions or policies)." *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013) (citing *Parazyck v. Prison Health Servs. Inc.*, 627 F.3d 1215, 1219 (11th Cir. 2010) (prisoner "not required to initiate another round of the administrative grievance process on the exact same issue each time" a deprivation occurred)) (collecting cases). "Separate complaints about particular incidents are only required if the underlying facts or complaints are different." *Id.* (citing *Siggers v. Campbell*, 652 F.3d 681, 692 (6th Cir. 2011) (distinguishing *Johnson v. Johnson*, 385 F.3d 503, 521 (5th Cir. 2004) from another case finding exhaustion because the underlying complaint was the same)). "Thus once a prison has received notice of, and an opportunity to correct, a problem, the prisoner has satisfied the purpose of the exhaustion requirement." *Id.* Where a prisoner's "complaint centered around continuing prison policies" this

circuit has found "one occurrence of notice from [Prisoner] was sufficient to give the prison a chance to correct the problems." *Id.* Under this precedential contruction, a single fully exhausted "grievance was likely sufficient to exhaust all [Prisoner]'s complaints." *Id.* See also *Strong v. David*, 297 F.3d 649-50 (7th Cir. 2002) (citing *Booth v. Churner*, 532 U.S. 731 (2001)) ("[N]o administrative system may demand that the prisoner specify each remedy later sought in litigation").

Prior to opening the instant case Petitioner submitted and BOP answered central-office remedies arising from the first, now-expunged, retaliatory and untimely IR 3249328. See Court-access BP-11 Cent. Office's Resp. ("You state you have the right to access the Courts without interference and delay") (Nov. 21, 2019), Attachm. 52 at 2, App'x A112; Petition ¶ 117 ("Under controlling Seventh Circuit precedents, [P]etitioner exhausted [...] before Rebekka Eisele submitted the latest retaliatory, untimely, manifestly-unconstitutional, and frivolous [IR]"), dkt. 1 at 23; *id.* at 1 (citing "[P]etitioner's First Amendment right of access to the courts").

That first IR intentionally misconstrued process service as mail circumvention. Petition § V, dkt. 1 at 27 (Petitioner helped another prisoner pursuant to *Johnson v. Avery*, 393 U.S. 483 (1969) (jailhouse lawyering is protected conduct) and Respondent punished him); ERJ Decl. at 6, ¶¶ 43-120 (same). But process service is no more mail circumvention than, as is at issue in the instant case, statutory exhaustion of D.C. Code § 16-1905 is cognizable as "extortion." Both times Respondent punished disfavored but protected conduct by misconstruing it under inapplicable BOP prohibited-act codes. Constructively, Respondent conjured these restraints against protected conduct *ex post facto* without providing Petitioner any notice as to what he intended to punish. When Petitioner sought a list of all such restrictions Respondent [~~Respodnent~~] expressly refused to provide him one. ERJ Decl. at 5, ¶¶ 33, 36-38 (Petitioner requested audio and video preserved of his request to Siereveld for full list of rules, witnessed by named staffers and another prisoner).

BOP's central office acknowledged that Petitioner "contend[s] it is a violation of due process to implement rules that are not codified." Ex Post Facto BP-11 Cent. Office's Resp. (Nov. 21, 2019), Attachm. 53 at 2, App'x A115. Because BOP's prohibited-act code 204 provides inadequate notice that statutory exhaustion of D.C. Code § 16-1905 is "extortion," Petitioner's Ex Post Facto

BP-11 successfully exhausted on any such construction, he will argue in his amended reply. See also *Turley* at 650 (final denial of grievance "indicates that" agency construed it as "challenging [...] a continuing violation of" prisoner's "rights").

And under *Turley*, Petitioner's amended reply will argue, instant Declarant Jenna Epplin's purported search through a terse computer summary of Petitioner's 42 administrative-remedy requests for remedies "which refer to this incident report [no. 3338082]"—without going through the actual remedies as she implied she did but nowhere actually affirmed she did—was insufficient. See Epplin Decl. ¶ 3 (stating: "I also have access to the actual (hard copy) remedy filings" but not averring to have actually searched them), dkt. 21-1 at 3; *id.* ¶ 6 (instead saying "I searched this report for any remedies [...] which refer to this incident report [no. 3338082]"). Petitioner's prospective remedies, for which Epplin did not search, were sufficient to exhaust, he will argue.

Second, Petitioner will argue, also for the first time in his amended reply, that

> exhaustion may be exucused if: (1) requiring exhaustion of administrative remedies causes prejudice, due to unreasonable delay or an "indefinite time frame for administrative action"; (2) the agency lacks the ability or competence to resolve the issue or grant the relief requested; (3) appealing through the adminitrative process would be futile because the agency is biased or has predetermined the issue; or (4) where substantial constitutional questions are raised.

*Iddir v. INS*, 301 F.3d 492, 498 (7th Cir. 2002) (citing, *inter alia*, *McCarthy v. Madigan*, 503 U.S. 140 (1992) (excusing federal prisoners from pre-PLRA exhaustion in *Bivens* cases)). Without herein fully briefing these criteria, Petitioner notes that the last regional remedy he chose to pursue took over 18 months for BOP's final denial—nearly three times as long as the process is supposed to take—and likely was only finally exhausted due to Respondent's voluntary cessation of his affirmative misconduct when Petitioner began docketing the rejections of his remedy filings. See ERJ Decl. ¶¶ 273–372 (Royer Sex-abuse remedies took from Nov. 26, 2019, to June 21, 2021, to get final denial), attachms. 57–59 (final parts thereof), App'x A121–28.

But even now Respondent continues inventing ad hoc rules ex post facto to reject Petitioner's relevant remedies. See ERJ Decl. at 52, ¶¶ 398–405 (Adm. Rem. 1119733-R1 re IR 3427792 was rejected for failure to specify the date of DHO action and charges but Respondent's policies

require Petitioner specify only the IR no., which he did). For this reason Petitioner faced and continues to confront an "indefinite time frame for administrative action" as contemplated in *Iddir, supra.*

Further, Petitioner will argue that Respondent not only lacks the competence to resolve the underlying constitutional issue of court access to pursue D.C. Code § 16-1905, Petition ¶¶ 109-10, dkt. 1 at 21-22 (DHO Matthews did not consider constitutional issues), but his own policies foreclose administrative review of constitutional issues: "The decision of the DHO is final and subject to review only by the Regional Director[sic] to ensure conformity with disciplinary policy." U.S. Dep't of Justice, Fed. Bur. of Prisons Program Statement 5270.09 Inmate Discipline Program ("Prog. Stat. Inm. Disc.") at ch. 5 (July 8, 2011). "On appeals[sic], the reviewing authority considers: Whether the UDC or DHO substantially complied with regulations on inmate discpline." *Id.* Such policies and regulations neither mention nor contemplate anything resembling the question of whether court access is unconstitutionally barred by construing a demand under D.C. Code § 16-1905 as "extortion." *See, e.g.,* Prog. Stat. Inm. Disc. and 28 C.F.R. Part 514 Inmate Discipline and Special Housing Units and Part 542 Administrative Remedy.[3] Under BOP's own policies it "cannot grant the relief requested," *Iddir, supra.*

*Ipso facto,* Petitioner's amended reply will argue, the agency had "predetermined" the outcome of Petitioner's remedy before he filed it. The agency is further biased, Petitioner will show, by its pecuniary interests in the IR's outcome, *e.g.,* the $50 fine assessed and the protection from damages litigation it now enjoys under *Edwards v. Balisok,* 520 U.S. 641, 645-46 (1997) (finding prisoner barred from civil claim that would invalidate prison-discipline ruling (citing *Heck v. Humphrey,* 512 U.S. 477 (1994)).

Last but not least under the *Iddir* rubric, Petitioner will elucidate a substantial constitutional question of first impression in this circuit: When a prisoner must exhaust a peculiar statutory regime to access a court for fixed damages from his jailors, may his jailors, in response to his exhaustion, deprive him of earned good-conduct time, fine him, destroy his property and subject him to other atypical and significant hardships? *See, e.g., Schultz v. Pugh,*

---

[3] A Lexis® search within these branches for *constitu*\* returns zero results.

728 F.3d 619, 620–21 (7th Cir. 2013) (Posner, J.) ("[T]he law governing unavailability of prison remedies on grounds of intimidation is in some disarray"). The Seventh Circuit has expressly left undecided the contours of such questions. *Id.*[4]

Additionally, Petitioner will buttress the factual and legal claims made first in Petition that Respondent is properly estopped from raising nonexhaustion due to his affirmative misconduct. The instant IR sprang from such misconduct in retaliation against an attempt to access a court.[5] Petitioner could not be reasonably expected, having already suffered such retaliation, to pursue further administrative actions with a clear design of going to court against Respondent. He ceased pursuing all his open remedies after IR 3338082 except for the Royer Sex-abuse series. *See* Remedy Table ("Rem. Tbl."), Attachm. 6, App'x at A51–52.

And even if the result of neglect and not malice, the end effect of Respondent's actions was to foreclose meaningful administrative review of Petitioner's remedy filings, particularly those challenging due process deprivations, retaliation and other staff misconduct. *See* ERJ Decl. ¶¶ 98–100, 171–76, 207–20, 228–41 (Bradley BP-10 rendered unexaustable despite Petitioner's more than adequate efforts); *id.* ¶¶ 126–47, 152–69, 228–39, 245, 256–63 (Hart BP-9, -10, -11 rejected for including documentary evidence despite regulatory requirement that Petitioner "must" include such evidence); *id.* ¶¶ 177, 243, 253, 266–68, 271–72, 279–81, 300–02 (sanctions enforced for 43 days but expunged before Petitioner could exhaust withholding of written report); *id.* ¶¶ 253–54 (Eisele BP-8 unanswered); *id.* ¶¶ 273, 287–88, 308–12, 316–29, 337–38, 340–41, 346–56, 364–73

---

[4] The opacity of Respondent's remedy program obscures whether Petitioner is procedurally defaulted from administrative review. *See* Matthews BP-10 re IR 3338082 As Subm. (citing 28 C.F.R. §§ 115.52(b)(1) ("The agency shall not impose a time limit on when an inmate may submit a grievance regarding an allegation of sexual abuse"), 115.67(c) (the agency "shall act promptly to remedy" retaliation, including IRs)) (Apr. 29, 2022), Attachm. 60 at 1, App'x at A129. But if defaulted, Petitioner need show "cause and prejudice" to excuse himself. *Sanchez v. Miller*, 792 F.3d 694, 699 (7th Cir. 1986). This would overlap with the requirements to excuse exhaustion under *Iddir*, *supra*, such that the Court need not decide which standard applies.

[5] This is not to say that a D.C. court would find or decline to find jurisdiction under D.C. Code §§ 13-421 *et seq.* and 16-1905. *See, e.g.*, *Simpson v. Fed. Bureau of Prisons*, 496 F. Supp. 2d 187 (D.D.C. 2007) (personal long-arm jurisdiction over BOP employees required more than mere federal employment, but plaintiff never pleaded specifics); Prog. Stat. 5214.02 Communications Management Unit at ch. 3 §§ d–f (CMU-designation authority limited to assistant director, Correctional Programs Division) (Apr. 1, 2015); Prog. Stat. 5100.08, CN-1 Inmate Security Designation and Classification at ch. 6 INMATE TRANSFER (citing "Assistant Director, Correctional Programs Division, Washington, D.C.") (Sept. 4, 2019). Petitioner had the right to try, however.

(Royer Sex-abuse remedies dragged out for 18 months due to admitted "staff error" and took at least four BP-10s and two BP-11s, each requiring postage).

Petitioner will further plead in his amended reply that discovery is in order to show through, e.g., Eisele's, Matthews's and Siereveld's electronic correspondence, that retaliatory animus was at play not only in drafting the IR but well before it, affecting Petitioner's attempts to exhaust remedies relevant to the discipline process.

The core issue, the IR itself, as Petitioner's amended reply will show, cannot stand under this circuit's precedent *Cain v. Lane*, 857 F.2d 1139, 1143 (7th Cir. 1988) ("Even where proceedings are not otherwise constitutionally deficient, they may be invalidated by evidence that they were retaliatory in nature"). "'The observance of procedural formalities cannot render valid an infringement upon inalienable constitutional rights.'" *Id.* (quoting *Shango v. Jurich*, 681 F.2d 1091, 1098 n. 13 (7th Cir. 1982)). The Seventh Circuit then applied *Cain* specifically under § 2241: "It is not enough that [Petitioner] was given a hearing before the DHO. [...] '[I]f the district court finds on remand that the prison administrators disciplined Cain in retaliation for his constitutionally protected speech, this would invalidate [the prison's administrative] proceedings despite compliance with due process requirements.'" *Dougherty v. Clark*, 1993 U.S. App. LEXIS 12444, No. 91-3344 (7th Cir. May 17, 1993) at *4 (quoting *Cain* at 1145) (alterations added).

Moreover, where others would have difficulty showing the IR was retaliatory, Petitioner provides a chronology of events more than sufficient to infer vindictiveness. *See* ERJ Decl. *en toto*; *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000) ("'To state a cause of action for retaliatory treatment, a complaint need only allege a chronology of events from which retaliation may be inferred'") (quoting *Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994) (citations and quotation marks omitted)). But Petitioner need show no such motive, merely that the proximate cause of the discipline was his lawful attempt to access the court. Petition ¶ 5 (collecting cases), dkt. 1 at 2–3.

Further, Petitioner's amended reply will reiterate that he was denied exculpatory evidence, e.g., a copy of the demand itself, witness testimony, e.g., an inmate witness who had filed a

demand under D.C. Code § 16-1905 without punishment, and a neutral factfinder. DHO D. Matthews, for example, chose not to affirm his own impartiality after it was expressly challenged. Matthews Decl., dkt. 21-3.[6]

Last, Petitioner's amended reply will address justiciability in light of Respondent's claim of mootness.[7] Since the instant IR Petitioner brought three more retaliatory IRs and is withholding all three DHO reports. ERJ Decl. ¶¶ 331–36 (*Forbes* IR); *id.* ¶¶ 339–43 (UDC was too late); *id.* ¶ 345 (FCI legal department participated in retaliation); *id.* ¶¶ 356–62 (Matthews admitted his retaliatory animus and Petitioner requested preservation of audio thereof); *id.* ¶¶ 384–90 (DHO Bradley openly took exception to negative but true reports naming fellow staffers to the press, staff rep. smiled at guilty finding, no DHO reports forthcoming after more than 6 months); Attachms. 60–64, 66–70 (DHO reports sought, remedies rejected). This case is certainly not moot, especially in light of the fact that prisoners regularly bounce between the two CMUs. ERJ Decl. ¶ 412 (naming prisoners who have done so). *See also Aref v. Lynch*, 833 F.3d 242, 251 (D.C. Cir. 2016) (refusing to find mootness in CMU case because prisoners are redesignated to CMUs and voluntary cessation is insufficient to show mootness). "Voluntary cessation of the contested conduct makes litigation moot only if it is 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Elim Romanian Pentecostal Church v. Pritzker*, 926 F.3d 341, 345 (7th Cir. 2020) (quoting *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 189 (2000)).

And "[t]o the extent that [Petitioner] can be understood to be challenging his placement in a Communications Management Unit[*sic*]," Reply at 14 n. 3—and he is doing so—the question is not,

---

[6] Respondent conflates the assumed impartiality of Article III judges afforded by their income and occupational protection with a part-time DHO beholden to Respondent for his continued employment and advancement. *See, e.g., Malone v. United States AG*, 888 F. App'x 296, 297 (5th Cir. May 26, 2021) ("Full-time DHOs are selected by the regional office that oversees a given set of BOP facilities. But some facilities also employ alternate DHOs who assist with the disciplinary case load as a 'collateral duty,' meaning the alternate DHOs continue to fulfill their primary job[s]"); DHO Rep. at 3 (Matthews was an alternate DHO), dkt. 21-3 at 12.

[7] Petitioner is particularly dubious of any voluntary cessations Respondent may claim between the mailing of this filing and its entry on the docket, given that Respondent pre-emptively reads Petitioner's court filings prior to mailing them. *See* 28 C.F.R. § 540.203(a), (c) (mail to U.S. courts read for contents); Letter to Hon. Judge Sweeney at 5 (noting Respondent pre-empted Petitioner's filing with Notice, dkt. 46), dkt. 52.

as Respondent needs to frame it, whether Petitioner's CMU designation *per se* violates *Sandin v. Conner*, 515 U.S. 472 (1995). Rather, the question is whether the CMU's practices as actually applied to Petitioner represent an atypical and significant hardship. "[T]he inquiry as to whether there is a violation" of *Sandin* "is fact-specific." *Gillis v. Litscher*, 468 F.3d 488 (7th Cir. 2006). Unless Responent takes the ridiculous position that the full range of prior restraints and retaliation pleaded throughout Petition and ERJ Decl. and supported by the current record is typical in a free republic that values protected speech, journalism, court access and public dialogue, and that such presents no legal issues, then even he must admit that Petitioner's CMU designation, as applied, is an atypical and significant hardship.

Respectfully submitted Monday, June 13, 2022; *Houston v. Lack*, 487 U.S. 266 (1988); by mailing to the Court in an envelope bearing sufficient affixed pre-paid U.S. Priority Mail® postage and tracking no. 9114 9022 0078 9765 4911 78, handed to Mr. Nate Simpkins of the CMU Marion Unit Team in his official capacity as an agent of Respondent and of Respondent's counsel at the next opportunity,

by: [signature]
Martin Gottesfeld, *pro se*
Reg. no. 12982-104
United States Penitentiary
P.O. Box 1000
Marion, IL 62959

## CERTIFICATE OF SERVICE

I, Martin Gottesfeld, *pro se*, certify that I caused a digital copy of the foregoing document to be served upon counsel for the respondent by in-hand delivery to her agent; *see* 28 C.F.R. § 540.203(a), (c) (mail to U.S. courts and judges is read for contents).

by: [signature]
Martin Gottesfeld