Case 2:20-cv-00012-JRS-MJD Document 100-31 Filed 07/25/22 Page 1 of 4 PageID #: 1111
Case 1:18-cv-10836-PGG Document 63 Filed 07/16/19 Page 5 of 26

Att. 30

Affidavit of Martin S. Gottesfeld:

I, Martin S. Gottesfeld, do hereby affirm that the following is true and accurate to the best of my knowledge, information, and belief on this 27th day of June, 2019, and I do so declare the following pursuant to 28 U.S.C. §1746 (see LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham, 185 F.3d 61, 65-66 (2d Cir. 1999)):

1. My name is Martin S. Gottesfeld and I am an inmate in the communications management unit (CMU) of the Federal Correctional Institution (FCI) Terre Haute, Indiana.

2. My federal registration number is 12982-104.

3. Today I became at least the third FCI Terre Haute CMU inmate in about as many days to be sexually abused, as defined by 28 CFR §115.6, "(8) Voyeurism," by an unidentified employee of the Federal Bureau of Prisons (FBOP).

4. The aforementioned incident of sexual abuse happened while I was alone in my cell (cell 41) of the FCI Terre Haute CMU at approximately 10:00 A.M. Eastern Time and the FBOP employee should have been video and audio recorded outside my cell, though such records have a common tendency to become unavailable or degraded when the FBOP might desire such.

5. I was sitting on my toilet defecating at the time of the incident.

6. The FCI CMU unit team (which is separate from the correctional officers (COs) on the unit's custody team) is entirely female, so male inmates in the FCI Terre Haute CMU traditionally cover the windows in their cell doors temporarily while defecating, and this has become an accepted practice, to the point where a correctional officer (CO) was once reprimanded by a lieutenant for telling inmates to uncover the windows in their cell doors while using the facilities.

7. In order to meet the institutional need for inmate safety, staff on rounds who encounter a covered window in a cell door typically verbally confirm from the outside that the inmate inside of the cell is alright and then continue their rounds.

8. This unidentified staff member had harassed at least two (2) other FCI Terre Haute CMU inmates in the 48 hours prior while they too were defecating by ordering them in a disrespectful, coercive, and unprofessional manner to take down their window covers over their understandable objections.

9. When this unidentified male staff member came upon my cell (and I do not know why this previously-unknown staff member has been in the unit this week in the first place), he barked, "Why is this window covered again?"

10. I had never seen this man before and he had never, so far as I know, in fact encountered a cover on my window previously.

11. I attempted to answer his question in a respectful, albeit obvious, manner.

12. He did not like my answer and became more rude.

13. He ordered me to uncover my window and I got up partially in order to do so, as awkward as that was.

14. Before I could uncover my window myself, this unaccompanied male staff member opened my cell door, reached his arm into my cell, and thus broke

the plane of entry, then took down the shirt that was covering my window.

15. This unaccompanied male staff member proceeded to stare at my exposed genitals, obviously and awkwardly.

16. After standing there for longer than was necessary, this staff member barked, "Don't cover this window again."

17. Most FBOP staff members whom I have encountered go out of their way, understandably, to avoid seeing inmates defecate.

18. This unaccompanied male staff member appears to go out of his way to see inmates defecate and to react negatively to obstacles which obstruct his view, based on the frequency and intensity of the incidents like the above which have occurred over the past 72 hours or so in the FCI Terre Haute CMU.

19. Contrary to FBOP policy, this unaccompanied male staff member was not displaying a visible name tag (see FBOP Program Statement 3300.03, "Employment," §19(8), "NAME TAGS AND OTHER ADORNMENTS").

20. Contrary to FBOP policy, this unaccompanied male staff member spoke in a deliberately coercive, disrespectful, and unprofessional manner during this incident (see FBOP Program Statement 3420.11, "Standards of Employee Conduct," §5, "PERSONAL CONDUCT").

21. I do not have access to the official Correctional Services Manual (FBOP Program Statement 5500.11), which dictates mandatory procedure(s) for entering inmate cells, but I do believe that no FBOP staff member is allowed to enter a cell occupied by an inmate without backup present, and that this procedure is required in order to protect both staff and inmates.

22. Except for dire emergencies, it is hard to imagine a valid reason for an FBOP employee to enter an occupied cell without backup, and it is worth noting that in November of last year, inmate Rodney Hamrick killed inmate Robert David Neal in a cell in this very same unit and stabbed inmate Richard Warren a dozen or so times inside another cell here.

23. I believe it is also considered explicitly inappropriate for an FBOP employee to enter an area knowingly while alone when he or she has reason to believe that an inmate who they are not legitimately strip searching might be naked and defecating, and this unaccompanied male staff member had very good reason to believe that I and the other inmates he has similarly harassed were naked and defecating.

24. If this FBOP staff member violated policy by opening and entering my cell alone while he knew that I was likely naked and defecating, then such conduct would not be related to his official duties.

25. In part, 28 CFR §115.6 reads, "Sexual abuse of a detainee by a staff member, contractor, or volunteer includes any of the following acts, if engaged in by one or more staff members, volunteers, or contract personnel who, with or without the consent of the detainee, engages in or attempts to engage in:... (8) Voyeurism, which is defined as the inappropriate visual surveillance of a detainee for reasons unrelated to official duties. Where not conducted for reasons relating to official duties, the following are examples of voyeurism: staring at a detainee who is using a toilet in his or her cell to perform bodily functions..."

26. All FBOP inmates are supposed to be able to send confidential reports to the Office of the Inspector General (OIG) for the United States Justice Department and to have access to PREA hotlines (see 28 CFR §115.51(b)).

- Page 2 of 4 -
- Page A130 of A263 -

27. Because FCI Terre Haute CMU inmates like me do not have access to PREA hotlines nor any methods to contact the OIG confidentially, I am unable to report the aforementioned incident directly and confidentially to the appropriate independent authorities as I should be able to do according to 28 CFR §115.51(b).

28. Unlike inmates elsewhere in the FBOP, those in the FCI Terre Haute CMU cannot send sealed mail confidentially to the courts (see 28 CFR §540.203(b)(1)).

29. I am unable to report the aforementioned incident directly and confidentially to any court from inside the FCI Terre Haute CMU.

30. It has come to my attention that the previous Unit Manager here at the FCI Terre Haute CMU, Mr. Clint Swift, was transferred following one or more PREA complaints lodged against him for entering occupied cells without backup for non-official reasons.

31. I believe that the lack of access to PREA hotlines and to the OIG from inside the FCI Terre Haute CMU is the deliberate work of Katherine Siereveld.

32. Katherine Siereveld is a member of the FCI Terre Haute legal department.

33. Katherine Siereveld routinely presents herself as an attorney, including to courts.

34. However, it has come to my attention that Katherine Siereveld may not be licensed to practice nor admitted to the bar in Indiana nor Illinois, the locations of the FBOP's two (2) CMUs.

35. I have previously reported the lack of access to PREA hotlines and to confidential filing with the OIG to Diane Lee, the "Certified PREA Auditor" for the FCI Terre Haute CMU, in a written letter to her at her business address, 11820 Parklawn Dr., Suite 240, Rockville, MD 20852, which I gave to FBOP staff to mail on May 17th, 2019, in an envelope bearing United States Postal Service (USPS) tracking number 9114 9014 9645 1762 0787 72.

36. I was not allowed to seal my own letter to Diane Lee and it was read, scanned, and preserved by the FBOP before it was sent, if it was in fact sent at all as opposed to an empty envelope.

37. According to the USPS tracking system, my letter to Diane Lee's office was delivered thereto on May 28th, 2019, but again I do not know if it was received empty or altered due to the actions and inactions of the FBOP.

38. Today marks thirty (30) days since my letter was reportedly delivered to Diane Lee and I have not received any response from her office.

39. Due to reports from other inmates which I find credible based upon my experience as a Rolling-Stone--featured human-rights activist and as an investigative journalist, I find it likely that the agents, employees, contractors, and other entities acting under the control of Acting FBOP Director Hugh J. Hurwitz, including Katherine Siereveld, will retaliate against me for reporting the above incident of sexual abuse by an FBOP employee working inside of the FCI Terre Haute CMU, and that this retaliation will seriously impede my litigation against Mr. Hurwitz and others in the case of Gottesfeld v. Hurwitz, et al. (S.D. NY 18-cv-10836-PGG).

40. I believe that such unlawful retaliation will consist of further such

acts of voyeurism and that I will be placed in the "special housing unit," or SHU, here at the FCI Terre Haute CMU in a deliberate effort to get me to withdraw my complaint in order to secure my exit from the SHU.

41. The FCI Terre Haute CMU SHU is regarded as a torture chamber by the inmates here, who consistantly report enduring extreme temperatures, drinking water which causes convulsive vomiting and dangerously-dehydrating diarrhea, sleep deprivation, a floor that becomes too hot for them to stand in their tiny punishment cells, withholding of writing impliments, postage, envelopes, and other items necessary to contact the outside world and to pursue litigation in the courts, and more (see S.D. NY 18-cv-10836-PGG D.E. 42 at 2 ¶¶ 6-7, and at 3 ¶¶ 14-15).

42. The unaccompanied male staff member from the incident above was a grey-haired caucasian male wearing a grey shirt today, June 27th, 2019.

43. It has subsequently come to my attention that the surname of the unaccompanied male staff member in question may be "Royer" or something similarly spelled.

44. It has subsequently come to my attention that the unaccompanied male staff member in question has taken down mandatory placards bearing Diane Lee's name and address, and I believe that this is also a policy violation.

45. A fourth victim has subsequently come to my attention.

46. The unaccompanied male staff member has subsequently threatened other victims with retaliatory disciplinary action for reporting his non-official activities.

47. It has recently come to my attention that the first initial of the unaccompanied male staff member in question may be "T."

48. On Friday, June 28th, 2019, I was approached by two (2) members of the S.I.S. (or internal investigations) department of FCI Terre Haute who wanted to speak to me about a "PREA" matter about which they had heard from a "third party." I declined to speak with them and advised them that I would be filing a report with the Office of the Inspector General, as is my prerogative under federal regulations. This conversation took place in the lobby of the CMU around 2:45 P.M. Eastern Time.

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on Thursday, June 27th, 2019.

Martin S. Gottesfeld

49. About 4 hours after I spoke with S.I.S., a victim whom "T. Royer" had threatened received a disciplinary charge, written, but not delivered by, "T. Royer." Thus, FCI Terre Haute is allowing Royer to retaliate against victims for reporting him, in violation of 28 CFR §115.67. In the report, Royer claims to have been on "PREA rounds." However, he didn't notice the violations of 28 CFR §115.51(b) cited above and rather he took down placards with Diane Lee's address. Royer may also be the backup disciplinary hearing officer (DHO) for FCI Terre Haute, and he appears to use this status to offend with impunity and to intimidate and coerce his victims further.