Attchm. 71

TRULINCS 12982104 - GOTTESFELD, MARTIN - Unit: MAR-I-A

----------------------------------------------------------------------------------------

FROM: 12982104
TO: CMU
SUBJECT: ***Request to Staff*** GOTTESFELD, MARTIN, Reg# 12982104, MAR-I-A
DATE: 05/01/2022 07:23:50 PM

To: National PREA Coordinator
Inmate Work Assignment: N/A

Dear National PREA Coordinator:

1. I hereby lodge this formal complain under the Prison Rape Elimination Act (PREA) against
1) FCI-THA D-Unit Manager Mr. Todd Royer;
2) FCI-THA D-Unit Case Manager Ms. Rebekka Eisele;
3) FCI-THA D-Unit Interim Intelligence Resource Officer Ms. Jamie Wheeler;
4) BOP CTU analyst Ms. Jodi Wampler (or Whampler);
5) North Central Regional Disciplinary-Hearing Officer (DHO) Mr. Jason Bradley;
6) FCI-THA Warden Mr. Brian Lammer;
7) FCI-THA Institutional PREA Compliance Manager(s) (from Summer 2019 through January 21, 2022);
8) FCI-THA Special Investigative Services (SIS) Lieutenant (Lt.) Mr. Jamie Baker;
9) FCI-THA SIS Lt. Mr. J. Sherman;
10) FCI-THA SIS Lt. Mr. J. Edwards;
11) FCI-THA Drug Education (Drug ed.) Counselor, name unknown, who was my staff representative for incident reports 3549119 and 3552752; and
12) FCI-THA Associate Warden Mr. Dixon.

2. During early Summer 2019 Mr. Todd Royer became the FCI-THA duty officer.

3. During Mr. Royer's rounds he sexually abused multiple inmates, including me. See 28 C.F.R. sec. 115.6 "Sexual abuse of an inmate [...] by a staff member[...] includes [...] (8) Voyeurism by a staff member. [...] Voyeurism by a staff member [...] means an invasion of privacy of an inmate[...] by staff for reasons unrelated to official duties, such as peering at an inmate who is using a toilet in his or her cell to perform bodily functions."

4. The first prisoner to confront Mr. Royer for voyeurism---and tell him that he was going to report him---was Mr. Fahrooq Ahmed, at which point Mr. Royer went around D-Unit ripping off the wall the name and address of Ms. Diane Lee, the institution's last PREA auditor.

5. Ms. Diane Lee's name and address remained posted elsewhere throughout the institution months after Mr. Royer removed the postings from D-Unit.

6. Following Mr. Ahmed's report Warden Brian Lammer and the Institutional PREA Compliance Manager(s) failed to separate Mr. Royer from Mr. Ahmed. See 28 C.F.R. sec. 115.64(a)(1) (responding security staff to "Separate alleged victim and abuser"). See also Program Statement 5324.12 Sexually Abusive Behavior Prevention and Intervention Program (June 4, 2015) ("In the Bureau[sic], all institution staff are considered to be 'security staff'").

7. Mr. Royer was allowed to continue his rounds through D-Unit.

8. Mr. Royer then opened my cell door while I was defecating, broke the plain of entry to my cell, and conspicuously stared at my exposed genitalia. See, again, 28 C.F.R. sec. 115.6 (defining voyeurism as sexual abuse).

9. I promptly notified the Court in Gottesfeld v. Hurwitz, 18-cv-108366-PGG-GWG (S.D.N.Y.).

10. BOP read my court notification; see 28 C.F.R. sec. 540.203 (mail to U.S. courts and judges is read for contents).

11. BOP took absolutely no action in regards to my PREA report.

12. I filed an Administrative Remedy--Informal Resolution (BP-8) because, in violation of PREA, BOP provided me absolutely no anonymous way to report Mr. Royer. See, e.g., BP-8 and BP-9 (admin. rem. no. 1000236-F1), Gottesfeld v. Lammer, 2:20-cv-12-JRS-MJD (S.D. Ind.), dkt. 47-1.                    – Page A236 of A263 –

TRULINCS  12982104 - GOTTESFELD, MARTIN - Unit: MAR-I-A

---------------------------------------------------------------------------------------

13. Hearing nothing back on my BP-8, I handed D-Unit Case Manager Ms. Rebekka Eisele BP-9 no. 1000236-F1 on Sunday, December 8, 2019.

14. Ms. Eisele delayed handing my BP-9 to the institution remedy clerk until two days later, December 10, 2019.  See id.

15. In the interim Ms. Eisele and Ms. Katherine Siereveld wrote retaliatory incident report (IR) 3338082 against me as a guise to transfer me out of the institution and save Mr. Royer.

16. Due to other pending litigation, Ms. Siereveld and Ms. Eisele failed in their retaliatory transfer.

17. Shortly after IR 3338082 Warden Brian Lammer made Mr. Royer the new unit manager for Mr. Ahmed and me.

18. I composed a TRULINCS message to journalists detailing Mr. Royer's serial sexual abuse and his placement as my new unit manager.

19. SIS Lt. J. Sherman came to interview me regarding the matter, at which time I provided him a copy of my under-penalty-of-perjury filing in Gottesfeld v. Hurwitz, supra.

20. Mr. Sherman did nothing to stop Mr. Royer or separate him from me.  See, again, 28 C.F.R. sec. 115.64(a)(1)

21. Mr. Royer thereafter sexually harassed and abused others, to wit, he went off camera, into an occupied shower area and reached his arm into a shower occupied by D-Unit lifer "Ali."

22. D-Unit lifer Ali reported Mr. Royer to, inter alia, SIS Lt. J. Sherman, who did nothing.

23. As unit manager, Royer also retaliated against me and others who complained against him by, inter alia, demanding monthly Inmate Financial Responsibility Program (IFRP) payments in excess of $300.

24. Mr. Royer entered my cell, unescorted, and off-camera, for no valid reason, merely to try to groom me and demonstrate that he is above the law.

25. I again complained under PREA.

26. SIS Lt. J. Edwards came to interview me but also did nothing.

27. No unit-wide interviews were ever completed re Mr. Royer in D-Unit---the plan was to avoid any investigative steps that would corroborate his abuse.

28. I complained in writing to the complex warden, who did nothing.

[TO BE CONTINUED IN A SECOND COP-OUT]

TRULINCS 12982104 - GOTTESFELD, MARTIN - Unit: MAR-I-A

------------------------------------------------------------------------------------------------

FROM: 12982104
TO: CMU
SUBJECT: ***Request to Staff*** GOTTESFELD, MARTIN, Reg# 12982104, MAR-I-A
DATE: 05/01/2022 07:54:48 PM

To: National PREA Coordinator
Inmate Work Assignment: N/A

[CONTINUED FROM FIRST COP-OUT]

29. Interim Intelligence Resource Officer Ms. Jamie Wheeler was at all relevant times well aware of Mr. Royer's sexual abuse and failed in her duties to separate him from us, his victims. See, again, 28 C.F.R. sec. 115.64(a)(1) and Program Statement 5324.12, supra (all BOP staffers are "security" for purposes of 28 C.F.R. sec. 115.64(a)(1)).

30. SIS Lt. Mr. Jamie Baker knew of my initial PREA report to OIG but did not separate Mr. Royer from us, his victims.

31. At one point approximately a half dozen D-unit prisoners attempted to mail sensitive BP-10s to regional re Mr. Royer and PREA.

32. Most of those prisoners never heard back from North Central Region.

33. The others received rejection notices.

34. Associate Warden J. Dixon came to speak to the unit in groups after the attempted mailing of the aforesaid BP-10s but took no action to separate Mr. Royer from us, his victims.

35. At least three (3) retaliatory IRs were filed against me for reporting Mr. Royer: nos. 3338082, 3549119 & 3552752. (IR 3427792 may refer to a letter mentioning Mr. Royer as well, I no longer remember). Cf. 28 C.F.R. sec. 115.67(c) ("For at least 90 days following a report of sexual abuse, the agency shall monitor the conduct and treatment of inmates or staff who reported the sexual abuse of inmates or who were reported to have suffered sexual abuse to see if there are changes that may suggest possible retaliation by inmates or staff, and shall act promptly to remedy any such retaliation. Items the agency shall monitor include any inmate disciplinary reports, housing, or program changes, or negative performance reviews or reassignments by staff").

36. Also, Mr. Royer indeed ordered me into a less desirable housing situation.

37. Mr. Royer was allowed to serve as the sole unit disciplinary committee (UDC) member for IR 3552752 despite the fact that the call in question mentioned him and his serial sexual abuse. Cf. 28 C.F.R. sec. 541.7(b) ("UDC members will not be [...] significantly involved in the incident").

38. Disciplinary-Hearing Officer (DHO) Mr. Jason Bradley was at all relevant times aware of Mr. Royer's sexual abuse; Royer and Bradley are both DHOs at FCI-THA.

39. I told Mr. Bradley that Mr. Royer was the sole UDC member for IR 3552752 but Mr. Bradley neither expunged the IR nor sent it back for a fresh UDC.

40. During the DHO hearings Mr. Bradley took specific exception to my naming of "staff"---implicitly including Mr. Royer---to the press.

41. Mr. Bradley's real goal was to place Mr. Royer above the law and above public scrutiny, in violation of PREA and U.S. Const. amend. I.

42. My "staff representative" for IRs 3549119 and 3552752 knew of my PREA complaints but also took no action to separate Mr. Royer from us, his victims. See, again, 28 C.F.R. sec. 115.65(a)(1) and Program Statement 5324.12, supra (all BOP staffers are "security" for purposes of 28 C.F.R. sec. 115.65(a)(1)).

43. BOP Analyst Ms. Jodi Wampler (or Whampler), the author of IRs 3549119 and 3552752, and Ms. Siereveld and Ms. Eisele, authors of IR 3338082, knew of Mr. Royer's serial sexual abuse but took no action to separate him from us, his victims. See again, id.

TRULINCS  12982104 - GOTTESFELD, MARTIN - Unit: MAR-I-A

-----------------------------------------------------------------------------------------------------

44. "The DHO gives the inmate a written copy of the decisions and disposition [of the incident report(s)], ordinarily within 15 work days of the decision." Program Statement 5270.09, CN-1 (Nov. 8, 2020) at ch. 5. Mr. Bradley has never given me his written reports re IRs 3549119 and 3552752 and the hearings took place five months ago (Dec. 1, 2022). Respectfully, it is now too late for him to do so credibly.

45. "Administrative investigations should also consider information on whether other factors such as physical layouts, staffing patterns, institution operations, etc., contributed to the abuse." Program Statement 5324.12, supra. In this case the insular nature of the communications-management units (CMUs), the inability of prisoners to contact higher authorities without lower staff interference, the violation of standards allowing anonymous and third-party PREA reports, and the institutions incapability to follow PREA standards, all enable Mr. Royer's continued sexual abuse.

46. "Bureau inmates are encouraged to report allegations to staff at all levels, including local, regional and Central Office." Program Statement 5324.12, supra. See also id. ("For the purposes of this section, staff may contact any supervisory staff at the local, institution, Regional[sic] staff, or Central Office[sic] staff, including the Regional PREA Coordinators and the National PREA Coordinator"). Respectfully, all lower levels have failed to handle this issue properly and I expressly request notification of the National PREA Coordinator.

47. At no point has any agency staffer notified me of the status of any of my PREA complaints against Mr. Royer. Contrast e.g., 28 C.F.R. sec. 115.73(a) ("[T]he agency shall inform the inmate as to whether the allegation has been determined to be substantiated, unsubstantiated, or unfounded").

48. I found out only from the press that my PREA complaint had been referred to OIA. See, e.g., Michelle Malkin, FreeMartyG: Exposing America's Secret Prisons, The New American & Syndicated (January 26, 2022).

TRULINCS 12982104 - GOTTESFELD, MARTIN - Unit: MAR-I-A

-------------------------------------------------------------------------------------------

FROM: 12982104
TO: CMU
SUBJECT: ***Request to Staff*** GOTTESFELD, MARTIN, Reg# 12982104, MAR-I-A
DATE: 05/01/2022 08:25:15 PM

To: National PREA Coordinator
Inmate Work Assignment: N/A

[CONTINUED FROM SECOND COP-OUT]

49. Nobody from OIA has ever contacted me, nor, to my knowledge, any of Mr. Royer's other victims.

50. "The agency shall require all staff to report immediately and according to agency policy any knowledge, suspicion, or information regarding an incident of sexual abuse or sexual harassment that occurred in a facility, whether or not it is part of the agency; retaliation against inmates or staff who reported such an incident; and any staff neglect or violation of responsibilities that may have contributed to an incident or retaliation." 28 C.F.R. Sec. 115.61(a). I have no idea what OIA knows and what it does not, because of the mishandling of my and others' prior complaints against Mr. Royer and his accomplices in retaliation.

51. I find applicable, inter alia, 28 C.F.R. sec. 115.63 Reporting to other confinement facilities. See also Program Statement 5324.12, supra ("In the event that a staff member is alleged to have perpetrated sexually abusive behavior against an inmate, the Warden is notified immediately. The Warden notifies the Regional Director and Office of Internal Affairs (OIA), who in turn notify the Office of the Inspector General (OIG), and, when appropriate the Federal Bureau of Investigation (FBI)").

52. "The Special Investigative Lieutenant provides all notifications to inmates required under [28 C.F.R. sec. 115.73(a)]." Id. I kindly request USP Marion SIS to notify me of the status of my report.

53. I also wish to speak to the relevant investigators at OIA.

54. "If evidence supports that a staff member engaged in sexual abuse, as defined in [28 C.F.R.] section 115.6, the matter will first be referred for criminal prosecution." Id. This is what must happen, otherwise BOP's "zero tolerance" policy is not, in actuality, zero tolerance at all.

55. At this time I have relevant outbound 1) legal mail to Attorney Shawn Shaffie, Esq., Parker Mills LLP, 800 West Sixth St., Suite 500, Los Angeles, CA 90017-2702; 2) court mail to send to the U.S. District Court for the Southern District of Indiana, Terre Haute Division; and 3) a quantify of four (4) BP-10s for regional.

I declare that the foregoing is true and correct under the penalty of perjury under the laws of The United States of America. See 28 U.S.C. sec. 1746. Executed Sunday, May 1, 2022.
by: /s/ Martin Gottesfeld