UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

**FILED**

**07/25/2022**

U.S. DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
Roger A.G. Sharpe, Clerk

MARTIN GOTTESFELD,
Petitioner, *pro se*,

v.

B. LAMMER, Warden of
The FCI Terre Haute, Indiana,
Respondent.

)
)
)
)
)
)
)
)
)

No. 2:20-cv-12-JRS-MJD

## AMENDED REPLY IN SUPPORT OF § 2241 PETITION

This case raises a substantial constitutional question of first impression in this circuit: When a prisoner must exhaust a peculiar statutory regime to access a court for fixed damages from his jailors, may his jailors, in response to his exhaustion, deprive him of earned good-conduct time, fine him, destroy his property and subject him to atypical and significant hardships?

MARTIN GOTTESFELD, Petitioner, *pro se*, reasserts no, they may not. Respondent B. LAMMER, through counsel, eschews this essential question. For that reason above others Respondent fails.

## 1. PROCEDURAL POSTURE

Petitioner, a federal prisoner,[1] opened this case from solitary confinement, i.e. the special-housing unit ("SHU"), Dec. 29, 2019. *See* Verified Petition for a Writ of Habeas Corpus (28 U.S.C. § 2241) ("Petition") § VI, dkt. 1 at 38; *id.* at 40 (citing *Houston v. Lack*, 487 U.S. 266 (1988)). Petitioner verified his allegations as required. *Id.* § VII; 28 U.S.C. § 2242. The five-dollar fee is paid. Receipt #IP068121, dkt. 11. The Court ordered Respondent to show cause and preserve

---

[1] The details of Petitioner's conviction are, of course, irrelevant to this case. But Petitioner notes Respondent's gratuitous *ad hominem* attack via a media article never served on him and thus available *ex parte* only to Respondent and the Court. *See* Return to Order to Show Cause ("Return") n. 1, dkt. 21 at 1. Petitioner moves to strike said citation. C*f*. S.D. Ind. L.R. 7-1(f) (service required of authorities cited outside Westlaw or Lexis). Instead of scour the dregs of Google to color this Court with tinhorn editorialism by an outlet best known for recklessly plunging this nation into two years of breathless conspiracy theories, Petitioner properly filed and served responsible, widely read reportage that, *e.g.*, duly inquired upon the government, Petitioner and alleged victims and beneficiaries of Petitioner's actions. *See* Michelle Malkin, *The brutal battle against medical kidnappers*, Creators Syndicate (June 28, 2017), dkt. 33-2; Frank Camp, *'Guardian Hacktivist' Martin Gottesfeld Convicted; Faces Up To 15 Years In Prison*, DailyWire (Aug. 8, 2018), dkt. 33-3; David Kushner, *The Hacker Who Cared Too Much: How a Crusade to Save Children Landed a Hacker in Prison*, Rolling Stone (June 29, 2017), dkt. 33-4.

relevant evidence and allowed Petitioner to reply to Respondent's answer. Orders, dkts. 7, 9 § I. Respondent electronically filed Return. Petitioner timely filed Reply to Responsive Pleading ("Reply"), dkt. 33. This Court then allowed Petitioner to amend his reply. Order, dkt. 36. Petitioner hereby amends.

## 2. DISPUTING AND CONCEDING FACTS

Outside the Prison Litigation Reform Act (PLRA) prison officials have "procedural requirements" to "reply to a prisoner complaint" or be "deemed to have admitted" its allegations. *E.g.*, *Jones v. Bock*, 549 U.S. 199, 216 (2007). "Cases properly brought under" § 2241 "are not subject to the PLRA." *Walker v. O'Brien*, 216 F.3d 626, 636 (7th Cir. 2000). Thus bare denials fail. "We have consistently held that such a general denial of the complaint's allegations, without factual support, is insufficient to state a meritorious defense." *Wehrs v. Wells*, 688 F.3d 886, 890—91 (7th Cir. 2012) (citing *Pretzel & Stouffer v. Imperial Adjusters, Inc.*, 28 F.3d 42, 46 (7th Cir. 1994) ("[A] meritorious defense requires more than a 'general denial' and 'bare legal conclusions'"); *accord Stephenson v. El-Batrawi*, 524 F.3d 907, 914 (8th Cir. 2008) ("simple assertions unsupported by specific facts or evidence" failed to establish meritorious defense); *New York v. Green*, 420 F.3d 99, 110 (2d Cir. 2005) ("conclusory denials" insufficient to raise meritorious defense)).[2] Respondent thus concedes what he inadequately or untimely contests.

Moreover, Petitioner invoked summary judgment. *See* 2d Motion for Summary Judgment, dkt. 34;

---

[2] In the habeas context, *see, e.g.*, *Garafola v. Benson*, 505 F.2d 1212, 1214 (7th Cir. 1974) (Petitioner's "assertions were not denied by the respondent and the District Court accepted them as true"); *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013) (Petitioner's "claims in this case are not contradicted by the record and they are based on factual allegations, rather than legal conclusions"); *United States v. Nuckols*, 606 F.2d 566, 568—69 (11th Cir. 1979) ("The Government has not denied that it made such threats"); *Perry v. Sigler*, 373 F.2d 835, 837 (8th Cir. 1967) ("According to appellant, and not denied by the respondent[...]"); *Rivera v. Superintendent Houtzdale SCI*, 738 F. App'x 59, 66 (3d Cir. June 19, 2018) ("[Petitioner]'s factual allegations are not contradicted by the record and the record does not otherwise preclude habeas relief"); *Thomas v. Parker*, 353 F. App'x 157, 159 (10th Cir. Nov. 23, 2009) ("Neither [the warden] nor [the captain] submitted a statement controverting [Petitioner]'s version of events[...] We agree [...] his account was sufficient to show retaliation"); *Riddick v. Angelone*, 22 F. App'x 164, 165 (4th Cir. Oct. 31, 2001) (district court must address Petitioner's untraversed allegation); *Jones v. Scott*, 1995 U.S. App. LEXIS 41787, No. 95-50373 (5th Cir. Nov. 16, 1995) ("The district court found that [Petitioner]'s sworn statement [...] was based on personal knowledge and that Respondent failed to controvert [his] allegation"). *Cf.* Rules Governing Section 2255 Proceedings 5(b) ("The answer must address the allegations in the motion") and Fed. R. Civ. P. 8(b)(6) (untraversed claims are conceded).

*Romano v. Baer*, 805 F.2d 268, 269 (7th Cir. 1986) ("Summary judgment was appropriate" in § 2241

case). To answer such a motion Respondent would have to "support his denial[s] with citations to

any record evidence" because "without supporting citations, his bare denial is ineffective."

*Gogos v. AMS Mech. Sys.*, 678 F. App'x 411, 413 (7th Cir. Feb. 3, 2017) (citing Rule 56(a); *Smith*

*v. Lane*, 321 F.3d 680, 682–83 (7th Cir. 2003) (explaining that when a party opposing summary

judgment does not cite to admissible evidence in denying facts asserted in the moving party's

statement of undisputed facts, they are deemed admitted)). This Court benevolently assured

Petitioner in denying his summary–judgment motion that he "does not need to file any motions to

obtain the relief requested in the petition." Order at 2, dkt. 36. Petitioner is prejudiced if as

a result Respondent's bare denials are credited when they would fail under Rule 56(e). He objects

to any such outcome. *See, e.g.,* Petitioner's Rule 56.1(a) Statement of Material Facts Not in

Dispute at 3 ("[...] [Petitioner] exhausted the available administrative remedies relevant to the

instant case when he filed the Eisele BP–8 and received no written response"), dkt. 34.

Petitioner may "deny any of the facts" in Respondent's Return. 28 U.S.C. § 2243. But he need

not do so to maintain factual disputes. 28 U.S.C. § 2248.

> We read [28 U.S.C. § 2248] as not requiring a traverse when a factual issue has been clearly
> framed by the petition and the return or answer. This section provides that the allegations
> of a return or answer to an order to show cause shall be accepted as true if not traversed,
> except to the extent the judge finds from the evidence that they are not true. This
> contemplates that where the petition and return or answer do present an issue of fact material
> to the legality of detention, evidence is required to resolve that issue despite the absence
> of a traverse. The reference to evidence assumes a hearing on issues raised by the
> allegations of the petition and the return or answer to the order to show cause.

*Stewart v. Overholser*, 186 F.2d 339, 342 n. 5 (D.C. Cir. 1950). *See also* Original Committee Note

to § 2254 Rule 5 (quoting same) ("It seems that when the petition and return pose an issue of

fact, no traverse is required").

> In actual practice, the traverse tends to be a mere pro forma refutation of the return,
> serving little if any expository function. In the interests of a more streamlined and
> manageable habeas corpus procedure, it is not required except in those instances where it will
> serve a truly useful purpose. Also, under rule 11 the court is given discretion to
> incorporate Federal Rules of Civil Procedure when appropriate, so civil rule 15(a) may be used
> to allow the petitioner to amend his petition when the court feels this is called for by the
> contents of the answer.

*Id.* The Court ordered Petitioner neither to amend Petition nor to address particular facts in

Return. *See also United States ex rel. Kendzierski v. Brantley*, 447 F.2d 806, 808 (7th Cir. 1971) ("Even if factual statements in the return are not traversed, they may be rejected 'to the extent that the judge finds from the evidence that they are not true'") (quoting 28 U.S.C. § 2248 and limiting returns to "qualified credence"). Petitioner nonetheless herein alleges "other material facts" under § 2243, for example, to rebut Respondent's affirmative defense.

"[C]omplaints need not anticipate or meet potential affirmative defenses." *Richards v. Mitchell*, 696 F.3d 635, 638 (7th Cir. 2012). "Exhaustion is an affirmative defense, and the burden of proof is on" Respondent. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). "Moreover, a court's 'deference to the administrative expertise and discretionary authority of correctional officials must be schooled, not absolute.'" *Williams v. Lane*, 851 F.2d 867, 872 (7th Cir. 1988) (quoting *Campbell v. Miller*, 787 F.2d 217, 227 n. 17 (7th Cir. 1986), *cert. denied* 479 U.S. 1019). When prison officials "confused deference with credibility in their arguments," the district court properly "weighed the evidence and carefully considered what was argued before it." *Id.*

In any event, this Court should treat Petition and this instant traverse of Return "as together constituting the application for the writ" and try the "issues of fact emerging from the pleadings." *Walker v. Johnson*, 312 U.S. 225, 234 (1971).

### 3.  RELEVANT FACTS SUPPLEMENTED

When Petitioner wrote Petition he had no access to his records or a copier. Petition ¶¶ 22, 29, dkt. 1 at 6, 8. He knew not which facts Respondent would plead. He now provides a responsive record of relevant events documenting his protected conduct, exhausted remedies, thwarted efforts to exhaust other remedies and Respondent's other misconduct against him. *See* Declaration of Martin Gottesfeld re *Exhaustion, Retaliation & Justiciability* ("ERJ Decl.") (July 18, 2022).[3] Petitioner herein incorporates by reference ERJ Decl. and its appendix of 81 attachments. *See Majeed v. Walton*, 2013 U.S. Dist. LEXIS 156670, No. 13-cv-864-DRH (S.D. Ill. Nov. 1, 2013) at *4– 5 (habeas petitioner was allowed to incorporate by reference documents proving exhaustion); Order

---

[3]  Petitioner asked the Clerk to ensure ERJ Decl. and its appendix of attachments appear at the dkt. no. directly preceding his reply-in-chief's because ERJ Decl. is meant to be read *in toto* before this reply-in-chief. Citations to ERJ Decl. pg. nos. use its internal pg. nos., not ECF pg. nos. Unless expressly stated otherwise, Attachm. herein refers to an ERJ Decl. attachment and App'x A(no.) refers to an ERJ Decl. appendix pg. no.

at 1 (Petitioner, in his amended reply, "may cite exhibits docketed with other motions in this action"), dkt. 36.[4]

## 4. JURISDICTION

Petitioner asserts and Respondent nowhere contests that this Court has personal jurisdiction over the parties and subject-matter jurisdiction over the controversy. Petition § I, dkt. 1 at 2; Notice of Change of Address to USP Marion (citing *In re Hall*, 988 F.3d 376 (7th Cir. 2021) (district court's jurisdiction unaffected by habeas petitioner's later transfer)), dkt. 84.

## 5. CRITERIA FOR PETITIONER TO CONDUCT DISCOVERY

Congress enacted 28 USC 2246 expressly referring to the right of the parties in habeas corpus proceedings to propound written interrogatories[...] limited to [...] the purpose of obtaining evidence from affiants where affidavits were admitted in evidence.

*Harris v. Nelson*, 394 U.S. 281, 296 (1969). To invoke discovery Petitioner "must: (1) make a colorable claim showing that the underlying facts, if proven, constitute a constitutional violation; and (2) show 'good cause' for the discovery." *Hubanks v. Frank*, 392 F.3d 926, 933 (7th Cir. 2004) (quoting *Henderson v. Walls*, 296 F.3d 541, 553 (7th Cir. 2002), *vacated on other grounds*, 557 U.S. 1230 (2003); *Harris* at 298—300).

> In Harris, we stated that "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is ... entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry."

*Bracy v. Gramley*, 520 U.S. 899, 908—09 (1997) (quoting *Harris* at 300).[5] "Good cause, however, cannot exist where the facts alleged do not provide a basis for relief." *Hubanks* at 933 (citing

[4] To the extent Petitioner's incorporation by reference may implicate S.D. Ind. L.R. 7-1(e)(1) (20-page reply limit), Petitioner moves under L.R. 7-1(e)(2) to exceed the page limit due to the extraordinary and compelling need—through no fault of his own—to brief the fact-intensive areas of exhaustion, retaliatory intent and justiciability raised by Respondent and addressed by ERJ Decl. and its appendix of attachments.

[5] Respondent's reliance on *Higgason v. Lemmon*, 6 F. App'x 433, 436 (7th Cir. 2001) in his letter to Petitioner ("Disc. Let."), dkt. 32-5 at 3, is impotent and inapposite. *See* Circuit Rule 32.1(d) (orders published before Jan. 1, 2007, are unciteable as precedents in other cases); *Higgason* at 334 (case brought under § 2254, not § 2241). Although this Court "may apply" § 2254 rules to § 2241 cases under Rules Governing Section 2254 Cases 1(b), it has not done so in this case. In any event, "Habeas Corpus [Section 2254] Rule 6 is meant to be 'consistent' with Harris." *Bracy* at 909 (quoting Advisory Committee's Note on Habeas Corpus Rule 6, 28 USC, p. 479). The proper citation for Respondent's articulated position, "Habeas petitioners are not entitled to discovery without leave of court," Disc. Let. (internal quotation marks and citation omitted), is *Harris v. Nelson*, 394 U.S. 286, 292—98 (1969).

*Matta-Ballesterros v. Henman*, 896 F.2d 255, 259 (7th Cir. 1990)). The Court may also initially

limit discovery to preliminary issues such as exhaustion. *Pavey v. Conley*, 544 F.3d 739, 742 (7th

Cir. 2008) ("[I]n a case in which exhaustion is contested [...] The district judge conducts a

hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate")

(Posner, J.).[6]

6. PETITIONER EXHAUSTED EVEN THOUGH EXHAUSTION IS INAPPLICABLE.

Respondent attempts to erect a nonexhaustion defense atop a single pillar that is plainly false,

materially misleading and barred by Seventh Circuit precedent: "Although [Petitioner] has

submitted a total of 42 administrative remedy requests during in[*sic*] his time in BOP custody,

none were related to that Incident Report[*sic*] [no. 3338082]." Return at 7 (citing Epplin Decl. ¶

6, dkt. 21-1 at 3). Under Respondent's starkly self-serving criterion, to be "related to Incident

Report number 3338082," a remedy must expressly "refer to this incident report." Epplin Decl. at

4.

Unfortunately for Respondent, the Seventh Circuit already rejected prison officials' efforts to

define "related" remedies too narrowly in their favor, as he now attempts. "In order to exhaust

their remedies, prisoners need not file multiple, successive grievances raising the same issue

(such as prison conditions or policies) if the objectionable condition is continuing." *Turley v.*

*Rednour*, 729 F.3d 645, 650 (7th Cir. 2013) (citing *Parzyck v. Prison Health Servs. Inc.*, 627 F.3d

1215, 1219 (11th Cir. 2010) (prisoner "not required to initiate another round of the

administrative grievance process on the exact same issue each time" a deprivation occurred))

(collecting cases). "Separate complaints about particular incidents are only required if the

underlying facts or complaints are different." *Id.* (citing *Siggers v. Campbell*, 652 F.3d 681, 692

---

[6] *Pavey* was a § 1983 case, but Judge Posner's opinion obviously controls here too. "Both habeas
petitions and § 1983 actions are civil proceedings that 'serve to protect basic constitutional
rights.'" *McIntosh v. Wexford Health Sources, Inc.*, 987 F.3d 662, 665 (7th Cir. 2001) (quoting
*Wolff v. McDonnell*, 418 U.S. 539, 579 (1974)). Indeed, Petitioner's rights are guarded more
jealously under habeas than under § 1983: "We see no reason to require a hearing in the habeas
post-conviction review context without also demanding the same procedural protections in prisoner
civil rights litigation under § 1983." *Id.* (citing *Wolff* (noting that "the demarcation line
between civil rights actions and habeas petitions is not always clear" and it "is futile to
contend that the Civil Rights Act of 1871 has less importance in our constitutional scheme than
does the Great Writ")).

(6th Cir. 2011) (distinguishing *Johnson v. Johnson*, 385 F.3d 503, 521 (5th Cir. 2004) from another case finding exhaustion because the underlying complaint was the same)). "Thus once a prison has received notice of, and an opportunity to correct, a problem, the prisoner has satisfied the purpose of the exhaustion requirement." *Id.* Where a prisoner's "complaint centered around continuing prison policies," this circuit has found "one occurrence of notice from [the prisoner] was sufficient to give the prison a chance to correct the problems." *Id.* Under this precedent, a single fully exhausted "grievance was likely sufficient to exhaust all [the prisoner]'s complaints." *Id.* Moreover, "no administrative system may demand"—as Respondent now essentially tries to do—"that the prisoner specify each remedy later sought in litigation." *Strong v. David*, 297 F.3d 649—50 (7th Cir. 2002) (citing *Booth v. Churner*, 532 U.S. 731 (2001)). Instead, this circuit joined its sisters in holding: "*pro se* administrative complaint forms are 'entitled to a generous construction.'" *Buechal v. United States*, 746 F.3d 753, 760 (7th Cir. 2014) (quoting *Palay v. United States*, 349 F.3d 418, 425—26 (7th Cir. 2003)). Respondent's search through a terse computer-generated summary of Petitioner's remedies for a retrospective incident no.—the sole evidence in support of Respondent's nonexhaustion defense: Epplin Decl. ¶ 6 (citing Administrative Remedy Generalized Retrieval ("Adm. Rem. Gen. Retr."), dkt. 21-1 at 49), dkt. 21-1 at 3—plainly fell far short of these Seventh Circuit standards. But to remove any remaining doubt as to the insufficiency of Respondent's remedy search and the sufficiency of Petitioner's exhaustion, Petitioner moves to propound Interrogatories (28 U.S.C. § 2246), Exh. 1, to Ms. Jenna Epplin, Declarant.

Meanwhile Respondent has provided evidence and admitted: "Gottesfeld has submitted a total of 42 requests for administrative remedy[*sic*] and appeals." Epplin Decl. ¶ 6 (citing Adm. Rem. Gen. Retr., dkt. 21-1 at 49), dkt. 21-1 at 3. Thus Respondent cannot now seriously contest that, prior to the issuance of incident report (IR) 3338082 to punish Petitioner, again, for his attempted court access, Petitioner had already properly filed a central-office remedy appeal ("BP-11"), asserting that his "right of access to the courts without interference from prison officials is well-established and resoundingly unambiguous in Constitutional law." ERJ Decl. at 33, ¶ 250 (quoting Court-access BP-11 As Subm. Key Pg. (Sept. 27, 2019), Attachm. 48 at 1, App'x A187). In

an analogous case, where a remedy "was challenging not just specific incidents"—or incident reports—but the facility's "policies in general," the Seventh Circuit looked to the agency's final denial, "which indicat[ed] that [the prisoner] was challenging" the relevant policies "as a continuing violation of his rights." *Turley* at 650. Here, the BOP acknowledged that Petitioner squarely presented the issue in the present tense: "You state you have the right to access the Courts without interference or delay." ERJ Decl. at 40, ¶ 298 (quoting Court-access BP-11 Cent. Office's Resp. (Nov. 21, 2019), Attachm. 58 at 2, App'x A210). IR 3338082 carried, *inter alia*, atypical and significant hardship in solitary confinement and loss of earned good-conduct time (GCT) as punishment for attempted court access. Petition ¶¶ 7–38, 116, 184–98, dkt. 1 at 3, 22, 38. Surely this IR thus constitutes "interference." *See also* Petition (citing "[P]etitioner's First Amendment right of access to the courts"), dkt. 1 at 1; *id.* ¶¶ 117 ("Under controlling Seventh Circuit precedents, [P]etitioner exhausted [...] before Rebekka Eisele submitted the latest retaliatory, untimely, manifestly-unconstitutional, and frivolous [IR]"), 127 (citing *Turley* at 650 n. 3), dkt. 1 at 23, 25; Sanctions Motion at 3–4 (Respondent misrepresents Petitioner's exhaustion claim); Fed. R. Civ. P. 11(b) (defenses asserted must have factual and legal support). This Court should follow the Seventh Circuit and find, "Here, [the prisoner]'s complaints centered around continuing prison policies" and "one occurrance of notice from [the prisoner] was sufficient to give the prison a chance to correct the problems." *Turley* at 650. In this case, those problems, under BOP's own construal, regarded "access to the Courts without interference or delay." Court-access BP-11 Cent. Office's Resp. (Nov. 21, 2019), Attachm. 58 at 2, App'x A210.

Further, Petitioner had exhausted on due-process grounds. Respondent's first IR against Petitioner, since expunged, construed looking-up addresses for process service as circumvention of mail monitoring. Petition § V, dkt. 1 at 27 (Respondent punished Petitioner for helping another prisoner pursuant to *Johnson v. Avery*, 393 U.S. 483 (1969) (jailhouse lawyering is protected conduct)); ERJ Decl. at 6, ¶¶ 42–120 (same). The rule in question proscribed:

Use of the mail for abuses other than criminal activity which circumvent mail monitoring procedures (e.g., use of the mail to commit or further a High category prohibited act, special mail abuse; writing letters in code; directing others to send, sending or receiving a letter or mail through unauthorized means; sending mail for other inmates without authorization;

sending correspondence to a specific address with directions or intent to have the
correspondence sent to an unauthorized person; and using a fictitious return address in an
attempt to send or receive unauthorized correspondence).

28 C.F.R. § 541.3 Prohibited Acts, Code 296. *See also* Petition ¶¶ 152—54 (code 296 seemed not

applicable upon law-library reserach), dkt. 1 at 31. "[P]etitioner filed [remedy no.] 979747,

complaining that there is no set of written communications rules for the" CMU. *Id.* ¶ 162, dkt. 1

at 34. The "CMU handbook says I have the right to know all of the rules for the unit, so please

tell me where I can find each and every written rule, including the below, in *written form* and how

I can access this set of rules." Ex Post Facto BP-11 As Subm. Key Pg. (Sept. 27, 2019) (emphasis

in original), Attachm. 49 at 1, App'x A189. "Many policies enforced in the [...] CMU continue to

be absent from the law library." *Id.* "One forbids me from helping inmates locate defendants

dodging service of process in some cases, but not others, based on the arbitrary and capricious

discretion of the FCI legal department." *Id.*

Construed appropriately, Petitioner thus exhausted that, as applied to him by Respondent, BOP

prohibited-act codes are void for vagueness: "A vague law impermissibly delegates basic policy

matters to policemen, judges, and juries for resolution on an ad hoc subjective basis with the

attendant dangers of arbitrary and discriminatory application." *Grayned v. City of Rockford*, 408

U.S. 104, 108—09 (collecting cases). "What renders a statute vague is not the possibility that it

will sometimes be difficult to determine whether the incriminating fact it establishes has been

proved; but rather the indeterminacy of what that fact is." *United States v. Williams*, 553 U.S.

285, 306 (2008). "It is a basic principle of due process that an enactment is void for vagueness

if its prohibitions are not clearly defined." *Grayned* at 108.

BOP, once again, construed Petitioner's BP-11 as asserting a "continuing violation of his

rights," *Turley* at 650. "You contend *it is a violation* of due process to implement rules that are

not codified and believe there are[*sic*] 'no set of actual rules,' for the CMU." Ex Post Facto BP-

11 Cent. Office's Resp. (Nov. 21, 2019) (emphasis added, quoting Ex Post Facto BP-11 As Subm.),

Attachm. 59 at 2, App'x A213. This time around, BOP's extortion rule failed to give Petitioner

fair notice it could apply to statutory exhaustion or, for that matter, litigation of any kind:

"Extortion; blackmail; protection; demanding or receiving money or anything of value in return for

protection against others, to avoid bodily harm, or under threat of informing." 28 C.F.R. § 541.3 Prohibited Acts, Code 204. But the issue underlying Petitioner's Ex Post Facto BP-11, subjective and discriminatory enforcement of unconstitutionally vague prohibited-act codes, remains the same and was exhausted. That both Petitioner's Court-access and Ex Post Facto regional and central-office remedies were denied by the same officials on the same days further illustrates that, unlike Petitioner, BOP was properly notified of Petitioner's broad complaints about interference with litigation. *See* Court-access BP-10 Reg. Director's Resp. (Aug. 30, 2019), Attachm. 46 at 2, App'x A184; Ex Post Facto BP-10 Reg. Director's Resp. (same), Attachm. 47 at 2, App'x A186; Court-access BP-11 Cent. Office's Resp. (Nov. 21, 2019), Attachm. 58 at 2, App'x A210; Ex Post Facto BP-11 Cent. Office's Resp. (same), Attachm. 59 at 2, App'x A213.

And Petitioner's exhaustion lies not only with BOP's answers to his BP-11s. Two months before IR 3338082, Petitioner "timely filed another BP-8," i.e. the Eisele BP-8, "in which he noted that agents of [R]espondent were retaliating against [P]etitioner's Constitutionally-protected petitions to the government for the redress of grievances." Petition ¶ 124, dkt. 1 at 24. *See also* the Eisele BP-8, dkt. 18 at 30. "The only response to The Eisele BP-8 that [P]etitioner ever received was in the form of" IR 3338082. Petition ¶ 125, dkt. 1 at 24. That Epplin's search missed the Eisele BP-8—and indeed every BP-8 Petitioner ever filed—is no surprise because Epplin searched only SENTRY and BP-8s are "not recorded in the SENTRY database." *Barnett v. Harlow*, 2019 U.S. Dist. LEXIS 94080, No. 2:18-cv-397-JMS-MJD (S.D. Ind. June 5, 2019) at *7. Despite Eisele's opportunity to deny the filing of the Eisele BP-8, she failed to do so. *See* Eisele Decl., dkt. 21-2. "[W]hen the prisoner follows procedure but receives no response due to error by the prison, this court has found that the prisoner exhausted." Petition ¶ 127 (quoting *Turley* at 650 n. 3, alteration in original), dkt. 1 at 25. Moreover, Petitioner demonstrates that absent an answer to his BP-8 he could not file a BP-9. *See* ERJ Decl. ¶¶ 177, 221, 243, 255, 266–68, 271–72, 307 (appeals of unanswered BP-8 for copy of withheld DHO report were rejected at all levels). Despite Respondent's contention, "If no response is received within the allowable time, the inmate can deem that request denied at that level," Epplin Decl. ¶ 2 (citing 28 C.F.R. ¶ 542.18), dkt. 21-1 at 2, Respondent's policies set no such "allowable time" for BP-8s. *Id.*

(providing allowable times for BP-9s, -10s and -11s but not for -8s). Even under the stricter PLRA exhaustion regime, the Seventh Circuit refused to permit prison officials "to exploit the exhaustion requirement through indefinite delay in responding to grievances." Petition ¶ 131 (quoting *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002) (internal quotation marks and citation omitted)), dkt. 1 at 25—26. Thus Petitioner also exhausted on a retaliation theory.

### 7. RESPONDENT IS PROPERLY ESTOPPED FROM RAISING NONEXHAUSTION.

The instant IR plainly arose from Respondent's affirmative misconduct in retaliation against an attempt to access a court.[7] *See* the Demand, dkt. 21-1 at 23; the Court-access IR 3338082, dkt. 21-1 at 11. Petitioner could not reasonably have been expected, having already suffered such retaliation, to pursue further administrative actions with a clear design of going to court against Respondent. He ceased pursuing all his open remedies after the IR, except for the Royer Sex-abuse series. *See* Remedy Table ("Rem. Tbl."), Attachm. 6, App'x A90—91; Petition ¶¶ 133—35 (citing *Thompson v. Washington*, 362 F.3d 969, 971 (7th Cir. 2004); *Perez v. Fenoglio*, 792 F.3d 768, 783 (7th Cir. 2015); *O'Brien v. Town of Caledonia*, 748 F.2d 403, 407 (7th Cir. 1984)) (filing grievances and seeking to use the legal process is protected conduct and disciplinary charges force a presumption of deprivation of right to engage in protected conduct). Further, Respondent continued to retaliate against Petitioner's protected conduct under this Court's watchful eye. *See* ERJ Decl. ¶¶ 334, 370, 393 (cell searched, property destroyed, retaliatory IR and IFRP).

And even if the result of neglect and not malice, Respondent's actions foreclosed meaningful administrative review of Petitioner's remedies, particularly those challenging due process deprivations, retaliation and other staff misconduct. *See* ERJ Decl. ¶¶ 99—101, 171—76, 207—20, 228—41 (Bradley BP-10 rendered unexhaustible despite Petitioner's more-than-adequate efforts); ¶¶ 126—47, 152—69, 228—39, 245, 256—63 (Hart BP-9, -10, -11 rejected for including documentary

---

[7] This is not to say that a D.C. court would find or decline to find jurisdiction under D.C. Code §§ 13-421 *et seq.* and 16-1905. *See, e.g.*, *Simpson v. Fed. Bureau of Prisons*, 496 F. Supp. 2d 187 (D.D.C. 2007) (personal long-arm jurisdiction over BOP employees required more than mere federal employment, but plaintiff never pleaded specifics); Prog. Stat. 5214.02 Communications Management Unit at ch. 3 §§ d—f (CMU-designation authority limited to assistant director, Correctional Programs Division) (Apr. 1, 2015); Prog. Stat. 5100.08, CN-1 Inmate Security Designation and Classification at ch. 6 (Sept. 4, 2019) (citing "Assistant Director, Correctional Programs Division" in "Washington, D.C."). This is to say, however, that the issue is nonfrivolous and Petitioner had a right to try.

evidence despite regulatory requirement that Petitioner "must" include said evidence); ¶¶ 177, 243, 255, 266—68, 271—72, 279—81, 302—03 (sanctions enforced for 43 days but expunged before Petitioner could exhaust on withholding of written report); ¶¶ 253—54 (Eisele BP-8 went unanswered); ¶¶ 273, 287—88, 311—15, 321—34, 342—43, 345—46, 351—61, 375—80 (Royer sex-abuse remedies dragged out for 18 months due to admitted "staff error" and took at least four BP-10s and two BP-11s, each costing postage); ¶¶ 402—50 (DHO appeals rejected for reasons not provided-for in relevant policies, for not providing information that was in fact provided, etc.). "[W]hen prison officials prevent inmates from using the administrative process detailed in the Code of Federal Regulations, the process that exists on paper becomes unavailable in reality." *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Respondent "may not take unfair advantage of the exhaustion requirement." *Dole* at 809 (citing *Lewis* at 833; *Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir. 2004)). When a grievance meets all of the Administrative Code's requirements—like Petitioner's many rejected remedies detailed in ERJ Decl.—it cannot be dismissed—like Hart BP-9 and Matthews BP-10 re Court-access IR 3338082 were dismissed—because of a requirement on which "the administrative rulebook is silent." *Strong* at 650; ERJ Decl. ¶¶ 163 (no rule limiting a remedy to "ONLY 1 PC OF DOCUMENTATION," as Respondent claimed for Hart BP-9), 410 (policy required Petitioner appeal IR 3338082 by providing the IR no.), 425 (appeal of IR 3338082 rejected despite providing the IR no.).

On these facts Respondent should not be heard to complain about exhaustion; his affirmative misconduct equitably estops him from doing so. *See also, infra*, § 9A.

### 8. EXHAUSTION IS INAPPLICABLE.

[E]xhaustion may be excused if: (1) requiring exhaustion of administrative remedies causes prejudice, due to unreasonable delay or an "indefinite time frame for administrative action"; (2) the agency lacks the ability or competence to resolve the issue or grant the relief requested; (3) appealing through the administrative process would be futile because the agency is biased or has predetermined the issue; or (4) where substantial constitutional questions are raised.

*Iddir v. INS*, 301 F.3d 492, 498 (7th Cir. 2002) (citing, *inter alia*, *McCarthy v. Madigan*, 503 U.S. 140 (1992) (excusing federal prisoners from pre-PLRA exhaustion in *Bivens* cases)).[8] Each of these

---

[8] Respondent's remedy program is too opaque to discern whether IR 3338082 is procedurally defaulted from administrative review. *See* Matthews BP-10 re Court-access IR 3338082 II As Subm.

criteria applies to the instant case.

## A. THIS CASE RAISES A SUBSTANTIAL CONSTITUTIONAL QUESTION.

> **constitutional question.** (18[th cent.]) Constitutional law. A legal
> issue resolvable by the interpretation of a constitution,
> rather than a statute.

Black's Law Dictionary 378 (Deluxe 10th ed. 2014). This case is resolvable by interpretation of

The Petition Clause and Due Process Clause, U.S. Const. amends. I, V.

> **substantial right.** (18[th cent.]) An essential right that poten-
> ially affects the outcome of a lawsuit and is capable of
> legal enforcement and protection, as distinguished from
> a mere technical or procedural right.

Black's Law Dictionary, *supra*, at 1520. *See also United States v. Bishawi*, 272 F.3d 458, 462 (7th

Cir. 2001) ("Substantial rights are those that affect the outcome of a case").

> **substantial justice.** (17[th cent.]) Justice fairly administered
> according to rules of substantive law, regardless of any
> procedural errors not affecting the litigant's substantive
> rights; a fair trial on the merits.

Black's Law Dictionary, *supra*, at 996.

> **substantive right** (səb-stan-tiv). (18[th cent.]) A right that can
> be protected or enforced by law; a right of substance
> rather than form.

*Id.* at 1520. "Of course the phrase 'substantial question' is not capable of precise definition

but must be left to a case-by-case determination." *United States v. Bilanziah*, 771 F.2d 292, 299

(7th Cir. 1985) (citing *United States v. Powell*, 761 F.2d 1227, 1232 (8th Cir. 1985); *United*

*States v. Giancola*, 754 F.2d 898, 901 (11th Cir. 1985)). But even rights implicitly read into the

Constitution and subject to later review are guarded jealously, *e.g.*, "A substantial

constitutional question would arise if Congress had attempted to withhold all Medicaid benefits

from an other-wise[*sic*] eligible candidate simply because that candidate had exercised her

constitutionally protected freedom to terminate her pregnancy by abortion." *Harris v. McRae*, 448

U.S. 297, 317 n. 19 (1980). *See also Sherbert v. Verner*, 374 U.S. 398 (1963) (a State may not,
Key Pgs. (June 15, 2022) (citing 28 C.F.R. § 115.52(b)(1) ("The agency shall not impose a time
limit on when an inmate may submit a grievance regarding an allegation of sexual abuse"),
115.67(c) (the agency "shall act promptly to remedy" retaliation, including IRs)), Attachm. 78,
App'x A253. But, if defaulted, Petitioner need show "cause and prejudice" to excuse himself.
*Sanchez v. Miller*, 792 F.3d 694, 699 (7th Cir. 1986). This would overlap with the requirements
under *Iddir*, *supra*, such that this Court need not decide which standard applies.

consistent with the First Amendment, withhold all unemployment benefits from claimant because she refused to work on her once weekly Sabbath).

Plainly, a substantial constitutional question arose when BOP—a U.S. agency—"in response to [Petitioner's] exhaustion, deprive[d] him of earned [GCT], subject[ed] him to atypical and significant hardships, fine[d] him and destroy[ed] his property," *supra*, based on a vague regulatory promulgation, thus depriving him of his expressly protected rights to petition and due process, U.S. Const. amends. I, V.

### B. FURTHER EXHAUSTION MEANT UNREASONABLE, INDEFINITE & PREJUDICIAL DELAY.

"In determining whether exhaustion is required, federal courts must balance the interests of the individual in retaining prompt access to a federal judicial forum against countervailing institutional interests." *McCarthy v. Madigan*, 503 U.S. at 146. "Administrative remedies need not be pursued if the litigant's interests in immediate judicial review outweigh the government's interests in efficiency or administrative autonomy." *Id.* (quoting *West v. Bergland*, 611 F.2d 710, 715 (8th Cir. 1979) (alteration marks removed), *cert. denied* 449 U.S. 821 (1980)). "Application of this balancing principle is 'intensely practical,' because attention is directed to both the nature of the claim presented and the characteristics of the particular administrative procedure provided." *Id.* For example, "requiring resort to administrative remedy may occasion undue prejudice to subsequent assertion of a court action." *Id.* at 146—47. This is such a case: vital evidence of DHO Matthews's partiality and the retaliatory animus underlying IR 3338082 faced imminent destruction had Petitioner not secured this Court's order to preserve it. *See* ERJ Decl. at 41, ¶¶ 304—06 (Petitioner requested but Respondent refused to preserve audio and video footage of the day of the DHO hearing that would soon be overwritten) (citing Cop-out to Preserve Evidence (Dec. 21, 2019), dkt. 3-1 at 1). Had Respondent wished Petitioner to exhaust anything further, he should have agreed to preserve the requested evidence instead of force Petitioner to secure this Court's Order, dkt. 9 at 1.

Absent the immediate need to protect fragile evidence, Respondent's remedial regime is marked by unreasonable and indefinite delays at all levels. Exhaustion of the remedy directly prior to IR 3338082 took 573 days. Rem. Tbl. at rows 32—38 (BP-8 filed 11/26/19; BP-11 denied 6/21/21),

Attachm. 6 at 2, App'x A91. Petitioner routinely waited 90 days to receive a bogus rejection and instructions to restart anew. *Id.* at rows 2 (BP-10 mailed 6/10/19; rejection received 9/10/19), 4-5 (same), 12-13 (same), Attachm. 6 at 1, App'x A90; ERJ Decl. at 21-22, ¶¶ 167-70 (BP-10s filed 6/10/19); *id.* at 30-31, ¶¶ 228-38 (rejections received 9/10/19). Respondent's contention that Petitioner may appeal a tardy response to the next level proved utterly false. *Contrast* Epplin Decl. ¶ 2 (citing 28 C.F.R. § 542.18), dkt. 21-1 at 3 *with* ERJ Decl. ¶¶ 177, 221, 243, 255, 266-68, 271-72, 307 (appeals of unanswered BP-8 rejected at all levels). In re 28 C.F.R. § 542.18, Respondent has "confused deference with credibility." *Williams v. Lane, supra.* "The district court quite properly refused to accept defendants' testimony because it conflicted with the objective factual record." *Id.* "The inconsistencies and contradictions in their statements were adjudged 'frankly unworthy of belief.'" *Id.*[9]

The simple fact is Petitioner filed remedies, detailed in ERJ Decl., for five IRs: 1) Cox IR 3249328, 2) Court-access IR 3338082, 3) *Forbes* IR 3427792, 4) *RT* IR 3549119 and 5) TAC IR 3552752. Respondent is yet to answer a single one on a regional level. *See in toto* ERJ Decl.

### C. BOP LACKS THE ABILITY AND COMPETENCE TO RESOLVE THE ISSUE.

BOP expressly disavows administrative review of DHO findings for statutory or constitutional violations: "The decision of the DHO is final and subject to review only by the Regional Director to ensure conformity with the disciplinary policy." U.S. Dep't of Justice, Fed. Bur. of Prisons Program Statement 5270.09 Inmate Discipline Program ("Prog. Stat. Inm. Disc.") at ch. 5 (July 8, 2011). "On appeals, the reviewing authority considers: Whether the UDC or DHO substantially complied with regulations on inmate discipline." *Id.* Those policies and regulations neither contemplate nor mention anything approaching the substantial constitutional question posed *supra.* *See* Prog. Stat. Inm. Disc. and 28 C.F.R. Part 541 Inmate Discipline and Special Housing Units and Part 542 Administrative Remedy. A Lexis® search within those branches for *constit** returns zero results. Thus, under BOP's own policies, it "cannot grant the relief requested." *Iddir, supra.*

The DHO's themselves are no better. DHO Bradley told Petitioner and his staff rep: "I don't

[9] *Cf. Smith v. Barr,* 512 F. Supp. 3d 887, 895 (S.D. Ind. 2021) (FCC Terre Haute warden's declaration "under penalty of perjury" to this Court "has proven wholly false") (Magnus-Stinson, J.)

care about your case law." ERJ Decl. at 13, ¶ 99 (quoting Bradley BP-10 re Cox IR 3249328 As

Subm. Key Pgs. (May 3, 2019), dkt. 18 at 44). Then Petitioner put on the record of Court-access

IR 3338082 statutory and precedential authorities. *See* DHO Rep. (Jan. 22, 2020) at 19—40 (print-

outs), dkt. 21-3 at 28—49. But Matthews's report reflects he did not consider them. *See* DHO Rep.

at 2, § V SPECIFIC EVIDENCE RELIED ON TO SUPPORT FINDINGS, dkt. 21-3 at 11.[10]

Because BOP refuses at all levels to consider constitutional questions in its disciplinary

procedures, it cannot demand that Petitioner exhaust on those same questions.

    D. THE ADMINISTRATIVE PROCESS IS FUTILE BECAUSE BOP IS BIASED AND PREDETERMINED THE IR.

Foremost BOP gave itself a pecuniary interest in the IR's outcome: It fined Petitioner $50. *See*

Petition, dkt. 1 at 1, 22; Matthews Decl. ¶ 13(c), dkt. 21-3 at 5. But in a line of cases leading

to *Ward v. Monroeville*, 409 U.S. 57 (1972), the Supreme Court barred non-judicial employees from

dawning black robes to fill their official coffers. That Matthews's agency (or any reviewing

regional director's or general counsel's) gained and not Matthews himself, is insufficient under

*Ward.* The arrangement violates due process.

In this instance, however, BOP's pecuniary interests are two-fold. Petitioner's disciplinary

"conviction" serves as a bar protecting BOP from civil liability for its manifest retaliation.

*Edwards v. Balisok.* 528 U.S. 641, 645—46 (1997) (applying to prison-discipline findings the

procedural bar of *Heck v. Humphrey*, 512 U.S. 477 (1994)). Why would BOP—having already overtly

acted to punish Petitioner monetarily for his attempted civil litigation—now reverse course and

open itself to, *e.g.*, Federal Tort Claims Act (FTCA) liability for malicious prosecution, abuse of

process and harassment? BOP has nothing to gain and money to lose. If BOP were a judge it would

have to recuse under 28 U.S.C. § 455(b)(4), (5)(iii) and U.S. Const. amend. V.

And why would BOP, having chosen to retaliate against Petitioner, now be fair? It would not.

Further, by limiting its review of DHO findings to procedural minutae, BOP admits it's already

decided to refuse relief upon the substantive grounds advanced in Petition. Petitioning BOP for

---

[10] Facing the instant Petition, Matthews attempted to assert *post facto* that he had "considered [...] Various District of Columbia and federal *statutes*" without specifying which or whether he ignored some of those provided. Matthews Decl. ¶ 12, dkt. 21-3 at 4 (emphasis added). Even if credited in contradiction to Matthews's earlier written report, nowhere does Matthews claim to have weighed the *Constitution* or *legal precedents*. *Id. See also* DHO Rep. § V, dkt. 21-3 at 11.

relief its policies omit in a case where it may cite its own adverse finding to bar the courtroom doors against Petitioner would clearly be futile. *Cf. McCarthy v. Madigan*, 503 U.S. at 153 (excusing non-statutory exhaustion with BOP because, *inter alia*, "it appears that prison officials—perhaps the very officials subject to suit—are charged with determining what is a 'valid' reason"); FRJ Decl. at 47, ¶ 340 (noting BOP legal staff were behind *Forbes* IR).

### 9. THE CHALLENGED DISCIPLINE & HARDSHIPS ARE UNCONSTITUTIONAL.

"Due process requires that prisoners in disciplinary proceedings be given (1) advance (at least 24 hours before hearing) written notice of the claimed violations; (2) the opportunity to be heard before an impartial decision maker; (3) the opportunity to call witnesses and present documentary evidence (when consistent with institutional safety); and (4) a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action."

Petition ¶ 56 (quoting *Scruggs v. Jordan*, 485 F.3d 934, 939 (7th Cir. 2007) (internal quotation marks and citations omitted)). Further, BOP's "observance of procedural formalities cannot render valid an infringement upon inalienable constitutional rights.'" *Cain v. Lane*, 857 F.2d 1139, 1143 (7th Cir. 1988) (quoting *Shango v. Jurich*, 681 F.2d 1091, 1098 n. 13 (7th Cir. 1982)). "We also stated that 'if the district court finds on remand that the prison administrators disciplined Cain in retaliation for his constitutionally protected speech, this would invalidate [the prison's administrative] proceedings despite compliance with due process requirements.'" *Dougherty v. Clark*, 1993 U.S. App. LEXIS 12444, No. 91–3344 (7th Cir. May 17, 1993) at *4 (quoting *Cain* at 1145 (alteration added) in a § 2241 case).[11] "It is not enough that [Petitioner] was given a hearing before the DHO." *Id.*

Also, "because we assume that man is free to steer between lawful and unlawful conduct, we insist," as an additional due process matter, "that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Grayned*, 408 U.S. at 108. Respondent may not enforce vague promulgations that "may trap the innocent by not providing fair warning" of what exactly is proscribed conduct. *Id.* (collecting cases).

---

[11] Petitioner recognizes Circuit Rule 32.1, that *Dougherty* "is merely persuasive authority, 'and like any persuasive authority is entitled only to the weight that the force of its reasoning commands.'" *Cheli v. Taylorville Cmty. Sch. Dist.*, 986 F.3d 1035, 1042 n. 2 (7th Cir. 2021) (quoting *United States v. Papia*, 910 F.2d 1357, 1362 (7th Cir. 1990)). Petitioner notes 1) the force of *Dougherty*'s reasoning remains strong, especially after *Heck*, and 2) his Motion to Change Status (Circuit Rule 32.1(c)), Exh. 2, pending before the Seventh Circuit to reissue *Dougherty*.

A. "PROCEDURAL FORMALITIES CANNOT RENDER VALID" UNCONSTITUTIONAL INFRINGEMENTS.

"Even where proceedings are not otherwise constitutionally deficient, they may be invalidated by evidence that they were retaliatory in nature." *Cain*, 857 F.2d at 1143. Put simply, "An act taken in retaliation for the exercise of a constitutionally protected right violates the Constitution." *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000). "Prisoners have a constitutional right of access to the courts that, by necessity, includes the right to pursue the administrative remedies that must be exhausted before a prisoner can seek relief in court." *Id.* (citing *Preiser v. Rodriguez*, 411 U.S. 475, 493 (1973)). In this case the mandatory remedy was a "demand [for] a true copy of the warrant of commitment or detainer." D.C. Code § 16-1905. Eisele read:

> Pursuant to 18 U.S.C.S. § 3621(c), D.C. Code § 16-1905, and other relevant statutes, I hereby demand a true copy of the order of commit[]ment under which each of you, jointly and sever[ab]ly, is detaining me against my will.

The Demand, dkt. 21-1 at 23. She then charged Petitioner with extortion. Court-access IR 3338082, dkt. 21-1 at 11. Nowhere on this record does Eisele herself affirm under penalty of perjury the accuracy of the IR or deny Petitioner's allegation of retaliatory intent. *See* Petition ¶ 30 (retaliation alleged), dkt. 1 at 8; Eisele Decl. (retaliation not denied), dkt. 21-2. Respondent instead attempts a sleight of hand, Return at 2 (citing to Matthews's declaration, absent any on-the-record basis of personal knowledge, as supposed evidence of Eisele's state of mind). To get the truth, Petitioner moves to propound interrogatories to Eisele and Matthews, Exhs. 3, 4.

As a preliminary matter, however, Petition, dkt. 1 and ERJ Decl. already "allege a chronology of events from which retaliation may be inferred." *DeWalt* at 618 (quoting *Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994) (citations and quotation marks omitted)). Nonetheless, Petitioner need show no such motive at all, merely that his lawful attempt to access court proximately caused the challenged discipline. Petition ¶ 5 (collecting cases), dkt. 1 at 2-3. Eisele's feelings, either fearful or retaliatory, are frankly irrelevant.

As the non-government actor entitled to First Amendment protection, it is Petitioner's feelings that matter, leading to the substantial constitutional question posed at this reply's outset: When a prisoner must exhaust a peculiar statutory regime to access a court for fixed damages from his jailers, may his jailers, in response to his exhaustion, deprive him of earned good-conduct time,

fine him, destroy his property and subject him to atypical and significant hardships?

This Court should answer this matter of first impression in the negative: They may not. *See,* *e.g., Schultz v. Pugh,* 728 F.3d 619, 620–21 (7th Cir. 2013) (Posner, J.) ("[T]he law governing unavailability of prison remedies on grounds of intimidation is in some disarray").

Alternatively, this Court should find Respondent's extortion rule void for vagueness.

It has long been recognized that the First Amendment needs breathing space and that statutes attempting to restrict or burden the exercise of First Amendment rights must be narrowly drawn and represent a considered legislative judgement that a particular mode of expression has to give way to other compelling needs of society.

*Broadrick v. Oklahoma,* 413 U.S. 601, 611–12 (1973) (collecting cases). Respondent's extortion rule, quoted, *supra,* at 9–10, reflects no such considered judgment if it applies to protected litigation prerequisites. And "where a vague statute 'abut[s] upon sensitive areas of basic First Amendment freedoms,' it 'operates to inhibit'" their exercise. *Grayned,* 408 U.S. at 109 (quoting *Baggett v. Bullitt,* 377 U.S. 360, 372 (1964) (alteration in original); *Crump v. Board of Public Instruction,* 386 U.S. 278, 287 (1961)). Under either an as-promulgated or as-applied theory, the rule cannot stand.

### B. DHO MATTHEWS WAS BIASED AND WITHOUT CREDIBILITY.

Petitioner clearly questioned DHO Matthews's impartiality. Petition ¶¶ 48–49, 64–65, 72, 97, 99, 106, 109, 112–13, 115–16. Respondent produced no evidence in Matthews's defense; Matthews was given the chance to affirm his impartiality but failed to do so.[12] *See* Matthews Decl., dkt. 21-3. He further omitted Petitioner's right to an impartial factfinder from his recitation of procedural requirements. *Id.* ¶ 4. He could not claim neutrality without perjuring himself.

In reality, Matthews was not a full-time DHO at all, but a case manager, like Eisele, his direct colleague. *Id.* ¶ 1; Eisele Decl. ¶ 1, dkt. 21-2. Petitioner's appointed staff rep., Ms. T. Feuquay, was also a case manager. DHO Rep. § II(E), dkt. 21-3 at 10. Expecting Matthews to find

---

[12] Respondent confuses the assured impartiality of Article III judges afforded by their income and occupational protection with a part-time DHO beholden to Respondent for his continued employment and advancement. *See, e.g., Malone v. United States AG,* 888 F. App'x 296, 297 (5th Cir. May 26, 2021) ("Full-time DHOs are selected by the regional office that oversees a given set of BOP facilities. But some facilities also employ alternate DHOs who assist with the disciplinary case load as a 'collateral duty,' meaning the alternate DHOs continue to fulfill their primary job[s]"); DHO Rep. at 3 (Matthews was an alternate DHO), dkt. 21-3 at 12.

against Eisele and Respondent is like expecting a DMV clerk to side with a constituent over his fellow clerk and their supervisor.

### C. RESPONDENT DENIED PETITIONER EXCULPATORY DOCUMENTARY & TESTIMONIAL EVIDENCE.

Petitioner asserts, unrebutted, that Respondent denied him exculpatory evidence, the audio and video of Eisele's accepting the demand and her clear comprehension of and benign reaction to it. Petition ¶¶ 82, 99, 100, 103-07; Gottesfeld Decl. ¶¶ 58-59, dkt. 33-1 at 7. Respondent was required to provide this evidence. Petition ¶ 57 (citing *Scruggs* at 939), dkt. 1 at 14. But he did not. *Id.* ¶ 107, dkt. 1 at 21. Nor has he advanced a valid reason to withhold it, as would be required. *See* DHO Rep. at 1, §§ III(D), (E), dkt. 21-3 at 10 (showing video was considered but not confidential); *Scruggs* at 940 (citing *Piggie v. Cotton*, 344 F.3d 674, 677 (7th Cir. 2003)) (exculpatory evidence must be turned-over). The DHO also had written evidence now on the docket that Petitioner expressly requested to prepare his written statement but that was withheld, *e.g.*, the Demand, dkt. 21-1 at 23; Witness Stat., *id.* at 22; statutory and precedential authorities, *id.* at 27-47. *See, e.g.*, Petition ¶¶ 54 (Petitioner requested statutory authorities and precedents), 81-84 (Petitioner requested witness testimony); 98-100 (Petitioner requested time with evidence to prepare a written statement). Had Petitioner been allowed his witness he would have asked him questions, the answers to which would have established Eisele's true reaction to the demand, Petitioner's Questions to Witness William O. Harris, Exh. 5.

### 10. PETITIONER'S CLAIMS REMAIN JUSTICIABLE.

His nonexhaustion defense meritless under *Turley, supra,* inequitable under *Dole, Lewis, Dale,* etc., inapplicable under either *Iddir* or *Sanchez* and unsupportable by the evidence under any standard, Respondent's last hope is claimed mootness. *See* Return § C, dkt. 21 at 3.

But once again Respondent's conduct belies his claims. After Court-access IR 3338082, he filed three more IRs against Petitioner for his protected conduct and provided him zero written reports for any of them. *See* ERJ Decl. at 55-61 (remedies seeking DHO reports futile). Respondent also returned Petitioner to solitary confinement for four months as a proximate result of his protected conduct, before transferring him to the other CMU in Marion. *Id.* ¶¶ 390, 400.

\* Not even this transfer materially alters the instant landscape, however, because prisoners are often bounced between the two CMUs, with many making round trips. *Id.* The conditions in Marion's CMU are sufficiently similar to Terre Haute's to render them distinct without a difference. *See* Prog. Stat. 5214.02 Communications Management Unit (Apr. 1, 2015) (same conditions at all CMUs). The same censors and BOP legal "advisor[s]" oversee both CMUs and their patterns of conduct are materially indistinguishable. *Id.* Overall, Petitioner has spent over 200 days in solitary in four distinct episodes due to his protected conduct. ERJ Decl. ¶¶ 5, 20, 290, 390, 400.

Respondent has failed to show it is "absolutely clear that the allegedly wrongful behavior" can "not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 189 (2000); *Aref v. Lynch*, 833 F.3d 242, 251 (D.C. Cir. 2016) (refusing to find mootness in CMU case because prisoners are redesignated in and out of CMUs and voluntary cessation is insufficient).

Petition must be read liberally to challenge the atypicality and significant hardships to which Respondent subjects Petitioner under his actual practices. *See* Reply n. 3, dkt. 21 at 14; *Gillis v. Litscher*, 468 F.3d 488 (7th Cir. 2006) ("[W]hether there is a violation" of *Sandin* "is fact-specific); Petition § V (challenging continuing hardships), dkt. 1 at 27. Respondent may not take vengence for Petitioner's protected conduct in any way, "even if the adverse action does not independenly violate the [C]onstitution." *DeWalt*, 224 F.3d at 618 (citation omitted).

Respectfully submitted July 18, 2022, by mailing to the Court in a box bearing sufficient pre-paid U.S. Priority Mail® postage and tracking no. 9114 9014 9645 1828 1185 72, handed at the next opportunity to Ms. Kathy Hill of the CMU Marion unit team in her official capacity as an agent of Respondent and of his counsel; *Houston v. Lack*, 487 U.S. 266 (1988),

by:

Martin Gottesfeld, *pro se*
Reg. no. 12982-104
United States Penitentiary
P.O. Box 1000
Marion, IL 62959

---

\* Petitioner uses a portion of this 21st page corresponding to that taken, *supra*, by § 3 and nos. 3, 4, pursuant to his L.R. 7-1(e)(2) motion, *supra*, n. 4.

CERTIFICATE OF SERVICE

I, Martin Gottesfeld, *pro se*, certify that on July 18, 2022, or the first opportunity thereafter,

I caused a digital copy of the foregoing document to be served upon counsel for the respondent in

the above-captioned case by handing this filing to Ms. Kathy Hill of the CMU Marion unit team in

her official capacity as an agent of Respondent and of his counsel, for mailing to the Court; *see*

28 C.F.R. § 540.203(a), (c) (mail to U.S. courts and judges is read for contents).

by: Martin Gottesfeld