Exhibit 1

Martin Gottesfeld, *pro se*
Reg. no. 12982-104
United States Penitentiary
P.O. Box 1000
Marion, IL 62959

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| MARTIN GOTTESFELD, Petitioner, *pro se*, <br><br> v. <br><br> B. LAMMER, Warden of The FCI Terre Haute, Indiana, Respondent. | No. 2:20-cv-12-JRS-MJD |

INTERROGATORIES (28 U.S.C. § 2246)

TO Ms. Jenna N. Epplin, Declarant, Epplin Decl. (Jan. 27, 2020), dkt. 21-1

FROM Martin Gottesfeld, *pro se*
SET NO. 1

MARTIN GOTTESFELD, Petitioner, requests that you, Ms. Jenna N. Epplin, Declarant, answer all of the following interrogatories, in writing and under oath, as required by 28 U.S.C. § 2246 and the Court's order. A copy of your written answers to these interrogatories must be served on Martin Gottesfeld at the address listed above by the time set by the Court.

INSTRUCTIONS FOR RESPONDING

A. These interrogatories are to be answered by you based on all the information that is or may be available to you, or any person, employee, agent, expert, accountant or attorney who has acted or is now acting on your behalf.

B. If, after a reasonable and thorough investigation, using due diligence, you are unable to answer any interrogatory, or any part of any interrogatory, on the grounds of lack of information available to you, specify in full and complete detail why the information is not available to you and what has been done to locate such information. In addition, specify what knowledge or belief you do have concerning the unanswered portion of any interrogatory and set forth the facts on which such knowledge or belief is based.

C. When an interrogatory does not specifically request a particular fact, but when the fact or facts are necessary to make the answer to the interrogatory either comprehensible, complete, or not misleading, you should include that fact or those facts as part of the answer. The interrogatory shall be deemed specifically to request whatever fact or facts are needed to make the response comprehensible without reference to any other matter.

D. If you claim any form of privilege with regard to any oral communication, document, or tangible thing, whether based on a statute or otherwise, as a ground for not answering an interrogatory or any portion of an interrogatory, or for not voluntarily producing any tangible thing or document, set forth in your answers, with respect to each oral communication, document, or tangible thing for which you claim such a privilege, the following:

1. The date of any oral communication or the date of preparation of any document;

2. The name, address, title, and occupation of each of the participants in any oral conversation or each of the authors and addresses of any document;

3. The name, title, and address of the present custodian of any document or tangible thing;

4. A description of each oral conversation, document, or tangible thing (by subject matter or title) that is sufficient to identify the particular conversation or tangible thing without revealing its content, but with sufficient detail to set out the legal and factual basis for the application of the privilege claimed for that conversation, document, or tangible thing.

E. When statements of factual information are requested, the requested information includes the identification of all formal and informal documentation that explains, clarifies, describes, or in any way relates to the requested statement of factual information.

F. For the purposes of these interrogatories, whenever necessary to ensure completeness or accuracy, words importing the singular number include the plural and words importing the plural number include the singular, and words importing the masculine include the feminine.

G. With respect to any interrogatory or answer in which reference is made to an oral communication, specify the following:

1. The name, company or other affiliation, and title or identifying feature of the individual who made the oral communication;

2. The name, company or affiliation, and title or other identifying feature of each individual to whom the oral communication was made;

3. The date on which the oral communication was made;

4. The place where the oral communication was made;

5. The names of each and every individual who heard the oral communication if different or in addition to those individuals to whom the oral communication was made. If the names of these individuals are not sufficient to permit identification of the individuals, include a description of these individuals that will be sufficient to permit their identification by Martin Gottesfeld;

6. The nature and content of the oral communication, repeating the actual words used to the extent possible and, when not possible, paraphrasing in detail those words;

7. State whether any individual to whom the oral communication was made, or hearing the oral communication, made any statements in response to the communication and, if so, identify the the response or responses in detail, repeating the actual words used to the extent possible, and, when not possible, paraphrasing those words; and

8. State whether the oral communication was ever memorialized in any document. If so, identify each document in sufficient detail to permit the preparation of a valid request to produce it.

H. These interrogatories are continuing in nature and responses that Interrogatee or Respondent later learn are inaccurate or incomplete are to be reasonably supplemented. *Cf.*, *e.g.*, Fed. R. Civ. P. 26(e).

END OF INSTRUCTIONS FOR RESPONDING

INTERROGATORY NO. 1: What formal training for SENTRY, if any, had you completed before you signed Epplin Decl., dkt. 21-1 on January 27, 2020?

ANSWER:

INTERROGATORY NO. 2: Was your SENTRY training current under all applicable standards on Jan. 27, 2020?

ANSWER:

INTERROGATORY NO. 3: What formal training, if any, had you completed specifically for SENTRY's administrative-remedy functionality as of Jan. 27, 2020?

ANSWER:

INTERROGATORY NO. 4: Was your administrative-remedy-specific SENTRY training current under all applicable standards on Jan. 27, 2020?

ANSWER:

INTERROGATORY NO. 5: On Jan. 27, 2020, were you the Administrative Remedy Coordinator appointed by the warden under BOP Prog. Stat. 1330.18 Administrative Remedy Program (Jan. 6, 2014) at ch. 5 for either FCC Terre Haute or FCI Terre Haute, and, if so, for which?

ANSWER:

INTERROGATORY NO. 6: On Jan. 27, 2020, were you the Administrative Remedy Clerk appointed by the warden under BOP Prog. Stat. 1330.18 Administrative Remedy Program (Jan. 6, 2014) at ch. 5 for either FCC Terre Haute or FCI Terre Haute, and, if so, for which?

ANSWER:

INTERROGATORY NO. 7: If you were neither the Administrative Remedy Coordinator or Clerk for FCC Terre Haute or FCI Terre Haute, then why were you chosen as Declarant instead of the Coordinator or Clerk?

ANSWER:

INTERROGATORY NO. 8: Whose idea was it to present the Court with a search through Administrative Remedy Generalized Retrieval, dkt. 21-1 at 49-70 looking only for retrospective references to a particular incident report, such as to miss previously filed prospective remedies?

ANSWER:

INTERROGATORY NO. 9: What was your basis for your representation under penalty of perjury: "Gottesfeld is serving a [...] sentence for Fraud[*sic*]," Epplin Decl. ¶ 4, dkt. 21-1 at 3?

ANSWER:

INTERROGATORY NO. 10: Upon re-reviewing Public Information Inmate Data, dkt. 21-1 at 6, "CURRENT OBLIGATION NO: 0101," "OFF/CHG," was Petitioner actually convicted under 18 U.S.C. §§ 371 and 1030(a)(5)(A)?

ANSWER:

INTERROGATORY NO. 11: Does 18 U.S.C. § 1030(a)(5)(A) contemplate intentional damage to a protected computer and not, in and of itself, fraud?

ANSWER:

INTERROGATORY NO. 12: Did you misread Public Information Inmate Data, dkt. 21-1 at 6 and arrive at an incorrect conclusion, i.e. "Gottesfeld is serving a 121-month sentence for Fraud," Epplin Decl. ¶ 4, dkt. 21-1 at 4?

ANSWER:

INTERROGATORY NO. 13: What formal training, if any, had you completed by Jan. 27, 2020, relevant to the correct interpretation of Public Information Inmate Data, dkt. 21-1 at 6?

INTERROGATORY NO. 14: Notwithstanding your prior statement under penalty of perjury, "SENTRY is used to track all administrative remedy submissions," Epplin Decl. ¶ 3, dkt. 21-1 at 3, is SENTRY used to track Administrative Remedy—Informal Resolution forms ("BP-8s")? (*See, e.g.*, Epplin Decl. ¶ 2, "Step 1," dkt. 21-1 at 2; *id.* n. 1; *Barnett v. Harlow*, 2019 U.S. Dist. LEXIS 94080, No. 2:18-cv-397-JMS-MJD (S.D. Ind. June 5, 2019) at *7 (BP-8s are "not recorded in the SENTRY database").)

ANSWER:

INTERROGATORY NO. 15: Given your statement under penalty of perjury, "I also have access to the actual (hard copy) remedy filings and responses that are maintained by the BOP," Epplin Decl. ¶ 3, dkt. 21-1 at 3, do those "actual (hard copy) remedy filings and responses that are maintained by the BOP" include all Administrative Remedy—Informal Resolution forms ("BP-8s")?

ANSWER:

INTERROGATORY NO. 16: Did you search "the actual (hard copy) remedy filings and responses that are maintained by the BOP" for remedies relevant to this case before you executed Epplin Decl, dkt. 21-1, and, if so, what were your search parameters and results?

ANSWER:

INTERROGATORY NO. 17: Before you executed Epplin Decl., dkt. 21-1, which search or searches, under which paramters, did you conduct that the Court would reasonably expect to have found Administrative Remedy—Informal Resolution ("BP-8") forms relevant to the instant case such as The Eisele BP-8, dkt. 18 at 30, and what, if any, were your results?

ANSWER:

INTERROGATORY NO. 18: What personal knowledge or other admissible evidence, if any, do you have to contradict Petitioner's assertion under penalty of perjury, Petition ¶¶ 124–25, dkt. 1 at 24, that he submitted the Eisele BP-8 but received no response thereto?

ANSWER:

INTERROGATORY NO. 19: Which of the following documents, if any, did you handmark: the CMU-desig. BP-9 Form As Ret., ERJ Decl. Attachm. 18 at 3, App'x A113; the Hart BP-9 Form As Ret., ERJ Decl. Attachm. 19 at 3, App'x A116; the Ex Post Facto BP-9 Form As Ret., ERJ Decl. Attachm. 33 at 3, App'x A142; and the Royer Sex-abuse BP-9 Form As Ret., dkt. 47 at 6?

ANSWER:

INTERROGATORY NO. 20: When the Hart BP-9 and CMU-desig. BP-9 were rejected—see Rej. Ntcs., ERJ Decl. Attachms. 18 at 2, 19 at 2, 22 at 2, App'x A112, A115, A120, dkt. 18 at 25—were you aware the relevant BOP Prog. Stat. 13380.18 Administrative Remedy Program (Jan. 6, 2014) required Petitioner to include copies of relevant exhibits under 28 C.F.R. § 542.14(c)(3)?

ANSWER:

INTERROGATORY NO. 21: Of the 42 administrative-remedy filings you averred that Petitioner had submitted, Epplin Decl. ¶ 6, dkt. 21-1 at 3, how many did you handle personally?

ANSWER:

INTERROGATORY NO. 22: When, if ever, have you misled anyone as to the existence or nonexistence of one or more administrative-remedy filings?

ANSWER:

INTERROGATORY NO. 23: When and in which instances, if any, did you become aware of Ms. Rebekka Eisele's mishandling or late handling of administrative remedies?

ANSWER:

INTERROGATORY NO. 24: Has any person, and if so who, ever asked you to take any action you expected to adversely affect Petitioner's remedy exhaustion?

ANSWER:

INTERROGATORY NO. 25: When and why, if ever, did you take any action or actions that you expected to adversely affect Petitioner's remedy exhaustion?

ANSWER: