UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

FILED
08/15/2022
U.S. DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
Roger A.G. Sharpe, Clerk

MARTIN GOTTESFELD, )
Petitioner, *pro se*, )
)
v. )  No. 2:20-cv-12-JRS-MJD
)
B. LAMMER, Warden of )
The FCI Terre Haute, Indiana, )
Respondent. )

MOTION TO SET ASIDE JUDGMENT (FED. R. CIV. P. 59(e))

MARTIN GOTTESFELD, Petitioner, *pro se*, moves the Court to set aside or correct its Final Judgment, dkt. 98.

1. BACKGROUND

"Rule 59(e) enables a district court to correct its own errors based on newly discovered evidence or manifest errors of law." *Clemente v. Allen*, 120 F.3d 703, 705 (7th Cir. 1997) (citing *Russell v. Delco Remy Div. of Gen. Motors Corp.*, 51 F.3d 746, 749 (7th Cir. 1995)).

The Court, at entry of judgment, considered the record "undisputed" that Petitioner "did not timely exhaust his available administrative remedies." Order Dismissing Petition for Writ of Habeas Corpus and Directing Entry of Final Judgment ("Dism. Ord.") § IV, dkt. 97 at 7. It prejudicially faulted the unrepresented Petitioner for offering "no legal authority for the proposition a petitioner may exhaust his disciplinary sanction before it has been issued." *Id.* § III, dkt. 97 at 7. As to the existence of such "legal authority," it stated: "the Court is aware of none." *Id.*

The Court briefly addressed estoppal—limited to Respondent's seizure of Petitioner's personal property. *Id.* (citing Petition ¶¶ 135–36, dkt. 1 at 26–27). Under this limited construal, the Court found "no evidence that this

seizure was an attempt to prevent him from appealing his disciplinary sanction." *Id.* "And he does not explain how this seizure prevented him from filing an administrative appeal, even though he was able to file his petition in this action." *Id.*

Prior to judgment the Court also denied Petitioner's timely requests for extensions in which to file an amended reply. Order Denying Motions for Extention of Time, dkt. 94 (citing Order Granting Motion for Extension of Time ("Mr. Gottesfeld has been given eighteen previous extensions to file his amended reply" and "should not expect any further extensions"), dkt. 88). The Court thereby left unaddressed Petitioner's claims. Mots. for Exts., dkts. 90 at 2 (Petitioner's "need to litigate his direct appeal and certiorari petition" and "SARS-CoV-2 lockdown" impediments), 92 (government's destruction of Petitioner's mailing in transit to the Court required Petitioner arrange for purchase of additional photocopy cards and a box for re-mailing) and 93 (same). *See also* Objection, dkt. 103 (citing *Estremera v. United States*, 724 F.3d 773 (7th Cir. 2013) (deprivation of law-library access is an unconstitutional impediment to pursuing habeas relief); *Ray v. Clements*, 700 F.3d 993 (7th Cir. 2012) (unrepresented prisoner's unrebutted claims of mail issues required, under substantial-justice model, specific refutation by party opposing habeas relief); *Houston v. Lack*, 487 U.S. 266 (1988) (considering as filed unrepresented prisoner's mailing once he has done all he is able to do to secure its timely entry); 28 C.F.R. § 540.203(a), (c) (mail to U.S. courts and judges is pre-screened (and preserved) before mailing by prison officials)).

After the U.S. Postal Service or prison authorities—here a distinction without a difference under *Houston* and its progeny—ruined an expensive mailing of material filings, this Court updated the docket to reflect that Petitioner would re-mail it. Docket-entry Text, dkt. 91 ("Plaintiff to

resend"; entered by KAA June 21, 2022). It then entered judgment before that re-mailing reached the Court. *See* dkts. 97 (July 18, 2022), 98 (same), 99–102 (re-mailing, claiming prison-mailbox rule July 18, 2022).

2. THE COURT OVERLOOKED *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013). "In order to exhaust their remedies, prisoners need not file multiple, successive grievances raising the same issue (such as prison conditions or policies) if the objectionable condition is continuing." *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013) (citing *Parzyck v. Prison Health Servs. Inc.*, 627 F.3d 1215, 1219 (11th Cir. 2010) (prisoner "not required to initiate another round of the administrative grievance process on the exact same issue each time" a deprivation occurred)) (collecting cases). "Separate complaints about particular incidents"—or incident reports (IRs)—"are only required if the underlying facts or complaints are different." *Id.* (citing *Siggers v. Campbell*, 652 F.3d 681, 692 (6th Cir. 2011)). "Thus once a prison has received notice of, and an opportunity to correct, a problem, the prisoner has satisfied the purpose of the exhaustion requirement." *Id.* Under this precedent, a single fully exhausted "grievance was likely sufficient to exhaust all [the prisoner]'s complaints." *Id.*

Moreover, "no administrative remedy system may demand"—as Respondent purports, constructively, to do—"that the prisoner specify each remedy later sought in litigation." *Strong v. David*, 297 F.3d 649–50 (7th Cir. 2002) (citing *Booth v. Churner.* 532 U.S. 731 (2001)). "A document filed pro se 'is to be liberally construed.'" *Erickson v. Pardus*, 551 U.S. 89 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

These legal authorities stand directly, *Turley*, 729 F.3d at 650, and indirectly, for the proposition that a petitioner may exhaust his retaliatory or otherwise-unconstitutional disciplinary sanction before it has been issued, by properly filing prospective remedies for constitutional violations.

Petitioner, moreover, had no duty to plead the law of the circuit. "A *pro se* plaintiff who has alleged well-pled facts supporting a claim for relief can withstand dismissal without responding to a motion to dismiss." *Curtis v. Bembenek*, 48 F.3d 281 (7th Cir. 1995) (citing *Maggette v. Dalsheim*, 709 F.2d 800, 802 (2d Cir. 1983)).

3. THE COURT OVERLOOKED *Kaba v. Stepp*, 458 F.3d 678, 686 (7th Cir. 2006). "The fact that [Prisoner] was able to file his FTCA claim and this lawsuit does not prove that remedies were available within the [prison] system." *Kaba v. Stepp*, 458 F.3d 678, 686 (7th Cir. 2006). "'[T]hreats or other intimidation by prison officials may well deter a prisoner of "ordinary firmness" from filing an internal grievance,' but not an external one because the latter might avoid 'threatened retaliatory conduct from prison employees.'" *Id.* (quoting *Hemphill v. New York*, 380 F.3d 680, 688 (2d Cir. 2004)). Here, when Petitioner submitted his relevant demand to exhaust under D.C. Code § 16-1905, prison officials threw him in solitary and charged him with extortion. Those same officials, however, could realistically neither further punish Petitioner for opening this case nor block him from doing so. *Ex Parte Hull*, 312 U.S. 546 (1941) (prison officials' pre-screening of case-opening documents violates separation of powers and U.S. Const. amend. I); Court-access BP-11 Cent. Office's Resp. (Nov. 21, 2019) (Petitioner had exhausted as to his "right to access the Courts without interference and delay"), dkt. 100-58 at 2. Petitioner eventually would have had an attorney call or visit, and such misconduct would have reached the Court's attention not disimilarly from how *Hull* did.

4. PETITIONER PLEADED SUFFICIENT FACTS.

> 119. In the months before the latest incident report, [P]etitioner timely filed numerous grievances stating that [R]espondent's agents were retaliating against him for his litigation-related activities. [P]etitioner therein cited to *Johnson v. Avery*, 393 U.S. 483 (1969); *Wolff v. McDonnell*, 418 U.S. 539 (1974); *Bounds v. Smith*, 430 U.S. 817

> (1977); and *Williams v. Lane*, 851 F.2d 867 (7th Cir. 1998).
> 120. [P]etitioner marked each such grievance, "SENSITIVE/STAFF MISCONDUCT," and enclosed with each strong and thorough documentary evidence. Each grievance clearly stated that agents of [R]espondent violated clearly-well-established Constitutional rights of [P]etitioner.
> 121. One such grievance was against unit counselor [Ms.] K. Hart, who chaired the UDC for the first unconstitutional and untimely incident report filed against [P]etitioner, manifestly punishing him for protected litigation activity. Another was against DHO Jason Bradley for his conduct regarding that same incident report, detailed *infra*.
> 122. Agents of [R]espondent refused to accept these grievances as marked, "SENSITIVE/STAFF MISCONDUCT," and the accompanying evidence and interspersed it with papers from [P]etitioner's other pending [remedies] before returning to [P]etitioner a muddled mess—as these agents have a tendency to do. *Exhibit 5*[, dkt. 1-5].
> 123. [P]etitioner timely appealed each rejection at all levels, including in BP-11s filed with [R]espondent's central office in Washington, DC. [P]etitioner explicitly noted in each timely appeal that each rejection was in bad faith, but still agents of [R]espondent improperly refused to process these grievances.
> 124. Two (2) months ago, [P]etitioner timely filed another BP-8 (herein the "Eisele BP-8"), in which he noted that agents of [R]espondent are retaliating against [P]etitioner's Constitutionally-protected petitions to the government for the redress of his grievances.

Petition ¶¶ 119—24, dkt. 1 at 23—24. "The only response to The Eisele BP-8 that [P]etitioner ever received was in the form of the aforementioned incident report 3338082." Petition ¶ 125, dkt. 1 at 24.

There is no maximum amount of time for prison officials to answer a "BP-8." *Cf.* 28 C.F.R. § 542.18 (specifying times within which, if the prisoner receives no response to a BP-9, -10 or -11, he may appeal to the next level, but providing no such time for BP-8s). And BP-8s are "not recorded in the SENTRY database." *Barnett v. Harlow*, 2019 U.S. Dist. LEXIS 94080, No. 2:18-cv-397-JMS-MJD (S.D. Ind. June 5, 2019) at *7. Eisele herself had the chance to deny that Petitioner filed the Eisele BP-8 but did not do so. *See* Eisele Decl., dkt. 21-2.

"'[W]hen the prisoner follows procedure but receives no response due to error by the prison, this court has found that the prisoner exhausted.'" Petition ¶ 127 (quoting *Turley* at 650 n. 3, alteration in original), dkt. 1 at

25.

     5. THE COURT OVERLOOKED *McCarthy v. Madigan*, 503 U.S. 140 (1992). "In determining whether exhaustion is required" under federal common law, "federal courts must balance the interests of the individual in retaining prompt access to a federal judicial forum against countervailing institutional interests." *McCarthy v. Madigan*, 503 U.S. 140, 146 (1992). "Administrative remedies need not be pursued if the litigant's interests in immediate judicial review outweigh the government's interests in efficiency or administrative autonomy." *Id.* (quoting *West v. Bergland*, 611 F.2d 710, 715 (8th Cir. 1979) (alteration marks removed), *cert. denied* 449 U.S. 821 (1980)). "Application of this balancing principle is 'intensely practical,' because attention is directed to both the nature of the claim presented and the characteristics of the particular administrative procedure provided." *Id.* For example, "requiring resort to administrative remedy may occasion undue prejudice to subsequent assertion of a court action." *Id.* at 146–47.

     In the instant case vital evidence of DHO D. Matthews's partiality and the retaliatory animus underlying IR 3338082 faced imminent destruction. *See* Emergency Motion for an Order to Preserve Evidence Against Imminent Destruction, dkt. 3; Cop-out requesting preservation of evidence, dkt. 3-1. Only this Court's order prevented spoliation. *See* Order § I, dkt. 9 at 1.

> I previously requested the preservation of the audio and video surveillance footage subject to my recently-granted emergency motion in the case by submitting the exhibited written requests but was told by an agent of [R]espondent that the footage would not be preserved.

Gottesfeld Decl. ¶ 9 (Jan. 28, 2020), dkt. 16-1 at 2. "That is why I came to The Court for an order." *Id.*

     Again, Petitioner pleaded sufficient facts to withstand Return.

             6. THE RECORD RE EXHAUSTION IS NOT UNDISPUTED.

Petitioner may "deny any of the facts" in Respondent's Return. 28 U.S.C. §

2243. But he need not do so to maintain factual disputes. 28 U.S.C. § 2248.

> We read [28 U.S.C. § 2248] as not requiring a traverse when a factual issue has been clearly framed by the petition and the return or answer. This section provides that the allegations of a return or answer to an order to show cause shall be accepted as true, if not traversed, except to the extent the judge finds from the evidence that they are not true. This contemplates that where the petition and return or answer do present an issue of fact material to the legality of detention, evidence is required to resolve that issue despite the absence of a traverse. The reference to evidence assumes a hearing on issues raised by the allegations of the petition and the return or answer to the order to show cause.

*Stewart v. Overholser*, 186 F.2d 339, 342 n. 5 (D.C. Cir. 1950). *See also* Original Committee Note to § 2254 Rule 5 (quoting same) ("It seems that when the petition and return pose an issue of fact, no traverse is required").

> In actual practice, the traverse tends to be a mere pro forma refutation of the return, serving little if any expository function. In the interests of a more streamlined and manageable habeas corpus procedure, it is not required except in those instances where it will serve a truly useful purpose. Also, under rule 11 the court is given discretion to incorporate Federal Rules of Civil Procedure when appropriate, so civil rule 15(a) may be used to allow the petitioner to amend his petition when the court feels this is called for by the contents of the answer.

*Id.* The Court ordered Petitioner neither to amend Petition nor to address particular facts in Return. *See also United States ex rel. Kendzierski v. Brantley*, 447 F.2d 806, 808 (7th Cir. 1971) ("Even if factual statements in the return are not traversed, they may be rejected 'to the extent that the judge finds from the evidence that they are not true'") (quoting 28 U.S.C. § 2248 and limiting returns to "qualified credence").

The duty to dispute was Respondent's—not Petitioner's. Outside the Prison Litigation Reform Act (PLRA) prison officials have "procedural requirements" to "reply to a prisoner complaint" or be "deemed to have admitted" its allegations. *E.g.*, *Jones v. Bock*, 549 U.S. 199, 216 (2007). "Cases properly brought under" § 2241 "are not subject to the PLRA." *Walker v. O'Brien*, 216 F.3d 626, 636 (7th Cir. 2000). Thus bare denials fail. "We have consistently held that such a general denial of the complaint's allegations, without

factual support, is insufficient to state a meritorious defense." *Wehrs v. Wells*, 688 F.3d 886, 890–91 (7th Cir. 2012) (citing *Pretzel & Stouffer v. Imperial Adjusters, Inc.*, 28 F.3d 42, 46 (7th Cir. 1994) ("[A] meritorious defense requires more than a 'general denial' and 'bare legal conclusions'"); *accord Stephenson v. El-Batrawi*, 524 F.3d 907, 914 (8th Cir. 2008) ("simple assertions unsupported by specific facts or evidence" failed to establish meritorious defense); *New York v. Green*, 420 F.3d 99, 110 (2d Cir. 2005) ("conclusory denials" insufficient to raise meritorious defense)). For corresponding authorities in the habeas context, *see* Amended Reply In Support of § 2241 Petition n. 2 (collecting cases), dkt. 101 at 2.

Respondent's search through a terse computer-generated summary of Petitioner's 42 BP-9s, -10s and -11s—but not his BP-8s—for a retrospective incident-report no.—Respondent's sole evidence in support of his nonexhaustion defense: Epplin Decl. ¶ 6, dkt. 21-1 at 3 (citing Administrative Remedy Generalized Retrieval, dkt. 21-1 at 49)—plainly failed to rebut Petitioner's specific facts re exhaustion, *e.g.*, Petition ¶¶ 119–24 (Eisele BP-8 never answered, after other relevant remedies illegitimately rejected), quoted, *supra*, at 4–5, § 4.

7. ADMINISTRATIVE REVIEW OF CONSTITUTIONAL ISSUES WAS UNAVAILABLE. "Exhaustion is an affirmative defense, and the burden of proof is on" Respondent. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006); *Kaba, supra* (when Prisoner alleges intimidation prevented exhaustion, burden of proof remains on the respondent to show remedies were available despite alleged misconduct).

Here, as well, BOP expressly disavows administrative review of DHO findings for statutory or constitutional violations: "The decision of the DHO is final and subject to review only by the Regional Director to ensure conformity with the disciplinary policy." U.S. Dep't of Justice, Fed. Bur. of Prisons Program

Statement 5270.09 Inmate Discipline Program ("Prog. Stat. Inm. Disc.") at ch. 5 (July 8, 2011). "On appeals, the reviewing authority considers: Whether the UDC or DHO substantially complied with regulations on inmate discipline." *Id.* Said policies and regulations neither contemplate nor mention anything approaching the substantial constitutional questions posed by this case, *e.g.*, 1) May Respondent punish Petitioner for his statutory exhaustion of D.C. Code § 16-1905? and 2) Is IR 3338082 retaliatory in violation of U.S. Const. amend. I? *See, in toto,* Prog. Stat. Inm. Disc.; Prog. Stat. 1330.18 Administrative Remedy Program ("Prog. Stat. Adm. Rem.") (Jan. 6, 2014); 28 C.F.R. Parts 541 Inmate Discipline and Special Housing Units and 542 Administrative Remedy. A Lexis® search within said folios for *constit\** returns zero results. To the extent that Respondent's vague statements may have indicated otherwise, the aforesaid policies are newly discovered evidence to the contrary, showing a possible fraud upon the Court by Respondent for asserting that administrative review for constitutional violations was available.

In any case, "exhaustion may be excused" where "substantial constitutional questions are raised" or "the agency lacks the ability or competence to resolve the issue or grant the relief requested." *Iddir v. INS*, 301 F.3d 492, 498 (7th Cir. 2002) (citing, *inter alia, McCarthy, supra* (excusing federal prisoners from pre-PLRA exhaustion in *Bivens* cases)). These and other relevant criteria apply to this case. Respondent was precluded by his own policies from granting the relief requested for the constitutional questions posed by this case. As such, remedies were neither available nor required and Respondent failed to prove otherwise or did so by misleading the Court.

8. PETITIONER MERITED MORE TIME & THE COURT NEVER WARNED HIM BEFORE DISMISSAL. In construing the record as "undisputed," the Court effectively disregarded Petitioner's existing reply, dkt. 33, and dismissed Petition for want of prosecution. *See, again,* Order Granting Motion for Extension of Time ("Mr.

Gottesfeld has been given eighteen previous extensions to file his amended reply"), dkt. 88. Dismissal for failure to prosecute is a harsh penalty that should be used to sanction only extreme misconduct. *See Kruger v. Apfel*, 214 F.3d 784, 787 (7th Cir. 2000). The Seventh Circuit has held repeatedly that a district court ordinarily may not dismiss a case for want of prosecution without first providing an explicit warning to the party. *See, e.g., Aura Lamp & Lighting, Inc. v. Int'l Trading Corp.*, 325 F.3d 903, 908 (7th Cir. 2003); *Bolt v. Loy*, 227 F.3d 854, 856 (7th Cir. 2000); *FEC v. Salvi*, 205 F.3d 1015, 1018–19 (7th Cir. 2000); *Ball v. City of Chicago*, 2 F.3d 752, 760 (7th Cir. 1993). Here, the Court's warning Petitioner "should not expect any further extensions," Order, dkt. 88, did not advise Petitioner the Court would consider the record undisputed and, as a proximate result, dismiss Petition despite the law of this circuit and accepted habeas practices, as detailed *supra*. The need for a clear warning is particularly great where a party is proceeding *pro se*. *In re Bluestein & Co.*, 68 F.3d 1022, 1025 (7th Cir. 1995).

Here there is no "clear record of delay or contumacious conduct" that would justify a dismissal. *Rice v. City of Chicago*, 333 F.3d 780, 785–86 (7th Cir. 2003) (internal quotations omitted). To the contrary, the Court granted each of the previous extensions for good cause shown and Petitioner missed only a single deadline set by the Court. The Court then promptly dismissed the case seven days after denying a further extension, before said denial even reached Petitioner and while awaiting Petitioner's re-mailing of material documents. *See* dkts. 91 ("Plaintiff to resend"; June 21, 2022); 94 (denying extension; July 11, 2022); 97–98 (dismissing case July 18, 2022); Gottesfeld Decl. ¶¶ 2–5 (Petitioner received denial of extension July 19, 2022), dkt. 103-1.

"One missed deadline is not a pattern of dilatory conduct." *Kruger*, 214 F.3d at 787. *See also Casteel v. Pieschek*, 3 F.3d 1050, 1055–56 (7th Cir. 1993).

Further, Petitioner was proceeding *pro se*. "Our judicial system zealously guards the attempts of pro se litigants on their own behalf." *Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st Cir. 1997). Respondent and the Court violate the Constitution by enforcing dispositive deadlines in a habeas case while Petitioner is deprived of law-library access. Objection, dkt. 103 (citing *Estremera v. United States*, 724 F.3d 773 (7th Cir. 2013); Mot. for Ext., dkt. 90 (absent an extension "Petitioner would have to complete his amended reply in support of the instant petition without access to a law library" and requesting "a brief telephonic hearing to explain himself").

"[I]mplicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertant forfeiture of important rights because of their lack of legal training." *McLeod v. Jewish Guild For The Blind*, 864 F.3d 154, 156—57 (2d Cir. 2017) (quoting *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (alterations and internal quotation marks omitted)); *United States v. Hung Thien Ly*, 646 F.3d 1307, 1316 (11th Cir. 2011) (quoting *Johnson v. Schmidt*, 83 F.3d 37, 39 (2d Cir. 1996) (citation and internal quotation marks omitted)). Under these standards Petitioner pleaded sufficient facts to extend his reply deadline to the day in which he filed and the Court entered judgment, July 18, 2022, *e.g.*

> Petitioner[...] has now tendered his pleading of the underlying facts. Absent counsel, this was arduous for Petitioner, who lacks a college education and formal legal training. Still he has largely completed his legal argument, the reply in chief. He needs two more weeks—barring lockdowns and other impediments—to render it adequate.
> The requested extension is warranted because Petitioner has diligently pursued the instant case despite impediments and he would be prejudiced without an opportunity to rebut Respondent's claims raised initially in Return. Petitioner's diligence is manifest in his 40-page handwritten Petition, his timely reply and its substantial accompanying materials and his comprehensive 53-page ERJ Decl. with 151-page appendix. Petitioner has never neglected his instant-case deadlines. He has provided good cause for extensions due to impediments, *e.g.*, SARS-CoV-2 lockdowns and his need to litigate his direct appeal and certiorari petition.

Mot. for Ext. at 1—2, dkt. 92 (citing Gottesfeld Decl. (June 13, 2022) (Petitioner worked on his amended reply "nearly every waking hour for the past several weeks, including holidays and weekends"; the work "was arduous"; it required he "search for several hours through over 150 lbs. of case files," make repeated "trips with cumbersome stacks of papers up and down stairs" and individually photocopy over 200 pages, which left him "intellectually exhausted," as evidenced by his degraded capacity), dkt. 92-1)) (internal citations omitted). When his first mailing failed of his relevant declaration in support of his exhaustion of remedies, Petitioner sufficiently pleaded the prison-mailbox rule and his need to obtain the necessary supplies to refile. Mot. for Ext., dkt. 93 (citing, *inter alia*, *Houston v. Lack*, 487 U.S. 266 (1988); *Ray v. Clements*, 700 F.3d 993, 1018 (7th Cir. 2012); Gottesfeld Decl. (June 23, 2022) ("[T]o have enough [supplies] to reproduce the declaration and my upcoming amended reply I will have to wait for the week of July 3rd—9th, 2022"), dkt. 93-1).

Moreover, the fruits of Petitioner's labor now make plain his diligence. *See* ERJ Decl., Amended Reply and Motion to Supplement or Amend, dkts. 100—02. The Court cannot equitably expect Petitioner to plead both the law and facts of detailed issues to avoid dismissal and refuse to provide him adequate time with adequate legal resources to produce thorough filings. *See* Dism. Ord. § III (expecting Petitioner to provide "legal authority for the proposition a petitioner may exhaust his disciplinary sanction before it has been issued"), dkt. 97 at 7.

Last, Respondent never argued he was prejudiced in any way because Petitioner needed more time—nor should he have been heard to complain, having caused the very difficulties that belabored this case. *See Ball*, 2 F.3d at 760 (prejudice to opposing party should be considered when imposing sanction). In contrast, Petitioner is the one prejudiced unfairly. *See infra*.

9. PETITIONER EXHAUSTED EVEN THOUGH EXHAUSTION WAS INAPPLICABLE.

In addition to Petitioner's undisputed filing of the Eisele BP-8 and Respondent's undisputed failure to answer it, *supra*, at 4, § 4, Petitioner exhausted on two theories: 1) court access and 2) impermissible vagueness. Court-access BP-11 Cent. Office's Resp. (Nov. 21, 2019), dkt. 93-2; Ex Post Facto BP-11 Cent. Office's Resp. (Nov. 21, 2019), dkt. 93-3. He pleaded both in Petition. *See* Petition at 1 (citing "[P]etitioner's First Amendment right of access to the courts"), dkt. 1; *id.* ¶ 162 ("[P]etitioner filed [remedy no.] 979747, complaining that there is no set of written communications rules for the" CMU), dkt. 1 at 34.

Denying Petitioner's requested extensions prejudiced him from presenting these issues. *See* Amended Reply §§ 6, 9A, dkt. 101 at 6, 18.

10. RESPONDENT IS PROPERLY ESTOPPED FROM RAISING NONEXHAUSTION.

Petitioner's argument to estop Respondent's nonexhaustion defense is broader and more robust than the Court construed. *Contrast* Dism. Ord. § III, dkt. 97 at 7 *with* Petition ¶¶ 119—36 (citing "the intimidation-into-nonexhaustion context relevant to this case" and collecting cases), dkt. 1 at 23. Read *in toto* Petition paints a stark picture of unending retaliation against litigation, exhaustion and other protected conduct more than sufficient to infer retaliatory motive and estop Respondent; the very IR 3338082 itself is clearly impermissible as a response to a valid demand under D.C. Code § 16-1905. To hold otherwise is to read a kamikaze requirement into the judicially created exhaustion doctrine. *See DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000).

Though Petition's pleading was itself sufficient under applicable precedent, Petitioner's amended reply, if allowed, buttressed his argument. *See* Amended Reply §§ 7 (citing specific ERJ Decl. paras. in proof of prison officials affirmative misconduct and collecting cases), 9A (citing *DeWalt*;

*Schultz v. Pugh*, 728 F.3d 619, 620–21 (7th Cir. 2013) (Posner, J.) ("[T]he law governing unavailability of prison remedies on grounds of intimidation is in some disarray")), dkt. 101 at 11, 18.

  11. FURTHER EXHAUSTION MEANT UNREASONABLE & INDEFINITE DELAY. Exhaustion may also be excused if it "causes prejudice, due to unreasonable delay or an indefinite time frame for administrative action." *Iddir v. INS*, 301 F.3d at 498 (internal quotation marks and citations omitted).

  As ERJ Decl., dkt. 100, makes plain, Respondent has never timely answered Petitioner's remedies and his assurances that Petitioner may appeal an unanswered remedy invariably rang hollow. "Exhaustion of the remedy directly prior to IR 3338082 took 573 days." Amended Reply § 8B, dkt. 101 at 14 (citing Remedy Table ("Rem. Tbl.") at rows 32–38, dkt. 100-6 at 2). At such great delays witness memories fade, documents become lost, etc.

          12. CONCLUSION

Respondent left undisputed that Petitioner exhausted under multiple theories: retaliation, court access and vagueness. Any of these warrants the Great Writ. Moreover, exhaustion was never applicable because administrative review was unavailable for constitutional violations and prejudicially untimely for evidentiary violations. Had Respondent wished Petitioner to seek further administrative review volitionally, Respondent should have agreed to preserve the evidence Petitioner requested rather than force him to secure this Court's Order on an emergency basis. And Respondent's affirmative misconduct against remedy filings at financial cost to Petitioner properly estops Respondent's nonexhaustion defense.

  This Court's Judgment should be set aside or corrected to reflect these plain truths.

Respectfully filed Thursday, August 4, 2022, under the prison-mailbox rule, *Houston v. Lack*, 487 U.S. 266 (1988), by mailing to the Court in an envelope with sufficient affixed pre-paid First Class U.S. postage, handed to Ms. Kathy Hill of the CMU Marion unit team in her official capacity as an agent of Respondent and of his counsel at the next opportunity,

by: *[signature]*
Martin Gottesfeld
Reg. no. 12982-104
United States Penitentiary
P.O. Box 1000
Marion, IL 62959

CERTIFICATE OF SERVICE

I, Martin Gottesfeld, *pro se*, certify I mailed a copy of the foregoing document to counsel for the respondent in the above-captioned case Thursday, August 4, 2022, or my first opportunity thereafter and that I also effected service in-hand to her agent Ms. Kathy Hill of the CMU Marion unit team; *see* 28 C.F.R. § 540.203(a), (c) (mail to U.S. courts and judges is pre-screened for contents),

by: *[signature]*
Martin Gottesfeld